1  ALLEN RUBY (Bar No. 47109)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  525 University Avenue
   Palo Alto, California  94301-1908
3  Telephone: (650) 470-4500
   Facsimile:  (650) 470-4570
4  Email:  allen.ruby@skadden.com

5  Attorneys for Defendant 3TAPS, INC.

6  Additional Counsel Listed on Next Page

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12  CRAIGSLIST, INC., a Delaware corporation,      **Case No.** CV-12-03816 CRB

13                Plaintiff,                       **DEFENDANT 3TAPS, INC.'S
                                                  ANSWER TO COMPLAINT AND
14                v.                               COUNTERCLAIM**

15  3TAPS, INC., a Delaware corporation;           **JURY TRIAL DEMANDED**
    PADMAPPER, INC., a Delaware corporation;
16  and DOES 1 through 25, inclusive.

17                Defendants.                       Honorable Charles R. Breyer

18
    _____
19
    3TAPS, INC., a Delaware corporation,
20
                  Counter-claimant,
21
    CRAIGSLIST, INC., a Delaware corporation
22
                  Counter-defendant.
23
    _____
24

25

26

27

28

JAMES A. KEYTE (*pro hac vice* application forthcoming)
MICHAEL H. MENITOVE (*pro hac vice* application forthcoming)
MARISSA E. TROIANO (*pro hac vice* application forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-3000
James.Keyte@skadden.com
Michael.Menitove@skadden.com
Marissa.Troiano@skadden.com

CHRISTOPHER J. BAKES (SBN 99266)
M. TAYLOR FLORENCE (SBN 159695)
LOCKE LORD LLP
500 Capitol Mall, Suite 1800
Sacramento, California 95814
Telephone: (916) 930-2500
Facsimile:  (916) 930-2501
cbakes@lockelord.com
tflorence@lockelord.com

JASON MUELLER (Texas Bar No. 24047571) (admitted *pro hac vice*)
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8844
Facsimile: (214) 740-8800
jmueller@lockelord.com

*Attorneys for Defendant*  3TAPS, INC.

Defendant 3taps, Inc. ("3taps") answers the allegations made by Plaintiff craigslist, Inc., a Delaware corporation, ("craigslist") in its Complaint as follows:

### INTRODUCTION

1.      3taps admits that craigslist provides what is commonly known as "classified" advertising, but denies the insinuation that this form of advertising is in any way "unique" to craigslist, the derivative insinuation that "classified" advertising is a concept originated by craigslist, and the related insinuation that craigslist is entitled in any way to protect as original any component of its site that can be characterized as a successor to an advertising methodology—the "classified" ad—whose words, phrasings, and categorical design have been  in use since at least the 18th century.  3taps further denies the insinuation that craigslist operates itself as a free public service, since craigslist is a for-profit enterprise whose value as a going concern is estimated by a principal stakeholder as worth "several billion dollars."  (source:  *craigslist, Inc., v. eBay, Inc., et al.*, Superior Court for the County of San Francisco, case number CGC-08-475276, filed May 13, 2008.  craigslist is a private company and does not publish its financial information.)  To the extent that there is anything genuinely "unique" about craigslist's free ads, it is because they are the works of users who place their own ads, write their own copy, and own or control the goods or services that they—not craigslist—advertise.  3taps denies that these works of others can be asserted by craigslist as its own.

2.      3taps denies the allegations in paragraph 2.  Alleging that 3taps is acting pursuant to its own "commercial benefit" incorrectly insinuates that 3taps operates itself in derogation of consumer well-being, website utility, and accessible web content.  3taps, through its own proprietary technology, attacked and placed in issue by this lawsuit, facilitates access to user-authored content that resides on sites such as craigslist, enabling the creation of search products that more efficiently search and display information.  Just as Google, Bing, Ask, or any other general search engine facilitate efficient searches, 3taps enables user-authored ads on craigslist (or any similar public advertising sites) to be efficiently searched.  3taps' technology provides a previously unrealized public benefit, by enhancing the accessibility of the classified ads of potential sellers by potential buyers.  3taps denies that craigslist has any standing, whether under

1  copyright or any other type of misappropriation theory, to act on behalf of its users, who are the

2  owners of all content and original expression in any classified advertisement posted to the craigslist

3  site.  3taps denies that it has commercially benefited at this point, or even realized revenue from its

4  activity, since craigslist has consistently acted in bad faith to eliminate competition in the market

5  for user-created online classified ads, specifically intending to bar new entrants that would increase

6  competition and provide enhanced and more efficient products and services to consumers.  3taps

7  denies that it engages in any improper, undue, or anticompetitive activity that harms craigslist.

8  3taps is committed to a free, fair, and open market in which all participants are able to compete and

9  where craigslist ceases its current bad faith scheme designed and intended to discourage or

10  eliminate competition.  To the extent the allegations in paragraph 2 relate to defendants other than

11  3taps, 3taps lacks knowledge or information sufficient to form a belief as to the truth of the

12  allegations in paragraph 2, and therefore, denies the same.

13         3.       3taps admits that it syndicates third-party created content published on the internet

14  through an Application Programming Interface ("API").  3taps denies the remaining allegations in

15  paragraph 3 to the extent that they suggest that activities by 3taps make any private data public, or

16  that 3taps harvests or redistributes any content owned by plaintiff craigslist—to the contrary,

17  craigslist itself makes that data "available to all manner of for-profit entities to copy, repurpose,

18  redisplay, redistribute, surround with advertisements, expose to non-local audiences, subject to

19  marketing come-ons, disturb with unsolicited communications, and otherwise exploit

20  commercially" by making the data in craigslist postings capable of being indexed by general search

21  engines such as Google and Bing.  3taps enables the publicly available content to be further

22  disseminated, sorted, used, and located by use of highly functional user interfaces that provide

23  multiple options to the seeker of the posted content.  3taps denies that users "entrust" any

24  information to craigslist, since the site's function is to make public all user-originated ads it

25  receives – for which craigslist repeatedly and explicitly disclaims any responsibility.  craigslist has

26  even denied any duty to monitor or control "highly personal content" when downloaded and used

27  to commit a crime.  Further, while relying on the internet to directly present "free" advertising,

28  craigslist seeks to block the reverse event:  access via the internet to this same content.

2

4.      3taps admits that it operated craiggers.com and that it provided a craiggers mobile application.  3taps denies that craiggers.com created any confusion or had any deleterious effect on craigslist, and it denies that "essential locality," whatever it may be, is legally-protectable property owned by craigslist.  3taps further denies that craiggers.com was anything but a useful enhancement of published content designed to make that content more accessible and, in the end, enhance the expectations of content creators and classified advertisers who, by use of craiggers.com, would have enjoyed a broader, more useful interface enabling greater market visibility.  As to "essential locality," 3taps denies that this is either a consumer benefit or justification for craigslist's use of its dominant market share to obstruct access to information that craigslist itself obtains from others.  At present, craiggers.com is no longer an active site.  3taps denies the remaining allegations in paragraph 4.

5.      3taps admits that PadMapper, Inc. ("PadMapper"), uses publicly available content indexed by 3taps, but denies that there is any impropriety associated with this use or with PadMapper.  PadMapper enables multiple sites' public content to be accessed and indexed, to the great advantage of internet users seeking efficient display of information.  PadMapper's mapped pinpoints of available rentals in any selected area is a particular advantage over craigslist's dated and unwieldy user interfaces.  3taps denies the remaining allegations in paragraph 5.  To the extent the allegations in paragraph 5 relate to defendants other than 3taps, 3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies the same.

6.      3taps denies that craigslist is entitled to rely on homespun tritisms in the prosecution of its lawsuit, including the one stating "no good deed goes unpunished."  3taps denies that craigslist engages in its highly profitable business as a "good deed."  This falsely insinuates that it seeks no profits and operates altruistically when it manifestly does not.  This also falsely insinuates that craigslist broadly serves humanity as a "free" service, a grossly misleading characterization given craigslist's accumulation of enormous and largely undisclosed profits, a pattern and practice of predatory lawsuits (such as this one) aimed at obstructing innovation, and the deployment of other anti-competitive techniques and strategies made possible by its dominant market share.  3taps

1  denies that craigslist is, in sum and substance, a "free" public service.  To the extent the allegations

2  in paragraph 6 relate to defendants other than 3taps, 3taps lacks knowledge or information

3  sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies the

4  same.

5          7.          3taps denies the allegations in paragraph 7, and specifically denies that 3taps or

6  anyone associated with 3taps has advocated, condoned, or engaged in violations of law of any kind.

7  3taps further and specifically denies that it has exploited to its commercial advantage any

8  "protected" aspect of the craigslist site, since the utility of that site is its public and purportedly

9  accessible nature.  3taps admits that craigslist's website, its dated organization, and its primitive

10  user interfaces, as well as its anticompetitive conduct, limit access to, and use of, public

11  information to the detriment of buyers and sellers in the markets craigslist serves.  3taps admits that

12  markets served inefficiently by an overwhelmingly dominant participant like craigslist are entitled

13  to "liberation" from craigslist's anti-consumer inefficiencies, obstructions of fair use, and a range

14  of other consumer-hostile behaviors that impede access to public information.  3taps further admits

15  that craigslist's unlawful attempt to exercise ownership and control over third party created and

16  owned content creates an artificial confine to the further use and dissemination of such content, all

17  to the detriment of both the creator and seekers of such content since non-exclusive licensees (such

18  as craigslist) may not act on their own initiative to take any legal action regarding any alleged

19  copyright infringement, and any copying of creative expression (e.g., content) is solely a copyright

20  matter.  3taps further denies that it regards any copyright law as anything but valid; rather, by

21  attempting to misuse copyright laws to protect intellectual property it does not own or exclusively

22  license, craigslist is attempting to construct "artificial confines" to wrongly control third party

23  content.  To the extent the allegations in paragraph 7 relate to defendants other than 3taps, 3taps

24  lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

25  paragraph 7 and therefore denies the same.

26          8.          3taps denies copying any "craigslist content."  craigslist is neither the owner nor

27  exclusive licensee of any "content" posted to craigslist.com by any third party creator.  3taps

28  denies that the craigslist service, a classified advertising portal, is protectable expression.  3taps

4

1   denies copying any protectable expression that is owned or created by craigslist.  3taps denies that

2   craigslist has any rights to any "content" other than, at best, what is claimed by its "Terms of Use,"

3   which disclaims any and all responsibility for user content.  Such disclaimer only solidifies that

4   craigslist prefers to distance itself from the ownership and responsibility of the content, and

5   emphatically reminds each user that ad content is not the responsibility or product of craigslist.

6   3taps denies that aggressively inhibiting use and circulation of user-authored content, for which

7   craigslist unambiguously disclaims any legal responsibility, is in any way a protected property right

8   of craigslist.  To the extent the allegations in paragraph 8 relate to defendants other than 3taps,

9   3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

10  paragraph 8 and therefore denies the same.

11          9.      3taps denies that its activity constitutes an "infringement" since craigslist adds

12  nothing to users' ads, disclaims any responsibility for user-authored content, and takes multiple

13  other unambiguous steps to distance itself from user-authored content.  3taps denies that any of its

14  activities are "harmful," since its goal is to broaden consumer access, enhance the usefulness of

15  consumer marketplace sites, and upgrade functionalities that craigslist has neglected.  3taps

16  specifically denies that its activities infringe, misuse, or otherwise violate any person's or entity's

17  intellectual property or other statutory or common law rights.  To the extent the allegations in

18  paragraph 9 relate to defendants other than 3taps, 3taps lacks knowledge or information sufficient

19  to form a belief as to the truth of the allegations in paragraph 9 and therefore denies the same.

20  ## JURISDICTION AND VENUE

21          10.     3taps admits that this Court has jurisdiction over the subject matter but denies any

22  violations of any federal statute.

23          11.     3taps admits that this Court has supplemental jurisdiction over the remaining claims

24  but denies any violations of state or common law.

25          12.     3taps admits that venue is proper in this District but denies any implied underlying

26  factual allegations.

27          13.     3taps admits that on their face, craigslist's Terms of Use ("TOU") provide that

28  courts in San Francisco County, California have exclusive jurisdiction over the relationship

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1  between craigslist and its users.  3taps denies that its products or services are subject to the TOU,

2  since the craigslist site itself is not accessed by the 3taps technology targeted by this lawsuit, which

3  instead obtains its data from third party general search sites (e.g., Google, Bing, etc.) that have

4  already properly and lawfully received, aggregated, and indexed the public data.  craigslist

5  functions like a launching pad into the public domain for user-drafted ads.  Once a user places the

6  ad for public use, that data can then pass through multiple other electronic gateways (e.g., browsers,

7  switches, Google, other third party data "grabbers").  The TOU do not and cannot bind these

8  subsequent relays, since the entire logic of the internet is based on them and any display of a

9  "search result" could be potentially actionable.  For example, "googling" the words "for rent 3 bed

10  2 bath apartment 'San Francisco'" will result in multiple Google search results displayed as links,

11  including this link:  "SF bay area apts/housing for rent classifieds - craigslist."  In this example,

12  craigslist functioned solely as a launch point into the public domain.  Once the user posting arrived

13  there, its content became stored, indexed, and re-presented by multiple third-party sites (such as

14  Google in this example).  Once on these sites, the information can be further accessed, further re-

15  grouped, and further re-presented, with access obtainable without ever touching the craigslist site

16  or craigslist servers.  3taps denies that craigslist has the legal right to obstruct these basic functions

17  of the internet, or to otherwise interfere with public data once a "free" user launches it into the

18  public domain via the very conventional web tools provided by craigslist.  3taps, therefore, denies

19  that the TOU operate to regulate, control, or govern the multitude of these search results, third-

20  party content storage, and other access attributes that make the internet a critical tool of modern

21  society.  3taps further and specifically denies that the TOU can be the basis for a claim of

22  jurisdiction on these allegations.  To the extent that the remaining allegations in paragraph 13 relate

23  to defendants other than 3taps, 3taps lacks knowledge or information sufficient to form a belief as

24  to the truth of the allegations in paragraph 13 and therefore denies the same.

25         14.     3taps denies the allegations in paragraph 14.  3taps' technology does not access

26  craigslist servers or the craigslist site, and 3taps denies that jurisdiction and/or venue exists on the

27  supposition that it has engaged in either of these activities.  To the extent the allegations in

28  paragraph 14 relate to defendants other than 3taps, 3taps lacks knowledge or information sufficient

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1  to form a belief as to the truth of the allegations in paragraph 14 and therefore denies the same.

2      15.    3taps admits the allegations in paragraph 15.

3                    **Complaint section titled, "THE PARTIES"**

4      16.    3taps lacks knowledge or information sufficient to form a belief as to the truth of the

5  allegations in paragraph 16 and therefore denies the same.

6      17.    3taps admits the allegations in paragraph 17.

7      18.    3taps lacks knowledge or information sufficient to form a belief as to the truth of the

8  allegations in paragraph 18 and therefore denies the same.

9      19.    3taps lacks knowledge or information sufficient to form a belief as to the truth of the

10  allegations in paragraph 19 and therefore denies the same.

11                        **Complaint section titled, "FACTS"**

12      20.    3taps admits that craigslist's origins were modest, and that it was at one point an

13  entirely free "community" site for the dissemination of information, including items for sale.  3taps

14  denies the insinuation that craigslist continues to function altruistically or as a public service, since

15  it is now, and has long been, a highly profitable site generating millions of dollars in annual income

16  for its principal (and few) stakeholders, via a plan and strategy to leverage its "free" services to

17  drive traffic to its "paid" services, a model that has resulted in its worth being estimated at billions

18  of dollars.  3taps denies the insinuation that all of this has served the ultimate community good,

19  since craigslist's market shares (in many of the markets it serves) have given it such dominance

20  that it has become a de facto common carrier for U.S. online marketplace exchange postings,

21  giving craigslist an ability to command and dictate terms and conditions in consumer classified

22  markets, control and obstruct innovation in those markets, and engage in anticompetitive behaviors

23  consistent with monopoly power.

24      21.    3taps admits that craigslist dominates the domestic markets it serves, that it has

25  become synonymous with online classified advertising in these markets, and that the "several

26  hundred million classified ads" it posts are drafted and created by users, not by craigslist.  3taps

27  denies that this is beneficial, since craigslist, an original innovator in migrating the newspaper

28  classified function to the Internet, used its subsequently obtained market dominance to obstruct and

7

1   counter any innovation it perceived to be disruptive to its profitability or its overwhelming

2   dominance in many, if not all, of the domestic markets it serves.

3        22.    3taps lacks knowledge or information sufficient to form a belief as to the truth of the

4   allegations in paragraph 22 and therefore denies the same.

5        23.    3taps denies the insinuation that craigslist's overwhelming market penetration

6   within the san Francisco Bay Area has worked to the advantage of either buyers or sellers, since

7   craigslist's dominant market position means that users must rely on a dated platform using

8   primitive user interfaces, all in unwitting support of craigslist's paid activities since craigslist relies

9   on its market dominance in "free" ads to drive traffic to its "paid" ads, all to its commercial benefit

10  and to the disadvantage of sellers and buyers.

11  **A.    Complaint section titled, "The craigslist Classified Ad Service."**

12       24.    3taps denies the allegations in paragraph 24, particularly the insinuation that

13  "localized" confers a benefit on the user when what it actually means is that once an ad is placed

14  by a user in a particular locality or under a particular classification, it can no longer be placed in

15  any other locality or classification and cannot be accessed or searched via selection of another

16  locality or function.  3taps further denies that "localized" in craigslist's case is anything but a

17  euphemism designed to obscure the fact that while ads are categorized and only searchable by

18  locality, there is no limitation on access by web-users anywhere in the world.  "Local" in this case

19  only means that all users, wherever located, must individually search each geographic location,

20  since craigslist lacks any interface allowing "power searches," which in this context would be

21  search function across regions and classified categories.

