Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
Email: venkat@focallaw.com

Attorneys for Defendant and
Counterclaim Plaintiff
PADMAPPER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>3TAPS, INC., a Delaware corporation; PADMAPPER, INC., a Delaware corporation; DISCOVER HOME NETWORK, INC., a Delaware Corporation c/b/a LOVELY; BRIAN R. NIESSEN, an individual, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. CV-12-03816 CRB<br><br>PADMAPPER, INC.'S FIRST AMENDED COUNTERCLAIM<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable Charles R. Breyer |
| PADMAPPER, INC.,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>CRAIGSLIST, INC.,<br><br>Counterclaim Defendant. | |

PadMapper, Inc. ("PadMapper") for its counterclaims against craigslist, Inc. ("craigslist"), alleges as follows:

## NATURE OF ACTION

1. This is an action for damages and injunctive relief arising from unlawful and anticompetitive practices within the online classified advertising industry. craigslist's unlawful actions as described herein severely harm PadMapper's ability to compete, thereby decreasing competition, and resulting in fewer and less beneficial offerings for consumers, all in violation of Section 2 of the Sherman Act (15 U.S.C. § 2) and California Business & Professions Code §§ 17200 *et seq*. PadMapper also requests declaratory relief from the Court as to craigslist's claims of copyright infringement.

## THE PARTIES

2. PadMapper is a Delaware corporation with its principal place of business in Mountain View, California. PadMapper operates its PadMapper website, located at http://www.padmapper.com (the "PadMapper Site") and its PadLister website located at http://www.padlister.com (the "PadLister Site").

3. Upon information and belief, craigslist is a Delaware corporation with its principal place of business in San Francisco, California. craigslist operates its craigslist website, located at craigslist.org (the "craigslist Site"). The craigslist Site contains geographic area sub-sites, such as that for the Chicago area located at chicago.craigslist.org.

## JURISDICTION, VENUE AND COMMERCE

4. PadMapper's counterclaims are compulsory counterclaims brought in accordance with Federal Rule of Civil Procedure 13(a)(1) in that they arise out of the same transactions and occurrences that are the subject matter of the Complaint, and do not require adding another party over whom this Court cannot acquire jurisdiction.

5. PadMapper's first two claims for relief are brought to recover damages caused by, and to secure injunctive relief against, craigslist for its past and continuing violations of Section 2 of the Sherman Act (15 U.S.C. § 2). The Court has federal question jurisdiction over PadMapper's first two claims for relief herein pursuant to 28 U.S.C § 1331 and 1337.

6. PadMapper's third claim is brought pursuant to California Business & Professions Code §§ 17200 *et seq*. The facts underlying PadMapper's third claim for relief share a common nucleus of operative facts and law with PadMapper's first two claims for relief. Therefore, the Court has supplemental jurisdiction over the third claim for relief pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because craigslist resides in this judicial district and a substantial part of the events giving rise to PadMapper's counterclaims occurred in this district.

8. On information and belief, at all times relevant to these counterclaims, craigslist has provided online classified advertising services throughout the United States, and in every state. Consequently, craigslist's business activities that are the subject of these counterclaims are within the flow of and substantially affect interstate trade and commerce.

## RELEVANT MARKETS

### I. PRODUCT MARKETS

#### A. Onboarding of Housing Rental Classified Advertising Content

9. The term "onboarding" refers to the creation, uploading, and maintenance of online classified advertising content. There is a market for onboarding online classified advertising content.

10. craigslist dominates the market for onboarding of online classified advertising content, with what is believed to be a 90% share of the market. In comparison, craigslist's two closest competitors in this market, BackPage and eBay Classifieds, have market shares of approximately 7% and 1.5%, respectively.

11. Within the market for onboarding of online classified advertising content there are smaller markets relating to certain categories of classified ads, such as for jobs, housing rentals, goods for sale, and services for hire. PadMapper competes with craigslist in the market for onboarding of classified advertising content relating to housing rentals via its PadLister website (http://www.padlister.com).

