1  ALLEN RUBY (Bar No. 47109)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  525 University Avenue
   Palo Alto, California 94301-1908
3  Telephone: (650) 470-4500
   Facsimile: (650) 470-4570
4  Email: allen.ruby@skadden.com

5  Attorneys for Defendant 3TAPS, INC.

6  Additional Counsel Listed on Next Page

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                     SAN FRANCISCO DIVISION
10

11  CRAIGSLIST, INC., a Delaware corporation,    **Case No.** CV-12-03816 CRB

12              Plaintiff,                        **NOTICE OF MOTION, MOTION, AND
                                                  MEMORANDUM OF POINTS AND
13              v.                                AUTHORITIES IN SUPPORT OF
                                                  MOTION TO DISMISS CAUSES OF
14  3TAPS, INC., a Delaware corporation;          ACTION 4, 5, 6, 13 AND 14**
    PADMAPPER, INC., a Delaware corporation;
15  and DOES 1 through 25, inclusive.
                                                  **JURY TRIAL DEMANDED**
16              Defendants.

17
                                                  Judge:      Hon. Charles R. Breyer
18                                                Date:       February 15, 2013
                                                  Time:       10:00 a.m.
19                                                Courtroom:  6

20  ─────────────────────────────────

21  3TAPS, INC., a Delaware corporation,

22              Counter-claimant,

23  CRAIGSLIST, INC., a Delaware corporation

24
                Counter-defendant.
25

26

27

28

3TAPS, INC.'S FIRST AMENDED COUNTERCLAIM            Case No. CV-12-03816 CRB

JAMES A. KEYTE (admitted *pro hac vice*)
MICHAEL H. MENITOVE (admitted *pro hac vice*)
MARISSA E. TROIANO (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-3000
James.Keyte@skadden.com
Michael.Menitove@skadden.com
Marissa.Troiano@skadden.com

CHRISTOPHER J. BAKES (SBN 99266)
M. TAYLOR FLORENCE (SBN 159695)
LOCKE LORD LLP
500 Capitol Mall, Suite 1800
Sacramento, California 95814
Telephone: (916) 930-2500
Facsimile:  (916) 930-2501
cbakes@lockelord.com
tflorence@lockelord.com

JASON MUELLER (Texas Bar No. 24047571) (admitted *pro hac vice*)
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8844
Facsimile: (214) 740-8800
jmueller@lockelord.com

*Attorneys for Defendant*  3TAPS, INC. and
DISCOVER HOME NETWORK, INC.
d/b/a LOVELY

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2013, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 6 of this Court, located on the 17th Floor of 450 Golden Gate Avenue, San Francisco, California, 94104, the Honorable Charles R. Breyer presiding, Defendants 3taps and Discovery Home Network, Inc., d/b/a Lovely, will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff craigslist's "Claims for Relief" 4 (Copyright Infringement as to all Defendants), 5 (Contributory Copyright Infringement), 13 (Computer Fraud and Abuse Act), and 14 (California Comprehensive Computer Data Access and Fraud Act).  Please further take notice that number citations for the "Claims for Relief" were obtained from within Plaintiff's First Amended Complaint.  Plaintiff's caption page misnumbers the Claims for Relief and was not relied on in the preparation of this Notice or any companion papers.

This motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities, all of the records on file in this action, and upon such other further argument that the Court may permit.

---

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................................... 2

    A.  CRAIGSLIST.COM ............................................................................................. 2

    B.  3TAPS, INC. ..................................................................................................... 4

    C.  LOVELY ........................................................................................................... 5

III.  ARGUMENTS AND AUTHORITIES .......................................................................... 5

    A.  CRAIGSLIST'S CLAIMS FOR VIOLATIONS OF THE COMPUTER FRAUD AND
    ABUSE ACT, CALIFORNIA STATE PENAL CODE SECTION 502, AND ITS ALLEGED
    COPYRIGHTS DO NOT PLEAD FACTS SUFFICIENT TO GIVE RISE TO THESE
    CAUSES OF ACTION. .......................................................................................... 5

        1.  CRAIGSLIST'S CLAIM FOR VIOLATIONS OF THE COMPUTER FRAUD
            AND ABUSE ACT AND CALIFORNIA STATE PENAL CODE SECTION
            502 MUST BE DISMISSED. ......................................................................... 7

            a)  craigslist has filed to allege critical, required elements of a CFAA claim. 7

            b)  craigslist has either misread or not read key circuit authority holding that
               the CFAA is strictly an anti-hacking statute. ..................................... 8

        2.  UNDER *NOSAL*, THE CFAA DOES NOT EXTEND TO TERMS OF USE
            RESTRICTIONS OR TO MISAPPROPRIATION; "HACKING" MUST BE
            PLED AND PROVED. ................................................................................ 10

            a)  craigslist's CFAA causes of action seek to apply the Act in precisely the
               way that the Act cannot be applied. ................................................... 11

            b)  craigslist cannot cure its failure to allege prohibited hacking because it has
               judicially admitted that no hacking occurred. ................................... 12

        3.  CRAIGSLIST'S CLAIM FOR VIOLATIONS OF THE CALIFORNIA
            COMPREHENSIVE COMPUTER ACCESS AND FRAUD ACT LIKEWISE
            FAIL. ........................................................................................................ 12

    B.  CRAIGSLIST'S COPYRIGHT INFRINGEMENT CLAIMS RELATING TO
    CLASSIFIED ADS POSTED ON ITS SITE MUST BE DISMISSED BECAUSE IT LACKS
    STANDING AND BECAUSE ITS REGISTRATIONS ARE INVALID. ......................... 12

        1.  CRAIGSLIST LACKS STANDING TO ASSERT COPYRIGHT
            INFRINGEMENT CLAIMS BASED ON USER-GENERATED CONTENT. 14

a) craigslist's token three-week "exclusive license" is invalid. ................... 14

(1) craiglist's language is not sufficiently definite to effectuate the transfer of an exclusive license pursuant to 17 United States Code section 204(a).............................................................. 14

(2) craigslist's users did not assent to the transfer of an exclusive license.................................................................................. 17

b) Even if the transfer is valid (and it is not), craigslist lacks standing because it is not the owner of the copyrights in the user-generated content. . 19

2. THE ASSERTED REGISTRATIONS CRAIGSLIST RELIES ON ARE INVALID AS TO ALL USER GENERATED CONTENT........................................... 20

a) The asserted registrations are facially deficient as to claims of infringement based on user-generated content. ...................................................... 21

b) The relevant statutes and regulations providing for a compilation and its underlying components do not apply. ................................................. 22

c) craigslist's registration was ineffective as to user-generated content because craigslist did not qualify as a claimant as to such content. ............... 23

IV. CONCLUSION AND PRAYER FOR RELIEF........................................................ 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011).................................................................. 6

5

*Ashcroft v. Iqbal*,
6
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ....................... 6

7

*Bean v. Houghton Miflin Harcourt Publ'g Co.*,
    No. CV10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz Aug 10, 2010)....................... 22, 23

8

*Bean v. McDougal Littell*,
9
    669 F.Supp.2d 1031 (D.Ariz. 2008)........................................................ 23

10

*Bell Atlantic Corp. v. Twombly*,
11
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................... 6

12

*Chaset v. Fleer/Skybox Int'l*,
    300 F.3d 1083 (9th Cir. 2002)................................................................. 6

13

*Dana Limited v. American Axle and Manufacturing Holdings, Inc.*,
14
    2012 U.S. Dist. LEXIS 90064 (W.D. Mich. 2012) ................................. 8

15

*Diamond Power Internal, Inc., v. Davidson*,
16
    540 F.Sup.2d 1322, 1343 (N.D.Ga. 2007) ............................................ 11

17

*Effects Assocs., Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990), *cert. denie*d, 498 U.S. 1103 (1991)............................ 15, 19, 24

18

*Feist Publications, Inc. v. Rural Telephone Service*,
19
    499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ........................... 12, 13, 20

20

*Gardner v. Nike, Inc.*,
21
    279 F. 3d 774 (9th Cir. 2002)................................................................ 19

22

*Johnson v. Tuff-n-Rumble Mgt., Inc.*,
    No. Civ. A. 99-1374, 2000 WL 1145748 (E.D. La. Aug. 14, 2000) ...................... 15

23

*Kim Seng Company*, 810 F. Supp.2d at 1056-57 ............................................. 19, 24

24

*Kwan v. Clearwire Corp.*,
25
    No. C09-1392JLR, 2012 WL 32380 (W.D. Wash. Jan. 3, 2012) .................... 17

26

*LVRC Holdings LLC v. Brekka*,
27
    581 F.3d 1127 (9th Cir. 2009)............................................................... 9

28

*McCormick v. Amir Construction, Inc.*,
    No. CV 05-7456CASPJWX, 2006 WL 784770 (C.D. Cal. Jan. 12 2006) .................... 14

