**PERKINS COIE LLP**
BOBBIE J. WILSON (No. 148317)
bwilson@perkinscoie.com
CHRISTOPHER KAO (No. 237716)
ckao@perkinscoie.com
BRIAN P. HENNESSY (No. 226721)
bhennessy@perkinscoie.com
J. PATRICK CORRIGAN (No. 240859)
pcorrigan@perkinscoie.com
3150 Porter Drive
Palo Alto, CA  94304
Telephone:  650.838.4300
Facsimile:  650.838.4595

Attorneys for Plaintiff
craigslist, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> 3TAPS, INC., a Delaware corporation; PADMAPPER, INC., a Delaware corporation; DISCOVER HOME NETWORK, INC., a Delaware corporation d/b/a LOVELY; BRIAN R. NIESSEN, an individual, and Does 1 through 25, inclusive, <br><br> Defendants. | Case No. CV 12-03816 CRB <br><br> **CRAIGSLIST, INC.'S OPPOSITION TO 3TAPS, INC.'S AND DISCOVERY HOME NETWORK, INC.'S LIMITED MOTION TO DISMISS CAUSES OF ACTION 4, 5, 13 AND 14** <br><br> **DATE:** March 29, 2013 <br> **TIME:** 10:00 a.m. <br> **COURTROOM:** 6, 17th Floor <br> **JUDGE:** Hon. Charles R. Breyer |

Perkins Coie LLP
Attorneys At Law
Palo Alto

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

**TABLE OF CONTENTS**

                                                                                                        **Page**

SUMMARY OF ARGUMENT ........................................................................................................

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 4

FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT .................................................. 4

      A.    The craigslist Classified Ad Service ................................................. 4

      B.    The craigslist Terms of Use ............................................................. 5

      C.    3Taps' Unlawful Scraping of craigslist Data ................................... 6

      D.    Lovely's Unauthorized Use of craigslist Data Obtained From 3Taps ........ 9

      E.    craigslist's copyrights .................................................................... 9

ARGUMENT ............................................................................................................................. 10

I.     CRAIGSLIST HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH
      VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT AND
      CALIFORNIA PENAL CODE SECTION 502 ............................................... 10

      A.    Defendants Improperly Access craigslist's Website Without
             Authorization .................................................................................. 10

      B.    Defendants Use Rotating IP Addresses and Proxies To Evade
             craigslist's Measures to Block Scraping ...................................... 13

II.    DEFENDANTS ARE INFRINGING CRAIGSLIST'S VALID AND
      ENFORCEABLE COPYRIGHTS ................................................................. 15

      A.    The Content on craigslist's Website Constitutes Original Works of
             Authorship and Are Protected By Copyright Law ................................. 15

      B.    craigslist Has Standing To Enforce The Copyrights Protecting Its
             Content ............................................................................................ 19

CONCLUSION .......................................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

-i-

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Online, Inc. v. LCGM, Inc.*,
   46 F. Supp. 2d 444 (E.D. Va. 1998)...................................................................... 13

*Bean v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. CV 10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz. Aug. 10, 2010).................... 24, 25

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ................................................................................................ 23

*Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*,
   606 F.3d 612 (9th Cir. 2010)................................................................................... 22

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................... 1

*EF Cultural Travel BV v. Explorica, Inc.*,
   274 F.3d 577 (1st Cir. 2001) ................................................................................... 13

*EF Cultural Travel BV v. Zefer Corp.*,
   318 F.3d 58 (1st Cir. 2003) ..................................................................................... 13

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990)............................................................................... 20, 21

*Facebook, Inc. v. ConnectU LLC*,
   489 F. Supp. 2d 1087 (N.D. Cal. 2007) ............................................................. 12, 15

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F. Supp. 2d 1025 (N.D. Cal. 2012) .......................................................... 3, 14, 15

*Facebook, Inc. v. Power Ventures, Inc.*,
   No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)............................ 15

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*,
   499 U.S. 340 (1991) ...................................................................................... 16, 17, 18

*Geist v. OneWest Bank*,
   No. C 10–1879 SI, 2010 WL 3155841 (N.D. Cal. Aug. 9, 2010) ........................... 4

*In re Apple In-App Purchase Litig.*,
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................. 4

*Jacobsen v. Katzer*,
   No. C 06-01905 JSW, 2009 WL 4823021 (N.D. Cal. Dec. 10, 2009)..................... 17

Perkins Coie LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

**CASES**

*Key Publ'ns, Inc. v. Chinatown Today Pub. Enter.'s, Inc.*,
945 F.2d 509, 513-14 (2nd Cir. 1991) ................................................................. 18

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ....................................................................... 10, 11

*Masterfile Corp. v. Gale*,
No. 2:09-cv-966, 2011 WL 4702862 (D. Utah Oct. 4, 2011) ............................... 23

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
Civ. Action No. 12-CV-00954-AW, 2012 WL 3711513 (D. Md. Aug. 24, 2012)
("*MRIS*") ..................................................................................................... passim

*Morris v. Bus. Concepts, Inc.*,
259 F.3d 65 (2d Cir. 2001) .................................................................................. 23

*Multiven, Inc. v. Cisco Sys., Inc.*,
725 F. Supp. 2d 887 (N.D. Cal. 2010) .................................................................. 10

*Nafal v. Carter*,
540 F. Supp. 2d 1128 (C.D. Cal. 2007) ................................................................ 20

*Pac. Stock, Inc. v. Pearson Educ., Inc.*,
Civ. No. 11-00423 SOM/BMK, 2012 WL 93182 (D. Haw. Jan. 11, 2012) ......... 25

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*,
183 F.3d 922 (9th Cir. 1999) .......................................................................... 20, 21

*Register.com, Inc. v. Verio, Inc.*,
126 F. Supp. 2d 238 (S.D.N.Y. 2000) .................................................................. 12

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*,
No. C 06-02064 JW, 2011 WL 6329854 (N. D. Cal. Nov. 8, 2011) ...................... 4

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
969 F.2d 410 (7th Cir. 1992) ............................................................................... 20

*Snap-on Bus. Solutions Inc. v. O'Neil & Assocs., Inc.*,
708 F. Supp. 2d 669 (N.D. Ohio 2010) ................................................................ 13

*Sw. Airlines Co. v. Farechase, Inc.*,
318 F. Supp. 2d 435 (N.D. Tex. 2004) ................................................................. 12

*Thomsen v. Famous Dave's of Am., Inc.*,
606 F.3d 905 (8th Cir. 2010) ............................................................................... 20

Perkins Coie LLP
Attorneys At Law
Palo Alto

-iii-

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

CASES

*United States v. Drew,*
  259 F.R.D. 449 (C.D. Cal. 2009) ........................................................................ 12

*United States v. Nosal,*
  676 F.3d 854 (9th Cir. 2012)......................................................................... passim

*Weingand v. Harland Fin. Solutions, Inc.,*
  No. C-11-3109 (EMC), 2012 WL 2327660 (N.D. Cal. June 19, 2012)..................... 12, 13, 14

*Weinstein Co. v. Smokewood Entm't Group, LLC,*
  664 F. Supp. 2d 332 (S.D.N.Y. 2009) ............................................................... 21

*Windsor Mills, Inc. v. Collins & Aikman Corp.,*
  25 Cal. App. 3d 987 (1972)............................................................................ 22

STATUTES

17 U.S.C. § 101 ......................................................................................... 16

17 U.S.C. §§ 101, 103 ................................................................................. 16

17 U.S.C. § 102 ......................................................................................... 16

17 U.S.C. § 106 ......................................................................................... 21

17 U.S.C. § 204(a) ................................................................................ 19, 20, 22

17 U.S.C. § 409 ...................................................................................... 24, 25

18 U.S.C. § 1030(a)(2)............................................................................. 10, 11

18 U.S.C. § 1030(a)(2)(C) ........................................................................... 10

18 U.S.C. § 1030(g) .................................................................................... 10

Section 502 of the Cal. Penal Code................................................................ passim

Cal. Penal Code §502(c)(3)........................................................................... 11

OTHER AUTHORITIES

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §2.04[B] (1996), at 2-46......... 16

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

-iv-

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

# SUMMARY OF ARGUMENT

**craigslist's Claims Under the Computer Fraud and Abuse Act ("CFAA") and California Penal Code Section 502 (Claims 13 and 14)**:

Plaintiff craigslist, Inc. ("craigslist") has properly pleaded claims under both the CFAA and Penal Code Section 502, which require only that Defendants *improperly access* craigslist's computers. *See United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012); *Weingand v. Harland Fin. Solutions, Inc.,* No. CV-11-3109 (EMC), 2012 WL 2327660 (N.D. Cal. June 19, 2012); *Facebook, Inc. v. ConnectU LLC,* 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007). Even if the statutes do require a physical or technological "break-in" as Defendants contend—which they do not—craigslist has alleged facts establishing that Defendants have in fact circumvented craigslist's technological measures to block them from accessing craigslist's computers. *See Facebook, Inc. v. Power Ventures, Inc.,* 844 F. Supp. 2d 1025 (N.D. Cal. 2012).