22       25.    3taps admits that craigslist has operated to create a "one-stop shop" for multiple

23  online consumer needs, but denies that that this market dominance has been anything but

24  pernicious, inhibiting innovation and acting as a funnel channeling traffic to craigslist's paid

25  services.  3taps further admits that craigslist is an online "classified ad" service, as that term has

26  been used for several hundred years without significant change.  In migrating the classified ad form

27  from print media to electronic media, craigslist simply copied methods of classification that were

28

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1    familiar and old, and not in any way ground-breaking.  It was their very familiarity that made

2    craigslist successful in the online form it now dominates.

3          26.    3taps admits the general description of the craigslist service, but denies the

4    insinuation that this structure operates in the best interest of a free and open market, since

5    craigslist's primitive user interfaces prevent, for example, all cross-location or cross-classification

6    searches, a limitation perpetuated and sustained by craigslist's attempts to control user-created

7    public posts once they reach the craigslist site.  As a dated and largely unchanged platform since its

8    mid-1990s inception, craigslist is an anomalous exception to universal information technology

9    innovations designed to enhance the user experience and fulfill user goals.  With modern

10   technology otherwise widely available, but with craigslist so dominant in many markets,

11   consumers and sellers are denied even the most basic types of linkages that could rapidly and

12   efficiently bring them together across regions and classifications.  Currently, someone who places

13   an ad must "guess" at the regional craigslist site most likely to result in a sale, since the seller and

14   buyer cannot conduct "power" searches across regions and classifications, but must search each

15   region and classification separately, a gross inefficiency that craigslist preserves through its market

16   dominance.

17         27.    3taps admits that craigslist deploys multiple functionalities that inhibit the user

18   experience and impede wide access to information, including prohibitions against placement and

19   locations of postings, all of which is exacerbated by the lack of a genuine cross-platform, cross-

20   classification "power" search function of the type and kind that proliferate in every conceivable

21   type of website.  3taps further admits that craigslist may design its site as it sees fit, but having

22   designed a site that instantly makes public what users wish to post, craigslist is not in a legal

23   position to complain about how others may re-present what craigslist users and craigslist itself have

24   chosen to make public.

25         28.    3taps admits that the user of the craigslist site selects ad classifications in precisely

26   the same way that classified ad users have done since the onset of classified advertising.

27         29.    3taps admits that craigslist threatens multiple steps to enforce its prohibition against

28   cross-location or cross-classification postings.

9

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

30.     3taps admits that craigslist contends that its user-interface facilitates free and unfettered contact between advertiser/user and potential purchaser/user, but denies that craigslist in fact does this, since 3taps is informed and on that basis believes that craigslist can and does intercept communications for anticompetitive reasons and does so without disclosing to either the sender or the intended recipient that an interception has occurred.

31.     3taps admits that craigslist has asserted rights of "exclusive" ownership of content drafted by advertisers, but denies that craigslist is legally empowered to do so, denies that the Terms of Use may be used as a tool to protect a dominant market position, and denies that the Terms of Use can legally or plausibly operate to prohibit use of public content placed on craigslist. 3taps is further informed and on that basis believes that craigslist has now withdrawn its requirement – which was only imposed *after* this suit was filed – that users make craigslist the "exclusive licensee" of posted content.  Nevertheless, craigslist has not since amended its complaint, or withdrawn other legal claims deployed for anticompetitive purposes.

32.     3 taps admits that craigslist has asserted rights or "exclusive" ownership of content drafted by advertisers (users), but denies that craigslist is legally entitled to do so.  3taps admits that craigslist employs Terms of Use ("TOU") containing multiple attempted restraints on use and access to the craigslist site, but denies that any merchants' TOU may be deployed as a tool to protect an anticompetitive position of market dominance.  Even assuming craigslist's TOU contain terms that are legally acceptable at least in part, 3taps denies engaging in any activity that violates them.  3taps lacks knowledge or information sufficient to form a belief as to the truth of the entirety of the allegations in paragraph 32 and therefore denies the same, particularly whether users and authors of content clearly understand that craigslist claims their work as its own, to their legal detriment should they wish to post elsewhere.

33.     3taps admits the allegations in paragraph 33 but denies the validity and applicability of craigslist's copyright notice.  3taps admits that craigslist takes steps to enforce its prohibition against cross-location or cross-classification postings.  3taps further admits that craigslist uses notices of copyright, but these amount to misuses, including its implicit and deceptive claims that it owns rights to user-created content.  craigslist recently eliminated its requirement that users grant

1  craigslist exclusive rights, and therefore, craigslist has no copyright interest in the content of the

2  user-posted ad.  It is not clear to which material the copyright notice is intended to refer.

3      34.    3taps admits that craigslist has attempted to register with various agencies, but

4  denies that these registrations are proper or valid, denies that craigslist may rely on statutes to

5  protect intellectual property it has not created and does not own, and denies that craigslist may rely

6  on statutes to claim the ancient classified ad format as its own.

7      35.    3taps admits that craigslist has used its market dominance in "classified ads" to

8  extract payment concessions from those who would properly use information posted by users

9  (advertisers), even though craigslist disclaims any legal responsibility for this content, while

10  simultaneously claiming the content as its own.  3taps denies that craigslist has designed or even

11  encouraged uses of its site other than on a conventional computer, and denies that craigslist's

12  licensing program is anything other than a further anticompetitive maneuver by craigslist to

13  preserve its overwhelming market dominance.

14  **B.    Complaint section titled, "craigslist Terms of Use."**

15      36.    3taps incorporates by reference into this paragraph each of the preceding paragraphs.

16  3taps denies that craigslist's TOU can be used to perpetuate and preserve craigslist's

17  anticompetitive and anti-innovative position of market dominance in markets craigslist serves, all

18  as further described and set forth in paragraph 13, *supra*, denies that craigslist's intellectual

19  property (whether copyright, trademark, or common law) is in any way contained in user-drafted

20  ads, denies that re-presenting information intended to be public and which becomes public can

21  thereafter be restrained or controlled by craigslist, and denies that 3taps' activity targeted by this

22  lawsuit violates any law.  While 3taps admits that the TOU purports to prohibit these activities,

23  craigslist itself makes the content of user postings available to select "intermediaries," such as

24  Google, Yahoo!, and Microsoft's Bing.

25      37.    3taps denies that craigslist's TOU can be used to perpetuate and preserve craigslist's

26  anticompetitive and anti-innovative position of market dominance in markets craigslist serves, all

27  as further described and set forth in paragraphs 13 and 36, *supra*, denies that craigslist's intellectual

28  property (whether copyright, trademark, or common law) is in any way contained in user-drafted

3TAPS' ANSWER AND COUNTERCLAIM                                CASE NO.: 12-CV-3816-CRB

1  ads, denies that re-presenting information intended to be public and which becomes public can

2  thereafter be restrained or controlled by craigslist, and denies that the 3taps' activity targeted by

3  this lawsuit violates any law.

4      38.    3taps incorporates paragraphs 13, 36, and 37, *supra*, by reference, and denies the

5  allegations in paragraph 38.

6      39.    3taps incorporates paragraphs 13, 36, 37, and 38, *supra*, by reference, and denies the

7  allegations in paragraph 39.

8      40.    3taps incorporates paragraphs 13, 36, 37, 38, and 39, *supra*, by reference, and denies

9  the allegations in paragraph 40.

10 **C.    Complaint section titled, "The craigslist Copyrights."**

11     41.    3taps admits that craigslist features the elements listed in paragraph 41 but denies

12 craigslist's characterization of them as "original" or "uniquely distinctive."  Further, 3taps denies

13 that anything alleged by craigslist in this or any paragraph creates in user-created ads the

14 characteristics necessary for protection under federal, state, or common law copyright or other

15 law(s), denies that the craigslist online layout is original since it draws on a concept ("classified

16 ads") in wide use for centuries, and denies that "registration," "log[ging]-in," "posting," ad

17 categorization, and "simple and uncluttered" layouts are either original to craigslist or amount to

18 legally-protectable intellectual property.

19     42.    3taps denies the originality of the craigslist website, and denies that "simplicity" or

20 "clarity" describe all aspects of the user's experience.  3taps admits that craigslist has achieved a

21 position of market dominance, which it now uses to obstruct the free dissemination of factual

22 information prepared by others for placement on its site.

23     43.    3taps denies that craigslist has standing to assert, as its own, facts in ads drafted by

24 individual users who own or control the product or service on sale, and denies that craigslist may

25 assert rights of ownership of these sellers' facts, particularly after the seller has drafted the ad and

26 launched it into the public domain via craigslist.  3taps admits that user-generated postings may

27 also include photographs, but denies each user-generated posting is itself an "original work of

28 creative expression."

1    44.    3taps admits that craigslist makes or has made the grandiose ownership claims

2    contained in this paragraph, but denies that craigslist is entitled to assert any of them.  3taps

3    specifically denies that craigslist either owns or has exclusive rights to all right, title, and interest,

4    including all copyrights, in and to user-generated postings.  craigslist recently eliminated the

5    requirement that users grant craigslist exclusive rights, and therefore, craigslist has no copyright

6    interest in the content of user-posted ads.  Moreover, none of craigslist's U.S. copyright

7    registrations list "third-party text" as an element for the basis of the copyright claim.  craigslist

8    included "third-party text" as pre-existing material, thereby differentiating third-party text from its

9    own "text."  Thus, craigslist's copyright registrations do not cover the "third-party text" from user-

10   generated ads.

11   45.    3taps admits that craigslist is the listed copyright claimant of the U.S. copyright

12   registrations listed in paragraph 45, but denies that these are based on a reasonable and good faith

13   belief on the part of craigslist that (1) facts (2) regarding goods or services (3) owned by others

14   who (4) write their own descriptions for purposes of (5) sale by them to the public (6) via a public

15   website, may be copyrighted.  Nor is it precisely clear which, if any, of these elements are intended

16   to be captured by the copyright filings.

17   46.    3taps admits that U.S. copyright registration TX0007547907 lists craigslist as the

18   copyright claimant and has a date of publication of July 19, 2012.  3taps lacks knowledge or

19   information sufficient to form a belief as to the truth of the remaining allegations with respect to

20   other applications in paragraph 46, and therefore, denies the same.

21   47.    3taps lacks knowledge or information sufficient to form a belief as to the truth of the

22   allegations in paragraph 47 and therefore denies the same.

23   **D.    Complaint section titled, "The craigslist Trademarks."**

24   48.    3taps admits that craigslist is the listed registrant of the U.S. trademark registrations

25   listed in paragraph 48 and that the registrations purport to cover the goods or services listed in

26   paragraph 48.  3taps lacks knowledge or information sufficient to form a belief as to the truth of the

27   allegations in the last sentence of paragraph 48, and therefore, denies the same.

28

13

49.     3taps admits that the U.S. trademark registrations listed in paragraph 48 note 19950701 as the date of first use in commerce.  3taps lacks knowledge or information sufficient to form a belief as to whether CRAIGSLIST was in fact first used in commerce in 1995, and therefore, denies the same.  3taps lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 and therefore denies the same.

50.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and therefore denies the same.

51.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and therefore denies the same.

52.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 and therefore denies the same.

53.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 and therefore denies the same.

**E.     Complaint section titled, "Defendants' Unlawful Activities."**

      **a.     Complaint section titled, "3taps."**

54.     3taps denies that it is "copying" any of craigslist's protected content.  3taps admits that it provides access to user-generated data that craigslist users have made public, doing so as sellers of their own goods and services.  3taps denies that it is providing access to any data that craigslist owns or to which craigslist has exclusive rights.  3taps admits that it dedicates considerable attention to craigslist since craigslist has such a position of market dominance in the online classified advertising sector.

55.     3taps admits that it has previously provided access to publicly available data from a variety of sources, but 3taps denies that it is "copying" any content that craigslist may legitimately protect as its intellectual property.  3taps admits that it provides access to user-generated data that craigslist has made publicly available.  3taps denies that it is providing access to any data that craigslist owns or to which craigslist has exclusive rights.  3taps also denies that it has "copied" the protected data of any other company.

56.     3taps admits that it provides access only to user-generated data that craigslist has

14

1  made publicly available.  3taps denies the remaining allegations in paragraph 56.

2      57.      3taps denies that it is "copying" any content craigslist may lawfully claim as its own.

3  3taps admits that it provides access to user-generated data that the user through craigslist has made

4  publicly available.  3taps denies that it is providing access to any data that craigslist may lawfully

5  claim as its own or to which craigslist has exclusive legal rights.  3taps denies that it is accessing

6  craigslist's website and "scraping" content.

7      58.      3taps admits that it provides an API to access user-generated data that craigslist has

8  made publicly available.  3taps denies that craigslist has any exclusive rights over user-generated

9  content.  craigslist recently eliminated its requirement that users grant craigslist exclusive rights.

10  Having offered a "free" platform for the placement of user-created classified ads intended to be

11  read by anyone with access to the web, craigslist has no legal basis on which to claim control over

12  the user's ad once it is placed for the world to read.  As previously described, multiple data

13  aggregators and general search engines continuously use, harvest, and re-present on the internet the

14  facts contained in craigslist users' ads.  3taps denies that craigslist has any legal basis on which to

15  control or obstruct further dissemination of the facts contained in these ads.

16      59.      3taps admits that it created craiggers.com and provides access to publicly available

17  user-generated data, all as previously described throughout this pleading, but denies that it

18  replicated or intended to replicate the entire craigslist website.  The craiggers.com site is not

19  currently operational.

20      60.      3taps admits that it created craiggers.com and provides access to publicly available

21  user-generated data, but denies that craigslist has any exclusive or other legal rights over user-

22  generated content.  craigslist recently eliminated its requirement that users grant craigslist

23  exclusive rights.  Moreover, none of craigslist's U.S. copyright registrations list "third-party text"

24  as an element of the copyright claim.  craigslist included "third-party text" as pre-existing material

25  only to differentiate it from its own "text."  Thus, craigslist's copyright registrations do not cover

26  "third-party text" from user-generated ads.  3taps also denies that craiggers.com depicts posts in a

27  format "virtually identical" to that of craigslist's.  craigslist formerly depicted user-supplied ad

28  pictures in a basic four-picture panel with each picture being an equal size.  It was 3taps that

1   introduced the concept of a large viewer for one picture and the ability to scroll through individual

2   pictures.  craigslist copied this technique from 3taps.

3       61.    3taps admits that it places a notice on postings on craiggers.com that the content is

4   not copyrighted and that the postings pages state "powered by 3taps."  3taps denies that its notice is

5   "blithe and false" and denies that content was "misappropriated from craigslist."  3taps denies that

6   craigslist has any exclusive rights over user-generated content. craigslist recently eliminated the

7   requirement that users grant craigslist exclusive rights.  Moreover, none of craigslist's U.S.

8   copyright registrations list "third-party text" as an element for the basis of the copyright claim.

9   craigslist included "third-party text" as pre-existing material, thereby differentiating third-party text

10  from its own "text."  Thus, craigslist's copyright registrations do not cover the "third-party text"

11  from user-generated ads.

12      62.    3taps denies that it "copies key design elements of the craigslist website."  The basic

13  listing and organization of online postings based on factual descriptions of the categories is not a

14  key design element.  Basic word-processing formats such as columns are not key design elements.

15      63.    3taps admits that it provided a "craiggers" mobile phone application.  3taps denies

16  that craigslist has any exclusive rights over user-generated content.  craigslist recently eliminated

17  the requirement that users grant craigslist exclusive rights.  Moreover, none of craigslist's U.S.

18  copyright registrations list "third-party text" as an element for the basis of the copyright claim.

19  craigslist included "third-party text" as pre-existing material, thereby differentiating third-party text

20  from its own "text."  Thus, craigslist's copyright registrations do not cover the "third-party text"

21  from user-generated ads.

22      64.    3taps denies the allegations in paragraph 64.

23      65.    3taps admits that it used the word "craigslist" to distinguish its own product and

24  services from those of craigslist, including offering craigslist an opportunity for direct input into

25  site wording, an offer craigslist declined.  3taps denies the remaining allegations in paragraph 65.

26      66.    3taps admits that it used the word "craigslist" to distinguish its own product and

27  services from those of craigslist.  3taps denies the remaining allegations in paragraph 66.

28      67.    3taps admits that it used the word "craigslist" to distinguish its own product and

16

1  services from those of craigslist.  3taps denies the remaining allegations in paragraph 67.

2  68.  3taps admits that it used the word "craigslist" to distinguish its own product and

3  services from those of craigslist.  3taps denies the remaining allegations in paragraph 68.  3taps

4  also denies the underlying factual implication that it has made any unlawful use of any of

5  craigslist's intellectual property, or that craigslist must "consent" prior to use of and access to user-

6  created factual content posted on craigslist for the purpose of publicizing it to the world.

7  69.  3taps admits that it received a communication from craigslist to which 3taps

8  responded, striking a conciliatory tone and agreeing to remove or adjust anything craigslist

9  identified as confusing any 3taps site with its own site.  craigslist did not respond.  3taps denies that

10  it has conducted any unlawful activities.

11  **b.  Complaint section titled, "PadMapper."**

12  70.  3taps admits that PadMapper is a direct competitor to craigslist's real estate listing

13  services and that PadMapper provides searchable rental listings in cities in the United States and

14  United Kingdom, but denies the allegation that the vast majority of PadMapper's content is copied

15  directly from craigslist to the extent it suggests that 3taps violates craigslist's Terms of Use,

16  infringes any copyright protection asserted by craigslist, or violates any other law.