12. craigslist also dominates this smaller market for onboarding of classified

advertising content relating to housing rentals, with what is believed to be an approximately 65%-77% market share. PadMapper, by comparison, has a market share of only a fraction of one percent.

13. There are significant barriers to entry into the market for onboarding of classified advertising content relating to housing rentals. Because of craigslist's dominating market share and user base, persons wishing to onboard classified ads relating to housing rentals have little choice but to do so on craigslist if they wish to reach a significant audience. This makes it difficult for competitors to gain and sustain users. Likewise, without onboarded listings, those competitors have little chance of attracting an audience with which to attract users wishing to onboard listings.

14. Even well-established online companies with substantial resources, such as eBay, have been unable to make significant inroads into the onboarding markets in the United States. As noted by the Delaware Chancery Court in a dispute between craigslist and eBay, "[t]hus far, no competing site has been able to dislodge craigslist from its perch atop the pile of most-used online classifieds sites in the United States. craigslist's lead position is made more enigmatic by the fact that it maintains its dominant market position with small-scale physical and human capital." eBay Domestic Holdings, Inc. v. Newmark, 16 A.3d 1, 8 (Del. Ch. 2010). Smaller companies, such as PadMapper, without the significant resources held by companies like eBay, are further disadvantaged.

15. craigslist's monopoly power in this market can be inferred from its dominant market share and significant barriers to entry.

16. There are no readily substitutable competing products for the onboarding of classified advertising content relating to housing rentals.

17. Traditional classified advertising, such as that found in newspapers or in periodicals, is not a readily substitutable competing product. Onboarding of housing rental advertising provides a multitude of superior features, such as being able to reach a wider audience, the ability to edit ads subsequent to posting them without cost, the ability to take down an ad once a property has been rented, additional and more convenient methods of

communication (such as direct messaging), and integrated management of listing information. Generally, onboarding of housing rental information is also less expensive than traditional print media classified advertising.

18. A hypothetical monopolist can profitably impose a small but significant and non-transitory increase in price for onboarding services, including for onboarding of housing rental listings. The fact that craigslist itself was able to impose fees of between $10 and $75 for onboarding of job postings in certain geographic markets, apartment listings in New York, and therapeutic service listings throughout the United States, while maintaining or increasing its market dominance, provides evidence of this.

19. craigslist's monopoly power in the markets and submarkets for onboarding of online classified ad content is further evidenced directly by its ability to exclude competitors. When competitors who compete in the downstream real-time search markets—such as PadMapper—attempt to provide both onboarding and real-time search services, craigslist, through its market dominance and anticompetitive practices, has been able to prevent those competitors from entering and remaining in both the onboarding and search markets.

### B. <u>The Market for Real-Time Searching of Indexed Housing Rental Classified Ad Content</u>

20. The second relevant product market is the market for real-time searching of indexed housing rental classified advertising content. Indexed data is classified advertising content data that has been, collected, categorized, organized, and stored. Defendant 3Taps, Inc. ("3Taps") operates in the indexing market, collecting online classified advertising data from multiple sources and making it available to real-time search service providers such as PadMapper.

21. Real-time search services allow end-users to search for housing rental information in multiple geographic areas and from multiple websites at one time, while applying filters for such things as desired characteristics, such as price, the number of bedrooms and/or bathrooms, age of listings, or the presence of certain keywords in the listings.

22. In connection with the Department of Justice's investigation of Google's

acquisition of ITA in 2011, the DOJ determined that a distinct antitrust market for this type of real-time search service existed in the analogous airline data space. Similarly, here, real-time search services of indexed online housing rental classified ads constitutes a relevant antitrust market.

23. craigslist dominates the market for real-time searching of indexed housing rental classified ad content. craigslist's market share is estimated to be roughly the same as its market share for onboarding of housing rental classified ad content: 65%-77%.