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*
(No. 12-cv-00954-AW, 2012 WL 3711513 (D. Md. Aug 24, 2012) (hereinafter "MRIS")) .....
................................................................................................................... 17, 18

*Morris v. Bus. Concepts, Inc.,*
259 F.3d 65 (2d Cir.2001) ........................................................................................ 21

*Morris v. Business Concepts, Inc.,*
283 F.3d 502 (2nd Cir. 2002) ................................................................................... 23

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.,*
712 F.Supp.2d 84 (S.D.N.Y. 2010) ............................................................ 20, 21, 22

*Multiven, Inc. v. Cisco Systems, Inc.,*
725 F.Supp.2d 887 (N.D.Cal. 2010) ......................................................................... 12

*Nafal v. Carter,*
540 F.Supp.2d 1128 (C.D. Cal. 2007) ................................................................ 13, 15

*Navarro v. Block,*
250 F.3d 729 (9th Cir.2001) ....................................................................................... 6

*Oracle America, Inc., v. Service Key,*
LLC, 2012 U.S.Dist. LEXIS 171406 (N.D. Cal. 2012) ......................................... 6, 8

*Orbit One Commc'ns, Inc. v. Numerex Corp.,*
692 F.Supp.2d 373 (S.D.N.Y. 2010) ........................................................................ 11

*Outdoor Media Group, Inc. v. City of Beaumont,*
506 F.3d 895 (9th Cir. 2007) ...................................................................................... 6

*R&R Recreation Prods. v. Joan Cook, Inc.,*
25 U.S.P.Q.2d 1781 (S.D.N.Y. 1992) ....................................................................... 19

*Radio Television Espanola S.A. v. New World Entm't, Ltd.,*
183 F.3d 922 (9th Cir. 1999) .............................................................................. 15, 16

Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237, 1246-47 (2010) ....................................... 20, 21

*Roth v. Jennings,*
489 F.3d 499 (2d Cir. 2007) ...................................................................................... 15

*Silvers v. Sony Picture Entertainment, Inc.,*
402 F.3d 881 (9th Cir. 2004) .............................................................................. 14, 19

*Specht v. Netscape Communication Corp.,*
306 F.3d 17 (2nd Cir. 2002) ...................................................................................... 17

*Starr v. Baca,*
633 F.3d 1191 (9th Cir. 2011) .................................................................................... 6

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................... 6

*United States v. Lanier*,
    520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ...................................... 9

United States v. Nosal (9th Cir. 2012) 676 F.3d 854 ................................................. 1

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ........................................................................ passim

*WEC Carolina Energy Solutions LLC v. Miller*,
    687 F.3d 199 (4th Cir. 2012) ..................................................................... 8, 9, 10

*Weinstein Co. v. Smokewood Entertainment Group*,
    LLC, 664 F. Supp.2d 332 (S.D.N.Y. 2009) .................................... 14, 15, 19, 24

*Wentworth-Douglass Hospital, Plaintiff v. Young & Novis Professional Association*,
    2012 U.S.Dist. LEXIS 90446 (D.N.H. 2012) .......................................................... 8

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Call .................................................................................................................. 17

**STATUTES**

17 U.S.C. § 103(b) ..................................................................................................... 21

17 U.S.C. § 106 ................................................................................................... 19, 23

17 U.S.C. § 202 .......................................................................................................... 19

17 U.S.C. § 409 ............................................................................................. 21, 22, 23

17 U.S.C. § 409(1), (2), and (6) ................................................................................ 20

17 U.S.C. § 411 .......................................................................................................... 21

17 U.S.C. § 411(a) ..................................................................................................... 20

17 U.S.C. § 501(b) ............................................................................................. 13, 19, 20

18 U.S.C. § 1030 .......................................................................................................... 7

17 United States Code section 204(a) .......................................................... 14, 15, 16

18 USC § 1030(a)(1)-(7) .............................................................................................. 7

18 USC § 1030(e)(6) .................................................................................................... 7

**PENAL CODE SECTION 502**......................................................................... 5, 7, 12

**OTHER AUTHORITIES**

37 C.F.R. § 202.3(b)(4)................................................................................. 22

37 C.F.R. § 202.3(b)(5)(i).............................................................................. 22

37 C.F.R. § 202 (a)(3).................................................................................. 23

1 *Melville B. Nimmer & David Nimmer, Nimmer on Copyright*, § 12.02[B] ............................. 13

*Fed. R. Civ. P. 9(b)* ................................................................................... 8

Fed. R. Civ. Proc. 12(b), (d).......................................................................... 15

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 5, 6

http://www.craigslist.org/about/terms.of.use .......................................................... 2

http://www.google.com/#hl=en&tbo=d&output=search&sclient=psy-
ab&q=site:http%3A%2F%2Fsfbay.craigslist.org%2F&oq=site:http%3A%2F%2Fsfbay.cr
aigslist.org%2F&gs_l=hp.12...2538.5368.0.6580.6.6.0.0.0.3.353.1354.0j4j0j2.6.0.les%3B
..0.0...1c.1.uGG49yZo3RA&pbx=1&fp=1&bpcl=40096503&biw=1280&bih=796&bav=o
n.2,or.r_gc.r_pw.r_qf.&cad=b .......................................................................... 4

http://www.google.com/search?q=3+bedroom+apartment%2C+San+Francisco&rls=com.micr
osoft:en-us&ie=UTF-8&oe=UTF-
8&startIndex=&startPage=1#hl=en&tbo=d&rls=com.microsoft:en-us&sclient=psy-
ab&q=two-bedroom%2C+apartment+for+rent+%22san+francisco%22+&oq=two-
bedroom%2C+apartment+for+rent+%22san+francisco%22+&gs_l=serp.12...0i30.9832.22
371.4.23788.18.14.1.0.0.6.1109.5048.0j7j3j0j2j7-
2.14.0.les%3B..0.0...1c.1.WYEfZGIN9M0&pbx=1&bav=on.2,or.r_gc.r_pw.r_qf.&bvm=
bv.1355534169,d.cGE&fp=a4c147812de756a9&bpcl=40096503&biw=1280&bih=796 ...... 5

https://post.craigslist.org/k/PhB4Qi1K4hGjSDD34lxQFw/h7z46?s=subarea ............................... 2

Mark Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 477 .............................................. 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

**Copyright Infringement and Contributory Copyright Infringement (Claims for Relief 4 and 5):**
Plaintiff lacks standing to assert rights of copyright as to user-created content posted on its site,
particularly where Plaintiff elsewhere and vigorously renounces any responsibility whatsoever for the
content.  Plaintiff's copyright "registrations" are themselves invalid and cannot form the basis for the
claims for relief 4 and 5.

**Violations of Computer Fraud and Abuse Act (and its state law counterpart, the California
Comprehensive Computer Access and Fraud Act) (Claims for Relief 13 and 14):**  Where a
statute provides the basis for both criminal and civil liability, the "rule of lenity" requires that the
statute be narrowly construed.  Here, Plaintiff relies on its own Terms of Use to allege civil violations
of the Computer Fraud and Abuse Act.  However, the CFAA must be narrowly construed as an "anti-
hacking" statute, not a statute useful against those who violate private terms of use.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4   craigslist, the online classified ad portal for products and services being sold or offered by the

5   public, has sued to prohibit and restrict access to and use of these very same ads.  This motion to

6   dismiss is aimed at craigslist's claims for relief alleging copyright violations arising out of craigslist's

7   entirely user-generated ads (against all defendants) (4th and 5th causes of action), and claims for relief

8   alleging violations of federal and state anti-hacking statutes (against 3taps) (13th and 14th causes of

9   action).  Because ads posted on craigslist do not belong to craigslist, and because craigslist has made

no allegations of hacking, these claims for relief should be dismissed.

10      craigslist's user ads are authored by the advertisers themselves, not by craigslist.  Nor does

11   craigslist select or arrange the ads; they are simply stacked as they come in, with the newest posting

12   at the top of the list.  Furthermore, once posted, the ads remains in the public domain visible

13   worldwide.  Not only does craigslist not own these ads or the facts contained in them, the craigslist

14   site contains multiple vigorous disclaimers of any responsibility for the ads, the ads' content, what is

15   being sold or offered, or for any other detail or feature of the ads.

16      In offering this largely free online marketplace, craigslist does not require user credentials of

17   any kind.  In the craigslist online world, there are no usernames, no passwords, and no other forms of

18   access restriction.  Anyone with a computer can fully access all features of the classified sections of

19   the site.  Once the user presses the figurative "post" button, his or her content is launched into

20   cyberspace – and the ad and the facts it contains ("for rent," "tickets wanted," "roommate sought")

21   are available for the world to see.

22      craigslist's user-created classified ads cannot be made the subjects of copyrights or of anti-

23   hacking penal statutes.  As to the penal statutes, craigslist pleads civil violations of the Computer

24   Fraud and Abuse Act (and a similar state statute), but does so as if the leading 9th Circuit case –

25   *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) – was not decided.  As to copyright, craigslist

26   has no standing to enforce copyrights in content created by others – content that it vigorously

27   disclaims any responsibility for.  craigslist has failed to properly register them in any event.  In short,

28

1   craigslist cannot copyright what it does not own and it cannot aim anti-hacking penal statutes at

2   parties it fails to claim are hacking.