**craigslist's Copyright Claims (Claims 4 and 5)**:

The content on craigslist's website—both the individual postings themselves, and the compilation of the postings as a whole—is copyrightable. *See Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340 (1991). As the author of the unique and original compilation of postings displayed on its website, and the exclusive licensee of the rights to the individual postings, craigslist has standing to enforce the copyrights protecting this content against Defendants. *See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, Civ. Action No. 12-CV-00954-AW, 2012 WL 3711513 (D. Md. Aug. 24, 2012).

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS,
Case No. CV 12-03816 CRB

Plaintiff craigslist, Inc. ("craigslist") respectfully submits this opposition to Defendants 3Taps, Inc.'s ("3Taps") and Discover Home Network, Inc.'s (d/b/a "Lovely") limited motion to dismiss Claims 4, 5, 13 and 14 of the First Amended Complaint.[1]

## INTRODUCTION

craigslist operates a useful and popular website, www.craigslist.org, that provides local, on-line classified advertisements organized into unique subject and area categories. More than 60 million users in the United States visit craigslist monthly to either post their own ads or view the ads displayed there, making craigslist one of the most popular websites in the country.

At its core, this case concerns 3Taps' *unauthorized* mass-harvesting of all of the content on craigslist's website—the millions of user-created classifieds that are posted on the craigslist website each day—and its redistribution of that content to others, including Lovely.

As alleged in detail in craigslist's First Amended Complaint ("FAC"), 3Taps engages in a process called "scraping" to automatically access and obtain—through the use of computer programs sometimes known as web "crawlers," "spiders, or "robots" ("bots" for short)— enormous amounts of data from craigslist's computers that support its website. FAC ¶ 79; *see eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1060-61 (N.D. Cal. 2000) ("A software robot is a computer program which operates across the Internet to perform searching, copying and retrieving functions on the web sites of others. A software robot is capable of executing thousands of instructions per minute, far in excess of what a human can accomplish.").

Despite 3Taps' repeated public statements to the contrary before and after the filing of this litigation, 3Taps now *admits* that since at least August 2012 (and craigslist believes, long before then) it "*has used third parties that scrape data from the craigslist website* to obtain the content that 3taps needs to create indexed data for downstream specialized search engines." Am. Countercl. ¶ 92 (emphasis added). 3Taps has in fact boasted that it obtains data from craigslist in "real time," meaning that 3Taps is literally scraping craigslist on a constant and incessant basis to obtain postings as they are made to the craigslist website. FAC ¶ 3.

---

[1] The caption of Defendants' Motion states that it is directed at Claims 4, 5, 6, 13 and 14, but the Motion itself presents arguments only as to Claims 4, 5, 13 and 14. See Defs.' Mot. at 1.

This is in stark contrast to the Answer 3Taps filed with the Court on September 24, 2012 in response to craigslist's original Complaint. In that pleading, 3Taps averred that "3taps *does not use scraping* to collect raw data from craigslist to create its indexing product." Answer ¶ 50 (emphasis added); *see also* ¶ 57 ("3Taps denies that it is accessing craigslist's website and 'scraping' content.").

3Taps' conduct is prohibited by law, and despite craigslist's express instructions to 3Taps to cease and desist, 3Taps has continued brazenly to scrape craigslist. Indeed, each time craigslist has identified and blocked a specific IP address (a unique number identifying a specific computer or network-connected device) used by 3Taps to scrape its website, 3Taps has responded by simply using different IP addresses, and by using "proxy servers" that hide the IP address of the computer being used to scrape. FAC ¶ 84. craigslist commenced this action to put an end to this unlawful conduct.

In their limited motion to dismiss, Defendants grasp at straws to evade the consequence of their actions. Even a cursory review of the allegations in the FAC establish that craigslist has properly stated claims for (1) violation of the federal Computer Fraud and Abuse Act ("CFAA") (Claim 13) and Section 502 of the California Penal Code (Claim 14), and (2) for copyright infringement (Claims 4 and 5).

As an initial matter, Defendants' arguments in support of their motion to dismiss Claims 13 and 14 are based on mischaracterizations of craigslist's allegations in the FAC, and misstatements of the applicable law. (*See infra* Section I.)

The CFAA and Penal Code Section 502 make it unlawful for a defendant to *improperly access* computers belonging to another party. That is precisely what 3Taps is doing, and what craigslist has alleged in the FAC. Although craigslist allows the public to access its website using a web browser to create or review postings, it does *not* authorize access by automated web crawlers to obtain content from craigslist's computers. FAC ¶ 76. craigslist's Terms of Use ("TOU") prohibit users from copying content from the website "directly or through intermediaries (including but not limited to by means of spiders, robots, crawlers, scrapers, framing, iframes or RSS feeds)." FAC ¶ 44. Moreover, after learning of 3Taps' unauthorized

scraping, craigslist sent a letter to 3Taps notifying it explicitly that "you and your agents, employees, affiliates, and/or anyone acting on your behalf *are no longer authorized to access, and are prohibited from accessing craigslist's website or services for any reason*." FAC ¶ 132; Ex. A to the Declaration of Christopher Kao ("Kao Decl."). (*See infra* Section I.A.)

The CFAA and Penal Code Section 502 do not require a physical or technological "break-in" as Defendants contend. Defs.' Mot. at 8. But even if they did, craigslist has pleaded facts showing that 3Taps has implemented a sophisticated scheme to evade all of craigslist's targeted efforts to prevent 3Taps from scraping its computers, including by constantly changing the IP addresses that it uses for scraping and using proxy servers to mask the IP addresses of their scraping systems from craigslist's view. FAC ¶¶ 83-84. This very conduct has been held by this Court to violate the CFAA and Section 502. *See Facebook, Inc. v. Power Ventures, Inc.,* 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012) (granting summary judgment on CFAA and Section 502 claims based on similar conduct). (*See infra* Section I.B.)

Likewise, there is also no basis for Defendants' motion to dismiss craigslist's copyright claims, Claims 4 and 5. (*See infra* Section II.)

*First*, the content on craigslist's website is protected by copyright. Despite Defendants' attempt to belittle the content on craigslist's website (content that it yet persists in furiously scraping from craigslist on a continuous basis), it can hardly be questioned that craigslist's content—both the individual postings themselves, and the compilation of the postings as a whole—is copyrightable. Contrary to Defendants' repeated assertions, both publicly and in this litigation, craigslist does not simply take bare "facts" and arrange them in an unoriginal way, like the white pages of a phonebook lists names and phone numbers in simple alphabetical order. Instead, craigslist carefully curates and organizes the highly original and creative postings of its users for the benefit of the entire craigslist community. (*See infra* Section II.A.)

*Second*, craigslist has standing to enforce the copyrights protecting its content. With respect to the electronic compilation of user postings created by craigslist, craigslist is not required to own any copyrights in the underlying postings themselves in order to possess valid copyrights. craigslist has *independent* copyrights in its *compilation* of the postings that can be

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

3

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

separately enforced against Defendants.  With respect to the individual postings themselves, craigslist has in any case been validly assigned the exclusive rights to the postings and can therefore properly enforce those copyrights against Defendants.  (*See infra* Section II.B.)