17  71.  3taps admits that PadMapper offers many helpful features that are unavailable on

18  craigslist's website.  3taps otherwise lacks knowledge or information sufficient to form a belief as

19  to the truth of the allegations in paragraph 71 and therefore denies the same.

20  72.  3taps lacks knowledge or information sufficient to form a belief as to the truth of the

21  allegations in paragraph 72 and therefore denies the same.

22  73.  3taps admits that PadMapper.com site traffic plummeted drastically when craigslist

23  content was removed from the site.  3taps otherwise lacks knowledge or information sufficient to

24  form a belief as to the truth of the allegations in paragraph 73 and therefore denies the same.

25  74.  3taps lacks knowledge or information sufficient to form a belief as to the truth of the

26  allegations in paragraph 74 and therefore denies the same.

27  75.  3taps denies that it has misappropriated craigslist content.  3taps otherwise lacks

28  knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

17

1  75 and therefore denies the same.

2       76.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

3  allegations in paragraph 76 and therefore denies the same.

4       77.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

5  allegations in paragraph 77 and therefore denies the same.

6       78.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

7  allegations in paragraph 78 and therefore denies the same.

8       79.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

9  allegations in paragraph 79 and therefore denies the same.

10      80.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

11 allegations in paragraph 80 and therefore denies the same.

12      81.     3taps lacks knowledge or information sufficient to form a belief as to the truth of the

13 allegations in paragraph 81 and therefore denies the same.

14      **c.     Complaint section titled, "Other 3taps Subscribers."**

15      82.     3taps admits that the number of entities using craigslist data indexed by 3taps was

16 growing at the time craigslist filed this lawsuit and that this number would be growing even more

17 rapidly absent craigslist's anticompetitive scheme described below.  3taps denies the allegations in

18 paragraph 82 to the extent they suggest that 3taps violates craigslist's Terms of Use, infringes any

19 copyright protection asserted by craigslist, or violates any other law.

20      83.     3taps admits that SnapStore, HuntSmartly, jaxed.com, rentvalet.us, and

21 searchtempest.com use craigslist data indexed by 3taps.  3taps denies the allegations in paragraph

22 82 to the extent they suggest that 3taps violates craigslist's Terms of Use, infringes any copyright

23 protection asserted by craigslist, or violates any other law.  3taps otherwise lacks knowledge or

24 information sufficient to form a belief as to the truth of the allegations in paragraph 82 and

25 therefore denies the same.

26      84.     3taps denies the allegations in paragraph 84.

27 /////

28 /////

18

3TAPS' ANSWER AND COUNTERCLAIM                                         CASE NO.: 12-CV-3816-CRB

1    <u>**FIRST CLAIM FOR RELIEF**</u>

2    (Copyright Infringement 17 U.S.C. § 101)

3    85.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

4    as if fully set forth herein.

5    86.    3taps denies the allegations in paragraph 86.

6    87.    3taps denies the allegations in paragraph 87.

7    88.    3taps denies the allegations in paragraph 88.

8    89.    3taps denies the allegations in paragraph 89.

9    90.    3taps denies the allegations in paragraph 90.

10    91.    3taps denies the allegations in paragraph 91.

11    92.    3taps denies the allegations in paragraph 92.

12    93.    3taps denies the allegations in paragraph 93.

13    94.    3taps denies the allegations in paragraph 94.

14    95.    3taps denies the allegations in paragraph 95.

15    <u>**SECOND CLAIM FOR RELIEF**</u>

16    (Contributory Copyright Infringement)

17    96.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

18    as if fully set forth herein.

19    97.    3taps denies the allegations in paragraph 97.

20    98.    3taps denies the allegations in paragraph 98.

21    99.    3taps denies the allegations in paragraph 99.

22    100.    3taps denies the allegations in paragraph 100.

23    101.    3taps denies the allegations in paragraph 101.

24    102.    3taps denies the allegations in paragraph 102.

25    103.    3taps denies the allegations in paragraph 103.

26    104.    3taps denies the allegations in paragraph 104.

27    <u>**THIRD CLAIM FOR RELIEF**</u>

28    (Breach of Contract)

19

1  105.   3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

2  as if fully set forth herein.

3  106.   3taps denies the allegations in paragraph 106.

4  107.   3taps denies the allegations in paragraph 107.

5  108.   3taps denies the allegations in paragraph 108.

6  109.   3taps denies the allegations in paragraph 109.

7  110.   3taps denies the allegations in paragraph 110.

8  111.   3taps denies the allegations in paragraph 111.

9  112.   3taps denies the allegations in paragraph 112.

10  113.   3taps denies the allegations in paragraph 113.

11  114.   3taps denies the allegations in paragraph 114.

12  115.   3taps denies the allegations in paragraph 115.

13  116.   3taps denies the allegations in paragraph 116.

14  117.   3taps denies the allegations in paragraph 117.

15  **FOURTH CLAIM FOR RELIEF**

16  (Federal Trademark Infringement 15 U.S.C. § 1114)

17  118.   3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

18  as if fully set forth herein.

19  119.   3taps denies the allegations in paragraph 119.

20  120.   3taps denies the allegations in paragraph 120.

21  121.   3taps denies the allegations in paragraph 121.

22  122.   3taps denies the allegations in paragraph 122.

23  123.   3taps denies the allegations in paragraph 123.

24  124.   3taps denies the allegations in paragraph 124.

25  **FIFTH CLAIM FOR RELIEF**

26  (Federal False Designation of Origin 15 U.S.C. § 1125(a))

27  125.   3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

28  as if fully set forth herein.

20

1    126.    3taps denies the allegations in paragraph 126.

2    127.    3taps denies the allegations in paragraph 127.

3    128.    3taps denies the allegations in paragraph 128.

4    129.    3taps denies the allegations in paragraph 129.

5    130.    3taps denies the allegations in paragraph 130.

6    131.    3taps denies the allegations in paragraph 131.

7                    **SIXTH CLAIM FOR RELIEF**

8            (Federal Dilution of a Famous Mark 15 U.S.C. § 1125(c))

9    132.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

10   as if fully set forth herein.

11   133.    3taps denies the allegations in paragraph 133.

12   134.    3taps denies the allegations in paragraph 134.

13   135.    3taps denies the allegations in paragraph 135.

14   136.    3taps denies the allegations in paragraph 136.

15   137.    3taps denies the allegations in paragraph 137.

16   138.    3taps denies the allegations in paragraph 138.

17   139.    3taps denies the allegations in paragraph 139.

18   140.    3taps denies the allegations in paragraph 140.

19                   **SEVENTH CLAIM FOR RELIEF**

20      (Federal Cyberpiracy Prevention Infringement 15 U.S.C. § 1125(d))

21   141.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs

22   as if fully set forth herein.

23   142.    3taps denies the allegations in paragraph 142.

24   143.    3taps denies the allegations in paragraph 143.

25   144.    3taps denies the allegations in paragraph 144.

26   145.    3taps denies the allegations in paragraph 145.

27   146.    3taps denies the allegations in paragraph 146.

28   147.    3taps denies the allegations in paragraph 147.

3TAPS' ANSWER AND COUNTERCLAIM                    CASE NO.: 12-CV-3816-CRB

**EIGHTH CLAIM FOR RELIEF**

(California Trademark Infringement Cal. Bus. & Prof. Code § 14245)

148.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs as if fully set forth herein.

149.    3taps denies the allegations in paragraph 149.

150.    3taps denies the allegations in paragraph 150.

151.    3taps denies the allegations in paragraph 151.

**NINTH CLAIM FOR RELIEF**

(Common Law Trademark Infringement)

152.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs as if fully set forth herein.

153.    3taps denies the allegations in paragraph 153.

154.    3taps denies the allegations in paragraph 154.

155.    3taps denies the allegations in paragraph 155.

156.    3taps denies the allegations in paragraph 156.

**TENTH CLAIM FOR RELIEF**

(California Unfair Competition Cal. Bus. & Prof. Code § 17200)

157.    3taps restates, realleges, and reiterates its responses in all the preceding paragraphs as if fully set forth herein.

158.    3taps denies the allegations in paragraph 158.

159.    3taps denies the allegations in paragraph 159.

160.    3taps denies the allegations in paragraph 160.

**AFFIRMATIVE AND OTHER DEFENSES**

First Defense

161.    The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

Second Defense

162.    The Complaint, in whole or in part, is precluded by the doctrines of laches, waiver,

22

1   and estoppel.

2                                  <u>Third Defense</u>

3         163.   The Complaint, in whole or in part, is barred by the doctrine of unclean hands.

4                                  <u>Fourth Defense</u>

5         164.   The Complaint fails, in whole or in part, because any alleged use of craigslist's

6   allegedly copyrighted materials constitutes fair use.

7                                  <u>Fifth Defense</u>

8         165.   The Complaint fails, in whole or in part, because any alleged use of craigslist's

9   allegedly copyrighted materials is de minimis.

10                                 <u>Sixth Defense</u>

11        166.   The Complaint fails, in whole or in part, because the material allegedly copied is not

12  owned by or registered to craigslist.

13                                 <u>Seventh Defense</u>

14        167.   The Complaint fails, in whole or in part, because craigslist lacks standing to bring

15  any claim of copyright infringement.

16                                 <u>Eighth Defense</u>

17        168.   The Complaint fails, in whole or in part, because works by 3taps are not

18  substantially similar to any work allegedly owned by craigslist.

19                                 <u>Ninth Defense</u>

20        169.   The Complaint fails, in whole or in part, because the copyright registrations are

21  fraudulent, improper, or invalid.

22                                 <u>Tenth Defense</u>

23        170.   The Complaint fails, in whole or in part, because craigslist licensed, explicitly or

24  implicitly, the alleged copyrighted works.

25                                 <u>Eleventh Defense</u>

26        171.   The Complaint fails, in whole or in part, because any alleged use of craigslist's

27  trademarks constitutes fair use.

28

Twelfth Defense

172.   The Complaint fails, in whole or in part, because any alleged use of craigslist's trademarks is not likely to cause dilution or impair the distinctiveness of any of craigslist's marks.

Thirteenth Defense

173.   The Complaint fails, in whole or in part, because any alleged use of craigslist's trademarks is not likely to cause confusion, deception, or mistake as to association, connection, sponsorship, endorsement, or approval of craigslist.

Fourteenth Defense

174.   The Complaint fails, in whole or in part, because the trademark registrations are fraudulent, improper, or invalid.

Fifteenth Defense

175.   The Complaint fails, in whole or in part, because the TOU are unconscionable.

Sixteenth Defense

176.   The Complaint fails, in whole or in part, because 3taps did not breach the TOU.

Seventeenth Defense

The Complaint fails, in whole or in part, because 3taps is not a party to the TOU.

Eighteenth Defense

177.   The Complaint fails, in whole or in part, because the copyright registrations and all derivative claims of infringement, separately and collectively, constitute misuses of the copyrights and  misapplication of the law and statutes on which they are ostensibly based.  Included in the misuse are the following:  craigslist's registrations are designed and intended to further an exclusive or limited monopoly that was neither granted by the copyright office nor permitted by law; craigslist cites "copyright law" as a basis on which to make baseless threats, including in frivolous and anticompetitive cease and desist letters; craigslist claims ownership of work created by others that is already in the public domain; and craigslist otherwise deploys its come-lately copyright registrations as part of a pattern and practice of inhibiting competition and impeding innovation.

**WHEREFORE,** 3taps requests relief as follows:

24

1.     craigslist takes nothing by this action,

2.     craigslist's Complaint be dismissed with prejudice,

3.     3taps be awarded costs and attorneys' fees under 17 U.S.C. § 505, and

4.     3taps recover such other relief as the Court may deem appropriate.

## COUNTERCLAIMS

Defendant 3taps, Inc. ("3taps"), by and through its undersigned counsel, files these Counterclaims against craigslist, Inc. ("craigslist"), and alleges on personal knowledge as to its own acts and on information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.     This is an antitrust, unfair competition, and interference with economic advantage action against craigslist, a longstanding monopolist of certain markets for online classified advertising ("online classified ads").  craigslist has an overwhelming share in numerous online classified ad markets and improperly maintains those monopoly shares through a broad-based, anticompetitive scheme described below.

2.     3taps is *not* alleging that craigslist *acquired* its widespread monopoly power improperly—far from it; craigslist should be applauded for bringing online classifieds into the modern age and achieving its initial dominance over various U.S. markets for the "onboarding" (i.e., the process of inputting and uploading factual content on the internet) of user-generated classified ads by those seeking a personal exchange transaction for various goods and services, including apartment rentals, jobs, personal services, general goods, and other sales.

3.     Nor does 3taps complain about the fact that craigslist's dominance in the onboarding of user-generated online classified ads enabled it to naturally acquire monopoly power over two distinct but related markets:  the market for search-engine indexing of publicly available factual content contained in those online classified ads so that these ads can be searched (which is precisely what 3taps is doing, just much better than craigslist); and the downstream "search" marketplace itself, which, in addition to craigslist, includes specialized, exchange-focused search products and tools that make it easier for consumers to find and execute the exchanges they desire.

4.     While craigslist naturally acquired monopoly power in these marketplaces, there are

25

1  numerous competitors—with better "mousetraps" —attempting or poised to meet the massive

2  consumer demand for the most innovative and effective ways to find and execute exchange

3  transactions.

4      5.      What 3taps *is* complaining about is how craigslist has *maintained* (and continues to

5  maintain) its monopoly power in these three related markets.  Certainly, craigslist has not

6  maintained this power by competing on the merits.  Indeed, for years, craigslist has espoused the

7  classic principles of a monopolist that believed it did not need to compete:  a "strategy" of

8  "unbranding," "demonetizing," and "uncompeting" —the epitome of a lethargic monopolist.  And

9  why not?  As an unchallenged monopolist across these various markets, craigslist has generated

10  revenues somewhere between $100-$300 million per year, and that's without sinking any

11  significant costs into research and development or innovation.

12      6.      Eventually, of course, consumers demanded more, especially as the internet evolved

13  and in light of innovation in other exchange product spaces —most notably the airline bookings

14  marketplace—where websites such as Kayak.com ("Kayak") arose to provide  more efficient, user-

15  friendly exchanges based on a cache of publicly available data that was indexed and organized by

16  another innovator, ITA Software, Inc. ("ITA").

17      7.      By the early-2000s, consumers of online classified ads were growing increasingly

18  frustrated with the antiquated search and execution capabilities of the craigslist website.  Yet their

19  hands were tied:  because craigslist had built up such massive volume in achieving its monopoly

20  status, a user's best chance to obtain a successful classified ad exchange remained by posting (or

21  searching) on craigslist, notwithstanding attempts by others to enter these marketplaces.

22      8.      In the face of this massive, unmet consumer demand, 3taps and others rose to the

23  challenge.  Using publicly available data accessed through general search engines, 3taps spent

24  several years (and millions of dollars) creating a significantly more robust index and categorization

25  of user-generated classified ads onboarded onto craigslist and other classified ad websites.  In turn,

26  much like ITA in the airline bookings marketplace, 3taps makes that database available to

27  exchange-specific search developers (like Kayak in the airline industry) that are ready, willing, and

28  able to fill the consumer-demand void left by craigslist.  Indeed, 3taps developed its own

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1  exchange-related search engine— "craiggers," which searches craigslist data better than craigslist's

2  search function—as well as an even more comprehensive search engine, called JeBoom, which

3  searches across multiple classified ad websites.

4       9.     3taps created its index and search engines without accessing craigslist's servers—

5  thus engaging only in behavior that craigslist's founder Craig Newman has condoned publicly.  In

6  July 2010, on the question and answer site quora.com, Mr. Newmark responded to the question:

7  "Why hasn't anyone built any products on top of craigslist data?  Is it a matter of craigslist policy

8  not letting people use the data?"  Mr. Newmark wrote:  "Actually, we take issue with only services

9  which consume a lot of bandwidth, it's that simple."  Because 3taps does not access craigslist's

10 website to obtain data, it does not consume bandwidth on the site.

11      10.    Indeed, craigslist is well aware that 3taps is not consuming its bandwidth.  On

12 March 7, 2012, craigslist sent 3taps a cease & desist letter accusing 3taps of violating craigslist's

13 Terms of Use by "scraping" content from the craigslist website, and thereby consuming craigslist's

14 bandwidth.  3taps responded with a letter dated March 13, 2012, where it explained that it obtains

15 data posted on craigslist without visiting craigslist's website, and therefore, without consuming

16 craigslist's bandwidth.

17      11.    By this time, consumers were in fact desperate to see innovation in the online

18 classified ad exchange markets, and developers were poised to meet this demand.  For example,

19 AirBnB is an online service that matches people seeking vacation rentals and other short-term

20 accommodations with those who have rooms to rent.  AirBnB offers enhanced search and

21 interaction capabilities that augment a user's experience, such as sorting by popularity, enabling

22 saved "wish lists," and offering payment tools.  On July 26, 2011, the Wall Street Journal reported

23 that AirBnB had raised a $112 million round of financing, valuing the company at $1.3 billion.

24      12.    Similarly, PadMapper is an online service that, using data from 3taps, aggregates

25 apartment postings from multiple websites online and offers improved search capabilities, like a

26 map that displays postings, sorting by additional categories, and email alerts for new listings that fit

27 a user's preferences.