24. There are no readily substitutable competing services for real-time search services. General internet search engines such as Google and Bing return search results based on criteria which are not ideal for purposes of searching classified ad content. The criteria employed by general search engines typically involve the number of links to a page and the number times the page has been viewed. Because these criteria result in older pages being rated more favorably by a general internet search engine, the top results are typically not the most recently pages. However, most people searching online classified ad content typically desire the most recent information, not what may be deemed the most "authoritative" information by a general search engine. Thus general internet search engines are not adequate for searching classified ads.

25. Many real-time search engines also offer additional features which are absent from general internet search engines, such as more defined search parameters, alternative ways of displaying results, overlays of related information (such as commute times in the case of housing), instant messaging between users, email alerts that inform users of new listings based on users' specified parameters and locations, and integrated online payment features (such as PayPal).

26. A hypothetical monopolist can profitably impose a small but significant and non-transitory increase in price for real-time search of online classified advertising related to housing rentals because there are no substitutes for real-time search engines.

27. craigslist's monopoly in the market for real-time search of indexed classified ad data related to housing rentals is evidenced by its ability to exclude competitors from the real-

time search market as a whole. craigslist has stamped out potential competitors in the real-time search market including craiggers, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore. PadMapper is in danger of joining the ranks of these former real-time search providers if craigslist is allowed to continue its anticompetitive practices.

28. craigslist has been able to maintain and grow its market share in the relevant markets for an extended period of time. The persistence of craigslist's market power in the onboarding and real-time search markets in part reflects the fact that the markets are characterized by certain economies of scale and by significant "network effects."

29. The onboarding venue for which there is the greatest number of searchers will be selected by the large majority of persons wishing to onboard housing rental content and, in turn, searchers will choose to use the search-engine venue for which there is the greatest quantity of onboarded content, in order to appeal to as many potential transaction partners as possible. Economies of scale and network effects, which reinforce one another, result in high barriers to entry into the relevant markets.

30. The barriers that exist to the entry of new competitors or the expansion of smaller existing competitors, including network effects, mean that dominance, once achieved, cannot readily be reversed.

31. These network effects are illustrated by the fact that competitors such as eBay Classifieds, though offering what many people believe to be a superior product, have not been able to gain significant market share in the United States. Indeed, in terms of the number of onboarded listings, craigslist maintains a 15 to 1 advantage over its next closes competitor, BackPage, and a 75 to 1 advantage over eBay Classifieds. Yet, where eBay's offerings compete with craigslist in most foreign markets, eBay's offerings are the more dominant offering, often having arrived to the market first.

**II. GEOGRAPHIC MARKETS**

32. The relevant geographic markets are each local market in the United States in which the relevant product markets operate.

33. A hypothetical monopolist can profitably impose a small but significant and non-transitory increase in price for onboarding and/or real-time search of online classified ads in one local market.

34. A person seeking to post a housing rental listing in San Francisco, for example, would not post the housing rental listing in Chicago as a result of a price increase related to posting the listing in San Francisco. An end user of a real-time online search-engine searching for housing rental listings in Boston would not switch to searching for housing rental listings in San Diego because of an increase in price for searching for housing rental listings in Boston.

35. On information and belief, craigslist's market share is over 65% in many of the local geographic markets for onboarding and real-time search of housing rental classified ad content, and far greater in some cities, such as San Francisco.

## CRAIGSLIST'S UNLAWFUL ANTICOMPETITIVE CONDUCT

### I. SPURIOUS LEGAL THREATS AND LITIGATION

36. craigslist has engaged in a concerted effort to bully competitors in the relevant markets by threatening legal action or filing lawsuits against its competitors based on spurious breach of contract, copyright infringement, and trademark infringement claims. This lawsuit is but one example. Other companies subjected to this bullying include 3Taps, Lovely, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, SnapStore. craigslist's threats and litigation have been for the purpose of stamping out competition.