3                    II.        **FACTUAL BACKGROUND**

4   **A.      CRAIGSLIST.COM.**

5          craigslist is a well-known website that displays classified ads posted largely for free by the

6   public.  (First Amended Complaint, ¶ 1; hereinafter "FAC ¶ ___."  *See* website, *available at*

7   craigslist.com.)  All ads – paid and free – are accessed in the same way.

8          craigslist is used by both buyers and sellers (or, given the range of colorful possibilities on the

9   site, "offerors" and "offerees").  Its structure and format follow the time-honored "classified ad"

10  format, which in craigslist's case is organized first by geographic location, then by product or

11  service.  FAC ¶ 29.  Geographic locations range from "San Francisco Bay Area" to "Gold Country"

12  in California, to multiple other regions across the United States and around the world.  FAC ¶ 4; *see*

13  *also* craigslist web page, available at  http://www.craigslist.org/about/sites/.[1]  Despite this global

14  reach, however, cross-regional searches cannot be conducted.[2]  FAC ¶¶ 31, 33.  While craigslist

15  refers to this as "the essential locality" of its site (FAC ¶ 4), it is more plausibly a relic of early,

16  primitive websites that lacked genuine search functions.[3]  Indeed, craigslist boasts that its look, feel

17  and structure have barely changed since its inception, referring to this stasis as "distinctive in its

18  simplicity."  FAC ¶ 47; *see also* ¶ 48.  Within the standard product and service categories, users

19  generate *all* of the classified ads.  craigslist does not select the content for the site.  Nor does it select

20  the arrangement of the content; posts are listed in the order they arrive.

21         Ads on craigslist are entirely the work of the person or entity doing the advertising.  *See*, *e.g.*,

22  FAC ¶¶ 34 ("the user creates a unique classified ad") and 49 ("each user-generated posting . . . is

23  itself an original work of creative expression").  Not only is the work not craigslist's, craigslist makes

24  it unambiguously clear that it takes no responsibility for anything posted, for the transactions that

25  result, or for any act, incident, or consequence associated with any resulting transaction.  *See* FAC,

26

27  _____

    [1] Hyperlinks are cumbersome in context.  In this brief, most hyperlinks will be placed in footnotes.

28  [2] *See* craigslist web page, *available at*    https://post.craigslist.org/k/PhB4Qi1K4hGjSDD34lxQFw/h7z46?s=subarea
    ("there is no need to cross-post to more than one area - doing so may get you flagged and/or blocked - thanks!")
    [3] *See also* TOU, Section 4, "POSTING AND ACCOUNTS," *available at* http://www.craigslist.org/about/terms.of.use.

Section B, *passim*, citing craigslist Terms of Use.[4]  The Terms of Use are firm, unambiguous, and relentless in conveying just how fully craigslist distances itself from each "original work of creative expression":

> 3. CONTENT AND CONDUCT
>
> a. Content
>
> CL does not control, is not responsible for and makes no representations or warranties with respect to any user content. You are solely responsible for your access to, use of and/or reliance on any user content. You must conduct any necessary, appropriate, prudent or judicious investigation, inquiry, research and due diligence with respect to any user content.
> You are also responsible for any content that you post or transmit and, if you create an account, you are responsible for all content posted or transmitted through or by use of your account.
> ….
>
> b. Conduct
>
> CL does not control, is not responsible for and makes no representations or warranties with respect to any user or user conduct. You are solely responsible for your interaction with or reliance on any user or user conduct. You must perform any necessary, appropriate, prudent or judicious investigation, inquiry, research and due diligence with respect to any user or user conduct.
> You are also responsible for your own conduct and activities on, through or related to craigslist, and, if you create an account on craigslist, you are responsible for all conduct or activities on, through or by use of your account.

craigslist Terms of Use, attached as Exhibit B-2 to the Declaration of Christopher J. Bakes.  (The Bakes Declaration attaches all Exhibits cited in this memorandum, which will simply be referred to as "Exh. ___", with the exhibit's letter reference inserted.)

Though craigslist has been in place since 1995, it only registered for copyright protection for user-created content on July 19 and July 20, 2012, the latter being the date this lawsuit was filed.  FAC ¶¶ 50-53.  In other words, for virtually the entirety of craigslist's prior existence, it never thought to copyright user-created ads it repeatedly renounced responsibility for.  The very notion of claiming copyright protection for them must have seemed absurd.  When craigslist did finally attempt to register them, the registrations failed and were (are) invalid.

craigslist doesn't require access credentials, passwords, usernames, or any other form of

---

[4] TOU, *supra*, generally, and Section 3, "CONTENT AND CONDUCT," *available at* http://www.craigslist.org/about/terms.of.use, and attached as Exhibit B-2 to the Declaration of Christopher J. Bakes.

1    access control.  Ad placement and ad review are uncomplicated.  FAC ¶ 25.  Yet the site shows it

2    age.  Its "essential locality" means a user can't search across regions – at all.  FAC ¶¶ 4, 31.  Nor can

3    a user search across product categories, place the same ad across product categories, or search a

4    category by product feature (the last ad placed will always be the first one seen).  craigslist has, by

5    today's web standards, become every bit as rigid a tool as the newspaper classifieds it has largely

6    replaced – a remarkable underachievement for a website as we approach the year 2013.

7    **B.    3TAPS, INC.**

8            Stepping to a computer, and "googling" the words "two-bedroom, apartment for rent 'san

9    francisco'" will instantly return a slew of publicly available results retrieved, then presented for view

10   by the world's most popular search engine, Google.  (Similar results appear with the "Bing" and

11   "Yahoo!" search engines.)  Almost certainly, this search will return user ads posted on craigslist.

12   Indeed, in support of its own search functions, Google retrieves information by accessing sites such

13   as craigslist and then indexes the results to enable these quick and successful searches.  *See*, *e.g.*,

14   FAC ¶ 44.  An easy test to determine just how much *craigslist* Google indexes can be conducted by

15   entering the search term "site:" (with colon) in the Google search box, followed by the address of a

16   "local" craigslist site, here using http://sfbay.craigslist.org/.  *See*, *e.g.*, Exh. A.  The result will show

17   that Google indexed and had the capability of returning 2.5 million search results from the craigslist

18   website.[5]  However, while Google, Bing and Yahoo! are capable of returning these huge quantities of

19   information, the results will not be organized.  Turning to craigslist will not help, since craigslist only

20   organizes by region and category, not by feature or attribute – and, in fact, punishes cross-location

21   postings.

22          As to the search retrieval process itself, the user's original search "two-bedroom, apartment

23   for rent 'san francisco'" will result in retrievals of even more massive quantities of publicly available

24   data (58,900,000 results, to be exact[6]), including from craigslist.  *See*, *e.g.*, Exh. A.  All of these

25

26   _____
     [5]  The full search address for this result is http://www.google.com/#hl=en&tbo=d&output=search&sclient=psy-

27   ab&q=site:http%3A%2F%2Fsfbay.craigslist.org%2F&oq=site:http%3A%2F%2Fsfbay.craigslist.org%2F&gs_l=hp.12...2
     538.5368.0.6580.6.6.0.0.0.3.353.1354.0j4j0j2.6.0.les%3B..0.0...1c.1.uGG49yZo3RA&pbx=1&fp=1&bpcl=40096503&bi

28   w=1280&bih=796&bav=on.2,or.r_gc.r_pw.r_qf.&cad=b.  If being read online, all linked data may be accessed by placing
     the cursor over the link and selecting control + click.
     [6] The full search address for this result is

_____

searches and retrievals will occur without user credentials.  Nor does craigslist itself require any form of user credentials for entry, review or even response.  If it did, craigslist ads would not show up in search results.

3taps, as even craigslist describes it, has developed software design tools that enable organization of retrieved results, doing so through an "Application Programming Interface" or "API." *See*, *e.g.*, FAC ¶¶ 3, 60-64.  Most notably, as craigslist admits by implication, the API enables users to conduct more specific searches than craigslist is able to provide.  FAC ¶¶ 2, 3, 31, 47, 48.  Hence, information publicly available on craigslist can be organized to produce search results more specific and responsive to the user's search.  As craigslist also admits by implication, this includes allowing users to conduct cross-location searches. FAC ¶¶ 2, 3, 31, 47, 48.  Far from being the *quelle horreur* alleged by craigslist, all of this simply enables better searches for information that users have already publicly posted and for which, to re-emphasize, craigslist elsewhere disclaims any responsibility.

## C.    LOVELY.

Lovely's opening web page says this: "Search thousands of apartment listings from across the web, visually displayed on a map."  Its user interface (available at http://livelovely.com-/search), enables apartment hunters to provide their search information (location; bedrooms; rent range) that results in a map of available apartments.