Accordingly, the Court should deny Defendants' motion to dismiss in its entirety.

## LEGAL STANDARD

In reviewing a motion to dismiss, this Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854, at *2 (N. D. Cal. Nov. 8, 2011) (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)); *see also In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1036 (N.D. Cal. 2012).  "The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim." *Geist v. OneWest Bank,* No. C 10–1879 SI, 2010 WL 3155841, at *2 (N.D. Cal. Aug. 9, 2010).

## FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

### A.     The craigslist Classified Ad Service.

Founded in San Francisco in 1995 by Craig Newmark, craigslist began as an e-mail list for friends and co-workers to share information about events in and around the Bay Area.  It grew over time in size and scope, and became the world's largest online forum for local classified advertising and community discussions.  FAC ¶ 24.

craigslist enables authorized users to post localized classified advertising on its website.  FAC ¶ 28.  This classified ad service is organized first by geographic area, and then by subject category of product or service within that geographic area.  The myriad subject categories and sub-categories provided by craigslist include everything from job postings, buying and selling of used goods, housing opportunities (sale, buy, rent, etc.), personals ads for friendship and romance, and a wealth of community-centric information and advice.  It is literally a "one stop shop" for every sort of local classified listing and associated communication that a user may want or need.  FAC ¶ 29.

Perkins Coie LLP
Attorneys At Law
Palo Alto

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

Users post ads on craigslist by first navigating the craigslist website to the homepage for the geographic area or region in which they wish to post, which is generally the geographic area in which they reside. From that homepage, a user seeking to post an ad must click a link titled "post to classifieds." FAC ¶ 30.

Users choose the type of posting they want to place from a list designed and presented by craigslist for that geographic area (for example, job offered, housing offered, housing wanted, for sale, item wanted, personal/romance, or community). FAC ¶ 31. After selecting the type of posting, the user is presented with a list of categories for posting ads in that geographic area (for example, categories under "for sale" ads include, without limitation, auto parts, bicycles, boats, collectibles, electronics, jewelry, musical instruments, and tools), and must select the appropriate category for his or her ad. FAC ¶ 32.

Before a posting can be made to the craigslist website, the user is required affirmatively to accept craigslist's TOU. FAC ¶ 36. If the user chooses not to accept the TOU, the ad is not posted. FAC ¶ 37.

**B.      The craigslist Terms of Use.**

craigslist's TOU explain that users are granted a limited and revocable license to access and use craigslist in accordance with its terms. The TOU identify specific types and examples of access and use that are unauthorized. FAC ¶ 43. Specifically, the TOU provide that:

> To maintain the integrity and functionality of craigslist for its users, <u>access to craigslist</u> and/or activities related to craigslist that are harmful to, inconsistent with or disruptive of craigslist and/or its users' beneficial use and enjoyment of craigslist are expressly unauthorized and prohibited. For example, without limitation:
>
> Any copying, aggregation, display, distribution, performance or derivative use of craigslist or any content posted on craigslist whether done directly or through intermediaries (<u>including but not limited to by means of spiders, robots, crawlers, scrapers, framing, iframes or RSS feeds</u>) is prohibited.
>
> …
>
> If you access craigslist or copy, display, distribute, perform or create derivative works from craigslist webpages or other CL intellectual property in violation of the TOU or for purposes inconsistent with the TOU, your access, copying, display, distribution, performance or derivative work is unauthorized.

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

5

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

> Circumvention of any technological restriction or security measure
> on craigslist or any provision of the TOU that restricts content,
> conduct, accounts or access is expressly prohibited.

TOU § 5 (emphasis added) (Kao Decl. Ex. B).

Although craigslist allows a very limited exception to these prohibitions for general

purpose Internet search engines and noncommercial public archives, the exception applies only if

(a) they provide a direct hyperlink to the relevant craigslist website, service, forum or content; (b)

they access craigslist from a stable IP address using an easily identifiable agent; and (c) they

comply with craigslist's robots.txt file. FAC ¶ 44.

The TOU also provide, among other things, that:

> You automatically grant and assign to CL, and you represent and
> warrant that you have the right to grant and assign to CL, a
> perpetual, irrevocable, unlimited, fully paid, fully sub-licensable
> (through multiple tiers), worldwide license to copy, perform,
> display, distribute, prepare derivative works from (including,
> without limitation, incorporating into other works) and otherwise
> use any content that you post. You also expressly grant and assign
> to CL all rights and causes of action to prohibit and enforce against
> any unauthorized copying, performance, display, distribution, use
> or exploitation of, or creation of derivative works from, any content
> that you post (including but not limited to any unauthorized
> downloading, extraction, harvesting, collection or aggregation of
> content that you post).

TOU § 3.a (Kao Decl. Ex. B).

For the period starting July 16, 2012—before craigslist commenced this action—through

August 8, 2012, users confirmed that craigslist was the exclusive licensee for all of the copyrights

in their ads before completing the posting process.

Specifically, craigslist users affirmatively agreed that:

> Clicking "Continue" confirms that craigslist is the exclusive
> licensee of this content, with the exclusive right to enforce
> copyrights against anyone copying, republishing, distributing or
> preparing derivative works without its consent.

Posting Confirmation (Kao Decl. Ex. C).

## C. 3Taps' Unlawful Scraping of craigslist Data.

3Taps copies all of the content posted on craigslist's website—including time stamps and

unique craigslist user ID numbers—stores it in a database copied from craigslist, and makes it

Perkins Coie LLP
ATTORNEYS AT LAW
PALO ALTO

available to third parties for use in competing websites or, for whatever other purpose they wish. FAC ¶ 63.

Although 3Taps has gone to great lengths to deceive the public regarding the manner in which it harvests craigslist's content, craigslist's investigation shows that 3Taps is not obtaining craigslist content from publicly-available sources, such as the Google and Bing search engines, as 3Taps has consistently claimed.  FAC ¶ 78.  Instead, 3Taps has misappropriated craigslist's content by unlawfully scraping it directly from craigslist on a massive scale.  FAC ¶ 78; *see also* FAC ¶¶ 75-80 (detailing 3Taps' scraping activities).

Indeed, in its Amended Counterclaims against craigslist, 3Taps now admits—contrary to its prior denials to the public, and in its Answer filed with this Court—that "*3taps also has used third parties that scrape data from the craigslist website* to obtain the content that 3taps needs to create indexed data for downstream specialized search engines."  Am. Countercl. ¶ 92 (emphasis added).

The web crawlers that 3Taps, its agents, affiliates, and/or other co-conspirators use to scrape content from craigslist's website operate by accessing, entering, and searching the craigslist website on craigslist's servers and then extracting the content—craigslist postings—and copying that content into the 3Taps database.  FAC ¶ 80.

For example, some of 3Taps' unlawful scraping is conducted by an individual named Brian R. Niessen.  FAC ¶ 87.  Among other things, Mr. Niessen is the founder and chairman of a company named Startup Stock Exchange, in which Mr. Greg Kidd, 3Taps' founder and CEO, is an investor.  FAC ¶ 89.

One of the many websites Mr. Niessen appears to operate, qatro.com, is prominently linked to from the 3Taps website and contains a log that details 3Taps' scraping activities.  FAC ¶ 90.  The log uses telling phrases like "Deciding what to scrape," "Waiting for scrape," and "Scraping."  It also lists the URLs and/or IP addresses from which the scraping occurs and notes when the "Last Good" scrape occurred from each of them:

Perkins Coie LLP
Attorneys At Law
Palo Alto

7

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

FAC ¶ 97 (Fig 11).

As part of its investigation into 3Taps' improper conduct, craigslist identified various IP addresses from which these web crawlers operated. Once craigslist identified such an IP address, craigslist blocked that IP address from accessing craigslist's servers. FAC ¶ 81. Every time craigslist blocked an IP address from which one of 3Taps' web crawlers was operating, however, the crawlers were moved to another IP address. Indeed, craigslist's investigation revealed that 3Taps' web crawlers often operated from multiple IP addresses simultaneously. FAC ¶ 82.