28      13.    Likewise, Lovely, also using 3taps' index, offers an online service for apartment

1    searches that includes a map and alerts.  Each of these services enhances search and interaction

2    capabilities for online classified ads in direct competition with craigslist's antiquated capabilities.

3    Indeed, in nearly every online classified ad product space, search innovators have been or are

4    poised to use the pre-staged index created by 3taps to compete against craigslist's search and

5    interaction capabilities and, where successful, in onboarding as well.

6    　　　　14.    Notably, the specialized search engines that are powered by 3taps actually direct

7    traffic *to*, rather than away from, craigslist.  When a user searches for online classified ads on

8    craiggers or PadMapper and finds information about an ad that was originally onboarded onto

9    craigslist, the user then is redirected back to craigslist to complete the exchange, thus driving

10   business back to craigslist.  As a result, these specialized search engines actually benefit craigslist's

11   business in the short run.

12   　　　　15.    craigslist's response to this necessary and predictable outburst of innovation was not

13   what one would expect from a company that purportedly prides itself on being a good citizen and a

14   supporter of the unfettered use of publicly available information for the benefit of consumers.  Nor

15   is it the behavior one would expect from a company that actually benefits from increased traffic as

16   a result of 3taps' innovation in the indexing market for online classified ads.  Instead, craigslist

17   recognized that it was too late for it to compete on the merits and innovate in the markets for

18   indexing and search—it knows that innovators in indexing and search can offer more attractive

19   products than craigslist in those markets and can rely on those superior offerings to challenge

20   craigslist's dominance in these markets, and eventually in the onboarding market as well.  In turn,

21   craigslist devised and implemented a multifaceted anticompetitive scheme to stop these nascent

22   competitors in their tracks.  While craigslist may have been too late to thwart the rapid growth of

23   AirBnB in the temporary housing rental space, it certainly was not going to tolerate 3taps

24   becoming an indexing and categorization base from which other execution-focused specialized

25   search engines could displace craigslist's monopoly lock over other product spaces.

26   　　　　16.    The scheme, which is straightforward but effective, is comprised of four primary

27   facets:

28

3TAPS' ANSWER AND COUNTERCLAIM                                        CASE NO.: 12-CV-3816-CRB

- Serial Sham Cease &Desist Letters and Sham Lawsuits

craigslist has targeted 3taps and innovating websites that rely on data indexed by 3taps with sham cease and desist letters and sham lawsuits – including this lawsuit against 3taps and PadMapper – alleging, *inter alia*, copyright infringement, breach of craigslist's Terms of Use, and trademark infringement. craigslist's claims are objectively baseless. First, the data indexed by 3taps (and, in turn, used by its partners) is factual material not subject to copyright protection. Moreover, to the extent these user postings are entitled to copyright protection, craigslist does not have standing to enforce these copyrights because it is neither the owner nor exclusive licensee of this content. (While craigslist imposed a requirement that users make craigslist the exclusive licensee of all newly-posted content shortly *after* it filed suit against 3taps, craigslist abandoned this condition less than two weeks later, in the face of user outrage and criticism by web community and legal forums.) Second, 3taps is not subject to craigslist's Terms of Use because it does not access craigslist's website to obtain craigslist data. Rather, because craigslist makes its content available to general search engines (e.g., Google, Bing, etc.), this data already is in the public domain. 3taps simply sourced the data from caches maintained by such general search engines, a fact that craigslist already knew when it filed suit. Third, craigslist's trademark infringement suit against 3taps is equally baseless, as 3taps' craiggers' site only invokes the "craigslist" name to describe the original source of onboarded data, rather than in any way that could create customer confusion. Any reasonable litigant in craigslist's position would know that its claims against 3taps and its partners lack merit. Indeed, as discussed in more detail below, craigslist's conduct after filing this suit against 3taps belies any contention that craigslist's claims have a good faith basis. Nevertheless, even with knowledge that its claims utterly lack merit, craigslist has threatened and filed lawsuits as part of a policy intended to intimidate innovators and force them to cease competing with craigslist.

- Copyright Misuse

craigslist purports to enforce copyrights on user content posted on its website against 3taps and innovators like PadMapper that rely on 3taps' indexed content. In the process, craigslist has engaged in copyright misuse because: (1) as described above, the content that craigslist claims is protected by these copyrights is factual data that cannot be subject to any copyright protection; and (2) craigslist is not the owner or exclusive licensee of users' original postings, and therefore, lacks standing to enforce any copyrights associated with these postings.

- Improperly Restrictive Terms of Use on craigslist's Users

craigslist also has imposed unduly restrictive Terms of Use on its users that are intended to restrain competition. craigslist's Terms of Use prohibit making "available any program, application or service" that enables

3TAPS' ANSWER AND COUNTERCLAIM                                   CASE NO.: 12-CV-3816-CRB

"interoperation with craigslist."  There is no legitimate business justification for this provision.  Rather, this term is a blatant effort to prevent the emergence of any competitor to craigslist.

- "Ghosting" and Other Dirty Tricks

"Ghosting" is craigslist's well-documented practice of refusing to upload posts or transmit messages that it believes are linked to its competitors, while falsely informing users who upload posts to craigslist from third party competitor sites that such content actually has been posted or transmitted for other users to view.  In fact, while the user receives a confirmation and can view his or her own post, the post is "ghosted" from anyone else on craigslist.  craigslist engages in "ghosting" under the guise of targeting spam; while minimizing spam is a legitimate goal, in reality, craigslist is ghosting to target and prevent craigslist competitors from gaining traction with users.  In addition, purely for anticompetitive purposes, craigslist recently has demanded that Google cease maintaining caches of craigslist data.  Importantly, craigslist still allows Google and other general search engines to access its site and index its data.  craigslist only seeks to eliminate caches (i.e., records of the indexed content) because it knows that 3taps has sourced craigslist content from these caches.  In fact, as part of its overall anticompetitive scheme, craigslist's instruction to Google to cease caching occurred within forty-eight hours of the removal of the exclusive license requirement from its Terms of Use and shortly after craigslist filed suit against 3taps, thus confirming the specific anticompetitive intent underlying craigslist's actions.  Again, there is no legitimate business rationale for craigslist's behavior.  Rather, this conduct, like "ghosting," is just another "dirty trick" intended to restrain competition.

17.    Through this multifaceted scheme, craigslist has sucked the oxygen out of the innovation demanded by consumers and will continue to do so unless enjoined by this Court.  Moreover, craigslist already has caused 3taps significant injury—in the form of millions of dollars of lost sunk cost investments and lost opportunities with its partners.  Unless enjoined, the harm to 3taps caused by craigslist's anticompetitive scheme could be in the hundreds of millions—if not billions—of dollars, in addition to the harm it has already suffered.

## JURISDICTION & VENUE

18.    This court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, and 1337, because this counterclaim is filed under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover damages caused by, and to secure injunctive relief against craigslist for it past and continuing violations of Section 2 of the Sherman Act (15 U.S.C. § 2), as alleged

1  herein.

2      19.    This court has supplemental jurisdiction over the remaining claims under 28 U.S.C.

3  § 1367.

4      20.    The Counterclaims arise out of the same matters and transactions described in the

5  Complaint, and this Court has jurisdiction over the matters and transactions that are the subject of

6  these Counterclaims pursuant to Federal Rule of Civil Procedure 13.

7      21.    Venue is proper in this judicial district under 28 U.S.C. § 1391.  craigslist is

8  headquartered in this district, and a substantial part of the events and injury giving rise to the

9  claims set forth herein occurred in this district.  Upon information and belief, craigslist has engaged

10  in anticompetitive behavior in this district, as alleged herein.

11                                  **THE PARTIES**

12      22.    Counter-Plaintiff 3taps, Inc. is a Delaware corporation with its principal place of

13  business in San Francisco, California.  3taps is a platform for developers.  It collects raw data from

14  the internet and re-indexes that data.  3taps then provides free application program interfaces

15  ("APIs") to innovators for use in their development of advanced, specialized search engine

16  products.

17      23.    3taps created the website craiggers, which offers a specialized search engine for

18  craigslist data indexed by 3taps.

19      24.    3taps also created the website JeBoom, which uses data indexed by 3taps to offer a

20  specialized search engine for classified ad content across multiple onboarding sites.

21      25.    Upon information and belief, Counter-Defendant craigslist is an online classified

22  advertising company with its principal place of business in San Francisco, California.

23                              **TRADE AND COMMERCE**

24      26.    The trade or commerce relevant to the Counterclaims is the online classified ad

25  industry in local markets in the United States, as described in detail below.  This industry includes

26  multiple relevant markets in which competition is restrained, including markets for (a) onboarding

27  of classified ad content, (b) indexing of classified ad content, and (c) searching of indexed

28  classified ad content (collectively, the "Relevant Markets").

31

27.     Through the activities alleged in these counterclaims, craigslist has improperly maintained its monopoly power in various online classified ad product markets and submarkets in local geographic markets throughout the United States.

28.     craigslist's anticompetitive scheme already has caused injury to competition in these markets and to 3taps's business and property (including 3taps' websites craiggers and JeBoom), and unless enjoined, will continue to do so.

I.     **The Relevant Antitrust Product Markets**

A.     **The Market for Onboarding of Online Classified Ad Content**

29.     There is a relevant product market for the "onboarding" of online classified ad content.  Onboarding refers to the creation, posting, editing, and deletion of users' online classified ads.  After a user's ad is posted online, onboarding exchanges then curate and moderate the posts to thwart spam and inappropriate user content.

30.     The outer boundaries of the relevant product market for onboarding are determined by the reasonable interchangeability of use or the cross-elasticity of demand between onboarding of online classified ad content and potential substitutes for onboarding.

31.     Onboarding of classified ad content is not reasonably interchangeable with onboarding of other forms of online advertising—like search, display/banner, digital video, mobile, or rich media.  The target audience and business models for other forms of online advertising distinguish general online advertising from online classified advertising.  Indeed, experts in the field of online advertising distinguish the supply and demand for online classified ads from other forms of online advertising.  For example, the 2011 Internet Advertising Revenue Report published by Price Waterhouse Cooper and the Interactive Advertising Bureau provides supply and demand information for different segments of the online advertising industry, finding that revenues in the online classified ad market were approximately $2.6 billion in 2011, or 8-10% of the overall online advertising industry.  Onboarding of other forms of online advertising is beyond the outer boundaries of the relevant product market because unique supply and demand exists for the onboarding of classified ads.

32.     From the perspective of a user who wishes to onboard a post or a user who wishes

32

1  to complete an exchange with a user who onboarded a post, there are no reasonable substitutes for

2  onboarding of online classified ads.  For example, print newspaper classified ads are not reasonably

3  interchangeable with online classified ads because print newspapers do not—and in fact cannot—

4  enable users to sort or search classified ads in the way that users can sort and search online

5  classified ads.  Print classified ads are published once daily (or even less frequently) and cannot be

6  edited once they are printed, whereas online ads can be published or edited at any time.  The reader

7  base for print classified ads is limited to subscribers of that publication, whereas online posts are

8  viewable by any internet user.  Additionally, pricing for print classified ads and online classified

9  ads confirms that these products occupy separate product markets.  Most print classified ads are

10  priced on a "line count" or "word count" basis, with additional fees for borders, logos, or colors

11  (which limits the amount and type of content that consumers of print classified ads can use),

12  whereas online classified ads on craigslist and its competitors' sites range from free for most

13  products to $75 for some job listings (with none of the restrictions posed by print classified ads).

14      33.    Similarly, users do not consider online auctions—such as eBay's auction site—to be

15  reasonably interchangeable with online classified ads.  Online auctions typically allow for multiple

16  buyers, across multiple geographies, to bid on items during a set time frame, whereas classified ads

17  allow a buyer who often is in the same geography as the seller to negotiate purchases in one-to-one

18  communication with the seller and then close the transaction in person, much as one does with a

19  newspaper classified ad.  Auctions involve goods that are paid for in advance (subject to fees for

20  people who post auctions) and are shipped anywhere through the mail, whereas classified ads allow

21  for face-to-face exchange of goods within a short time period after a listing is posted and where the

22  buyer can inspect the goods before payment.  Additionally, while auction sites only include "for-

23  sale" listings, classified ad users can post "wanted" ads for goods and services.  Moreover, auction

24  websites offer national sales, while classified ads operate in local exchange markets.  eBay created

25  eBay Classifieds in recognition of the difference between the markets for online auctions and

26  online classified ads.

27      34.    In addition to users who onboard or who purchase goods and/or services via

28  onboarded online classified ads, there are additional consumers in the downstream markets for

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1    indexing and search of onboarded online classified ads, as discussed below.  These consumers do

2    not consider onboarded online classified ads to be reasonably interchangeable with any other

3    products.

4          35.     Further, a small but non-transitory increase in price in the onboarding market would

5    not cause users to switch to other products or to otherwise change their activities sufficiently to

6    make such a price increase unprofitable to the hypothetical monopolist.  Among other things, this

7    is demonstrated by craigslist's continued growth in the online classified ad submarkets for job

8    listings and housing listings after raising fees for postings in these submarkets from $0 to $10-$75.

9    There is no cross-elasticity of demand between onboarding and any alternative products, like print

10   classified ads, general online advertising, or online auctions.

11         36.     Upon information and belief, within the relevant market for the onboarding of

12   online classified ads, there are numerous submarkets for specialized types of online classified ads,

13   such as apartment listings, sale of used goods, and sale of services.  Users seek content within one

14   or more of these submarkets when accessing online classified ads.

15         37.     The content in each of the relevant submarkets is not reasonably interchangeable

16   from the perspective of the user.  For example, a user seeking an apartment listing will not look at

17   listings related to sales of used goods, services, or personal ads.

18         38.     Moreover, a small but non-transitory increase in price in each of the onboarding

19   submarkets would not cause users to switch to other products or to otherwise change their activities

20   sufficiently to make such a price increase unprofitable to the hypothetical monopolist.

21         39.     craigslist's monopoly power in the market and submarkets for onboarding of online

22   classified ad content is evidenced directly by its ability to exclude competitors.  When competitors

23   that also compete in the downstream search market—such as PadMapper—attempt to provide both

24   onboarding and search tools—such as PadMapper does through PadLister—craigslist, through its

25   market dominance and anticompetitive scheme, has been able to prevent those competitors from

26   entering and remaining in both the onboarding and search markets.

27         40.     craigslist's monopoly power also is demonstrated indirectly by its share in the

28   relevant market and submarkets.  craigslist is dominant in the overall product market for

34

1 | onboarding of online classified ad content.  It has an approximately 90% share in the overall

2 | market for the onboarding of classified ads across all segments, while its two closest competitors,

3 | Backpage and eBay Classifieds, only have approximately 7% and 1.5% shares, respectively.  Other

4 | distant competitors, such as OLX and Oodle, have even smaller shares.

5 |       41.    Upon information and belief, craigslist onboards approximately 1.2-1.5 million

6 | posts per day, whereas Backpage onboards only 100,000 new posts and eBay Classifieds onboards

7 | 20,000.  Distant competitors like OLX and Oodle onboard even fewer posts.

8 |       42.    According to reports from Hitwise, craigslist's local sites account for all but three of

9 | the top 100 online classified ad websites.

10 |       43.    Upon information and belief, craigslist also has monopoly power or a dangerous

11 | probability of achieving monopoly power in the submarkets for onboarding of online classified ads,

12 | such as for apartment rentals, sale of general goods, and sale of general services.

13 |       &bull;  <u>Apartment Rentals</u>:  Upon information and belief, craigslist's share in

14 |           the apartment rental submarket is over 65% and may be as high as 77%.

15 |           It competes against the niche onboarding sites PadMapper, Lovely, and

16 |           other similar sites, which currently have de minimis shares because of

17 |           craigslist's anticompetitive scheme.

18 |       &bull;  <u>Sale of Goods</u>:  Upon information and belief, craigslist's share in the sale

19 |           of goods submarket is over 65% and may be as high as 90%.  craigslist

20 |           does not face any significant competition from niche onboarding sites in

21 |           this submarket.

22 |       &bull;  <u>Sale of Services</u>:  Upon information and belief, craigslist's share in the

23 |           sale of services submarket is at least 55% and may be even higher.

24 |           There is a dangerous probability that craigslist will obtain monopoly

25 |           power in this submarket as it drives more users to its site as a result of

26 |           network effects, whereby users are driven to the craigslist site to gain

27 |           access to the large numbers of buyers that craigslist already attracts.

28 |           craigslist does not face meaningful, across-the-board competition from

          

any niche onboarding sites in this submarket.  craigslist's anticompetitive scheme inhibits new competitors from entering the market.

- <u>Other Submarkets</u>:  craigslist is a privately-held company that does not publish statistics regarding traffic and postings for many of the classified ad categories offered on its website.  Upon information and belief, craigslist may have monopoly power—or alternatively, may have the dangerous probability of achieving monopoly power—in other classified ad submarkets.

44.     The direct evidence of craigslist's actual control of the market for onboarding of classified ads, as well as its monopoly market shares, demonstrate that craigslist has monopoly power in the market for onboarding of online classified ads, as well as in the relevant submarkets for onboarding of online classified ads.

**B.     The Market for Search-Engine Indexing of Classified Ad Content**

45.     A second relevant product market exists for search-engine indexing of onboarded classified ad content.  Indexing refers to the collection, parsing, categorization, organization, and storage of data to facilitate fast and accurate retrieval of information for search engines.  Data is either normalized (i.e., coded by location or structured annotations, such as the number of bathrooms or bedrooms in an apartment) or left free form (e.g., raw words).