37. craigslist's breach of contract claims against PadMapper and 3Taps in this case are illustrative. craigslist's breach of contract claims purportedly stem from violations of the craigslist Site's Terms of Use ("TOU"). However, at the time it filed the original complaint, craigslist knew that 3Taps was not directly accessing the craigslist Site in order to collect and index classified ad data. Rather, 3Taps would obtain such data from caches created by general search engines such as Google and Bing, which were expressly permitted under craigslist's TOU to access the craigslist Site and index classified data. Similarly, PadMapper and other 3Taps partners do not access craigslist's Site in order to obtain the classified ad data that they

use to provide their products and services, but instead obtain the indexed data from 3Taps. Consequently, PadMapper and other 3Taps partners such as HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, and SnapStore, which have been the target of craigslist's legal threats, are also not bound by the TOU agreement.

38. craigslist's copyright infringement claims are similarly spurious. craigslist classified ad listings are written and submitted by craigslist's users. Thus, to the extent such listings contain any information that is copyrightable, it is the users who are the copyright holders, not craigslist. craigslist's TOU provides that users grant a license to use the information submitted by the users, but such license is not an exclusive license. (Nor could it be, because under the Copyright Act, an exclusive license must be in writing and signed by the copyright owner.) Thus, under the Copyright Act, craigslist has no standing to bring a copyright infringement claim premised on use of user-submitted data, as the Copyright Act provides that only the owner or exclusive licensee of a work may bring an action for infringement. This is a basic tenet of copyright law, and therefore craigslist's copyright infringement allegations are patently unreasonable. In fact, as is evidenced by craigslist's attempt to change its TOU to provide for the grant of an *exclusive* license subsequent to the filing of this lawsuit, craigslist was well aware of this fact. (craigslist's change to its TOU was short lived due to widespread industry and consumer condemnation.)

39. craigslist's trademark claims are also not well-founded. To the extent they are based on allegations of reproduction of craigslist postings, they are merely copyright claims disguised as trademark claims. Such claims are precluded under the Supreme Court's holding in Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S. 23, 28 (2003) and subsequent court opinions applying Dastar. Courts have consistently applied Dastar to bar trademark claims where the core allegation against the defendant is the improper reproduction of the plaintiff's copyrighted material. See, e.g., Fractional Villas, Inc. v. Tahoe Clubhouse, 2009 U.S. Dist. LEXIS 4191, *10-11 (S.D. Cal. Jan. 22, 2009) ("Plaintiff has not accused defendants of taking tangible objects or services, repackaging them, and selling them under defendants' name. Rather, plaintiff has accused defendants of incorporating copyrighted

materials into defendants' website. Therefore, the Court finds plaintiff has failed to plead a cause of action under the Lanham Act.")

40. To the extent craigslist's trademark infringement claims are premised on allegations of identifying craigslist as the onboarding source of classified ad data, such use is clearly a nominative fair use of the CRAIGSLIST mark, intended only to provide attribution, not a trademark use. The doctrine of nominative fair use is also well-established in trademark law, most famously enunciated more than 20 years ago in New Kids on the Block v. News America Publishing, Inc., 971 F.2d 302 (9th Cir. 1992).

41. Knowing full well that the legal bases for its claims against PadMapper and other competitors were without merit, craigslist has persisted in a campaign of legal bullying, the sole purpose of which is the elimination of competitors or potential competitors from the Relevant Markets.

**II. COPYRIGHT MISUSE**

42. For a copyright owner to use an infringement suit, or threat of suit, to obtain benefits that copyright law does not confer is an abuse of process and constitutes copyright misuse. craigslist's campaign of legal threats and litigation against its competitors, including PadMapper, 3Taps, and Lovely, is exactly that.

43. In asserting copyright infringement claims against indexers such as 3Taps, craigslist has attempted to obtain an exclusive right to use factual content contained in onboarded classified ad listings. However, no copyright protection exists in factual content.

44. Additionally, craigslist has engaged in copyright misuse by asserting copyright infringement claims against its competitors when it clearly lacks standing to do so. The Copyright Act provides that only the owner or exclusive licensee of a work may bring an action for infringement, and craigslist is neither the owner nor an exclusive licensee of content from listings submitted by users of craigslist's Site.