There is no comparable search function on craigslist, as craigslist repeatedly admits by implication – and as use of its site readily reveals.

## III.    ARGUMENTS AND AUTHORITIES

## A.    CRAIGSLIST'S CLAIMS FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, CALIFORNIA STATE PENAL CODE SECTION 502, AND ITS ALLEGED COPYRIGHTS DO NOT PLEAD FACTS SUFFICIENT TO GIVE RISE TO THESE CAUSES OF ACTION.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

---

http://www.google.com/search?q=3+bedroom+apartment%2C+San+Francisco&rls=com.microsoft:en-us&ie=UTF-8&oe=UTF-8&startIndex=&startPage=1#hl=en&tbo=d&rls=com.microsoft:en-us&sclient=psy-ab&q=two-bedroom%2C+apartment+for+rent+%22san+francisco%22+&oq=two-bedroom%2C+apartment+for+rent+%22san+francisco%22+&gs_l=serp.12..0i30.9832.22371.4.23788.18.14.1.0.0.6.1109.5048.0j7j3j0j2j7-2.14.0.les%3B..0.0...1c.1.WYEfZGIN9M0&pbx=1&bav=on.2,or.r_gc.r_pw.r_qf.&bvm=bv.1355534169,d.cGE&fp=a4c147812de756a9&bpcl=40096503&biw=1280&bih=796.

---

DEFENDANT 3TAPS, INC.'S MOTION TO DISMISS                                    CV-12-03816 CRB

sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). It is well-established that "[a] complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory." *Oracle America, Inc. v. Service Key*, LLC, 2012 U.S.Dist. LEXIS 171406 (N.D. Cal. 2012), citing *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Courts "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007).

In opposition, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plaintiff's complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002). "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[.]" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011) (internal quotations omitted).

craigslist is a portal intended for original works that kept-at-arms-length authors create, control and choose to make public on what is still called the "world-wide-web." No user credentials are required to access this information, and no "hacking" is required to view, respond, or post.

*First*, Craigslist's causes of action for violation of the Computer Fraud and Abuse Act (and related California Penal Code section 502) disregard the Ninth Circuit's recent holding in *United*

---

*States v. Nosal,* 676 F.3d 854 (9th Cir. 2012).[7]  *Nosal* held that the Computer Fraud and Abuse Act (CFAA) must be narrowly construed as an "anti-hacking" statute, *i.e.*, where access credentials are abused or manipulated to access then damage, alter or manipulate computers or computer systems. According to *Nosal*, the CFAA is not a "misappropriation statute" and does not apply to "violations of computer use restrictions." *United States v. Nosal* 676 F.3d 854, 857 (9th Cir. 2012).  Yet "violations of use restrictions" and  "misappropriation" are the complete sum and substance of Craigslist's CFAA and Penal Code causes of action.  Craigslist nowhere alleges any form of "hacking."

*Second*, Craigslist is not the owner or exclusive licensee of works that others have created and has no standing to pursue a copyright claim arising out of them.  Even if it had such an interest, its copyright registrations are invalid.  While craigslist did register "something," it manifestly had no right to register as its own the works of others.  Like a telephone directory listing, these ads are facts owned, controlled, authored and presented by others.

### 1.    CRAIGSLIST'S CLAIM FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT AND CALIFORNIA STATE PENAL CODE SECTION 502 MUST BE DISMISSED.

#### a)    craigslist has filed to allege critical, required elements of a CFAA claim.

The Computer Fraud and Abuse Act, codified at 18 United States Code section 1030, prohibits seven different categories of accessing a computer "without authorization" or accessing a computer and then "exceed[ing] authorized access."  18 USC § 1030(a)(1)-(7).  The Act defines "exceeds authorized access" to mean access originally authorized but which is then used to "obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 USC § 1030(e)(6).

craigslist only alleges that "Section 1030 '*et seq.*'" has been violated.  Sections (a)(1), (3), (6), or (7) cannot apply since they only cover cases involving national security, United States Government computers, illicit trafficking in access information (such as sale of a password), or extortion, respectively.  That leaves Sections (a)(2), (4), and (6).  But if Sections (a)(4) and (6) are

---

[7] 18 U.S.C. § 1030, *infra.*

1    meant, each involves "fraud" and must be particularly pled.  *Oracle America, Inc. v. Service Key*,

2    LLC, 2012 U.S.Dist. LEXIS 171406 (N.D. Cal. 2012), applying *Fed. R. Civ. P. 9(b)*.  That leaves

3    Section (a)(2).

4           In the end, it doesn't matter which one craigslist *meant* to plead, since the CFAA cannot be

5    made the basis of any cause of action arising out of the facts craigslist *has* pled.  craigslist has not

6    alleged, pled or described any act of "hacking," and the CFAA – in this Circuit – applies only to

7    hacking, defined most basically as:  "**hack into,** *Computers.* to break into (a server, Web site, etc.)

8    from a remote location to steal or damage data: *Students are constantly trying to hack into their*

9    *school server to change their grades."*  Source: *dictionary.com*.

10                          **b)      craigslist has either misread or not read key Circuit authority**
                                     **holding that the CFAA is strictly an anti-hacking statute.**

11

12          *United States v. Nosal* is the seminal case on the CFAA in this Circuit, and has been followed

13   elsewhere.  *See, e.g.*, *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012),

14   *Wentworth-Douglass Hospital, Plaintiff v. Young & Novis Professional Association*, 2012 U.S.Dist.

15   LEXIS 90446 (D.N.H. 2012), *Dana Limited v. American Axle and Manufacturing Holdings, Inc.*,

16   2012 U.S. Dist. LEXIS 90064 (W.D. Mich. 2012) (including cases cited), and *United States v. Nosal*,

17   676 F.3d at 863 (cases cited).  *Nosal* stands for the simple proposition that the CFAA applies only to

18   "hacking," not to actions in violation of use restrictions, misappropriation, or any other act not

19   directly involving a "hack" or a break-in.

20          In *Nosal*, an employee – David Nosal – left his employer, Korn/Ferry, to start a competing

21   business (executive recruiting).  He solicited others to leave.  Before they left, Mr. Nosal induced

22   them to download Korn/Ferry confidential information using their own duly assigned log-in

23   credentials.  The employees did so, then transferred the information to Mr. Nosal.  As then-current

24   employees, their access was authorized.  However, Korn/Ferry had a policy forbidding disclosure of

25   confidential information.  Based on this policy, Mr. Nosal was arrested and indicted on multiple

26   federal charges, including violations of the CFAA, specifically section 1030(a)(4), "'exceed[ing]

27   authorized access' with intent to defraud."  *United States v. Nosal*, 676 F.3d at 855.

28

Mr. Nosal moved to dismiss the CFAA counts, arguing that the statute targeted only hackers, not individuals who access a computer with authorization but then misuse information they obtain. The district court found against him, holding that use in excess of access restrictions renders the access "unauthorized" as a matter of law and therefore illegal under the CFAA.

Shortly after this, the Ninth Circuit decided *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), which narrowly construed the operative CFAA terms "without authorization" and "exceeds authorized access." Based on *Brekka*, Mr. Nosal moved for reconsideration and another motion to dismiss. The district court reversed itself, holding that "[t]here is simply no way to read [the definition of 'exceeds authorized access'] to incorporate corporate policies governing use of information unless the word alter [in the statute] is interpreted to mean misappropriate," because "[s]uch an interpretation would defy the plain meaning of the word alter, as well as common sense." *United States v. Nosal*, 676 F.3d at 856, citing the district court.

In holding that the CFAA is an anti-hacking criminal statute, *Nosal* held that the Act must be construed narrowly, reaching only cases where access credentials have been abused for the purpose of breaking into, then damaging or otherwise misusing the target computer. *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir.) The CFAA is not, emphasized *Nosal*, an "expansive misappropriation statute" or a "violation of computer use restrictions" statute. *United States v. Nosal*, 676 F.3d at 857-863.

In its reasoning, *Nosal* emphasized that the CFAA is a criminal statute. While civil actions may be brought under it, its overriding criminal purpose requires that it be read narrowly. Called the rule of "lenity," statutes applicable in both the criminal and civil contexts *must be* construed narrowly since a court's interpretation applies in both contexts. *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d at 204, citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004), and *United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). According to the Fourth Circuit in *WEC Carolina*, which in providing lessons on "lenity" was in the process of adopting *Nosal*,

> in the interest of providing fair warning 'of what the law intends to do if a certain line is passed,' *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 704 n.18, 115 S. Ct. 2407, 132 L. Ed. 2d 597 (1995) (quoting *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L. Ed. 2d 488 (1971)), we will construe this

criminal statute strictly and avoid interpretations not 'clearly warranted by the text,' *Crandon v. United States*, 494 U.S. 152, 160, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990).

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d at 204.