3Taps, either directly or through its agents, affiliates, and/or other co-conspirators, eventually discovered that craigslist was able to identify and block the IP addresses from which its scraping web crawlers were operating. FAC ¶ 83. Thereafter, 3Taps, either directly, or through its agents, affiliates, and/or other co-conspirators, began using anonymous proxies to hide the true origination address of its scraping web crawlers. FAC ¶ 84.

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

1    3Taps affirmatively accepted and agreed to be bound by craigslist's TOU by creating

2    accounts and/or posting ads to craigslist.  FAC ¶ 130.

3    In addition, on March 7, 2012, craigslist sent 3Taps a letter demanding that it cease and

4    desist all of its craigslist-related activities.  A copy of craigslist's TOU was enclosed with that

5    letter.  FAC ¶ 132.  In the letter, craigslist explicitly stated that:

6    
> This letter notifies you that you and your agents, employees,
> affiliates, and/or anyone acting on your behalf are no longer
7    authorized to access, and are prohibited from accessing craigslist's
> website or services for any reason.
8    

9    Kao Decl. Ex. A, at 2.

10    3Taps' illegal scraping activities continue, notwithstanding craigslist's express request to

11    3Taps that it stop its unlawful activities and craigslist's time consuming and burdensome efforts

12    to develop technological means to stop it.  FAC ¶ 86.

13    **D.    Lovely's Unauthorized Use of craigslist Data Obtained From 3Taps.**

14    Lovely is a competitor to craigslist's real estate listings services.  FAC ¶ 111.  It operates

15    a website at livelovely.com, as well as a mobile iPhone application, that provide searchable real

16    estate rental listings for cities all over the United States.  FAC ¶ 112.

17    The majority of Lovely's content is misappropriated from craigslist by 3Taps' unlawful

18    scrapers and distributed to Lovely via 3Taps' illegitimate "craigslist API."  FAC ¶ 112.  The

19    Lovely website allows users to review craigslist postings on its site, view the craigslist user's

20    contact information, and directly e-mail or telephone the craigslist user, all without leaving the

21    Lovely site.  FAC ¶ 113.

22    On June 29, 2012, craigslist sent Lovely a letter demanding that it cease and desist all of

23    its craigslist-related activities.  FAC ¶ 115; Kao Decl. Ex. D.

24    **E.    craigslist's copyrights.**

25    craigslist either owns or has exclusive rights in its website and all portions thereof,

26    including, but not limited to, the database underlying the website and the user-generated postings

27    on its website.  FAC ¶ 50.  Each user-generated posting on the craigslist website is itself an

28    original work of creative expression, as it includes unique written descriptions of the goods or

Perkins Coie LLP
Attorneys At Law
Palo Alto

9

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

services offered for sale, for example, and often include photographs or other creative works. FAC ¶ 49.

craigslist's U.S. copyright registrations include Reg. Nos., TX0006866657, TX0006866658, TX0006866660, TX0006866661, and TX000686662.  FAC ¶ 51; *see* Kao Decl. Exs. E1-E5.  On July 19 and 20, 2012, craigslist submitted additional applications to the Copyright Office for copyright registration.  FAC ¶ 52; *see* Kao Decl. F1-F6.

## ARGUMENT

I.   **CRAIGSLIST HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT AND CALIFORNIA PENAL CODE SECTION 502.**

Defendants' argument that craigslist has failed to adequately plead claims under the CFAA and Penal Code Section 502 misses the mark.  As an initial matter, both statutes explicitly prohibit the unauthorized *access* of computers, and that is precisely what craigslist has alleged in the FAC.[2]  Moreover, even if craigslist were required to allege a "break in," as Defendants assert, the FAC sets forth in great detail 3Taps' efforts to circumvent craigslist's attempts to bar 3Taps from accessing its computers.

A.   **Defendants Improperly Access craigslist's Website Without Authorization.**

The CFAA makes it unlawful to "intentionally access[] a computer" and "obtain[] information," either without authorization or by exceeding authorized access.  18 U.S.C. § 1030(a)(2)(C); *see LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009) ("The CFAA prohibits a number of different computer crimes, the majority of which involve *accessing computers without authorization or in excess of authorization*, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data.") (emphasis added).  "[T]o bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), [plaintiff] must show that [defendant]: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3)

---

[2]  As Defendants set forth in their Motion, courts apply the CFAA and Penal Code Section 502 consistently.  *See, e.g., Multiven, Inc. v. Cisco Sys., Inc.,* 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) (noting that the necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA).

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

10

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

thereby obtained information (4) from any protected computer … and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Brekka*, 581 F. 3d at 1132.

Here, craigslist has alleged facts establishing that Defendants are accessing craigslist's computers either without authorization or by exceeding their authorization. *See, e.g.*, FAC ¶ 214 ("On information and belief, Defendants knowingly and intentionally accessed craigslist's computers without authorization or in excess of authorization as defined by craigslist's TOU."); ¶ 222 ("Defendants have violated California Penal Code §502(c)(3) by knowingly, fraudulently, and without permission accessing and using craigslist's computers and servers.").[3] Specifically, craigslist alleges that Defendants, to the extent they had limited rights to access the craigslist website (as any member of the public does), *exceeded their authorization* by using web crawlers to access craigslist and obtain data from the website, which craigslist does not permit. FAC ¶¶ 75-98. In addition, craigslist further alleges that Defendants have been notified expressly that they are "*no longer authorized to access, and are prohibited from accessing craigslist's website or services for any reason.*" FAC ¶¶ 132-134; Kao Decl. Ex. A (emphasis added). This is more than sufficient to state a claim under both the CFAA and Section 502.

To be sure, craigslist *also* alleges in the FAC that 3Taps is misusing the data unlawfully obtained from craigslist in support of other causes of action asserted against Defendants, including for common law misappropriation and breach of contract. *See, e.g.*, FAC ¶¶ 135-148. But the basis of craigslist's claims for violation of the CFAA and Penal Code Section 502 is 3Taps' unauthorized *access* of craigslist's website, and that is plainly set forth in the FAC.

Defendants' reliance on *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)—and its suggestion that craigslist has somehow ignored its holding—is therefore misplaced. *Nosal* considered whether current employees of a company violated the CFAA by misusing company data they were *authorized* to access. 676 F.3d at 856. Under those circumstances—which are

---

[3] In their Motion, Defendants focus almost exclusively on a single paragraph in the FAC, ¶ 215, which states allegations specifically directed to violations of 18 U.SC. § 1030(a)(4). Defs.' Mot. at 11-12. Not only do the remainder of craigslist's allegations in the FAC adequately support a claim under §1030(a)(4), see FAC ¶¶ 75-98, they also expressly state a claim under *§1030(a)(2)*.

Perkins Coie LLP
Attorneys At Law
Palo Alto

11

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

quite different than the facts here, where 3Taps, a third party with no connection to craigslist, is using automated web crawlers to infiltrate the craigslist website—the Ninth Circuit held that violations of internal policies on the *use* of company data could not support a claim under the CFAA. *See id.* at 863 ("[W]e hold that the phrase "exceeds authorized access" in the CFAA does not extend to violations of use restrictions.").