46.     Indexing allows the results of an analysis of onboarded data to be organized into rapidly searchable alphabetical or numerical data structures that power search requests and efficient add, edit, or delete functions for updates to the data.  For example, in contrast to craigslist's index, 3taps' index enables the efficient addition of latitude and longitude specifications to classified ads in the housing market.  These latitude and longitude specifications then can be used to create maps (as PadMapper does) in the downstream market for the search of online classified ads.

47.     Indexing also allows for rapid summarization and subtotaling of data to allow users to see the total number of matching postings in an adjoining location or category.  For example, indexing enables a search engine to tally specific keywords across categories, and therefore helps search engines find more relevant postings.

36

48.     3taps, craigslist, and other general onboarding websites—such as Backpage and eBay Classifieds—are the only companies that engage in the indexing of onboarded classified ad content across all categories (e.g., the submarkets for apartment rentals, job listings, sales of goods, personal ads, etc.).  craigslist and other onboarding websites index their own respective onboarded classified ad content for use in their search tools offered to users, whereas 3taps indexes the raw classified ad content that has been onboarded onto craigslist and other third parties' websites, which in turn 3taps offers to third-party search engine developers.

49.     Within the product market for the indexing of online classified ad content, competitors can use several methods to index data.  For example, both scraping and application programming interfaces ("APIs") can be used to index raw onboarded online classified ad content.

50.     "Scraping" is a process by which a computer analyzes a webpage on a consistent basis (perhaps daily) to monitor and analyze the contents of the page.  For example, in the travel sector, ITA searches for and scrapes travel data from some airlines' webpages for use by third-party travel search sites.  Scraping is a slower and less efficient means of obtaining raw data for use in indexing than an API, but companies can still compete effectively in the indexing market by scraping.  Notably, 3taps does not use scraping to collect raw data from craigslist to create its indexing product.

51.     Alternatively, companies that have access to raw data have the option to use an API to offer third parties access to their indexes in order to search their data or to receive a stream of raw data so that third parties can create their own indexes of data ("third-party indexes").  craigslist has chosen not to provide an API or any form of its index to third parties for search, nor does it provide raw data that would enable third parties to build their own indexes.  Instead, craigslist participates in the indexing market only to facilitate its own search engine and tools.

52.     craigslist does offer limited RSS feeds of its content, but these feeds cannot be used to create an efficient and useful index.  The RSS feeds are updated only every fifteen minutes and are limited to the last one hundred postings.  Therefore, if more than one hundred postings are onboarded during a fifteen minute period, those posts do not appear in the RSS feeds.  In practice, as much as seventy percent of data is lost.  Thus, developers cannot create useful indexes that

37

1  power downstream search offerings by relying on craigslist's RSS feeds.

2      53.    To the extent the data is available, third-party indexers such as 3taps also can source

3  the raw data associated with content posted on classified ad onboarding websites from general

4  search engines (e.g., Google, Bing, etc.). Again, this is a slower, less efficient, and more expensive

5  means of obtaining raw data for use in indexing than an API. 3taps historically has used this

6  method to produce its index.

7      54.    Third-party indexers must use one of these methods to collect raw data in order to

8  create a useful and competitive index. In turn, these indexes can be used downstream by real-time

9  search engines that compete with craigslist in one or more search markets. 3taps has sourced raw

10  data from general search engines and indexed onboarded classified ad content for use in

11  downstream search applications for classified ads. In this way, 3taps functions as a bridge between

12  competitors in the onboarding market and competitors in the search market.

13      55.    The outer boundaries of the relevant product market for indexing are determined by

14  the reasonable interchangeability of use or the cross-elasticity of demand between indexing of

15  online classified ad content and potential substitutes for indexing.

16      56.    From the perspective of downstream providers of search engines (including the

17  craigslist-captive search engine) and from the perspective of downstream search users, there are no

18  reasonable substitutes for indexing of classified ad content. Indexing is necessary for data to be

19  quickly and efficiently searched, but indexing raw data is computationally complex and resource

20  intensive.

21      57.    Many search engine companies in the downstream markets for the search of

22  classified ads target particular classified ad submarkets. Because of a lack of resources, specialized

23  technical expertise, and time, these companies depend on search-engine indexing companies to

24  analyze the raw data for use in their search engine tools. Searching raw data that has not been pre-

25  staged by indexing is too inefficient and slow to enable these search engine companies to build

26  usable services on top of the onboarded data.

27      58.    For example, many third-party specialized search engines require indexed data to

28  produce their products. These search engines—like PadMapper in the housing sector, Kayak in the

3TAPS' ANSWER AND COUNTERCLAIM                CASE NO.: 12-CV-3816-CRB

1  airline bookings sector, and AirBnB in the temporary housing rental sector—offer enhanced search

2  capabilities to end-purchasers of each of these products.  Without pre-staged indexed data, these

3  search engines would be too slow to perform quickly enough for users.

4       59.    Indeed, when analyzing Google's acquisition of ITA in 2011, the Department of

5  Justice ("DOJ") reached similar market definition conclusions regarding the indexing market for

6  airline travel information.  DOJ determined that there was a distinct antitrust market for "a

7  continuously-updated database of airline [raw data] and a software algorithm used to search the

8  database."  DOJ found that downstream comparative search engines could not gather this raw data

9  on their own through scraping; these comparative search companies need pre-staged, indexed data

10  to remain fast and reliable.

11      60.    A small but non-transitory increase in price for search-engine indexing (whether

12  captive or assimilated via an API or scraping) would not cause users to switch to other products or

13  to otherwise change their activities sufficiently to make such a price increase unprofitable to the

14  hypothetical monopolist, because there are no alternative products.  Therefore, there is no cross-

15  elasticity of demand between search-engine indexing of classified ad content and any other

16  products.

17      61.    craigslist's monopoly power is evidenced directly by its ability to exclude

18  competitors from the market for search-engine indexing of onboarded classified ad content.  For

19  example, craigslist has successfully thwarted attempts by Oodle and NotifyWire to enter the

20  indexing market by blocking access to a large percentage of the onboarded data in the classified ad

21  market.  Unlike 3taps, these companies accessed craigslist's server to attempt to access craigslist's

22  data.  Without the craigslist data to index, these companies simply did not have enough raw data to

23  create a useful index for search engines, and they could not attain meaningful market share to

24  effectively compete in the indexing market.

25      62.    craigslist's monopoly power in the indexing market for classified ad content also is

26  demonstrated indirectly by its share in this market.  craigslist controls 90% of the overall online

27  onboarded classified ad content for indexing (65% or more in the relevant onboarding and indexing

28  submarkets for apartment listings and the sale of goods and 55% or more in the relevant

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1  onboarding and indexing submarket for the sale of services).  Because of this control over the data

2  that needs to be indexed, craigslist's share in the indexing market roughly equates to its share in the

3  onboarding market and submarkets:  90% for general onboarded content, 65% or more in the

4  relevant onboarding submarkets for apartment listings and the sale of goods, and 55% or more in

5  the relevant onboarding submarket for the sale of services, as described above in Paragraphs 40 and

6  43.

7      63.      Accordingly, craigslist has monopoly power in the market for search-engine

8  indexing of onboarded classified ad content.

9      **C.   The Relevant Market for Real-Time Search Services
          of Indexed Online Classified Ad Content**

10

11      64.      A third relevant product market—and related submarkets—exists for "real-time"

12  search services for indexed classified ad content.  A real-time search engine provides the most

13  recent results for a set of search criteria, as opposed to PageRank search services, which return the

14  most authoritative results for a set of search criteria.  For real-time search engines, the unit of data

15  is a posting, whereas for PageRank search engines, the unit of data is a webpage.

16      65.      In the market for real-time search of indexed online classified ad content, real-time

17  search service providers enable users to search simultaneously for online classified ads in multiple

18  cities on multiple websites across multiple criteria.

19      66.      The outer boundaries of the relevant product market for search are determined by

20  the reasonable interchangeability of use or the cross-elasticity of demand between real-time search

21  of indexed online classified ad content and potential substitutes for search.

22      67.      "Real-time search services" is a relevant antitrust product market because no other

23  search service is as useful and convenient to consumers.  There are no reasonable substitutes for

24  this product.

25      68.      A small but non-transitory increase in price for real-time search services of indexed

26  online classified ad content would not cause users to switch to other products or to otherwise

27  change their activities sufficiently to make such a price increase unprofitable to the hypothetical

28  monopolist.  Therefore, there is no cross-elasticity of demand between real-time search services of

40

1    indexed online classified ad content and any other product.

2        69.    When analyzing the Google-ITA transaction, DOJ found a distinct antitrust market

3    for this type of search service of airline data.  Similarly, here, real-time search services of indexed

4    online classified ad content constitutes a relevant product market for antitrust purposes.

5        70.    Real-time search services are distinct from the products provided by general web

6    search engines, like Google or Bing.  These general search engines use a method called PageRank

7    to search the internet by determining the relevance and authority of web pages as a basis for search.

8    PageRank is based on how many incoming links a web page has, and in turn, how authoritative a

9    page is.

10       71.    Because PageRank search engines return hits based on page links, these search

11   engines are inadequate vehicles for searching classified ads to execute an exchange of a particular

12   type of product or service.  In fact, a PageRank search tool generally will return hits for the most

13   viewed pages—meaning that a user typically will obtain a search result for the oldest, and therefore,

14   most stale classified ad posting.  Additionally, PageRank search engines have no mechanism by

15   which to rate user experience with buyers or sellers.

16       72.    Within the real-time search engine market, real-time search engines may offer

17   specialty search tools,  interaction tools, and/or onboarding, in addition to their primary search

18   service.  Specialty search tools include creative visualizations, such as tremaps or steamgraphs,

19   which display creative, visually compelling versions of onboarded content.  "Interaction" refers to

20   applications that allow users to interact, sometimes in real time.  These applications include

21   identity services, messaging tools—like Message.Me or mobi-digger, which send messages

22   directly between two users—payment tools, like PayPal or CloudCash, or credit verification tools.

23       73.    Some real-time search providers offer additional complementary interaction

24   products or allow users who search for classified ads using their search engine to use third-party

25   interaction tools.

26       74.    Despite user demand for these interaction products, craigslist only offers what it did

27   fifteen years ago:  anonymized email.  It does not provide any interaction products related to text

28   messaging or payment, nor does it support the use of any third-party interaction tools.  Rather, as

41

1    described below, it's terms of use block a user's ability to use any of these tools.

2        75.    craigslist's monopoly power is evidenced directly by its ability to exclude

3    competitors from the market for real-time search of indexed online classified ad content.  As a

4    result of its anticompetitive scheme, craigslist has caused the exit of numerous nascent search

5    competitors, including craiggers, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest,

6    jumpoffcampus.com, wishcan.com, and SnapStore.  In addition, absent relief from this court,

7    several other search competitors are likely to exit the market, including PadMapper, JeBoom, and

8    Lovely.

9        76.    craigslist's monopoly power also is evidenced indirectly by its share in the search

10   market and submarkets.  Because of craigslist's historical control of the onboarding markets, as

11   well as its control over indexed data, craigslist historically has controlled the markets related to

12   real-time search of indexed online classified ad content.  Its share in the search market therefore

13   roughly equates to its share in the onboarding market and submarkets:  90% for general onboarded

14   content, 65% or more in the relevant onboarding submarkets for apartment listings and the sale of

15   goods, and 55% or more in the relevant onboarding submarket for the sale of services, as described

16   above in Paragraphs 40 and 43.

17       77.    Significantly, craigslist's dominance in each of these markets is interrelated.  For

18   example, competitors like PadMapper would not be able to provide a useful search tool without

19   access to onboarded classified ads and the underlying facts and public data that craigslist

20   improperly seeks to control.  As a result of craiglist's anticompetitive scheme, PadMapper is

21   inhibited from attracting users to its search site to demonstrate the superiority of its search and

22   interaction tools—like the PadMapper map based on latitude and longitude coordinates of housing

23   postings or message.me features.  PadMapper therefore has a harder time gaining a critical mass of

24   users to break into the onboarding market.  In fact, PadMapper.com experienced a dramatic decline

25   in visits once craigslist data was removed from the site, a fact confirmed by traffic statistics from

26   alexa.com, as well as the allegations in paragraph 73 of craigslist's Complaint.

27   **II.    Relevant Geographic Market**

28       78.    The relevant geographic markets are each of the local city-by-city markets in the

42

1 | United States in which a user can turn to find the posts for which he or she is looking.

2 | 79. A small but non-transitory increase in price for onboarding of online classified ad

3 | content (or for the interrelated search-engine indexing and real-time search services of these

4 | classified ads) in one city generally would not cause users to onboard, index, or search classified

5 | ads for these items in other cities. Therefore, a small but non-transitory increase in price in one

6 | city would be profitable to the hypothetical monopolist.

7 | 80. A person posting an apartment listing in one city would not post the apartment

8 | listing in another city as a result of an increase in price related to posting the classified ad. A

9 | search engine looking for indexed data related to apartment posts in one city would not switch to

10 | indexed data from another city due to an increase in price. A user searching for apartment posts in

11 | one city would not switch to searching for apartment posts from another city due to an increase in

12 | price.

13 | 81. Similarly, a person posting a listing for goods in one city would not post in another

14 | city as a result of an increase in price related to posting the classified ad. A search engine looking

15 | for indexed data related to posts for goods in one city would not switch to indexed data from

16 | another city due to an increase in price. A user searching for posts for goods in one city would not

17 | switch to searching for posts for goods from another city due to an increase in price.

18 | 82. A person posting a listing for general services in one city would not post in another

19 | city as a result of an increase in price related to posting the classified ad. A search engine looking

20 | for indexed data related to posts for general services in one city would not switch to indexed data

21 | from another city due to an increase in price. A user searching for posts for general services in one

22 | city would not switch to searching for posts for general services from another city due to an

23 | increase in price.

24 | 83. Therefore, there is no cross-elasticity of demand for users between cities for the

25 | relevant markets related to classified ad content.

26 | 84. Upon information and belief, craigslist's share is over 65% in many of the local

27 | geographic markets for onboarding, and craigslist has a dangerous probability of achieving

28 | monopoly power in other local markets for onboarding.

3TAPS' ANSWER AND COUNTERCLAIM                    CASE NO.: 12-CV-3816-CRB

85.     Alternatively, in the relevant markets for search-engine indexing and real-time search services, developers use nationwide onboarded online classified ad content.  Upon information and belief, craigslist's share is over 65% in the nationwide relevant markets and submarkets for indexing and search of onboarded online classified ads.

## III.    Barriers To Entry

86.     Historically, potential competitors in the onboarding market could not break into the onboarding market and gain significant market share because of the barriers to entry and barriers to expansion created by the network effects enjoyed by craigslist.  craigslist overwhelmingly dominates the market for onboarding of online content, and therefore, has the most users.  For instance, in terms of onboarded posts, it has a 15 to 1 advantage over its next closest competitor, BackPage, and a 75 to 1 advantage over its second closest competitor, eBay Classifieds.  Thus, users need to post to craigslist to increase their chances of having a successful exchange.  This drives users away from alternative sites like BackPage and eBay Classified, which offer attractive alternative products.

87.     These barriers to entry are evidenced by the failed attempts of well-funded internet players to enter and gain share in the online classified ad markets.  For example, eBay has been unable to gain significant share in the Relevant Markets in the United States.  eBay successfully competes in the markets for the onboarding, indexing, and search of online classified ads outside of the United States, where craigslist historically has had low market shares.  However, as a result of craigslist's dominant presence in the United States and network effects, eBay Classifieds has been unable to gain traction in the Relevant Markets; in fact, its share in the market for onboarding of classified ads across all market segments is only about one and a half percent in the United States.

88.     Similarly, Yahoo! Pipes was unable to facilitate third-party development of successful applications in the downstream markets for indexing and search of online classified ads.  Yahoo! Pipes—a web application provided by Yahoo!, Inc. (a general search engine company)—is an interface that aggregates web feeds, web pages, and other services for use by developers building mashups.  As part of this aggregation, Yahoo! Pipes collected craigslist content via craigslist's RSS feed.  The RSS feed is subject to many contractual obligations, including that the

1   content cannot be used for commercial purposes.

2       89.     Romy Maxwell, a Yahoo! Pipes developer, used the Yahoo! Pipes feed to create

3   "Flippity," a mashup which would plot craigslist onboarded listings on a map, thereby enabling

4   users to see what goods were being sold in his or her proximity.  In 2009, Mr. Maxwell contacted

5   Craig Newmark to seek guidance about complying with craigslist's restrictive Terms of Use for the

6   RSS feed and provided a link to a working alpha version of Flippity.  Maxwell indicated that the

7   project was "non-commercial" and therefore complied with craigslist's Terms of Use, but asked if

8   the site could seek donations to cover its costs.  Mr. Newmark was silent on these questions, and

9   craigslist shortly thereafter took measures to block Flippity's access to the RSS feed—and, soon

10  thereafter, took the same steps for every other Yahoo! Pipes project (including those for non-

11  commercial purposes).  As a result, Yahoo! Pipes was unable to successfully facilitate the entry of

12  third-party developers into Relevant Markets.

13      90.     As long as craigslist's anticompetitive scheme remains in place to block entry and

14  expansion in all the relevant markets and submarkets, this overwhelming market dominance and

15  network effect will continue.  craigslist will remain the overwhelmingly dominant onboarding site

16  that offers onboarding across all classified ad submarkets, and classified ad users are more likely to

17  be familiar with craigslist as a destination for onboarding of online classified ads over niche

18  specialty websites that facilitate onboarding for particular types of online classified ads.  Thus,

19  users are more likely to recognize craigslist as the dominant website for classified ad content and

20  rely on craigslist for all of their online classified ad needs, even if users are only interested in

21  onboarded content in a particular submarket and could find a better onboarding or search offering

22  at these niche sites.