45. craigslist has engaged in copyright misuse for the sole purpose of reducing or eliminating competitors, and craigslist has been successful in doing so. craigslist's bullying has forced competitors such as HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest,

jumpoffcampus.com, wishcan.com, and SnapStore out of the real-time search engine markets.

**III. UNDULY RESTRICTIVE TERMS OF USE**

46. The craigslist Site's TOU are another part of craigslist's effort to inhibit competition in the relevant markets.

47. The TOU prohibit making "available any program, application or service . . . that enables or provides access to, use of, operation of or interoperation with craigslist." Thus, the TOU prevents the development and use of innovative products that are interoperable with the craigslist Site, such as search and interaction tools which consumers overwhelmingly desire, but which craigslist has chosen not to develop or provide. The TOU further prohibit "[a]ny copying, aggregation, display, distribution, performance, or derivative use of craigslist or any content posted on craigslist." Thus, the TOU also prevents the development of services that would make use of user-submitted content that craigslist does not own or have an exclusive license to use.

48. There is no legitimate business justification for these provision of craigslist's TOU. craigslist's TOU purports that these restrictions are "[t]o maintain the integrity and functionality of craigslist for its users." But the development of interoperable programs, applications and services would benefit craigslist's users and pose no threat of harm to the integrity or functionality of craigslist. However, because such programs, applications or services could potentially lead to competition in the relevant markets, craigslist imposes these restrictions on its users.

49. These and other terms of the craigslist TOU are overbroad, unenforceable, and designed solely to unfairly inhibit competition in the relevant markets.

**IV. "GHOSTING"**

50. "Ghosting" refers to a practice utilized by craigslist in connection with postings that craigslist believes originated with or are associated with competitors.

51. Typically, when a posting is submitted to craigslist, it will be assigned a unique URL where the entire posting can be viewed, and a link to the posting, along with a brief text description, will be provided on the category index page (the front page for the particular

category section of the craigslist Site). However, when a posting is “ghosted,” craigslist assigns the URL but does not provide the link to the posting on the index page. Thus, a user of the craigslist Site browsing the particular index page will never be made aware of the posting. The person posting, however, is unaware of the fact that their post was “ghosted,” because the poster receives a posting confirmation just as they would if the post had not been ghosted.

52. Certain competitors of craigslist employ technology which gives a user the option to have a classified ad listing submitted to the craigslist website automatically via the competing site’s service, at the same time as they post the listing to the competing site. This type of services offers the obvious benefit of saving the user time and reaching as large an audience as possible. However, if craigslist believes that a listing was submitted in this manner, the listing may be “ghosted.”

53. A user whose listing has been ghosted will, as a result, receive fewer inquiries about the listing. Because the user receives fewer inquiries, they may become curious as to the reason. Upon investigation, they will learn that the listing was never posted to the index page of the craigslist Site, and will likely believe (falsely) that the competitor’s site was at fault.

54. The net effect of “ghosting” is to lessen consumer confidence with craigslist’s competitors. craigslist could just as easily provide notice that listing was not posted, but this would not provide the anticompetitive effect that it desires.

55. Although craigslist asserts that this practice is employed to combat spam, in reality its purpose is to thwart competition. This is evidenced by the fact that craigslist could simply inform the person attempting to submit a listing why craigslist is will not accept the listing.

56. There is no legitimate business reason for craigslist to implement “ghosting.” craigslist’s sole intent in engaging in “ghosting” is to reduce competition in the relevant markets.