In discussing and applying lenity and strictly construing the CFAA, *Nosal* emphasized that broader construction of the CFAA would

> expand [the CFAA's] scope far beyond computer hacking to criminalize any unauthorized use of information obtained from a computer. This would make criminals of large groups of people who would have little reason to suspect they are committing a federal crime. While ignorance of the law is no excuse, we can properly be skeptical as to whether Congress, in 1984, meant to criminalize conduct beyond that which is inherently wrongful, *such as breaking into a computer*.

*U.S. v. Nosal*, 676 F.3d at 859 (italics added).

### 2. UNDER *NOSAL*, THE CFAA DOES NOT EXTEND TO TERMS OF USE RESTRICTIONS OR TO MISAPPROPRIATION; "HACKING" MUST BE PLED AND PROVED.

*Nosal* condemned attempts to use the CFAA to criminalize violations of private "terms of use" since, according to *Nosal*, doing so would enable website operators to criminalize anything they wished just by adopting or modifying their terms of use. *U.S. v. Nosal*, 676 F.3d at 860. *Nosal* stated it would not allow "private parties to manipulate their computer-use and personnel policies so as to turn these relationships into ones policed by the criminal law," since this would allow criminal liability to be imposed through aggressive phrasing of use restrictions. *Id.* As *Nosal* observed, a website can abruptly change or modify its terms of use, so that "behavior that wasn't criminal yesterday can become criminal today without an act of Congress, and without any notice whatsoever." *U.S. v. Nosal*, 676 F.3d at 862. *Nosal* criticized those courts that broadly construed the CFAA, since they

> looked only at the culpable behavior of the defendants before them, and failed to consider the effect on millions of ordinary citizens caused by the statute's unitary definition of 'exceeds authorized access.' They therefore failed to apply the long-standing principle that we must construe ambiguous criminal statues narrowly so as to avoid 'making criminal law in Congress's stead.'

*U.S. v. Nosal*, 676 F.3d at 862-863.

In identifying "hacking" as the CFAA's sole target, *Nosal* conclusively held that the Act does not prohibit access *unless* there is hacking. Nor does the CFAA prohibit misappropriation,

---

unauthorized disclosure, or use or misuse of information accessed.  *U.S. v. Nosal*, 676 F.3d at 863, citing *Shamrock Foods Co. v. Gast*, 535 F. Supp.2d 962, 965 (D.Ariz. 2008), *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F.Supp.2d 373, 385 (S.D.N.Y. 2010) ("CFAA expressly prohibits improper 'access' of computer information.  It does not prohibit misuse or misappropriation."), *Diamond Power Internal, Inc., v. Davidson*, 540 F.Supp.2d 1322, 1343 (N.D.Ga. 2007) ("[A] violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted.")

### a) craigslist's CFAA causes of action seek to apply the Act in precisely the way that the Act cannot be applied.

craigslist's CFAA causes of action are premised solely on alleged violations of craigslist's Terms of Use:  "On information and belief, Defendants knowingly and intentionally accessed craigslist's computers without authorization '*or*' in excess of authorization as defined by craigslist's TOU."  FAC ¶ 214 (italics and internal quotes added); *see also* FAC ¶¶ 14 (TOU governs "Defendants' access to and use of the craigslist website"), 135 ("Defendants regularly accessed the craigslist website with knowledge of the TOU and all of its prohibitions."), 136 ("The TOU are binding on Defendants."), and 137 ("… willfully, repeatedly and systematically breached the TOU").

In the next paragraph (¶ 215), craigslist alleges *why* this violates the CFAA:  "…after gaining unauthorized access to craigslist's servers, Defendants obtained and used valuable information from craigslist's protected computers and servers in transactions involving interstate or foreign communications.  This information includes, among other things, *craigslist posts* and other content, and the use includes, among other things, *distributing that content to others*."  FAC ¶ 215 (italics added).

In other words, craigslist makes central to its CFAA claim precisely what *Nosal* says it *cannot* make central:  its own Terms of Use.  There is no allegation of "hacking," a "break-in," or anything of the kind.  craigslist cannot even decide whether Defendants initially entered without authorization "*or*" whether they later exceeded their authorization.[8]

---

[8] While claiming that it offers search engines like Google a "very limited exception" because they meet certain criteria (FAC ¶ 44), these certainly are not contained in craigslist's terms of use.  Furthermore, it is difficult in any event to see how Google's several million indexed craigslist hits amount to a "very limited exception."

---

DEFENDANT 3TAPS, INC.'S MOTION TO DISMISS                                    CV-12-03816 CRB
Page 11

1

    **b)**  **craigslist cannot cure its failure to allege prohibited hacking because it has judicially admitted that no hacking occurred.**

2

3    At First Amended Complaint paragraph 215, *supra*, craigslist pleads that the initial entry was

4 not the problem; it was the later *dissemination* that mattered – dissemination of "craigslist posts" –

5 *i.e.*, the user ads drafted by others, placed on a public website, with loud disclaimers that craigslist is

6 not responsible for them.  *See also* FAC ¶ 64 (craigslist must "control the distribution of *its* content."

7 Italics added.)

8    It is dissemination of ads that craigslist has pled it must prevent – not hacking.  craigslist

9 should not be given leave to amend.  Its allegations – judicial admissions all – can manifestly not be

10 transmogrified into a hacking crime.

11    **3.**  **CRAIGSLIST'S CLAIM FOR VIOLATIONS OF THE CALIFORNIA COMPREHENSIVE COMPUTER ACCESS AND FRAUD ACT LIKEWISE FAIL.**

12

13    California Penal Code section 502 is the California corollary to the CFAA.  *Multiven, Inc. v.*

14 *Cisco Systems, Inc.,* 725 F.Supp.2d 887, 895 (N.D.Cal. 2010).  Here, craigslist's Section 502 claim is

15 based on the identical facts as its CFAA claim.  Since the necessary elements of Section 502 do not

16 differ materially from the necessary elements of the CFAA (*Multiven, Inc. v. Cisco Systems, Inc.*, 725

17 F.Supp.2d at 895), the CFAA analysis provided in the preceding section applies and the cause of

18 action should be dismissed.  (No case has apparently construed the California statute in light of

19 *Nosal*.)

20 **B.** **CRAIGSLIST'S COPYRIGHT INFRINGEMENT CLAIMS RELATING TO CLASSIFIED ADS POSTED ON ITS SITE MUST BE DISMISSED BECAUSE IT LACKS STANDING AND BECAUSE ITS REGISTRATIONS ARE INVALID.**

21

22    craigslist admits, as it must, that it does not own the classified ads posted to its site by users.

23 Nor does craigslist select the ads - it merely accepts what is posted, or deletes what is flagged by

24 users as abuse.  Nor does craigslist arrange the ads; they are listed in the order they are posted.  Ads

25 are stacked in a list format that displays no creativity and no originality – indeed, the very concept of

26 "classified ads" is centuries old.

27    This type of ordered listing of third party content is akin to telephone directory listings.  As

28 with telephone listings, craigslist adds nothing to the user content it posts.  In *Feist Publications, Inc.*

---

*v. Rural Telephone Service*, the Supreme Court held that "there is nothing remotely creative about arranging names alphabetically in a white pages directory.  It is an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course."  *Feist Publications, Inc. v. Rural Telephone Service,* 499 U.S. 340, 347, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).  Similarly here, there is nothing "remotely creative" about arranging classified ads in the order they arrived.  Furthermore, the categorization of goods and services is an "age-old practice that is firmly rooted in tradition and so commonplace in multiple settings that it has come to be expected as a matter of course."  *Id.*  Every classified ad section of every newspaper has similarly categorized classified ad listings going back decades.  The Court in *Feist* concluded that the inevitable arrangement of such a listing of third party content "does not possess the minimal creative spark required by the Copyright Act and the Constitution."  *Feist*, 499 U.S. at 363.

Left without ownership of the ads or original creativity in their selection or arrangement, craigslist's resort to copyright law is a manipulation discernible in the First Amended Complaint.  craigslist, while loudly renouncing all responsibility for the classified ads, simultaneously claims intellectual property rights in them, and bases its claim for infringement on its status as *an exclusive licensee* of the content of those ads – a status that it maintains existed for a brief speck of time (July 16, 2012 and August 8, 2012) during which craigslist changed its Terms of Use to insert an *exclusive* license provision.  FAC ¶ 38.  Previously, craigslist claimed a *non-exclusive* license.  Once it filed this suit, it reverted back to *non-exclusivity*.

This permits the inference that the brief "exclusive license" was a sham, perpetrated to provide a token ground on which to claim infringement in this lawsuit.  However even for this token period (and looking past the sham), craigslist lacks standing as a matter of law because the "exclusive license" is itself invalid.  Furthermore, even if it were valid, craigslist lacks standing to assert it because none of its registrations validly provide for any of the user postings.  craigslist fails to meet a necessary precondition to filing suit, fails to state a valid cause of action, and its copyright claims based on user-generated content must be dismissed.