*Nosal* did *not* hold, as Defendants misleadingly suggest, that a CFAA claim can never be based on violations of contractual restrictions. Rather, *Nosal* clarified that claims under the CFAA are limited to "violations of restrictions on *access* to information, and not restrictions on its *use.*" *Id.* at 864 (emphasis in original); *see Weingand v. Harland Fin. Solutions, Inc.,* No. C-11-3109 (EMC), 2012 WL 2327660 (N.D. Cal. June 19, 2012), at *3 ("Thus, although *Nosal* clearly precluded applying the CFAA to violating restrictions on *use,* it did not preclude applying the CFAA to rules regarding *access.*"). Indeed, the Ninth Circuit *confirmed* in *Nosal* that the CFAA is intended to prohibit the "unauthorized procurement" of information. *See Nosal,* 676 F.3d at 863 (quoting *Shamrock Foods Co. v. Gast,* 535 F. Supp. 2d 962, 965 (D. Ariz. 2008)).[4]

Accordingly, if anything, *Nosal* supports the conclusion that craigslist's CFAA and Section 502 claims should survive a motion to dismiss, because Defendants' access to craigslist's website was, and is, *unauthorized. See, e.g.*, *Facebook, Inc. v. ConnectU LLC,* 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007) (denying motion to dismiss Section 502 claim where Facebook alleged "facts showing that [defendant] ConnectU knowingly accessed Facebook's website to collect, copy, and use data found thereon *in a manner not authorized or permitted by Facebook*") (emphasis added); *Sw. Airlines Co. v. Farechase, Inc.,* 318 F. Supp. 2d 435, 439-440 (N.D. Tex. 2004) (denying motion to dismiss CFAA claims where plaintiff Southwest had alleged that its terms of use prohibited scraping, and that it had directly informed defendants that their access to and scraping of Southwest's website was *unauthorized*); *Register.com, Inc. v. Verio, Inc.*, 126 F.

---

[4] *United States v. Drew,* 259 F.R.D. 449 (C.D. Cal. 2009), which was decided *before* the Ninth Circuit's ruling in *Nosal*, is therefore also distinguishable. In that case, the conduct at issue was not defendant's *access* to the MySpace website—the defendant had created an account with MySpace and was therefore authorized to use the website—but rather defendant's *use* of the website to inflict emotional distress on a minor. 259 F.R.D. at 452-53, 461 (basis for CFAA violation was defendant's use of MySpace to "creat[e] the false … profile, post[] a photograph of a juvenile without his permission and pretend[] to be a sixteen year old….").

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

Supp. 2d 238, 249-51 (S.D.N.Y. 2000) (granting preliminary injunction where defendant's "use of search robots . . . represent an unauthorized access to the WHOIS database").[5]

### B. Defendants Use Rotating IP Addresses and Proxies To Evade craigslist's Measures to Block Scraping.

Defendants further misconstrue *Nosal* to contend that the CFAA and Penal Code Section 502 require that 3Taps "break into" craigslist's website. Defs.' Mot. at 8. *Nosal* does not say anything of the sort.

Both the CFAA and Section 502 have been described in *Nosal*, and elsewhere, as "anti-hacking" statutes. *See Nosal,* 676 F.3d at 857. But as the Ninth Circuit very clearly recites in *Nosal*, the use of the term "hacking" does not mean a physical or technological break-in—it means simply that the defendant accessed computers without authorization. *See id.* at 858. What is paramount is whether the defendant has *permission* to access the data, not the means in which the defendant accesses the information. *See, e.g., Weingand*, at *3 (rejecting defendant's argument that the CFAA requires the circumvention of "code" barriers, "*i.e.,* whether someone is literally blocked from certain files by some security measure such as a password," and noting that *Nosal* "was concerned only with the distinction between access and use") (citation omitted).

For example, as reviewed in *Nosal*, an employee could be liable under the CFAA if she is "authorized to access only certain data or files but accesses unauthorized data or files—what is colloquially known as 'hacking.'" *Nosal*, 676 F.3d at 856-57. The employee is not "breaking into" the computers, she is simply accessing information she does not have authorization to view. *See id.* at 858 ("But it is possible to read both prohibitions as applying to hackers: '[W]ithout authorization' would apply to *outside* hackers (individuals who have no authorized access to the

[5] *See also EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577, 585 (1st Cir. 2001) (affirming grant of preliminary injunction on CFAA claim based on defendant's development and use of a tool to scrape his prior employer's website in violation of his employment agreement with the employer); *EF Cultural Travel BV v. Zefer Corp.,* 318 F.3d 58, 62 (1st Cir. 2003) (noting that "[a] lack of authorization [under the CFAA] could be established by an explicit statement on the website restricting access"); *Snap-on Bus. Solutions Inc. v. O'Neil & Assocs., Inc.,* 708 F. Supp. 2d 669, 678 (N.D. Ohio 2010) (denying summary judgment on CFAA claim because fact issue existed regarding whether defendant's access to database was authorized based on the terms of a web hosting agreement); *Am. Online, Inc. v. LCGM, Inc.,* 46 F. Supp. 2d 444, 450 (E.D. Va. 1998) (finding CFAA violation where "Defendants' actions violated AOL's Terms of Service, and as such was unauthorized).

Perkins Coie LLP
ATTORNEYS AT LAW
PALO ALTO

13

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

computer at all) and 'exceeds authorized access' would apply to *inside* hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files).") (emphasis in original). There is nothing in the language of the relevant statutes themselves, or in precedent applying the statutes, that limits CFAA or Penal Code Section 502 to claims against "those individuals who obtain access . . . through breaking through some kind of security system." *See Weingand*, 2012 WL 2327600, at *3-4 ("[T]he fact that *Nosal* uses the word "authorization" interchangeably with "permission," suggests that one need not engage in such rigorous technological measures to block someone from accessing files in order to limit their "authorization.").

In any event, even if the CFAA and Penal Code Section 502 do require some attempt to physically or technologically circumvent barriers to access—which they do not—craigslist has set forth detailed allegations in the FAC concerning 3Taps' extensive and continuous attempts to evade craigslist's targeted efforts to prevent 3Taps from scraping its site. In particular, as part of its investigation into 3Taps' improper conduct, craigslist identified the IP addresses from which these web crawlers operated, and blocked those IP addresses from accessing craigslist's servers. FAC ¶ 81. However, every time craigslist blocked an IP address from which one of 3Taps' web crawlers was operating, the crawlers were moved to another IP address. Indeed, craigslist's investigation revealed that 3Taps' web crawlers often operated from multiple IP addresses simultaneously. FAC ¶ 82. Moreover, 3Taps also began using anonymous proxies to hide the true origination address of its scraping web crawlers, to further circumvent craigslist's efforts to stop 3Taps' unauthorized access to its servers. FAC ¶ 84.

In *Facebook, Inc. v. Power Ventures, Inc.,* 844 F. Supp. 2d 1025 (N.D. Cal. 2012), this Court found this exact conduct to violate the CFAA and Penal Code Section 502. In *Power Ventures*, defendant Power Ventures, among other things, circumvented Facebook's "attempt[]to block Power's access to the site by blocking what appeared to be its primary IP address . . . by using other IP addresses," and changing IP addresses as they were blocked "in a game of cat and mouse." *Id.* at 1037. In addition, Power Ventures "used a number of routines to avoid being blocked by websites like Facebook, including the use of proxy servers . . . ." *Id.* On these facts,

the Court granted summary judgment in Facebook's favor, finding that Power Ventures had violated the CFAA and Section 502, concluding that there was "no reason to distinguish between methods of circumvention built into a software system to render barriers ineffective and those which respond to barriers after they have been imposed." *Id.* at 1038.[6]

Here, as in the *Power Ventures* case, 3Taps' organized and determined efforts to circumvent craigslist's repeated efforts to block 3Taps from accessing craigslist's computers and scraping data are more than sufficient to state a claim for violation of the CFAA and Section 502 at the pleading stage.

## II.   DEFENDANTS ARE INFRINGING CRAIGSLIST'S VALID AND ENFORCEABLE COPYRIGHTS.

Defendants' argument that craigslist does not, as a matter of law, have valid and enforceable copyrights is also without merit. *First*, it is incontrovertible that the content displayed on craigslist's website—both the individual postings themselves and craigslist's unique and original compilation of those postings—is protected by copyright law. *Second*, craigslist has standing to enforce the copyrights protecting this content against Defendants in this case.

### A.   The Content on craigslist's Website Constitutes Original Works of Authorship and Are Protected By Copyright Law.