23              **FACTS RELEVANT TO 3TAPS' COUNTERCLAIMS**

24  I.   **craigslist's Rise To Monopoly Power for Certain Online Classified Ads**

25      A.   **craigslist's Origins and Expansion**

26      91.     craigslist originated in 1995 as a listserve to share information about events in San

27  Francisco, California, but users began sharing information about jobs and other content.

28      92.     It quickly expanded to a web interface to allow classified ad postings related to

45

1  events, jobs, and other classified ads in specific market segments, such as apartment rentals, used

2  cars, used goods, services, romance, and friendship.

3        93.    A central part of the craigslist model of onboarding of classified ads is to allow for

4  anonymized postings.  As users put in new content to the website, their identities remain

5  anonymous and users contact each other through the craigslist website, rather than through an

6  interaction application that facilitates real-time interactions.  Where used properly, this practice

7  allows craigslist to monitor legitimately for spam and to protect the personal information of its

8  users.

9        94.    As craigslist grew, it expanded to other U.S. cities (and eventually, to other cities

10  internationally).  Rather than create one mega-database of postings, craigslist cloned its initial

11  website for each local area, confining users to location-based postings and search activities, due to

12  technical as well as Terms of Use constraints.  It therefore has no central searchable index across

13  cities, but instead participates in all of the relevant markets through hundreds of distinct websites.

14        95.    Craigslist now operates over five hundred separate websites for each of the cities in

15  which it offers onboarding services, indexes data, and offers search capabilities to users.

16        96.    This onboarding process limits the capabilities of the index and search features that

17  craigslist offers to its users.  Because each local website's data is indexed separately, users on

18  craigslist cannot search across contiguous cities simultaneously.  Thus, a user who lives close to

19  two major cities who is willing to purchase goods or services in both cities is forced to search on

20  two separate craigslist sites to find the goods or services for which he or she is looking.

21        97.    Additionally, use of craigslist's search product results in users simply obtaining all

22  hits for a particular word or category.  But craigslist's data is not indexed in a way that allows users

23  to search and sort postings by certain important categories, such as the user that onboarded the

24  content.  This prevents a user from finding all of another particular user's posts or from weeding

25  out posts by a user who re-posts the same ad multiple times.  Moreover, craigslist, through its

26  anticompetitive scheme, seeks to prevent any company from offering a product that would

27  accomplish these goals and has targeted companies like HuntSmartly and SnapStore—which aim

28  to provide a search-by-user feature for craigslist data—with cease and desist letters.

46

B.   **craigslist's Monopoly Position in Onboarding of Online Classified Ads**

98.     Despite these limitations, craigslist quickly rose to dominance in the onboarding product market because of the significant improvements that a web-based classified ad website offered over traditional print classified ads in newspapers.

99.     Indeed, in paragraph 20 of its Complaint against 3taps, craigslist concedes that currently, it is the largest online forum for online classified ads.

100.    Upon information and belief, while there are some specialized onboarding websites in niche categories, craigslist is the dominant market leader for content onboarding in the submarkets for sales of goods, apartment rentals (in many local geographic markets), sales of services, and potentially other submarkets, and it is the major "classifieds" provider that offers online classified ad content across all categories.

101.    craigslist serves between 47 to 60 million unique users per month and is the seventh most visited website in the US.  This dominance translates into a significant advantage in onboarded posts:  craigslist has a 15 to 1 advantage over its no. 2 competitor, Backpage, and a 75 to 1 advantage over its no. 3 competitor, eBay Classifieds.  Notably, Backpage was only able to gain the limited traction it currently has by attracting new users after craigslist chose to exit the erotic services submarket in 2010.  The AIM Group reported that "unique visitors to backpage.com increased 15.8%" in the month after craigslist exited the erotic services submarket.

102.    This monopoly dominance has made craigslist very lucrative:  AIM estimates that craigslist brings in over $100 million in annual revenues, while traffic counts from alexa.com can be used to extrapolate that, based on the amount craigslist charges per post for job listings, apartment listings by brokers, and therapeutic massages, craigslist could be bringing in over $300 million in annual revenues.

103.    craigslist has achieved significant revenues in the hundreds of millions of dollars and has disrupted and displaced about $6 billion in traditional print classified revenue.  Its gross margin, given its staff of less than thirty, and its profit margin exceeds economic returns of competitive businesses, based on conservative estimates of its expenditures to pay its small staff and run its simple computer architecture.  It achieved this profitability all while providing many

47

1  classified ads free of charge.  It only charges for postings in three submarkets for the onboarding of

2  classified ad content:  (1) $25-$75 for online job postings in each category in select cities, (2) $10

3  for brokered apartment listings in New York City and Boston, and (3) $10 for posting therapeutic

4  services ads in the United States.

**C.  craigslist's Onboarding Dominance Naturally Gave It Monopoly Power in the Related Markets For Indexing And Search**

7  104.    craigslist's dominance in onboarding led to a natural acquisition of monopoly power

8  in the related markets for the search-engine indexing of onboarded classified ad content and the

9  search of that indexed data.

**1.    Search-Engine Indexing**

11  105.    Because of craigslist's overwhelming dominance in the online classified ad

12  onboarding market, as well as several related submarkets, craigslist also dominates and controls the

13  search-engine indexing of onboarded classified ads.

14  106.    Because craigslist controls 90% of onboarded content across all segments, no other

15  firm can enter the market for search-engine indexing of classified ads without access to information

16  uploaded onto the craigslist website.  Similarly, in each relevant submarket, craigslist controls 65-

17  90% of onboarded content (or, in the example of the sale of services, 55% or more of onboarded

18  content).

19  107.    craigslist's monopoly power is demonstrated by its historic ability to keep its

20  content out of the indexing market.  For example, Yahoo! Pipes is a platform that provides

21  aggregated data from internet websites for use by developers of mashups (which both index the

22  data and/or use the data in downstream search offerings.)  In the past, Yahoo! Pipes tried to include

23  craigslist content from craigslist RSS feeds in its platform.  Once craigslist realized that Yahoo!

24  Pipes was including data from its RSS feeds, craigslist took steps to block Yahoo! Pipes's access to

25  the RSS feed.

26  108.    Notably, even if craigslist allowed Yahoo! Pipes unfettered access to the RSS feeds,

27  these feeds would not enable Yahoo! Pipes' developers to create an efficient and useful index.  The

28  RSS feeds—which craigslist provides only for non-commercial use—are only updated every

fifteen minutes and are limited to the last one hundred postings.  Therefore, if there are more than one hundred postings during a fifteen minute period, those posts simply are lost and never appear in the RSS feeds—rendering those feeds unreliable.  In fact, as much as seventy percent of data is lost because craigslist uses this purposely unreliable access method.  Thus, developers cannot create useful indexes that power downstream search offerings by relying on craigslist's RSS feeds.

109.    3taps is a participant in the search-engine indexing market for classified ads, which it obtains through publicly available sources on the internet.  Absent craigslist's anticompetitive scheme, 3taps would be in the position to use publicly available data to provide better indexed data that can be used in the downstream real-time search markets.

110.    3taps has greatly improved on craigslist's index of onboarded classified ad content in a manner that improves search capabilities.  For example, craigslist's platform, which is separated by city, does not allow content to be indexed or searched by craigslist users on a national basis, nor does it allow a user to search or sort classified data in the most useful or convenient ways.  Among other things, 3taps provides an index that enables search sites to combine listings in two nearby cities so that a user who wishes to view listings in both cities does not have to execute two separate searches on the craigslist website.

2.    Real-Time Search

111.    Similarly, because of craigslist's overwhelming historical dominance in the classified onboarding market, as well as several related submarkets, and because of craigslist's historical control of the indexing market, craigslist possesses monopoly power over the engines and tools used to search these markets.

112.    As noted by websites such as wired.com, craigslist is aware of consumer demand for better search capabilities (potentially though apps or other websites), including, for example, a user's ability to exclude re-posted, duplicate classified ads.  But, unfortunately for users, craigslist's search function is limited by the indexing system it has created.

113.    Additionally, users want to be able to a) search across geographical markets; b) search across listings from multiple / competing sites; c) have saved searches and "favoriting" of search results; and d) potentially have "safe search" that denotes items that may have been flagged

49

1    for risk of being stolen or associated with trafficking, beyond the simple flagging system CL has in

2    place.  craigslist offers none of these features.

3         114.   Current and potential entrants into the search market are ready, willing, and able to

4    offer improved search capabilities not currently available through craigslist.  For example,

5    craiggers and JeBoom use 3taps' superior indexing product to make these search functions possible.

6    craiggers places listings into different columns, allowing users to have preferred listings visualized

7    simply by clicking on them, without having to open new tabs, or go back and forth between pages.

8    Another distinctive feature is the ability to search across as many neighboring areas as a user wants.

9         115.   PadMapper is another prime example of a company that attempts to meet consumer

10    demand for better search in the submarket for search of classified ads in the housing sector.  For

11    example, using 3taps' index, PadMapper has added latitude and longitude data to user's posts to

12    create a visual map for all housing availabilities in a given area.  PadMapper also provides a forum

13    for users to search all classified ads in the housing sector in one central location.  Upon information

14    and belief, once users of PadMapper's search function were able to experience the superiority of its

15    site, these users began to onboard directly to PadLister, an affiliated feature; in this respect,

16    PadMapper is a direct competitor of craigslist in both the onboarding and search markets.

17 **II.   AS THE WEB EVOLVED, CRAIGSLIST BECAME A CLASSIC LETHARGIC**
18       **MONOPOLIST IN ALL OF THESE MARKETS**

19         116.   After gaining its dominant position in the classified ad markets for onboarding,

20    indexing, and search, craigslist has affirmatively chosen not to innovate—the antithesis of

21    competition.  Rather, in its own words, craigslist chooses to unbrand, demonetize, and uncompete.

22    ( source: http://cdn.conversationsnetwork.org/ITC.Web2.0-Newmark.Buckmaster-2004.10.07.mp3)

23         117.   As wired.com author Gary Wolf reported, "Think of any Web feature that has

24    become popular in the past 10 years:  Chances are craigslist has considered it and rejected it.  If

25    you try to build a third-party application designed to make craigslist better, the management will

26    almost certainly throw up technical roadblocks to shut you down."

27         118.   Indeed, craigslist's Terms of Use related to interoperability are a prime example of

28    the type of roadblock that craigslist has used to block third-party search and interaction tools to

3TAPS' ANSWER AND COUNTERCLAIM                      CASE NO.: 12-CV-3816-CRB

1   improve the classified ad market.  craigslist's Terms of Use prevent users from creating search and

2   interaction tools or from using third-party search and interaction tools in their listings, thereby

3   preventing competitors' tools from gaining any traction.

**A.    The Evolution of the Online Marketplace for Classified
       Ads Led to Increased Attempts to Compete in the Relevant
       Classified Ad Markets**

6   119.    Despite craigslist's hopes to exist in the internet of the past, innovation on the

7   internet has been occurring at a rapid pace in each of the markets in which craigslist participates,

8   and consumers continue to demand more functionality than craigslist is willing to offer.

9   120.    Since the advent of craigslist, there have been fundamental shifts in the way users

10  interact with the internet.  In 2004, O'Reilly Media hosted a conference discussing user interaction

11  with the internet, describing "Web 1.0" as a place where users were passive retrievers of

12  information presented to them, while the new internet, "Web 2.0", allows users to create and

13  change their own content in real-time while interacting with other web users.

14  121.    While many applications, like craigslist, still operate based on Web 1.0 principles,

15  these shifts nonetheless have driven consumer demand for more innovative indexing, search, and

16  interaction tools that enhance a user's experience with online content, like online classified ad

17  postings.

18  122.    In turn, new suppliers have tried to enter these markets to meet growing demand for

19  a better way to index, search, and interact with online classified content.  For example, AirBnB

20  offers specialized search capabilities in the submarket for vacation housing classified ads.  AirBnB

21  allows users to search across more refined categories and allows users to save their favorite listings

22  to a personal wish list.  AirBnB's rapid success took craigslist by surprise, and AirBnB thereby was

23  able to avoid the full effect of craigslist's anticompetitive scheme.

24  123.    craigslist has paid lip-service to its desire to have competitors in these markets.  For

25  example, craigslist CEO Jim Buckmaster has stated that "to the extent that other companies want to

26  get into the business of providing a free public service, we definitely welcome them.  That would

27  take a load off of us."

28  124.    Despite these statements, and despite the prevalence of new entrants poised to enter

51

1   the onboarding and search markets, craigslist has chosen not to compete on the merits, but rather to

2   implement an anticompetitive scheme (detailed below) to thwart competition in the Relevant

3   Markets.

4       **B.**   **craigslist's Interaction with Google and Other General Search Engines**

5       125.   Historically, craigslist has been more than willing to interact with general search

6   engines.

7       126.   As the internet evolved in the late 1990s, Google co-founder Larry Page developed a

8   patented method of searching the internet that established the relevance and authority of web pages

9   as a basis for web search.  This type of search feature, unlike an indexed system that brings back all

10  results that hit on a certain set of criteria, uses a concept that has become known as "PageRank."

11  PageRank is based on how many incoming links a web page has.  This method of search quickly

12  supplanted other models used by Lycos, Alta Vista, and Yahoo.

13      127.   Because PageRank search engines return hits based on which page is the most

14  "authoritative" based on its number of links, these search engines are inadequate vehicles for

15  searching classified ads to execute an exchange of a particular type of product or service.  In fact,

16  PageRank search tools will tend to find the oldest and most stale classified ad postings.

17      128.   Additionally, these search engines do not return the "best" classified ads because

18  user ratings of buyer/seller experiences also represent another form of relevance and authority in

19  the realm of exchange space – something for which a PageRank system does not account.

20      129.   Accordingly, Google and Bing searches only indicate that craigslist is an

21  authoritative place to go for classified ads, but these search engines do not offer an alternative

22  space in which users can post and search for classified ads or where users can execute the best real-

23  time exchange.

24      130.   craigslist has long provided Google with its content data, presumably because it

25  directed traffic to craigslist and, in turn, increased the frequency of exchange transactions on

26  craigslist.  craigslist saw PageRank search engines as a way to increase its reach:  any hits in a

27  PageRank search would direct some additional users to craigslist, but without increasing

28  competition against craigslist in the indexing or search markets.

52

131.   Critically, by injecting classified ad content into the public domain for its own self-interest and to the benefit of its users, craigslist has for many years made onboarded data available on the internet outside of the craigslist website.

**C.   craigslist Sits on Its Monopoly Positions and Refuses
to Innovate in Response to Consumer Demand**

132.   Despite increased customer demand for better indexing, search, and interaction capabilities, and the rise of potential and actual competitors in each of these spaces, craigslist has chosen not to innovate.

133.   As Wired.com author Gary Wolf reported, craigslist users "complain about spam … fraud … posting rules, they complain about the search, they complain about uploading images…. They seldom complain about amazing new features they imagine they might possibly want to use because they are too busy complaining about the simple features they depend on that don't work as well as they'd like."  These so-called simple features are the relevant features – like indexing and searching – at the heart of this dispute.

134.   As question and answer site quora.com explained, "the [internet] world moves on, and the gaps in [craigslist's] product (due to a stubborn obstinate refusal to invest in technology) grow wider and wider.  As tablets, smartphones, etc. disrupt, and craigslist doesn't invest in those platforms, the feature gap grows wider."

135.   Craigslist has avoided the research and development costs associated with innovation, and it employs less than thirty people.  This business model has allowed craigslist to remain wildly profitable, despite statements made by Jim Buckmaster and Craig Newmark suggesting that craigslist is a free community organization made solely for the benefit of its users.  For example, in 2004, Mr. Newmark told Bankrate that craigslist is "neither a nonprofit nor a conventional for-profit commercial company. We're something in between, and there is no term to describe what we do.  On paper, we're a for-profit.  But we just don't run like that."  Mr. Newmark then claimed that craigslist is "basically making enough money to pay the bills."

136.   Contrary to these public statements, craigslist apparently brings in anywhere from $100 to $300 million in revenues each year, and craigslist is doing everything it can to prevent new

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

innovative companies from cutting into these revenues.

**III.    3TAPS, SEARCH ENGINES, AND INTERACTION DEVELOPERS RISE TO CHALLENGE CRAIGSLIST'S ENTRENCHED MONOPOLY POSITIONS**

137.    New potential entrants are poised to enter each of the Relevant Markets in which craigslist competes.  For example, 3taps, Craiggers, and JeBoom—and other competitors in the indexing and search marketplaces—have all researched and developed indexing or search tools that respond to the consumer demands that craigslist is unwilling to address.

**A.    3taps**

138.    3taps competes directly with craigslist in indexing.  3taps is an indexing company that collects onboarded online classified ad content from general search engines and re-indexes this data for use in the downstream search market.

139.    3taps does not access craigslist's servers to collect information, and it therefore does not use craigslist's bandwidth to offer its indexing product.  Rather, as discussed above, 3taps sources its data from publicly available websites other than craigslist.

140.    3taps addresses customer demand for more advanced searching—across multiple geographies, with the potential to save preferences and searches—by providing an index that can facilitate this type of search.  Because specialized, real-time search engines cannot run quickly or efficiently enough to be useful to consumers without 3taps' indexed data, companies like craiggers or PadMapper could not offer their search services to consumers without 3taps.