**<u>EFFECTS OF CRAIGSLIST’S ANTICOMPETITIVE CONDUCT</u>**

57. craigslist’s monopolistic and anticompetitive practices have had the following effects, among others, in the relevant markets:

a. Competition in the relevant markets has been unreasonably restrained, suppressed, and in some cases, destroyed as a result of craigslist's anticompetitive actions. Companies such as Oodle, NotifyWire, craiggers, HuntSmartly, Invatory, for-sale-alert.com, list-alert.com, Tempest, jumpoffcampus.com, wishcan.com, SnapStore, and others have been forced to withdraw from the relevant markets.

b. Development of competing products and services, such as those offered by PadMapper, have been hindered or deterred, damaging consumers by depriving them of a choice of products and services with different and, perhaps, superior sets of features;

c. craigslist's unlawful conduct has deterred consumers from doing business with its competitors, including PadMapper, in the relevant markets.

d. craigslist's anticompetitive conduct has caused PadMapper to suffer loss in the value of its capital investment in its business, and has reduced the value of PadMapper's business as a going concern. If not for craigslist's conduct, PadMapper's value would be considerably greater, as evidenced by the value of other major search providers operating in analogous markets. For example, in November 2012, Kayak, which operates a search engine service in the travel space, was acquired by Priceline.com for $1.8 billion. Trulia, which operates a search engine service in the real estate listings space, became a publicly-traded company in September 2012 and currently has a market capitalization of approximately $450 million. Similarly, AirBnB, which provides search engine services for online vacation rental classified ads has been valued at approximately $1.3 billion.

e. Additionally, craigslist's anticompetitive conduct in the related indexing market, most notably its conduct aimed at quashing 3Taps, if allowed to continue, will prevent the acquisition of the pre-staged, indexed data necessary for PadMapper to offer its real time search services.

f. craigslist's monopoly has been entrenched and expanded, resulting in greater domination of the relevant markets and enhancement of barriers to entry.

## CLAIMS FOR RELIEF

### First Claim for Relief

**(Illegal Maintenance of a Monopoly in Violation of Sherman Act, 15 U.S.C. § 2)**

58. PadMapper re-alleges and incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

59. Through the actions described herein, craigslist has willfully maintained monopoly power in the relevant markets. This conduct has reduced competition in the relevant markets, reduced the availability to consumers of new and alternative products in the relevant markets, and reduced the quality of the products being offered in the relevant markets.

60. There is no appropriate or legitimate business justification for the actions and conduct which have facilitated craigslist's monopolization of the relevant markets.

61. As a direct and proximate result of craigslist's actions PadMapper has suffered and will continue to suffer injuries in the form of lost capital investment, lost business opportunities, and damage to the value of its business as a going concern.

62. craigslist's conduct described herein is in violation of the Section 2 of the Sherman Act, 15 U.S.C. § 2, and PadMapper is entitled to a preliminary and permanent injunction restraining craigslist from continuing such conduct. PadMapper has no adequate remedy at law.

**<u>Second Claim for Relief</u>**

**(Attempted Illegal Maintenance of a Monopoly in Violation of Sherman Act, 15 U.S.C. § 2)**

63. PadMapper re-alleges and incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

64. Through the actions described herein, craigslist has knowingly and intentionally attempted to unlawfully monopolize the relevant markets.

65. craigslist's intends by its actions to: (a) control the price of products offered in the relevant markets; (b) eliminate, reduce, limit and foreclose actual and potential competition in the relevant markets; (c) exclude and foreclose other persons from participating in or entering the relevant markets; and (d) injure competition in the relevant markets.

66. There is a dangerous likelihood that craigslist will succeed in its attempt to monopolize the relevant markets. If craigslist is successful, it will result in reduced competition

in the relevant markets, reduced the availability to consumers of new and alternative products in the relevant markets, and reduced the quality of the products being offered in the relevant markets.

67. As a direct and proximate result of craigslist's actions PadMapper has suffered and will continue to suffer injuries in the form of lost capital investment, lost business opportunities, and damage to the value of its business as a going concern.

68. craigslist's conduct described herein is in violation of the Section 2 of the Sherman Act, 15 U.S.C. § 2, and PadMapper is entitled to a preliminary and permanent injunction restraining craigslist from continuing such conduct. PadMapper has no adequate remedy at law.