///

///

---

1  **1.    CRAIGSLIST LACKS STANDING TO ASSERT COPYRIGHT**
   **INFRINGEMENT CLAIMS BASED ON USER-GENERATED**
2  **CONTENT.**

3         craigslist admits to the brevity and timing of its "exclusive license" – it occurred during the

4  summer of 2012, paralleling the timing of this lawsuit.  *See* Exh. A, FAC ¶ 38.  But what this really

5  means is that craigslist was at all other times merely a *non*-exclusive licensee of user ads.  As a non-

6  exclusive licensee, craigslist lacks standing to sue under the Copyright Act with respect to these ads.

7  *See Nafal v. Carter*, 540 F.Supp.2d 1128, 1135 n. 8 (C.D. Cal. 2007) ("There is no question that a

8  non-exclusive license . . . would be insufficient to confer standing on plaintiff."); *see also* 1 *Melville*

9  *B. Nimmer & David Nimmer, Nimmer on Copyright*, § 12.02[B].

10        Furthermore, even for this brief three-week "exclusive" period, craigslist cannot establish

11  standing to sue.  Under 17 U.S.C. § 501(b), "[t]he legal or beneficial owner of an exclusive right

12  under a copyright is entitled . . . to institute an action for any infringement of that particular right

13  committed while he or she is the owner of it."  *See Silvers v. Sony Picture Entertainment, Inc.*, 402

14  F.3d 881, 884 (9th Cir. 2004).  However, under 17 United States Code section 204(a), for craigslist to

15  legitimately acquire an exclusive right (and thus, standing), to user-generated content, the copyright

16  holder must have transferred that right to craigslist in a writing that clearly and unambiguously

17  captures the intent to transfer.  *See* 17 U.S.C. § 204(a); *see also McCormick v. Amir Construction,*

18  *Inc.*, No. CV 05-7456CASPJWX, 2006 WL 784770 (C.D. Cal. Jan. 12 2006).

19        craigslist's sham three-week "exclusive license" does not constitute a legally sufficient

20  writing to obtain an exclusive license  in the classified ads from the poster.  Because all of craigslist's

21  copyright claims fully derive from these ads, they must be dismissed in their entirety.

22           **a)    craigslist's token three-week "exclusive license" is invalid.**

23                **(1)    craiglist's language is not sufficiently definite to effectuate**
                      **the transfer of an exclusive license pursuant to 17 United**
24                    **States Code section 204(a).**

25        craigslist's claim that it acquired an exclusive license between July 16, 2012 and August 8,

26  2012 "is irretrievably flawed as a matter of law and, accordingly [should be] dismissed," because no

27  legally sufficient writing transferred standing from ad creators to craigslist – neither the Terms of Use

28  nor the "clickwrap" (*i.e.*, the "I approve" button on electronic media) constitute a legally sufficient

---

writing.  *See Weinstein Co.  v. Smokewood Entertainment Group*, LLC, 664 F. Supp.2d 332, 339 (S.D.N.Y. 2009); *see* also Exh. A, FAC ¶ 38.

craigslist's claim that it acquired an exclusive license to user posts is based only on a "confirmation" displayed to users before they submitted their posts. A user wanting to submit a classified ad post would navigate to the posting page.  At the bottom of the posting page, the user was presented with a toggle radio box to indicate whether the user consented to being contacted for other services or product.  Below this statement was the one that purportedly "confirmed" craigslist's exclusive rights. It read:

> Clicking 'Continue' confirms that craigslist is the exclusive licensee of this content, with the exclusive right to enforce copyrights against anyone copying, republishing, distributing or preparing derivative works without its consent.

*See* Exh. D.[9]  (emphasis added).  Below this was a "Continue" button.  *Id*.  The user could not proceed without clicking the "Continue" button. *Id*.  (There is no comparable protocol in order to review ads.).  It is important, at the outset, to recognize that there is here no language actually granting a license, only language "confirming" a license *elsewhere* granted.  However, as discussed below, there is no such language anywhere else on the site either – so the exclusive license claimed was never actually granted.  This absence of granting language alone is sufficient to be dispositive of craigslist's claim to an exclusive license.

The requirement for a writing is long-standing, well-known, and is considered a *de minimis* imposition.  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990), *cert. denie*d, 498 U.S. 1103 (1991) (The requirement of a writing evidencing the transfer with reasonable clarity "is not unduly burdensome."); *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, the party must get the copyright holder to sign a piece of paper saying so.").

---

[9] craigslist did not attach to either the original Complaint or the First Amended Complaint an exhibit of its exclusivity clickwrap, any version of its Terms of Use, or even the certificates of its asserted registrations.  However, the Court may properly rely on documents attached or incorporated by reference into the complaint.  *See* Fed.  R.  Civ.  Proc. 12(b), (d); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.  2007). For convenience, the Bakes Declaration attaches the Terms of Use (Exh. B-1 and B-2), and the various registrations (Exh. C).

---

As the Ninth Circuit explained, "[17 United States Code section 204(a) ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Assocs., Inc.*, 908 F.2d at 557, commenting on 17 U.S.C. § 204(a).  Thus, for a license to be valid, "the intention of a copyright owner to transfer an ownership interest must be clear and unequivocal."  *See Weinstein Co*., 664 F. Supp. 2d at 341 (license invalid where writing failed to demonstrate a clear intent to transfer).

Federal courts have held that "[if] a copyright owner's intention in writing is unclear – even deliberately so – there is no legally valid transfer."  *See, e.g.*, *id*. at 341.  By contrast, where a transfer of rights "clearly indicates that an ownership interest in copyrights is being transferred," an agreement may be enforceable.  *See, e.g.*, *Johnson v. Tuff-n-Rumble Mgt., Inc.*, No. Civ. A. 99-1374, 2000 WL 1145748, at *6 (E.D. La. Aug. 14, 2000) (italics added).  Moreover, "[w]hether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement."  *Nafal*, 540 F. Supp. 2d at 1136, quoting *Althin CD Med., Inc. v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

Here, the "confirmation" statement that craigslist alleges conveyed an exclusive license is not sufficiently definite to evidence a clear intent to transfer an exclusive ownership interest. The statement fails to confer standing on craigslist, and craigslist's claims that 3taps infringes the classified ads posted by the user must fail.

"Clarity of intent" and "a substantive transfer of exclusive copyright rights" are also not present in the craigslist site terms.  Rather, this compares favorably to *Radio Television Espanola S.A. v. New World Entertainment, Ltd.*, where the Ninth Circuit explained that a valid writing must clearly identify the deal and its basic parameters, holding that "[a] mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of § 204(a)."  *See* 183 F. 3d 922, 927 (9th Cir. 1999).  Although craigslist's clickwrap refers to an exclusive right, nowhere does it manifest an intent to transfer an ownership interest; rather, it merely purports to "confirm" craigslist's legal status.  *See* Exh. D.  To the lay user attempting to post his or her ad, it is not facially

apparent that by clicking "Continue" he or she will transfer any ownership rights.  While craigslist may argue that this purported agreement incorporates its Terms of Use, and, when construed together with the clickwrap, effectuates a valid transfer of exclusive rights, the argument is factually and legally flawed.  As a threshold matter, craigslist's Terms of Use merely state:

> You automatically grant and assign to CL, and you represent and warrant that you have the right to grant and assign to CL, a perpetual, irrevocable, unlimited, fully paid, fully sub-licensable (through multiple tiers), worldwide license to copy, perform, display, distribute, prepare derivative works from (including, without limitation, incorporating into other works) and otherwise use any content that you post.  *See* Exh. B-2 at ¶ 3(a).

There is no mention of an "exclusive" license.  Given craigslist's longstanding history of requesting *non*-exclusive licenses, to expect the user to infer a new or different intent from this language is unreasonable.  *See* Exh. B-1.  Moreover, the statement that purports to "confirm" craigslist's allegedly "exclusive" license neither hyperlinks nor references craigslist's Terms of Use.  Thus, to the extent craigslist seeks to incorporate its Terms of Use, it cannot also allege an enforceable "clickwrap."  For craigslist's Terms of Use to be incorporated into the purported agreement, the combined language must be construed, if at all, as a "browsewrap" agreement – a very flimsy option.  Unlike clickwraps, browsewraps require no "click" to assent; assent is imposed by use of the website.  *See*, *e.g.*, *Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2012 WL 32380 (W.D. Wash. Jan. 3, 2012).  Since assent is merely implied, browsewraps are discouraged as devices to create exclusive rights.  *See*, *e.g.*, Mark Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 477.

craigslist users on the whole are individuals seeking to post classified ads, not sophisticated commercial entities.  *See generally* Exh. A.  Accordingly, any attempt to incorporate the Terms of Use as a "browsewrap" to effectuate a transfer of exclusive ownership interests should be rejected.  Furthermore, even when read together, a string of irrational inferences must be made to construe the clickwrap and the Terms of Use as a deliberate transfer of exclusive rights.