Defendants do not appear to contend in their Motion (as 3Taps has publicly argued time and time again) that the individual postings displayed on the craigslist site are mere "public facts" that are not copyrightable, nor could they credibly make such an argument. Instead, Defendants appear to argue that craigslist's *compilation* of user postings is not independently protectable, because craigslist does not compile the postings in an original way. Defendants are wrong. Both the individual postings themselves *and* craigslist's selection and arrangement of those postings are protected by copyright law.

---

[6] In an earlier opinion, decided before *Nosal*, the court in *Power Ventures* disagreed with the holding in *Facebook, Inc. v. ConnectU LLC*, cited above, and which craigslist contends was correctly decided. *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at*8-*11 (N.D. Cal. July 20, 2010). In the *Power Ventures* case, moreover, before Facebook began blocking Power Ventures from accessing its site, Power Ventures had been accessing Facebook "with the permission of a Facebook account holder and at that account holder's behest." *Id.* at *7.

Perkins Coie LLP
Attorneys At Law
Palo Alto

15

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

**1.      Individual User-Created Postings Can Be Copyrighted.**

As an initial matter, the user-created classified ads on craigslist are plainly original works of authorship eligible for protection under 17 U.S.C. § 102.  They consist of words, and sometimes photographs or other visual art, that convey the users' creative expression, whether it be for the purpose of selling goods and services, offering housing, seeking employees, meeting new acquaintances, or commenting on social and political issues.  This is the essence of what copyright law is intended to protect.

3Taps' repeated assertions, both publicly and in their filed pleadings in this case, that a user posting "is factual data that cannot be not subject to copyright protection" (Am. Countercl. ¶ 14; *see also*  ¶¶ 110, 121) is therefore baseless, and borders on frivolous.  It is of no moment that craigslist postings can sometimes be short (although many postings are quite long), and are often directed to commercial activity.  Copyright law protects all original works, however humble.  *See Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be.") (internal citation omitted).

**2.      craigslist's Compilation of User Postings Can Independently Be Copyrighted.**

Likewise, craigslist's compilation of user postings is *independently* eligible for copyright protection.  The Copyright Act expressly provides that a "compilation"—"a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship"—can be copyrighted.  17 U.S.C. §§ 101, 103.  "Compilations" include "collective works," "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  17 U.S.C. § 101; *see also* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §2.04[B] (1996), at 2-46 ("That form of

Perkins Coie LLP
ATTORNEYS AT LAW
PALO ALTO

16

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

compilation which consists of individual items that themselves are copyrightable is termed a 'collective work.'").

Even a compilation of *non-copyrightable* facts can possess the requisite originality to qualify for copyright protection. *See Feist*, 499 U.S. at 348; *Jacobsen v. Katzer*, No. C 06-01905 JSW, 2009 WL 4823021, at *2-*3 (N.D. Cal. Dec. 10, 2009); *see also* U.S. Copyright Office, Circular 65: Copyright Registration for Automated Databases, ("Copyright protection extends to the compilation of facts if the compilation represents original authorship.") (June 2002) (Kao Decl. Ex. G). "The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Feist*, 499 U.S. at 348 (citations omitted).

Defendants argue that craigslist's compilation of user postings should not be copyrightable because craigslist "merely accepts what is posted, or deletes what is flagged by users as abuse." Defs.' Mot. at 12. But, as a factual matter, this is not true.[7] craigslist has the right to, and does, take voluntary efforts to restrict the posting of offensive or otherwise objectionable content on its website. *See, e.g.,* TOU § 3 (Kao Decl. Ex. A) ("Content prohibited from craigslist includes but is not limited to . . . offensive content (including, without limitation, defamatory, threatening, hateful or pornographic content)."). craigslist also exercises judgment in choosing the duration that postings appear on its website, based on the type of posting it is (*e.g.*, whether it is a "For Sale" posting or a "Resumes" or "Gigs" posting) and depending on the local community where the posting appears (e.g., whether it is in the "SF Bay Area" community, or in some other locale). *See* posting lifespans, http://www.craigslist.org/about/help/posting_lifespans. Through these and other methods, craigslist curates the postings that appear on its website.

In addition, this ignores craigslist's original arrangement of the postings on its website. Although Defendants contend there is nothing creative about the way craigslist's postings are

---

[7] For this reason alone, Defendants' Motion should be denied, as Defendants are relying on completely unsupported facts outside of the FAC, which require the Court to resolve disputed issues of fact before any discovery has even occurred.

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

arranged because "every classified section of every newspaper has similarly categorized classified ad listings going back decades," Defs.' Mot. at 13, that is demonstrably false. craigslist's website arranges its postings first into hundreds of geographical communities (for example, the "SF Bay Area," "Inland Empire," "Gold Country" in California), and then into dozens of different categories and sub-categories, all of which were specifically named or chosen by craigslist. For example, the home page for the "SF Bay Area" community reflects that the millions of postings for that geographic area are arranged in no less than *9* different top-level categories and *201* sub-categories of postings. *See* Kao Decl. Ex. H.

This original arrangement of postings is unique to craigslist and sufficiently creative to qualify for copyright protection. craigslist, therefore, is not like the "garden-variety white pages directory" at issue in *Feist*, which simply "takes the data provided by its subscribers and lists it alphabetically by surname." *Feist*, 499 U.S. at 362. craigslist postings are arranged into literally thousands of different, and specifically chosen, geographical areas and subject categories "that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data." *Key Publ'ns, Inc. v. Chinatown Today Pub. Enter.'s, Inc.*, 945 F.2d 509, 513-14 (2nd Cir. 1991) (holding that a yellow pages directory that had more than 9,000 listings organized into approximately 260 different categories was copyrightable, and stating that the "arrangement [of the directory] is in no sense mechanical, but involved creativity . . . in deciding which categories to include and under what name.").

craigslist's selection and arrangement of postings is more akin to the real estate listings service at issue *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, Civ. Action No. 12-CV-00954-AW, 2012 WL 3711513 (D. Md. Aug. 24, 2012) ("*MRIS*"). In that case, the facts of which are strikingly similar to this one, plaintiff MRIS, which operates a regional Multiple Listings Service ("MLS") for the greater Washington, D.C. metropolitan area, brought claims for copyright infringement against defendant AHRN based on AHRN's copying and display of property listings from MRIS' automated database of listings.

In *MRIS*, the court *rejected* AHRN's argument that MRIS "added no written expression" and "does not make any selections" of the texts and photographs contained in its database because

Perkins Coie LLP
Attorneys At Law
Palo Alto

18

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

"they are provided on automatic pilot through uploading by the subscribers"—which is *precisely* what Defendants contend here. *See MRIS*, 2012 WL 3711513, at *14. Based on MRIS' active efforts to "oversee[] and control[] the quality and accuracy of the content in the MRIS Database," and to maintain a database of more than 70,000 property listings, the *MRIS* court concluded that "the MRIS Database exhibits the requisite originality for copyright protection." *Id.* at *15 (citing *Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.,* 878 F. Supp. 804, 810 (D.Md. 1995) (holding that arrangement of information in MLS database "possesses at least some minimal degree of creativity")).

### B. craigslist Has Standing To Enforce The Copyrights Protecting Its Content.

#### 1. craigslist Created and Owns the Compilation of User Postings Displayed on its Website, and Can Separately Enforce the Copyrights in the Compilation.

As craigslist's compilation of postings—in the form of an electronic database—is independently protected by copyright, Defendants' contention in its Motion that because "all of craigslist's copyright claims fully derive from these ads, they must be dismissed in their entirety," is wrong as a matter of law. Defs.' Mot. at 14. However, craigslist may assert copyright claims for the infringement of its *compilation* of postings, separate and apart from the claims regarding the postings themselves. Accordingly, even if the Court concludes that craigslist cannot enforce any copyrights in the underlying works, Defendants' Motion to dismiss Claims 4 and 5 should be denied, as craigslist can still prevail on its copyright claims based on the Defendants' infringement of craigslist's compiled work.

#### 2. craigslist Can Enforce Copyrights in the Underlying Postings.

In this case, however, since craigslist also has rights in the underlying postings themselves, craigslist can enforce the copyrights protecting those postings as well.