141.    Thus, while 3taps does not operate directly in the onboarding market for online classified ads, it is the crucial bridge between onboarding and real-time search services.  3taps provides a path into the onboarding playing field for real-time search engine companies that have a superior product and would offer an attractive alternative to craigslist.

**B.    Craiggers, JeBoom, PadMapper, and Other Online Classified Search Engines**

142.    For example, craiggers, JeBoom, PadMapper, and Lovely, as well as other specialized, real-time classified ad search engines, offer search and display offerings that compete directly with craigslist in the search market by using information indexed by indexing companies, such as 3taps.

54

143.     These companies address consumer demand for searching across multiple neighborhoods and cities, searching across additional criteria, saving searches, and other additional features.

144.     Notably, after searching through the databases on craiggers, JeBoom, or PadMapper, a user who clicks on a craigslist ad that was returned in his or her search results then is redirected to craigslist to complete an exchange.  In this way, the search engines developed by 3taps and its partners actually direct traffic (and therefore, business and revenues) *to* craigslist in the short run, rather than away from it.

145.     ITA's relationship with Kayak in the airline industry provides a good example of what would develop in the online classified ad industry, absent craigslist's anticompetitive scheme. ITA is an indexing company that scrapes or uses APIs to collect data about flights from all major airlines.  It then provides this data to specialized search engines, like Kayak, which use the re-indexed data to provide users with a better search for airline tickets.  It allows users to do something they could not do with each individual airline's website:  make side-by-side comparisons on a global rather than limited geographic basis—and to make these comparisons across competing alternatives.

146.     Similarly, AirBnB accomplished this feat in the vacation rental classified ad space. It attracted traffic by sending craigslist's users messages indicating that AirBnB offered a service where classified ads for vacation rentals could be posted and searched with better, more advanced tools and interaction services.  As more craigslist users were directed to the AirBnB site as an alternative space in which to post classifieds, craigslist lost significant traffic in this segment to AirBnB.

147.     AirBnB was able to accomplish this feat for several reasons that make it difficult for other specialized search engines to follow in its footsteps.  Foremost, craigslist, at the time, did not view AirBnB as a significant threat because craigslist never had a large number of onboarded listings in the vacation rental space.  AirBnB was able to thrive while craigslist paid little attention to its activities.  Second, most start-up specialized search engines do not have the capital that AirBnB has, and therefore they lack the resources to defend against the sham lawsuits that

1   craigslist has filed, or threatened to file, against them.

2       148.    Many search engine companies provide more streamlined and innovative platforms

3   on which users can onboard new classified content.  These companies also offer or support

4   interaction applications, like identity services, messaging tools—like Message.Me or mobi-digger,

5   which send messages directly between two users—payment tools—like PayPal or CloudCash—or

6   credit verification tools.  Other tools include creative visualizations, such as tremaps or

7   steamgraphs, which display creative, visually-compelling versions of onboarded content.

8       149.    As users experience the better search offerings of these companies, they are more

9   likely to onboard new content directly to these competitor sites—which is exactly what craigslist

10  fears.  craigslist fears that it may lose its monopoly power in the onboarding space to new entrants

11  in the market for the real-time search of online classified ads that offer both onboarding and search

12  services.  Accordingly, craigslist now has taken anticompetitive steps—described below—to

13  ensure that it does not lose its monopoly power to any of these specialized search engines.

14      150.    PadMapper provides an example of this phenomenon.  While PadMapper began

15  exclusively as a search tool, craigslist knows that users are beginning to onboard unique content to

16  PadMapper's affiliated site, PadLister.  Thus, craigslist is now targeting PadMapper in the search

17  space to prevent it from becoming a competitor in both the onboarding and search markets.

18      151.    Without 3taps, which offers the essential bridge that allows specialized search

19  engines to attract users, these companies cannot break into the search or onboarding product

20  markets.  And in the face of craigslist's anticompetitive scheme, most, if not all, of these nascent

21  search engine developers are likely to abandon their efforts.

22                       **CRAIGSLIST'S OVERALL SCHEME**

23      152.    Rather than innovating and competing to maintain its dominance, craigslist remains

24  determined to ignore the innovation curve, and therefore, has engaged in an anticompetitive

25  scheme to illegally maintain its monopoly control over the onboarding, indexing, and search

26  markets for online local classified ads.  This scheme is designed both to stop 3taps from

27  successfully acting as the indexing bridge between the onboarding and search markets and to

28  directly injure craigslist's search competitors, such as PadMapper, craiggers, and Lovely, in the

Relevant Markets.

## I.   SERIAL SHAM CEASE & DESIST LETTERS AND SHAM LAWSUITS

153.   craigslist's pattern of targeting competitors with sham cease and desist letters and sham lawsuits is an integral aspect of its overall scheme to inhibit innovation and maintain its monopoly position in the Relevant Markets.

154.   craigslist has threatened, or actually filed, numerous lawsuits—including this suit against 3taps—accusing competitors and potential competitors of, *inter alia*, copyright infringement and/or breaching craigslist's Terms of Use.  Besides 3taps and PadMapper, other targets of craigslist's policy include, *inter alia*, Lovely, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.  craigslist engages in this conduct pursuant to a policy of initiating or threatening lawsuits, without regard to the merits of its purported claims, for the purpose of intimidating competitors in the Relevant Markets and forcing them to exit these markets.

155.   The claims craigslist articulates in these cease and desist letters and lawsuits are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits of these claims.

156.   With regard to its purported copyright claims in this lawsuit and other actual or threatened suits, craigslist's claims are objectively baseless because, as discussed above, no reasonable litigant in craigslist's position would believe that it has the right to enforce any copyright protection associated with its users' postings.  As an initial matter, it is well-settled that the factual information that craigslist seeks to prevent 3taps and its partners from using cannot be protected by any copyright.  Second, it is settled law that only copyright owners and their exclusive licensees have standing to bring copyright infringement suits.  craigslist is neither an owner nor exclusive licensee of its users' postings, and it was not at the time it filed suit against 3taps.  And craigslist plainly knew it did not have standing to file a copyright infringement claim against 3taps, or any of 3taps' partners.  This explains why craigslist began requiring its users to grant craigslist an exclusive license to posted content only shortly *after* filing this suit against 3taps.  Faced with the resulting outrage of users and the internet and legal communities, craigslist abandoned this

1    requirement within two weeks.  Thus, craigslist's copyright claims are utterly baseless, and no

2    reasonable litigant in craigslist's position would believe otherwise.

3          157.    craigslist's claim that 3taps has violated its Terms of Use similarly is objectively

4    baseless.  3taps does not access craigslist's website to obtain data, and therefore, is not subject to

5    craigslist's Terms of Use.  Rather, because craigslist makes its content available to general search

6    engines (e.g., Google, Bing), this data already is in the public domain.  3taps simply sourced the

7    data associated with content posted on craigslist from these general search engines.

8    Incredibly, craigslist knew this when it filed suit against 3taps and PadMapper, as well as when it

9    sent cease & desist letters to 3taps' other partners, such as HuntSmartly, Invatory, for-sale-

10   alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.  On March

11   13, 2012, 3taps sent a letter to craigslist explaining that "3taps does no scraping and hosts only data

12   available from public domain sources that is posted by users.  Furthermore, the policy of 3taps with

13   regards to craigslist data is that any sourcing of that data for insertion via our API be done *without*

14   scraping or visiting craigslist at all.  As such, neither 3taps nor 3rd parties posting to the 3taps API

15   under our terms are using craigslist to gather data and therefore are not subject to craigslist's terms

16   of use."  As 3taps further explained, its manner of collecting craigslist's data is perfectly consistent

17   with craigslist's stated wishes.  In July 2010, on the question and answer site quora.com, Mr.

18   Newmark responded to the question:  "Why hasn't anyone built any products on top of craigslist

19   data?  Is it a matter of craigslist policy not letting people use the data?"  Mr. Newmark wrote:

20   "Actually, we take issue with only services which consume a lot of bandwidth, it's that simple."

21   Because 3taps does not access craigslist's website to obtain data, it does not consume any

22   bandwidth on the site.  As a result, no reasonable litigant in craigslist's position would believe that

23   its claims have any likelihood of success.

24         158.    craigslist's knowledge that 3taps has publicly sourced its data is further evidenced

25   by the fact that, shortly after filing this lawsuit (and two days after craigslist abandoned its

26   exclusive license requirement), craigslist instructed Google to stop maintaining caches of craigslist

27   content.  As discussed in more detail below, craigslist's demand is a blatant and purely

28   anticompetitive attempt to block 3taps from acquiring craigslist data through general search

58

1   engines like Google.

2        159.    Finally, craigslist's claim that 3taps has infringed its trademarks also is objectively

3   baseless.  3taps' craiggers' site clearly mentions "craigslist" only to describe the source of the

4   onboarded data and—as stated in paragraph 67 of craigslist's Complaint—to advertise itself to

5   users as "better than craigslist!".  There is no likelihood that consumers would be confused into

6   believing that there is any association, affiliation, endorsement, or sponsorship by craigslist.  As

7   3taps informed craigslist in its March 13, 2012 letter discussing craiggers, "[t]here is no attempt to

8   suggest that these services are an extension of, or are endorsed by craigslist.  To the extent that

9   source data is factually identified as having been on-boarded via a particular source (be it eBay,

10   Amazon, etc.) the attribution is meant only to be descriptive and avoid confusion – which is a clear

11   case of fair use and is consistent with the spirit of trademark law."  Moreover, 3taps explained that

12   "[i]f there is a circumstance where you think a 3taps use of the word 'craigslist' is not purely and

13   factually descriptive, we would be pleased to consider any changes you suggest to clarify the

14   presentation."  Rather than discuss these issues with 3taps, craigslist instead filed baseless

15   trademark and related claims against 3taps.

16        160.    craigslist's subjective intent in sending the aforementioned cease and desist letters

17   and/or filing lawsuits is to force competitors to exit the Relevant Markets.

18        161.    As discussed above, craigslist knows that the platform 3taps provides is crucial to

19   any competitor in the search market.  By blocking access to 3taps' platform, craigslist hopes to

20   inhibit competition in search and maintain its dominance in the Relevant Markets.

21        162.    In this respect, craigslist's anticompetitive scheme already has been successful.  For

22   example, after craigslist brought this baseless suit against 3taps, several of 3taps' search engine

23   partners exited the downstream market, and craigslist was thereby able to avoid competition with

24   these competitors, such as HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest,

25   jumpoffcampus.com, wishcan.com, and SnapStore.  Unless craigslist's anticompetitive scheme is

26   enjoined, other specialized search engines, such as JeBoom, PadMapper, and Lovely, likely will

27   suffer the same fate.  Similarly, the anticompetitive scheme would prevent any other new

28   innovators from entering the Relevant Markets through use of 3taps' pre-staged indexed data.

3TAPS' ANSWER AND COUNTERCLAIM          CASE NO.: 12-CV-3816-CRB

## II.     COPYRIGHT MISUSE

163.     craigslist has committed copyright misuse as part of its overall scheme to inhibit innovation and restrain competition in the Relevant Markets.

164.     craigslist's copyright misuse is evidenced by the filing of this lawsuit against 3taps and PadMapper, as well as its numerous other lawsuits and cease and disease letters threatening lawsuits against, *inter alia*, Lovely, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.  As is evident in these suits and cease and desist letters, craigslist engages in copyright misuse in at least two ways.

165.     First, craigslist engages in copyright misuse by claiming protection for material beyond the scope of any valid copyright.  Specifically, craigslist asserts that the factual content of its postings, which 3taps indexes and provides to partners like PadMapper, is protected by copyright when such factual material plainly cannot be subject to any copyright protection.  Thus, craigslist is attempting to use the doctrine of copyright to secure an exclusive right or limited monopoly that could not be granted by the Copyright Office.

166.     Second, because craigslist is not the owner or exclusive licensee of its users' postings, it lacks standing to assert infringement of its users' copyrights, assuming *arguendo* that any such copyrights exist.

167.     craigslist's copyright misuse has compelled numerous competitors to exit the Relevant Markets, and therefore, has furthered craigslist's scheme and had an anticompetitive impact on these markets.  For example, Ziink's Craigslist Helper was disabled in 2012 after it received a cease and desist letter from craigslist.  Similarly, after filing suit against 3taps, craigslist sent cease and desist letters to 3taps' partners, including HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.  These partners subsequently exited the search market.  Unless craigslist's anticompetitive scheme is enjoined, other specialized search engines, such as JeBoom, PadMapper, and Lovely, likely will suffer the same fate.

## III.     IMPROPERLY RESTRICTIVE TERMS OF USE ON CRAIGSLIST'S USERS

168.     craigslist's Terms of Use are an additional component of its scheme to inhibit

1 innovation and competition in the Relevant Markets.

2   169. craigslist's Terms of Use specifically prohibit making "available any program,

3 application or service . . . that enables or provides access to, use of, operation of or interoperation

4 with craigslist."  This provision gives craigslist carte blanche to file suit against any innovator

5 attempting to create an indexing or search tool that is interoperable with craigslist.  It also prevents

6 users from using third-party search and interaction tools in their listings that may be useful to the

7 other users with whom they communicate.

8   170. There is no legitimate business justification for this provision.  Indeed, interoperable

9 programs or applications would enhance the craigslist user experience, at no cost to craigslist.  But

10 craigslist knows that innovation in indexing or searching of craigslist's content would pave the way

11 for innovators to challenge craigslist's dominance in the Relevant Markets.

12   171. Thus, craigslist imposes this term barring access to interoperable applications to

13 stifle such innovation and prevent the emergence of competitors in the Relevant Markets.

14 **IV.** **"GHOSTING" AND OTHER DIRTY TRICKS**

15   172. Another component of craigslist's overall scheme is "ghosting," which is craigslist's

16 practice of refusing to make visible posts or transmit messages that it believes are linked to its

17 competitors, but falsely informing users who upload posts to craigslist from third-party competitor

18 sites that such content actually has been made visible.  In fact, the user receives a confirmation and

19 can view his or her own post, but the post is "ghosted" from anyone else on craigslist.

20   173. For example, a craigslist competitor, such as AirBnB, may provide a user with the

21 option to simultaneously upload posts to both the competitor's site and to craigslist.  The user posts

22 content on AirBnB, and the AirBnB service then re-uploads the content to craigslist for the user.

23 This saves the user time and allows the user to target as many potential readers as possible.  Under

24 such circumstances, craigslist might refuse to make the post visible to other users because of

25 AirBnB's involvement, while providing the user with a false confirmation that his post has been

26 uploaded for other users to see on craigslist.

27   174. "Ghosting" is an anticompetitive mechanism that craigslist employs to discourage

28 using competitive offerings for onboarding and to prevent competitors from gaining traction.

3TAPS' ANSWER AND COUNTERCLAIM      CASE NO.: 12-CV-3816-CRB

1    Because of "ghosting," users are more likely to forego posting on a competing site and simply post

2    directly to craigslist, in order to retain access to craigslist's larger user base.

3        175.    Further, "ghosting" is especially pernicious because it undermines the credibility of

4    competing websites.  For example, a user who attempts to post an ad on both craigslist and a

5    competing site and is "ghosted" will receive a confirmation that his ad has been uploaded to

6    craigslist.  Because the ad will not in fact be uploaded to craigslist, the user may believe that the

7    competitor's site failed to work properly when, in reality, it was craigslist that blocked the user's

8    attempted post.

9        176.    There is no legitimate business justification for "ghosting."  Rather than "ghosting,"

10   craigslist could simply inform users why it will not accept their posts or transmit their messages.

11   Instead, it pursues a course of conduct that diverts users away from competitors and tarnishes their

12   reputations.

13       177.    Thus, "ghosting" is another means by which craigslist seeks to maintain its

14   monopoly positions in the Relevant Markets.

15       178.    As described above, craigslist also has demanded that Google stop maintaining

16   caches of craigslist data.  While craigslist still allows Google to index craigslist content, it only

17   seeks to prevent Google from keeping a record (i.e., a cache) of the indexed content.  3taps

18   historically has relied on the availability of such caches maintained by general search engines as a

19   source of the craigslist data that it indexes.

20       179.    There is no legitimate business purpose for craigslist's conduct.  As explained above,

21   craigslist historically has allowed general search engines like Google to maintain caches of

22   craigslist data.  It was only shortly after craigslist initiated this lawsuit against 3taps (and a mere

23   two days after craigslist abandoned its exclusive license requirement imposed on users) that

24   Google was instructed to cease caching.  The only rationale for craigslist's conduct is to raise the

25   barriers and costs that 3taps faces in sourcing craigslist data via the public domain.

26   **V.    CRAIGSLIST'S BELATED ATTEMPTS TO INNOVATE**

27       180.    In the face of its users' increasing demands for innovation, as well as competition,

28   craigslist has made some belated attempts to innovate.

62

181.    For example, shortly after filing this lawsuit against 3taps and PadMapper, craigslist began attaching maps to some of its apartment listings.  Essentially, craigslist has attempted to adopt an improvement to its site along the lines of the feature PadMapper was sued for introducing. (craigslist's maps are not as sophisticated as PadMapper's because craigslist cannot aggregate multiple listings onto a single map, as PadMapper does.)

182.    Similarly, craigslist has begun to improve its picture viewer, adopting a viewer akin to that employed by craiggers.  craigslist in fact has the temerity to suggest that its alteration of its picture viewer was craigslist's idea and that craiggers copied this innovation, but the inverse is true.

183.    craigslist's willingness to adopt these improvements indicates that it is aware of its user's demand for innovation and the value that innovators like 3taps and PadMapper provide.  It also reveals that craigslist's resistance to change is not the result of its professed desire to retain simplicity as a "public service."  craigslist is happy to embrace innovation, so long as doing so will not enhance the viability of its competitors or potential competitors.