**<u>Third Claim for Relief</u>**

**(Unlawful and Unfair Business Practices in Violation of California Business Professions Code §§ 17200 et seq.)**

69. PadMapper re-alleges and incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

70. California Business and Professions Code sections 17200 et seq. declares unfair competition unlawful and defines unfair competition as, inter alia, "any unlawful, unfair or fraudulent business act or practice . . . ."

71. As described herein, craigslist has engaged in unlawful business practices in violation of the Sherman Act, 15 U.S.C. § 2. This statutory violation constitutes unfair competition that will continue unless enjoined by the Court.

72. As a direct and proximate result of craigslist's actions, PadMapper has suffered and will continue to suffer injuries in the form of lost capital investment, lost business opportunities, and damage to the value of its business as a going concern.

73. PadMapper is entitled to a preliminary and permanent injunction restraining craigslist from continuing such conduct. PadMapper has no adequate remedy at law.

**<u>Fourth Claim for Relief</u>**

**(Declaratory Relief – Noninfringement of craigslist's Copyrights)**

74. craigslist asserts that PadMapper infringes on craigslists's copyrights by displaying listings originally posted to craigslist via PadMapper's website.

75. craigslist does not own or have rights in the individual listings. PadMapper's display or publication of those listings therefore does not infringe on craigslist's copyrights. Alternatively, PadMapper is using the listings in a manner that constitutes fair use.

76. PadMapper seeks a declaration that its aforementioned conduct does not infringe on craigslist's copyrights.

**PRAYER FOR RELIEF**

PadMapper requests for entry of judgment against craigslist as follows:

**A. First Claim for Relief:**

(a) For entry of a final and binding declaration determining that craigslist has monopolized the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b) For entry of a preliminary and permanent injunction prohibiting craigslist and its officers, directors, employees, agents and others acting in concert or association with craigslist, from directly or indirectly continuing to monopolize the relevant markets in violate Section 2 of the Sherman Act, 15 U.S.C. § 2; and

(c) For entry of an award granting PadMapper treble damages.

**B. Second Claim for Relief:**

(a) For entry of a final and binding declaration determining that craigslist has attempted to monopolize the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b) For entry of a preliminary and permanent injunction prohibiting craigslist and its officers, directors, employees, agents and others acting in concert or association with craigslist, from directly or indirectly continuing to attempt to monopolize the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and

(c) For entry of an award granting PadMapper treble damages.

**C. Third Claim for Relief:**

(a) For entry of a final and binding declaration determining that craigslist actions as

described herein constitute unlawful and unfair business practices in violation of California Business and Professions Code Sections 17200 *et seq*.; and

(b) For entry of a preliminary and permanent injunction prohibiting craigslist and its officers, directors, employees, agents and others acting in concert or association with craigslist, from directly or indirectly continuing to engage in unlawful and unfair business practices in violation of California Business and Professions Code Sections 17200 *et seq*.

**D. Fourth Claim For Relief**

For entry of a final and binding declaration determining that PadMapper's actions as alleged by craigslist do not infringe on craigslist's copyrights.

**E. All Claims for Relief:**

(a) For entry of an award granting PadMapper costs of suit incurred and reasonable attorneys' fees, costs, and expenses; and

(b) For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

PadMapper, Inc. requests a jury trial in this matter

Dated: December 21, 2012

Respectfully submitted,

**FOCAL PLLC**

By: */s/Venkat Balasubramani*

Venkat Balasubramani (SBN 189192)
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
Email: venkat@focallaw.com

Attorneys for Defendant and
Counterclaim Plaintiff
PADMAPPER, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury of the laws of the United States and the State of California that he filed the foregoing PADMAPPER, INC.'S FIRST AMENDED COUNTERCLAIM using the Court's CM/ECF system which will provide ECF notice to counsel for all parties.

Dated: December 21, 2012.

*/s/ Venkat Balasubramani*
Venkat Balasubramani (SBN 189192