### (2)  craigslist's users did not assent to the transfer of an exclusive license.

The sham "exclusive license" further fails because users did not assent to the transfer of their exclusive rights.  Notwithstanding craigslist's coercive attempt to procure such interests, its

insufficient, vague, and ambiguous terms precluded a meeting of the minds. In California,[10] a

consumer does not communicate assent by clicking on a button "when [he] does not know that a

proposal has been made to him[.]" *See Windsor Mills, Inc.  v. Collins & Aikman Corp*., 25 Call.

App. 3d 987, 992, 101 Cal. Rptr. 347, 351 (1972)).  Under California law, "an offeree, regardless of

apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which

he is unaware, contained in a document whose contractual nature is not obvious." *See Specht v.

Netscape Communication Corp.*, 306 F.3d 17, 30 (2nd Cir. 2002) (quoting *Windsor Mills*, 25 Cal.

App.3d at 992, 101 Cal. Rptr. at 351).

When determining assent, California contract law takes into account what the offeree said,

wrote, or did, as well as the transactional context in which the offeree acted.  *See Specht*, *supra*, 306

F.3d at 30.  Here, the terms of the purported writing and the context in which they were presented to

the user distinguish this case from *Metropolitan Regional Information Systems, Inc. v. American

Home Realty Network, Inc.* (No. 12-cv-00954-AW, 2012 WL 3711513 (D. Md. Aug 24, 2012)

(hereinafter "MRIS")).  While the two contexts appear factually similar, the operative language of the

terms of use at issue in MRIS distinguish its holding.  In MRIS, the assignments of copyrights to the

owner of a property listings database were governed by the following provision:

> All images submitted to the MRIS Service *become* the *exclusive* property of
> Metropolitan Regional Information Systems, Inc.  (MRIS).  By submitting an image,
> you hereby irrevocably assign (*and agree to assign*) to MRIS free and clear of any
> restrictions or encumbrances, *all of your rights, tile, and interest in and to the image
> submitted*.  This assignment includes without limitation, all worldwide *copyrights* in
> and to the image, and the right to sue for past and future infringement.

*MRIS*, 2012 WL 3711513, at *12 (emphasis added).  By comparison, craigslist's Terms of Use state:

> You automatically grant and assign to CL, and you represent and warrant that you
> have the right to grant and assign to CL, a perpetual, irrevocable, unlimited, fully paid,
> fully sub-licensable (through multiple tiers), worldwide license to copy, perform,
> display, distribute, prepare derivative works from (including, without limitation,
> incorporating into other works) and otherwise use any content that you post.

Exh. B-2 at ¶ 3(a).

Significantly, in *MRIS*, which was decided pursuant to the Electronic Signatures in Global

and National Commerce Act ("ESIGN"), the defendant questioned the validity of electronic consent,

---

[10] Pursuant to craigslist's Terms of Use, this dispute is governed by California Law.  *See* Exh. B-2 at ¶ 14.

1  not the sufficiency of the terms of the agreement. And, unlike here, in MRIS the terms of use

2  expressly stated that MRIS would "become" the "exclusive" owner of the copyrighted work,

3  notifying the user of the potential transfer of an exclusive right. *Id.* Moreover, the MRIS terms

4  explained to the user that he or she was "agree[ing] to assign . . . all of [his or her] rights, title and

5  interest in . . . [his or her] . . . copyrights." *See Id.* By contrast, craigslist represented that it had a

6  preordained interest in "content," which it required users to subsequently "confirm." *See* Exh. D.

7  Clearly, this confirmation of unlinked and vague terms is distinguishable from a clear and intentional

8  transfer of copyrights.

9       Furthermore, craigslist's Terms of Use are silent regarding a transfer of an "exclusive" interest

10  of "all" rights. And, craigslist's terms of use make no mention of an "agreement," and instead

11  purport to "automatically" convey an interest to craigslist, as if by operation of law rather than

12  contract. Unlike MRIS, craigslist's drafting is plainly not intended to notify the user that he or she is

13  conveying an exclusive right,[11] nor can it be construed to manifest a "clear and unequivocal" intent

14  by the user to transfer an ownership interest. Consequently, any alleged exclusive license that

15  craigslist purportedly procured between July 16, 2012 and August 8, 2012 is invalid as a matter of

16  law. No legally sufficient writing between craigslist and its users manifests assent to transfer an

17  exclusive right. *See Effects Assocs., Inc.*, 908 F.2d at 557; *Kim Seng Company*, 810 F.Supp.2d at

18  1056-57; *Weinstein Co.*, 664 F. Supp.2d at 339-41, all *supra*.

19  |                    **b)**  | **Even if the transfer is valid (and it is not), craigslist lacks standing because it is not the owner of the copyrights in the user-generated content.** |

20

21       The craigslist user's "content" is distinguishable from the user's "copyright" and, if anything,

22  users provided to craigslist a use license in the content of their ads, not their copyright rights. Under

23  17 U.S.C. § 202, "[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is

24  distinct from ownership of any material object in which the work is embodied." Here, pursuant to

25  craigslist's clickwrap agreement and its Terms of Use, craigslist at most received an interest in

26  "content." *See* Exh. B-2 at ¶ 3(a); Exh. D. Each of the relevant provisions is silent regarding

27

28  _____
[11] The Ninth Circuit has held that federal law requires the copyright owner to consent to the transfer of an exclusive right. *Gardner v. Nike, Inc.*, 279 F. 3d 774, 781 n. 5 (9th Cir. 2002).

---

copyrights.  *Id.*

Even craigslist's exclusivity "confirmation" statement stated that "craigslist is the exclusive licensee of this content, with the exclusive right to enforce copyrights." *See* Exh. D (emphasis added).  Thus, *as drafted*, craigslist's clause merely transfers rights in the content and the ability to enforce the copyright – as distinct from the copyright itself.  The Copyright Act expressly lists the exclusive rights in a copyrighted work, and the right to "enforce" is not one of them.  *R&R Recreation Prods.  v. Joan Cook, Inc.*, 25 U.S.P.Q.2d 1781, 1785 (S.D.N.Y. 1992), characterizing 17 U.S.C. § 106; *see also Silvers*, 402 F.3d at 884-85, 886-87 (right to sue on accrued claims is not a right under section 106; list of exclusive rights in section 106 is exhaustive).

In short, because neither craigslist's "confirmation" statement nor its TOU "convey any rights in the copyrighted work embodied in the object," craigslist lacks standing to assert its copyright infringement claims.  17 U.S.C. § 202.  Pursuant to 17 U.S.C. § 501(b), *supra*, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  Even if the purported transfer is valid, craigslist cannot sue for infringement because it did not acquire ownership of or exclusive right in any copyrights.

### 2. The asserted registrations craigslist relies on are invalid as to All user generated content.

Each of the registrations asserted in the First Amended Complaint list craigslist as both the copyright claimant and author of the claimed works.  *See* Exh. C (copies of asserted registration certificates).  Not one of these registrations lists any users, or contains even a generic reference to anonymous users, as authors.  *Id*.  The only reference to any third-party is the phrase "third party text," which appears in the "Pre-existing Material" field of several of the registrations.  *Id*.  This designation properly recognizes that craigslist owns no copyrights in any material submitted by third parties.[12]  But because the asserted registrations are invalid as to any such content on the craigslist

---

[12] 3taps does not concede that craigslist properly owns any copyrights in its website because the website is not copyrightable.  The website includes basic word processing formats, such as columns, and generic geographic and subject matter descriptors – none warrants copyright protection.  *See e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 347 (1991).

---

website, craigslist has failed to satisfy a necessary precondition to suit, thereby failing to state a cause of action, and all claims based on user-generated content must be dismissed.

a)     **The asserted registrations are facially deficient as to claims of infringement based on user-generated content.**

The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  *See* 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1246-47 (2010) (17 U.S.C. § 411(a) imposes a precondition to filing a copyright infringement claim).  The Copyright Act also provides that each registration application must include certain information, including the identity of the claimant, the identity of the author(s) of the work, and the title name.  *See* 17 U.S.C. § 409(1), (2), and (6).

In *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, the court found that "[a] plain reading of § 409 of the Copyright Act mandates that the copyright registrations at issue here contain the names of all the authors of the work."  *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F.Supp.2d 84, 94 (S.D.N.Y.  2010).  The court went on to state that "because the Copyright Act is clear on its face, *i.e.*, a copyright registration must contain certain pieces of information including the author's name, the registrations at issue here cover only the database as a whole (the compilation) but do not cover Plaintiff's individual contributions." *Id.* at 95. The court went on to hold that the plaintiff "failed to comply with the precondition to suit, thereby failing to state a cause of action" with respect to all of the individual contributions lacking the names of authors.  *Id.*; *see also Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 72 (2d Cir.2001) ("The registrations contained none of the information required by § 409 for proper registration of the articles, such as Morris's name, the title of her articles, or the proper copyright claimant. Accordingly, Conde Nast's registrations cannot be viewed as valid copyright registrations under § 408(a).")