##### a. craigslist has an exclusive license to postings displayed on its website.

craigslist's TOU, which all users accept before submitting their postings to the craigslist website, unmistakably conveys an exclusive license to the postings to craigslist under 17 U.S.C. §

204(a).  The present version of craigslist's TOU, which was revised on February 12, 2012, and

has not been modified since, provides in relevant part that:

> You automatically grant and assign to CL . . . *a perpetual, irrevocable, unlimited, fully paid, fully sub-licensable (through multiple tiers), worldwide license* to copy, perform, display, distribute, prepare derivative works from (including, without limitation, incorporating into other works) and otherwise use any content that you post.  You also expressly grant and assign to CL *all rights and causes of action to prohibit and enforce against any unauthorized copying, performance, display, distribution, use or exploitation* of, or creation of derivative works from, any content that you post (including but not limited to any unauthorized downloading, extraction, harvesting, collection or aggregation of content that you post).

TOU § 3.a (emphasis added); *see* Kao Decl. Ex. B.  Each user electronically accepts the TOU

before submitting a posting to craigslist—what is known as a "*clickwrap*" agreement.  FAC ¶ 36.

This version of the TOU stands in contrast to the prior version of the TOU, which stated

expressly that users assigned only a "non-exclusive license" to craigslist.  *See* Kao Decl. Ex. I

("[B]y posting Content to any public area of the Service, you automatically grant … an

irrevocable, perpetual, *non-exclusive*, fully paid, worldwide license . . . .") (emphasis added).

The absence of the term "exclusive" in the TOU is not determinative.  As all the cases

cited by Defendants agree, there is no magic language sufficient to evince an intent to grant an

exclusive license to a copyrighted work.  *See, e.g., Radio Television Espanola S.A. v. New World

Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("No magic words must be included in a

document to satisfy § 204(a).  Rather, the parties' intent as evidenced by the writing must

demonstrate a transfer of the copyright.") (citation omitted); *accord Schiller & Schmidt, Inc. v.

Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992); *Thomsen v. Famous Dave's of Am., Inc.,* 606

F.3d 905, 908 (8th Cir. 2010).  The writing "doesn't have to be the Magna Charta; a one line pro

forma statement will do."  *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir. 1990).

Rather, the Court must look to the totality of the relevant agreement to determine the

parties' intent.  *See Radio Television Espanola*, 183 F.3d at 927 ("[T]he parties' intent as

evidenced by the writing must demonstrate a transfer of the copyright.") (citation omitted); *Nafal

v. Carter*, 540 F. Supp. 2d 1128, 1141-42 (C.D. Cal. 2007) ("Whether an agreement transfers

1 | rights that are exclusive or nonexclusive is governed by the substance of what was given to the

2 | licensee and not the label that the parties put on the agreement.").  In this case, since craigslist's

3 | users have granted to craigslist *all* the exclusive rights a copyright owner is entitled to under 17

4 | U.S.C. § 106,[8] on a "*fully sub-licensable*" basis, as well as "*all rights* and causes of action to

5 | prohibit and enforce against any unauthorized copying, performance, display, distribution, use or

6 | exploitation of, or creation of derivative works from, any content that you post" (which

7 | Defendants conveniently omit from their discussion), the only proper interpretation is that

8 | craigslist has an exclusive license to the postings and can enforce the copyrights protecting the

9 | postings against third parties like Defendants.

10 | craigslist's TOU is far more definite and clear than the alleged agreements at issue in the

11 | cases relied upon by Defendants.  In *Effects Associates,* there was only an *oral* agreement

12 | between the parties, without any writing at all.  908 F.2d at 556.  This plainly falls short of what

13 | is required by § 204.  In *Weinstein Co. v. Smokewood Entertainment Group*, 664 F. Supp. 2d 332,

14 | 337 (S.D.N.Y. 2009), the only alleged written agreement was an exchange of e-mails between the

15 | parties, the last of which indicated that no agreement had been reached:  "Guys, I'm explaining

16 | every detail to the producers and financiers and taking comments and will call you when this

17 | conversation is over."  The alleged agreement in *Radio Television Espanola* was likewise only

18 | preliminary; the last communication between the parties indicated that the defendant was still

19 | "awaiting the contracts."  183 F.3d at 927.  In contrast, craigslist's TOU is indisputably a formal

20 | agreement that grants craigslist exclusive rights to the postings submitted to the craigslist website.

21 | *Cf. MRIS*, 2012 WL 3711513, at *14 ("In this case, however, the MRIS TOU is between MRIS

22 | (the purported assignee) and its subscribers (the purported assignors), its terms are clear, and

23 | MRIS has a credible claim that the subscribers, in submitting the images, intended to assign their

24 | rights to MRIS.").

25 |

---

26 | [8] Section 106 of the Copyright Act provides that the owner of a copyright on a written work "has the *exclusive rights* to do and authorize any of the following:  (1) to *reproduce* the copyrighted work . . .; (2) to *prepare derivative works* based upon the copyrighted work; (3) to *distribute* copies . . . of the copyrighted work to the public; (4) . . . to *perform* the copyrighted work publicly; [and] (5) . . . to *display* the copyrighted work publicly."  17 U.S.C. § 106 (emphasis added).

Perkins Coie LLP
Attorneys At Law
Palo Alto

21

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

The fact that craigslist, for a short period of time, required users to *further* confirm their understanding of the TOU does not change this result.[9] craigslist's TOU on its own was, and is, sufficient to grant an exclusive license for the reasons reviewed above.

At the very least, however, if the Court concludes that the TOU is not sufficiently clear to assign rights to craigslist, then *during the period* that users agreed to this additional confirmation, they validly granted craigslist an exclusive license to their postings. The additional affirmation by craigslist users provides as follows:

> Clicking "Continue" confirms that craigslist is the *exclusive licensee* of this content, with the *exclusive right to enforce copyrights* against anyone copying, republishing, distributing or preparing derivative works without its consent.

Kao Decl. Ex. C (emphasis added).[10] Defendants' contention that this written confirmation fails because it does not incorporate the TOU by reference is beside the point—this writing *standing on its own* evinces that craigslist has an exclusive license to the postings. Defendants' argument that this writing fails because it does contain the word "grant" is scarcely credible. As set forth above, there are no "magic words" needed to satisfy § 204(a), and the plain meaning of this writing, given the context, is abundantly clear—that craigslist is "the *exclusive licensee* of this content," *i.e.*, the content being concurrently submitted by the user for display on craigslist.

### b. Since craigslist has exclusive rights in postings, craigslist can register and enforce copyrights covering the postings as well.

Defendants also argue that craigslist's copyright registrations are improper because (1) a registration for a compilation does not extend to any underlying copyrightable works and (2)

---

[9] craigslist required this additional step in the posting process from July 16, 2012—before craigslist commenced this action—through August 8, 2012. craigslist decided to remove this additional step from the process, but its TOU remains the same as it has since February 2012.

[10] Defendants' reliance on *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987 (1972) is likewise misguided. In *Windsor Mills*, the court refused to enforce an arbitration clause contained in "inconspicuous" print on the back of a purchase order, which the plaintiff did not read and could not be expected to read under the circumstances. *Id.* at 996. Here, the writing at issue was presented to users as part of the posting process, and users could not proceed to make a submission to craigslist without clicking the "Continue" button.

Perkins Coie LLP
Attorneys At Law
Palo Alto

22

CRAIGSLIST'S OPPOSITION TO 3TAPS &
LOVELY'S MOTION TO DISMISS
Case No. CV 12-03816 CRB

1    craigslist's registration must identify, among other things, the author and title of every single

2    posting in its registration for its electronic database.[11]  Defendants are wrong on both counts.

3           *First*, courts have consistently held in similar contexts that "an owner and registrant of a

4    compilation may bring an infringement action on the underlying parts where it also owns

5    copyrights in the underlying parts, even where those parts have not been individually registered."