## INJURY TO COMPETITION AND CONSUMERS

184.    craigslist has maintained its monopoly power in the onboarding, indexing, and search markets for classified ads to the detriment of consumers.

185.    3taps is endeavoring to provide a method whereby specialized search engines can provide better search services to consumers.  3taps has the capabilities and resources to create an efficient index.

186.    craigslist's anticompetitive scheme, taken as a whole, limits the ability of 3taps to offer this pre-staged, indexed data, which in turn prevents specialized search engines—including PadMapper, craiggers, JeBoom and others—from offering alternative, attractive products to consumers that allow for better, more efficient searches across multiple classified ad sites.  It also inhibits these companies from competing in the onboarding market, as PadMapper has attempted to compete via PadLister.

187.    craigslist's anticompetitive scheme therefore reduces the output of competitive products offered in the onboarding, indexing, and search markets for online classified ads and thereby limits consumer choice in these markets.

63

188.     Additionally, craigslist's anticompetitive scheme reduces quality in the onboarding, indexing, and search markets for online classified ads by precluding innovation and excluding superior products from the Relevant Markets.

189.     craigslist's anticompetitive scheme is designed to prevent real-time search engines from competing in the onboarding space and offering consumers a more streamlined, efficient service for onboarding.  Thus, craigslist's anticompetitive behavior prevents users from having access to alternative, attractive onboarding products.

190.     If craigslist succeeds in its efforts to use its monopoly power to inhibit 3taps' and its partners' competitive offerings, or even forces 3taps out of the indexing market, consumers will not have access to superior search services and superior onboarding products that real-time search engines are developing.

## ANTITRUST INJURY TO 3TAPS, CRAIGGERS, AND JEBOOM

191.     3taps has standing to bring Sherman Act claims both as a direct competitor of craigslist in the indexing market and as an essential bridge between onboarding markets and other competitors in the search markets.  3taps also has standing as the owner of craiggers, a direct competitor of craigslist in the search market and as the owner of JeBoom, a direct competitor of craigslist in the search market and a potential competitor in the onboarding market.

192.     As a direct result of craigslist's anticompetitive scheme, 3taps has suffered loss in the value of its substantial capital investment in 3taps, lost business opportunities, and damage to its property in the indexing market.  For example, after craigslist brought this baseless suit against 3taps, many of 3taps' search engine partners exited the downstream search market, and craigslist was thereby able to avoid competition with these competitors, such as HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.  If craigslist's anticompetitive scheme is not enjoined, 3taps will continue to lose other potential partners in the search market.

193.     Not only has craigslist's anticompetitive scheme caused 3taps to lose partners, it has had a direct and enormous impact on the value of 3taps' business as a going concern.  But for craigslist's anticompetitive scheme, 3taps would enjoy a going concern value that is exponentially

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

1   greater than it currently has.  For example, ITA was acquired by Google for $700 million in 2011.

2   3taps believes that its indexing business similarly would be valued in the hundreds or millions of

3   dollars, or more, but for craigslist's anticompetitive scheme.

4       194.    3taps also was forced to shut down craiggers as a result of craigslist's

5   anticompetitive scheme and has lost the value of its significant investment in craiggers and suffered

6   damage to its property in the search market.  Further, craiggers has lost users and tremendous value

7   to its business as a going concern.  Other major search providers are worth hundreds of millions of

8   dollars.  For example, as of last week, Kayak's market capitalization was over $1 billion, while

9   Trulia, which searches real estate listings, had a market capitalization of over $600 million.  As

10  described above, AirBnB has been valued at approximately $1.3 billion.  3taps believes that, but

11  for craigslist's anticompetitive scheme, craiggers would be worth hundreds of millions of dollars,

12  as well.

13      195.    Finally, unless craigslist's anticompetitive scheme is enjoined, JeBoom may suffer

14  the same fate as craiggers.  As a result, 3taps would suffer damage to its property in the search

15  market and lose the value of its substantial capital investments in JeBoom, as well as the value of

16  JeBoom's business opportunities and value as a going concern.  At the very least, if JeBoom is

17  deprived of craigslist data, the value of its business would decline substantially.

## CAUSES OF ACTION

## COUNT I

**(Sherman Act § 2 claim for monopolization and attempted monopolization of the onboarding market and related submarkets)**

22      196.    3taps repeats and incorporates by reference the allegations set forth in Paragraphs 1

23  through 195 as if fully set forth herein.

24      197.    Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful

25  monopolization of any part of the trade and commerce among the States, as well as attempts to

26  monopolize any part of the trade and commerce among the States.

27      198.    craigslist has monopoly power in the Relevant Market for the onboarding of

28  classified ad content, and it has maintained this power through anticompetitive behavior.

3TAPS' ANSWER AND COUNTERCLAIM                                    CASE NO.: 12-CV-3816-CRB

199.     craigslist has engaged in an anticompetitive scheme, including filing serial sham litigation and threatening such litigation, copyright misuse, imposing improper Terms of Use on users, and ghosting and other misconduct, to acquire, enhance, and/or maintain this monopoly power in the Relevant Market for onboarding of classified ad content in violation of Section 2 of the Sherman Act.

200.     If for any reason, craigslist is deemed not to have monopoly power in the Relevant Market or Submarkets for onboarding of classified ad content, there is a dangerous probability that craigslist will acquire such power.

201.     craigslist's anticompetitive scheme has given it the power to control pricing and exclude competition in the Relevant Market.

202.     Upon information and belief, network effects impose high barriers to entry and expansion for any potential new entrant into the Relevant Market.  These barriers are evidenced by the failures of major companies—such as eBay and Yahoo!—to enter and gain traction in the Relevant Market.

203.     craigslist's willful and wrongful maintenance and/or extension of its monopoly power (or its attempt to monopolize) is not the result of growth and development as a result of innovation, business acumen, or by virtue of offering a superior product.  Rather, it is a direct consequence of craigslist's intentional, exclusionary conduct in connection with its anticompetitive scheme.

204.     There is no efficiency-enhancing, procompetitive justification for craigslist's behavior.

205.     craigslist's anticompetitive scheme alleged herein has injured (and unless enjoined, will continue to injure) consumers and competitors in the Relevant Market for onboarding through decreased output, reduced choice, reduced innovation, and other anticompetitive effects including raising additional barriers to entry in the Relevant Market.

206.     By reason of craigslist's unlawful monopolization and/or attempted monopolization of the onboarding content market, 3taps—a competitor in the downstream market for indexing which serves as a bridge to the search market for onboarded classified ad content—has been

3TAPS' ANSWER AND COUNTERCLAIM                                                          CASE NO.: 12-CV-3816-CRB

1   injured in its business and property.  Similarly, craigslist's anticompetitive scheme threatens to

2   injure JeBoom by inhibiting its entry into the onboarding market.

3       207.    Unless enjoined and declared illegal, craigslist's unlawful conduct will continue,

4   3taps, as well as its website JeBoom, will continue to sustain injury and damages, and competition

5   will continue to decrease in the Relevant Market.

6       208.    The injuries to 3tapsand JeBoom, other competitors, consumers, and competition

7   described herein are the types of injuries that the antitrust laws are designed to prevent because

8   they are a direct result of craigslist's illegal, anticompetitive scheme to exclude competitors from

9   the market.

10      209.    3taps is entitled to injunctive relief and treble damages.

11   ## <u>COUNT II</u>

12   **(Sherman Act § 2 claim for monopolization and attempted monopolization of the indexing market and related submarkets)**

13

14      210.    3taps repeats and incorporates by reference the allegations set forth in Paragraphs 1

15   through 195 as if fully set forth herein.

16      211.    Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful

17   monopolization of any part of the trade and commerce among the States, as well as attempts to

18   monopolize any part of the trade and commerce among the States.

19      212.    craigslist has monopoly power in the Relevant Market for the indexing of classified

20   ad content, and it has maintained this power through anticompetitive behavior.

21      213.    craigslist has engaged in an anticompetitive scheme, including filing serial sham

22   litigation and threatening such litigation, copyright misuse, imposing improper Terms of Use on

23   users, and ghosting and other misconduct, to acquire, enhance, and/or maintain this monopoly

24   power in the Relevant Market for search-engine indexing of classified ad content in violation of

25   Section 2 of the Sherman Act.

26      214.    If for any reason, craigslist is deemed not to have monopoly power in the Relevant

27   Market or Submarkets for indexing of classified ad content, there is a dangerous probability that

28   craigslist will acquire such power.

1   215.   craigslist's anticompetitive scheme has given it the power to control pricing and

2   exclude competition in the Relevant Market.

3   216.   Upon information and belief, network effects have resulted in high barriers to entry

4   for any potential new entrant into the Relevant Market.  These barriers to entry are evidenced by

5   craigslist's ability to keep major companies—such as Yahoo!—from accessing the raw data from

6   which an index could be developed for use in the downstream search market.

7   217.   craigslist's willful and wrongful maintenance and/or extension of its monopoly

8   power (or its attempt to monopolize) is not the result of growth and development as a result of

9   innovation, business acumen, or by virtue of offering a superior product.  Rather, it is a direct

10  consequence of craigslist's intentional, exclusionary conduct in connection with its anticompetitive

11  scheme.

12  218.   There is no efficiency-enhancing, procompetitive justification for craigslist's

13  behavior.

14  219.   craigslist's anticompetitive scheme alleged herein has injured (and unless enjoined,

15  will continue to injure) consumers and competitors in the Relevant Market for indexing through

16  decreased output, reduced choice, reduced innovation, and other anticompetitive effects including

17  raising additional barriers to entry in the Relevant Market.

18  220.   craigslist's anticompetitive scheme alleged herein also has injured (and unless

19  enjoined, will continue to injure) consumers and competitors in the downstream, interrelated

20  Relevant Market for real-time search through decreased output, reduced choice, reduced innovation,

21  and other anticompetitive effects including raising additional barriers to entry in that Relevant

22  Market.

23  221.   By reason of craigslist's unlawful monopolization and/or attempted monopolization

24  of the indexing market, 3taps—a direct competitor in the market for indexing, which serves as a

25  bridge to the downstream search market—has been injured in its business and property.  Similarly,

26  craigslist's anticompetitive scheme has injured craiggers and JeBoom, neither of which can provide

27  its search product without pre-staged, indexed data from 3taps.

28  222.   Unless enjoined and declared illegal, craigslist's unlawful conduct will continue,

68

1  3taps, craiggers, and JeBoom will continue to sustain injury and damages, and competition will

2  continue to decrease in the Relevant Market.

3      223.    The injuries to 3taps, competitors, consumers, and competition described herein are

4  the types of injuries that the antitrust laws are designed to prevent because they are a direct result

5  of craigslist illegal, anticompetitive scheme to exclude competitors from the market.

6      224.    3taps is entitled to injunctive relief and treble damages.

7                                **COUNT III**

8  **(Sherman Act § 2 claim for monopolization and attempted monopolization of the real-time**
   **search market and related submarkets)**

9

10     225.    3taps repeats and incorporates by reference the allegations set forth in Paragraphs 1

11  through 195 as if fully set forth herein.

12     226.    Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful

13  monopolization of any part of the trade and commerce among the States, as well as attempts to

14  monopolize any part of the trade and commerce among the States.

15     227.    craigslist has monopoly power in the Relevant Market for the search of indexed

16  classified ad content, and it has maintained this power through anticompetitive behavior.

17     228.    craigslist has engaged in an anticompetitive scheme, including filing serial sham

18  litigation and threatening such litigation, copyright misuse, imposing improper Terms of Use on

19  users, and ghosting and other misconduct, to acquire, enhance, and/or maintain this monopoly

20  power in the Relevant Market for search of indexed classified ad content in violation of Section 2

21  of the Sherman Act.

22     229.    If for any reason, craigslist is deemed not to have monopoly power in the Relevant

23  Market or Submarkets for search of indexed classified ad content, there is a dangerous probability

24  that craigslist will acquire such power.

25     230.    craigslist's anticompetitive scheme has given it the power to control pricing and

26  exclude competition in the Relevant Market.

27     231.    Upon information and belief, network effects have resulted in high barriers to entry

28  for any potential new entrant into the Relevant Market.  These barriers to entry are evidenced by

                                      69

1  the failures of other companies—such as Yahoo! Pipes—to successfully facilitate third party

2  developers from entering the Relevant Market and offering competitive search tools—such as

3  Flippity.

4      232.    craigslist's willful and wrongful maintenance and/or extension of its monopoly

5  power (or its attempt to monopolize) is not the result of growth and development as a result of

6  innovation, business acumen, or by virtue of offering a superior product.  Rather, it is a direct

7  consequence of craigslist's intentional, exclusionary conduct in connection with its anticompetitive

8  scheme.

9      233.    There is no efficiency enhancing, procompetitive justification for craigslist's

10  behavior.

11      234.    craigslist's anticompetitive scheme alleged herein has injured (and unless enjoined,

12  will continue to injure) consumers and competitors in the Relevant Market for search through

13  decreased output, reduced choice, reduced innovation, and other anticompetitive effects including

14  raising additional barriers to entry in the Relevant Market.

15      235.    By reason of craigslist's unlawful monopolization and/or attempted monopolization

16  of the search market, 3taps—a competitor in the upstream market for indexing which serves as a

17  bridge to the search market—has been injured in its business and property.  Similarly, craigslist's

18  anticompetitive scheme has injured craiggers and JeBoom by preventing these websites from

19  offering their competitive search products.

20      236.    Unless enjoined and declared illegal, craigslist's unlawful conduct will continue,

21  3taps, craiggers, and JeBoom will continue to sustain injury and damages, and competition will

22  continue to decrease in the Relevant Market.

23      237.    The injuries to 3taps, other competitors, consumers, and competition described

24  herein are the types of injuries that the antitrust laws are designed to prevent because they are a

25  direct result of craigslist illegal, anticompetitive scheme to exclude competitors from the market.

26      238.    3taps is entitled to injunctive relief and treble damages.

27

28

70

<u>**COUNT IV**</u>

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.)**

239.    3taps repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 195 as if fully set forth herein.

240.    This court has jurisdiction over this cause of action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this cause of action arises from the same transactions and from a common nucleus of operative facts as alleged in the federal causes of action alleged in this Complaint.

241.    craigslist is a "person" within the meaning of California Business & Professional Code § 17201.

242.    As alleged herein, craigslist's conduct constitutes "unfair" business practices. Conduct that significantly threatens or harms competition or threatens an incipient violation of an antitrust law may be deemed unfair.

243.    As alleged herein, craigslist's anticompetitive conduct also is unlawful.  craigslist's violations of the federal antitrust laws, or other laws as alleged herein, satisfy the unlawful prong of California Business & Professional Code § 17200.

244.    The injuries to 3taps, other competitors, consumers, and competition described herein are the direct result of craigslist unfair and unlawful practices and conduct.

245.    Unless enjoined and declared illegal, craigslist's unlawful conduct will continue, 3taps will continue to sustain financial injury and damages to its business and property, and competition will continue to decrease in the Relevant Markets.  These injuries are a direct and proximate result of craigslist's unfair and unlawful conduct.

246.    Pursuant to California Business & Professional Code § 17203, 3taps is entitled to permanent and mandatory injunctive relief against craigslist to enjoin craigslist's ongoing wrongful business conduct.  An injunction is needed to enable and restore competition in the Relevant Markets.

71

**COUNT V**

**(Interference with Economic Advantage)**

247.    3taps repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 195 as if fully set forth herein.

248.    This court has jurisdiction over this cause of action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this cause of action arises from the same transactions and from a common nucleus of operative facts as alleged in the federal causes of action alleged in this Complaint.

249.    3taps had the reasonable probability of a business opportunity with partners in the specialized search engine market, including with HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.

250.    craigslist has engaged in an anticompetitive scheme to exclude 3taps, craiggers, and JeBoom from the Relevant Markets.  Through this scheme, craigslist intentionally interfered with the opportunities that 3taps and its search websites were pursuing with many other developers, such as Lovely, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore.

251.    craigslist's unlawful conduct caused 3taps to sustain financial injury and damages to its business and property in an amount to be established at trial.

252.    These injuries are a direct and proximate result of craigslist's interference with 3tap's prospective business relations.

**PRAYER FOR RELIEF**

WHEREFORE, 3taps demands that judgment be entered in its favor and against craigslist:

(a)    declaring that craigslist has monopolized or attempted to monopolize the Relevant Markets in violation of Section 2 of the Sherman Act;

(b)    enjoining craigslist from unlawfully interfering with competition in the Relevant Markets by filing or threatening to file sham lawsuits, engaging in copyright misuse, imposing improper Terms of Use on users, engaging in "ghosting," demanding that general search engines like Google cease caching craigslist content, and engaging in any other anticompetitive conduct.

72

(c)      declaring that the conduct alleged in this Counterclaim is adjudged to be unfair and/or unlawful in violation of Sections 17200 *et seq.* of the California Business and Professions Code;

(d)      awarding 3taps treble damages, reasonable attorney's fees, costs, expenses, and such further relief as the Court deems just and proper.

Dated: September 24, 2012          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

/s/ Allen J. Ruby

Allen J. Ruby
*Attorneys for Defendant*
3TAPS, INC.

## DEMAND FOR JURY TRIAL

Defendant and Cross-Complainant 3TAPS, INC. hereby requests a jury trial in this matter.

DATED:  September 24, 2012          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

BY:     /s/ Allen Ruby

Allen J. Ruby
*Attorneys for Defendant*
3TAPS, INC.

73