The certificates of the asserted registrations specify only craigslist as the claimant and author. *See* Exh. C.  Clearly, craigslist is not the author of any classified ad – indeed, these are the same ads it vigorously claims it is *not* responsible for.  *See*, *e.g.*, Exh. B-2; *see also* FAC ¶ 34 ("the user creates

1   a unique classified ad"). Not one of the certificates lists the claimants or authors of any user-

2   generated "work," and not one of the certificates provides the title of any user-generated "work." *Id.*

3          As a matter of law, the asserted registrations are facially invalid as to user-generated content

4   (i.e., "classified ads"). craigslist's Copyright Act claims relating to user-generated classified ads

5   posted to its site should be dismissed for failure to satisfy the unambiguous statutory requirements of

6   17 U.S.C. § 409, and in turn the requirements of 17 U.S.C. § 411.

7                        **b)      The relevant statutes and regulations providing for a compilation
                                   and its underlying components do not apply.**

8

9          The Copyright Act explicitly *precludes* any notion that the registration of the craigslist

10  website as a "compilation" somehow extends the general registration to specific user-generated

11  content. *See* 17 U.S.C. § 103(b); *see also Muench*, *supra*, 712 F.Supp.2d at 94. Section 103 provides

12  that "[the] copyright in a compilation or derivative work extends only to the material contributed by

13  the author of such work, as distinguished from the preexisting material employed in the work, and

14  does not imply any exclusive right in the preexisting material." *Muench*, *supra*, 712 F.Supp.2d at 94

15  (italics added). Thus, the coverage of a copyright in a compilation over individual contributions to

16  the compilation is expressly restricted to contributions from the author of the compilation itself. *Id.*;

17  *see also Bean v. Houghton Miflin Harcourt Publ'g Co.*, No. CV10-8034-PCT-DGC, 2010 WL

18  3168624, at *3-4 (D. Ariz Aug 10, 2010) (plaintiff who registered compilations could not bring civil

19  action for infringement of preexisting material). Here, craigslist does not allege that it is the author

20  of the underlying works and unambiguously admits that "the user creates a unique classified ad." *See*

21  Exh. A, FAC ¶¶ 34, 49-50.

22         The statutes are consistent and logical. Section 103's restriction of coverage to works

23  contributed by the same author is in keeping with the requirements of section 409 – because if the

24  author is the same for the compilation and individual contributions, listing the author again would be

25  redundant. Additionally, section 103 offers no exceptions to the clear requirements of section 409 as

26  to the authorship of individual contributions.

27         craigslist is not excused from the relevant federal regulation governing the registration of a

28  single collective work. *See* 37 C.F.R. § 202.3(b)(4). Regulation § 202.3(b)(4) does not provide for

registration for self-contained works within a collective work where, as here, the authors of the individual contributions are not the same person or entity as the copyright claimant, and neither the names of those authors nor the titles of their works are included in the registration applications.  *See* 37 C.F.R.  § 202.3(b)(4).

Additionally, it is not clear from the face of the registrations whether craigslist sought to register its website as an automated database.  However, even if it did, the relevant federal regulations do not contain provisions that extend registration to contributions from unnamed authors.  *See*, e.g., 37 C.F.R.  § 202.3(b)(5)(i) ("the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship."); *see also Muench*, 712 F.Supp.2d at 91-92, 93-94.

The Copyright Act and its corresponding regulations simply do not provide any way to circumvent the unambiguous statutory requirements of section 409 that a registration provide the name of the author of a work being registered.  craigslist cannot ignore section 409 or escape the conclusion that its registrations fail to meet the these requirements and are thus invalid as to user-generated content.

          **c)**      **craigslist's registration was ineffective as to user-generated content because craigslist did not qualify as a claimant as to such content.**

craigslist does not even qualify as a claimant that can register the user-generated content under a single registration because craigslist's users never transferred all rights in their own copyrights.  A copyright claimant is either the author of a work or "a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author."  *See* 37 C.F.R. § 202 (a)(3).  A claimant must own all rights of a copyright, and if any rights in the copyright remain with the original author, the recipient of the partial transfer is not a claimant, and thus not qualified to register individual contributions of a compilation under a single registration.  *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506 (2nd Cir. 2002) (holding that a publisher's registration of its magazine did not cover the contributions of an author of articles included in the magazine because the publisher did not own all rights in the copyrights of the articles at registration); *contra Bean v.*

---

*McDougal Littell*, 669 F.Supp.2d 1031, 103-36 (D.Ariz. 2008) (finding a temporary transfer of "legal right" for purposes of copyright registration to be sufficient to extend registration status to underlying photographs of a registered database).[13]

In its First Amended Complaint, craigslist admits that with the exception of the twenty-three "exclusive license" days, its Terms of Use provided it with merely a non-exclusive license to user-generated content at all times relevant to the claims in this lawsuit.  *See* Exh. A, FAC ¶ 36-38; Exh. B-1, B-2 (craigslist Terms of Use).  craigslist's Terms of Use prior to February 14, 2012, explicitly stated that craigslist received a non-exclusive license to user-generated content.  The current craigslist Terms of Use (last updated February 14, 2012) provide that craigslist receives a "worldwide license" but do not provide that such a license is exclusive or evidence a clear intent that an exclusive right is to be transferred to craigslist by the users.

As discussed, during the July 16, 2012 to August 8, 2012, "exclusive" period, craigslist modified its classified ad posting process to require users to "confirm" that craigslist was "the exclusive licensee" of the content of their postings before users were permitted to complete the process.[14]  (*See* Exh. A, FAC ¶ 36-38; Exh. D (screen shot of exclusivity language).  As explained above, the "exclusivity confirmation" did not make craigslist an exclusive licensee of anything because it did not evidence a clear and unambiguous intent on the part of the users to transfer an exclusive ownership right to craigslist.  *Effects Assocs.*, *Inc.*, *supra*, 908 F.2d at 557; *Kim Seng Company*, *supra*, 810 F. Supp.2d at 1056-57; *Weinstein Co.*, 664 F. Supp.2d at 339-41.

Contrary to craigslist's allegations in its First Amended Complaint, this language did not confer exclusive rights; nor did it "confirm" that craigslist was the exclusive licensee of the copyrights.  Accordingly, craigslist was not a qualified copyright claimant as to user-generated content at any relevant time period, and its registrations of its website are ineffective to confer registration status on the individual contributions of unnamed users.

---

[13] *Bean* is distinguishable from this case because unlike here, the defendants did not argue that the registrations failed to meet the statutory requirements for § 409.  Additionally, the court in *Bean* looked to regulations governing registration of serials, which are not argued here.  Moreover, the court in *Bean* did not explain how the "legal right" to register copyrights was recognized as an exclusive right under copyright pursuant to § 106.

[14] Notably, craigslist instituted its "exclusivity" process four days before the filing of its original Complaint on July 20, 2012 but did not include allegations regarding its purported "exclusive" license until it filed its First Amended Complaint four months later on November 20, 2012.

---

The craigslist "exclusivity" process also suggests an attempt by craigslist to game the Copyright Act in preparation for this lawsuit.  craigslist was well aware that it had no basis for bringing copyright claims on behalf of its users because it did not own the copyrighted works or even any exclusive rights in such copyrights.  craigslist was also aware that not one piece of user-generated content was covered by a valid copyright registration – because none of the registrations refer to user contributions as the "Basis of Claim," but rather, where a reference to "third-party text" appears in a registration, it appears as "Pre-existing Material."

In other words, craigslist recognized that it did not own any exclusive rights in the copyrights of the user-generated content and that such content was not covered by any valid registration.  Rather, craigslist instituted an "exclusivity" process to "confirm" that it was an exclusive licensee, submit additional registration applications, and file its original Complaint.  Less than a month later, craigslist did away with its "exclusivity" language, but still asserts a version of it in its First Amended Complaint.  The "exclusivity" was a sham.  It does not comport with either the letter or intent of the Copyright Act.  craigslist's token efforts to meet this statutory precondition for filing suit should not be sanctioned by this Court.

## IV.    CONCLUSION AND PRAYER FOR RELIEF

craigslist cannot aim anti-hacking statutes at acts it never alleges amount to hacking.  Nor can it now plead the existence of a hacking crime when it has judicially admitted that none has occurred.

Regarding its claims of copyright infringement, craigslist's allegations are a flawed attempt to manufacture standing based on user-generated content – classified ads – that craigslist did not author and in which it does not have sufficient rights to bring a claim of infringement.  The Court should dismiss with prejudice all of craigslist's claims relating to copyright infringement relative to user generated classified ads.

DATED:  December 21, 2012                          LOCKE LORD LLP

By:  ____/s/ *Christopher J.  Bakes*_____
Christopher J.  Bakes
M.  Taylor Florence
Jason Mueller, Attorneys for Defendants 3TAPS, INC. AND DISCOVER HOME NETWORK, INC. d/b/a LOVELY