6    *MRIS*, 2012 WL 3711513, at *10 (*citing Xoom v. Imageline*, 323 F.3d 279, 283-84 (4th Cir.

7    2003)); *see also Morris v. Business Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001) *abrogated on*

8    *other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ("Under the law of this

9    Circuit, where the owner of a copyright for a collective work also owns the copyright for a

10   constituent part of that work, registration of the collective work is sufficient to permit an

11   infringement action under § 411(a) for the constituent part."); *Masterfile Corp. v. Gale,* No. 2:09-

12   cv-966, 2011 WL 4702862, at *2 (D. Utah Oct. 4, 2011) ("Because Masterfile owns the

13   constituent parts of the collection the registration of the collection extends copyright protection to

14   the constituent parts.").

15          These holdings are consistent with the longstanding official guidance of the U.S.

16   Copyright Office.  *See* Compendium of Copyright Office Practices II § 615.06 (1984) (Kao Decl.

17   Ex. J) ("The registration [for a "collective work"] may cover (a) the collective work authorship,

18   (b) any contribution created by the employee or other party commissioned by the author of a

19   work made for hire, and (c) *any other contributions that the claimant of the collective work*

20   *obtained by transfer.*") (emphasis added); U.S. Copyright Office, Circular 62: Copyright

21   Registration for Single Serial Issues ("A claim in the 'collective work' extends to all

22   copyrightable authorship created by employees of the author, as well as any independent

23   contributions in which the claimant has acquired ownership of the copyright.") (August 2011)

---

24          [11]  Defendants also appear to argue that craigslist does not have standing because its registrations
do not properly claim rights in the individual postings.  *See* Defs. Mot. at 20-21.  Defendants cite only to

25   the presently issued registrations, however, which craigslist agrees do not extend to individual postings or
the compilation of those postings.  As alleged in the FAC, craigslist filed *additional* applications for

26   registration prior to filing this lawsuit, one of which expressly claims craigslist's rights in the postings and
the compilation.  FAC ¶ 52; *see* Kao Decl. Ex. F1.  Although this application remains pending in the

27   Copyright Office, that does not affect craigslist's standing.  *See, e.g., Cosmetic Ideas, Inc. v.*
*IAC/Interactive Corp.*, 606 F.3d 612, 619-21 (9th Cir. 2010) ("We therefore hold that receipt by the

28   Copyright Office of a complete application satisfies the registration requirement of § 411(a).").

Perkins Coie LLP
Attorneys At Law
Palo Alto

23            CRAIGSLIST'S OPPOSITION TO 3TAPS &
              LOVELY'S MOTION TO DISMISS
              Case No. CV 12-03816 CRB

1   (Kao Decl. Ex. K); Circular 65 ("Where all, or a substantial portion, of the material in the

2   database represents copyrightable expression and it is being published or registered for the first

3   time, the claim could also extend to 'text' . . . .") (Kao Decl. Ex. G).

4        As the *MRIS* court explained, Section 103(b) of the Copyright Act is not to the contrary.

5   Although "Section 103(b) provides that '[t] he copyright in a compilation or derivative work

6   extends only to the material contributed by the author of such work, as distinguished from the

7   preexisting material employed in the work, and does not imply any exclusive right in the

8   preexisting material," that provision "covers the subject matter of copyrights, not registrations."

9   *MRIS*, 2012 WL 3711513, at *12.  In other words, it "prevents a compilation copyright holder

10  from acquiring rights to other authors' works simply by including them in the compilation." *Id.*

11  It does not preclude the copyright holder from claiming rights in "the underlying or preexisting

12  works of the compilation that are also owned by the registrant." *Id.*

13       *Second*, craigslist is not required to identify the author and title of every single posting in

14  its registration for its electronic database.  Although Section 409 of the Copyright Act provides

15  that a copyright application must include, among other things, the author and the title of the work

16  to be registered, 17 U.S.C. § 409, it does not specify that a registration of a compilation must

17  identify the author and title of each underlying, preexisting work.

18       The defendant in the *MRIS* case raised this exact argument, and the court rejected it,

19  concluding that 17 U.S.C. § 409 does not "require every application for a compilation to include

20  the author and title of each underlying work":

21            The Court disagrees with Defendants' reading of Section 409.  The
            statute does not unambiguously require every application for a
22            compilation to include the author and title of each underlying work.
            In fact, the statute could easily be read to require only the listing of
23            the author and title of the compilation itself.

24  *MRIS*, 2012 WL 3711513, at *11.  As the *MRIS* court noted, this reading of Section 409 is

25  consistent with the Copyright Office's own practice manual:  "Where a collective work is being

26  registered, the application should name the author of the collective work.  The names of the

27  individual authors of separate contributions being registered as part of the claim *need not be given*

28  *on the application*." *Id.* (citing Compendium of Copyright Office Practices II § 615.06 (1984)).

Perkins Coie LLP
Attorneys At Law
Palo Alto

24                CRAIGSLIST'S OPPOSITION TO 3TAPS &
                  LOVELY'S MOTION TO DISMISS
                  Case No. CV 12-03816 CRB

Although there is a recognized split of authority on this issue (which Defendants failed to

2    mention in their Motion), the Ninth Circuit has yet to decide the appeal of *Bean v. Houghton*

3    *Mifflin Harcourt Publ'g Co.,* No. CV 10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz. Aug. 10,

4    2010), to resolve the question in this jurisdiction. *See Pac. Stock, Inc. v. Pearson Educ., Inc.*,

5    Civ. No. 11-00423 SOM/BMK, 2012 WL 93182, at *11 (D. Haw. Jan. 11, 2012) (denying motion

6    to dismiss on that basis).

7    Notably, however, the United States filed an amicus brief in the *Bean* case to support

8    *reversal* of the lower court's decision, stating that "the Copyright Office has consistently taken

9    the position that the registration of a collective work also registers any independently

10   copyrightable works within the collective work—referred to here as component works—in which

11   the claimant owns all rights, even if the registration application does not specify the titles and

12   authors of the component works." *See* Amicus Brief of United States in Support of Reversal,

13   *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, at 7 (Kao Decl. Ex. L). In its Amicus Brief, the

14   government explains in great detail why the district court erred in construing § 409 to require

15   claimants to list the titles and authors of every work intended to be covered by a compilation

16   registration. *See id.* at 11-22.

17   Nor would such a requirement even be reasonable under the circumstances. craigslist's

18   website at any given time is a compilation of *tens of millions* of individual posts. It is simply not

19   practicable to require craigslist to identify to the Copyright Office each individual post within its

20   compilation and the author and title of that post. *See* Amicus Brief, Kao Decl. Ex. L, at 17 ("The

21   Copyright Office's decision to not require collective work claimants to list information for every

22   component work they own is reasonable in light of pragmatic concerns. Many traditional forms of

23   collective works, such newspapers and magazines, can contain hundreds—if not thousands—of

24   copyrightable works that the claimant owns but did not author. Listing all component works and

25   their authors could be so burdensome on applicants as to discourage registration.").

26                                          **CONCLUSION**

27   For the reasons set forth herein, the Court should deny Defendants' limited motion to

28   dismiss Claims 4, 5, 13 and 14 in its entirety.

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

25                    CRAIGSLIST'S OPPOSITION TO 3TAPS &
                      LOVELY'S MOTION TO DISMISS
                      Case No. CV 12-03816 CRB

January 31, 2013                                    **PERKINS COIE LLP**


                                                    By: /s/ Bobbie Wilson
                                                    _____
                                                        Bobbie Wilson (SBN 148317)
                                                        BWilson@perkinscoie.com

                                                    Attorneys for Plaintiff
                                                    craigslist, Inc.


     I, Brian Hennessy, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that the

concurrence to the filing of this document has been obtained from each signatory hereto.

January 31, 2013                                    **PERKINS COIE LLP**


                                                    By: /s/ Brian Hennessy
                                                    _____
                                                        Brian Hennessy (SBN 226721)
                                                        BHennessy@perkinscoie.com

                                                    Attorneys for Plaintiff
                                                    craigslist, Inc.

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO