IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CRAIGSLIST INC.,

        Plaintiff,

  v.

3TAPS INC. ET AL.,

        Defendants.

_____/

No. CV 12-03816 CRB

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; GRANTING MOTION TO BIFURCATE AND STAY DISCOVERY**

This case is before the Court on three defendants' motions to dismiss (two of which are identical) and a motion to bifurcate and stay discovery. Plaintiff craigslist, Inc. ("Craigslist") has brought seventeen claims against three companies and one individual—3taps, Inc. ("3Taps"); Padmapper, Inc. ("Padmapper"); Discover Home Network, Inc. d/b/a Lovely ("Lovely"); and Brian R. Niessen, an individual affiliated with 3Taps—essentially alleging that all defendants have improperly harvested and reproduced the contents of Craigslist's website. 3Taps, Padmapper, and Lovely move to dismiss various claims.

The Court GRANTS the motions to dismiss IN PART—dismissing a subset of the copyright claims as well as the claims against Padmapper premised on civil conspiracy. The Court also GRANTS the motion to bifurcate and stay discovery on the antitrust counterclaims and overlapping affirmative defenses.

# I. BACKGROUND

Craigslist operates a well known and widely used website that allows users to submit and browse classified advertisements. FAC (dkt. 35) ¶¶ 1, 25, 28-34. According to the First Amended Complaint ("FAC"), "[m]ore than 60 million Americans visit craigslist each month, and they collectively post several hundred million classified ads each year." Id. ¶ 25. Craigslist's service is organized by geographic area, and within each given area by types of products and services. Id. ¶ 29. Craigslist provides ancillary features, such as anonymous email forwarding, to support its classified ad service. E.g., id. ¶ 34.

Use of the Craigslist website is governed by its Terms of Use ("TOU"). Id. ¶¶ 14, 126; see generally Kao Decl. Ex. B ("TOU") (dkt. 60-3).[1] Users must affirmatively accept the TOU before posting an ad, and Craigslist alleges that "Defendants affirmatively accepted and agreed to be bound by the TOU." Id. ¶¶ 36-37, 128-29. The TOU include a number of restrictions on the use of Craigslist's website and content included therein. See generally TOU.

The TOU also grant Craigslist a broad license to use and republish content submitted by its users. TOU at 3. For a period in the summer of 2012, Craigslist presented users with a statement during the ad submission process "confirming" that Craigslist acquires an exclusive license to all ads submitted by users. FAC ¶ 38. Aside from that statement, the TOU do not specify whether Craigslist's license is exclusive. See TOU at 3.

Craigslist has submitted a number of copyright registration applications. FAC ¶¶ 51-53. The parties dispute the scope of those registrations.

Defendants 3Taps, Padmapper, and Lovely aggregate and republish ads from Craigslist. Id. ¶¶ 63, 65, 99, 104, 112. Craigslist alleges that 3Taps copies (or "scrapes") all content posted to Craigslist in real time, directly from the Craigslist website. Id. ¶¶ 3, 78-80.

---

[1] Because the FAC references and relies on the TOU, the Court may properly consider the TOU in the context of Defendants' motions to dismiss. E.g., FAC ¶ 214; see Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

1  3Taps markets a "Craigslist API"[2] to allow third parties to access large amounts of content

2  from Craigslist, id. ¶¶ 3, 5, 64, and also operates the website craiggers.com, which

3  "essentially replicated the entire craigslist website," id. ¶ 65, including "all of craigslist's

4  posts," id. ¶ 68.

5      Padmapper provides real estate listings, largely consisting of real estate ads originally

6  posted to Craigslist. Id. ¶ 99. Craigslist alleges that Padmapper initially copied content

7  directly from Craigslist. Id. ¶ 101. After receiving a cease and desist letter, Padmapper did

8  not use Craigslist content for several weeks, but then announced that it was "Bringing

9  Craigslist Back," and began obtaining Craigslist content from other parties, including 3Taps.

10  Id. ¶¶ 101-04.

11      Lovely also provides real estate listings through a website and mobile application,

12  including Craigslist content that it receives from 3Taps. Id. ¶ 112.

13      Craigslist has sent letters to 3Taps, Padmapper, and Lovely demanding that they

14  "cease and desist all . . . craigslist-related activities" and informing them that they were "no

15  longer authorized to access . . . craigslist's website or services for any reason." FAC ¶¶ 132-

16  34; Kao Decl. Ex. A (dkt 60-2) at 3 (cease and desist letter to 3Taps, referenced in the FAC).

17  Craigslist filed this action against 3Taps and Padmapper on July 20, 2012, see generally

18  Compl. (dkt. 1), and later filed the FAC, which added Lovely and Niessen as defendants, and

19  brought additional claims. See generally FAC.

20      The FAC alleges claims for (1) trespass; (2) breach of contract; (3) misappropriation;

21  (4) copyright infringement; (5) contributory copyright infringement; (6) federal trademark

22  infringement; (7) federal false designation of origin; (8) federal dilution of a famous mark;

23  (9) federal cyberpiracy prevention; (10) California trademark infringement; (11) common

24  law trademark infringement; (12) California unfair competition; (13) violations of the

25  Computer Fraud and Abuse Act (CFAA); (14) violations of the California Comprehensive

26

27  _____

28      [2] An Application Programming Interface (API) is a set of programming instructions and standards to allow third parties to develop software that draws information from, or otherwise interacts with, a website, program, or database.

1  Computer Data Access and Fraud Act; (15) aiding and abetting trespass; (16) aiding and

2  abetting misappropriation; and (17) an accounting.  See generally id.[3]

3      3Taps and Lovely have filed identical motions to dismiss the fourth and fifth claims,

4  regarding copyright infringement, and the thirteenth and fourteenth claims, regarding the

5  CFAA and its state-law counterpart.  3Taps Mot. (dkt. 48); Lovely Mot. (dkt. 50).

6  Padmapper joins the other defendants' motions regarding the copyright claims, and

7  separately moves to dismiss the trespass, trademark, and breach of contract claims, as well as

8  civil conspiracy theories of liability that Craigslist incorporates into several claims.

9  Padmapper Joinder (dkt. 52); Padmapper Mot. (dkt. 46).

10      Padmapper and 3Taps have also filed antitrust counterclaims.  Padmapper Am.

11  Counterclaim (dkt. 44); 3Taps Am. Counterclaim (dkt. 47).  Craigslist moves to bifurcate the

12  counterclaims and to stay discovery on them.  Mot. to Bifurcate (dkt. 61).

13  **II.     LEGAL STANDARD**

14      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

15  alleged in a complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

16  "Detailed factual allegations" are not required, but the Rule does call for sufficient factual

17  matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v.

18  Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555,

19  570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

20  allows the court to draw the reasonable inference that the defendant is liable for the

21  misconduct alleged."  Id.  In determining facial plausibility, whether a complaint states a

22  plausible claim is a "context-specific task that requires the reviewing court to draw on its

23  judicial experience and common sense."  Id. at 679.  Allegations of material fact are taken as

24  true and construed in the light most favorable to the non-moving party.  Cahill v. Liberty Mut.

25  Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

26

27  _____

28     [3] The caption of the FAC lists the claims in a different order than the body of the FAC.  See generally FAC.  This Order and the parties' papers use the order within the FAC, not the order used in the caption.

1    A complaint should not be dismissed without leave to amend unless it is clear that the

2    claims could not be saved by amendment.  Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th

3    Cir. 2007).

4    **III.    DISCUSSION**

5         **A.    Motions to Dismiss CFAA Claim and Section 502 Claim**

6         Defendants 3Taps and Lovely move to dismiss Craigslist's claims under the federal

7    Computer Fraud and Abuse Act ("CFAA") and California Penal Code section 502, a state

8    law corollary to the CFAA.  The parties agree that the requirements of both statutes are

9    functionally identical.  See 3Taps Mot. at 12 (citing Multiven, Inc. v. Cisco Sys., Inc., 725 F.

10   Supp. 2d 887, 895 (N.D. Cal. 2010)); Opp'n to 3Taps Mot. at 10 n.2 (same).

11        The CFAA imposes criminal penalties on any person who, among other prohibitions,

12   "intentionally accesses a computer without authorization or exceeds authorized access, and

13   thereby obtains . . . information from any protected computer," defined as a computer "used

14   in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(a)(2),

15   (e)(2).  "Any person who suffers damage or loss by reason of a violation of [the CFAA] may

16   maintain a civil action against the violator to obtain compensatory damages and injunctive

17   relief or other equitable relief," provided that certain factors, not in dispute for the purpose of

18   this Motion, are satisfied.  Id. § 1030(g).[4]

19        The Ninth Circuit clarified the scope of the CFAA in United States v. Nosal.  In that

20   case, the government brought charges under the CFAA against David Nosal for encouraging

21   corporate employees to access confidential information on their employer's computer system

22   and to transfer the information to Nosal.  Id. at 856.  The employees were authorized to

23   access the information but violated a corporate policy by disclosing it to Nosal.  Id.  The

24   Ninth Circuit held that the phrase "'exceeds authorized access' in the CFAA is limited to

25

26   ───────────────

27        [4]Although this is a civil case, the rule of lenity applies here because conduct that triggers civil
     penalties under the relevant provision of the CFAA would also be a criminal violation.  See United
28   States v. Nosal, 676 F.3d 854, 863 (9th Cir. 2012) (en banc); United States v. Thompson/Center Arms
     Co., 504 U.S. 505, 517-18 & n.10 (1992) (plurality) (citing Crandon v. United States, 494 U.S. 152, 168
     (1990)); United States v. Santos, 553 U.S. 507, 523 (plurality) (2008) (citing Thompson/Center).

                                          5

violations of restrictions on <u>access</u> to information, and not restrictions on its <u>use</u>." <u>Id.</u> at 863-64.[5]

Craigslist alleges that Defendants accessed Craigslist's website and the "protected computers" hosting the website "without authorization or in excess of authorization as defined by craigslist's [Terms of Use ('TOU')]." FAC ¶ 214. The relationship between a website's terms of use and the CFAA is somewhat unclear in light of <u>Nosal</u>. On one hand, the Ninth Circuit criticized such terms, including Craigslist's TOU specifically, as "vague and generally unknown" and therefore a precarious basis on which to rest liability under a criminal statute such as the CFAA. <u>See</u> <u>Nosal</u>, 676 F.3d at 860-62 & n.8.

On the other hand, the holding in <u>Nosal</u> rests on the type of restriction ("restrictions on access" versus "restrictions on use"), not on the form that such restrictions take. <u>Id.</u> at 864; <u>see</u> <u>Weingard v. Harland Fin. Solutions, Inc.</u>, No. C 11-3109 EMC, 2012 WL 2327660, at *3 (N.D. Cal. June 19, 2012) (holding that the CFAA applies to restrictions on access regardless of whether the restrictions are contractual or technological); <u>but see</u> <u>Facebook, Inc. v. Power Ventures, Inc.</u>, No. C 08-05780 JCW, 2010 WL 3291750, at *11-12 (N.D. Cal. July 20, 2010) (holding that, based on the rule of lenity, the analogous California Penal Code section 502 only applies to a breach of "technical barriers" as opposed to contractual provisions or cease and desist letters).

The Court need not decide whether violating "restrictions on access to information" contained in a website's terms of use can ever support liability under the CFAA, because Craigslist's TOU contain only "use" restrictions, not true "access" restrictions as the term is used in <u>Nosal</u>. Although the TOU include a section titled "Unauthorized Access and Activities," parts of which are framed in terms of "access," these restrictions depend entirely on the accessor's <u>purpose</u>. TOU at 6-7 (prohibiting, e.g., "access to or use of craigslist to

---

[5] The Ninth Circuit recognized in <u>Nosal</u> that its interpretation of the CFAA conflicted with other "circuits that interpret the CFAA broadly to cover violations of corporate computer use restrictions or violations of the duty of loyalty." <u>Nosal</u>, 676 F.3d at 862-63 (citing cases from the Fifth, Seventh, and Eleventh Circuits). The Court's analysis of the CFAA therefore looks primarily to authority from within the Ninth Circuit, recognizing that other jurisdictions have interpreted it more broadly.

design, develop, test, . . . or otherwise make available any program" that interacts with Craigslist).

In <u>Nosal</u>, the Ninth Circuit addressed whether individuals who used a computer for an unauthorized purpose "exceed[ed] authorized access" under the CFAA, and held that they did not. <u>See</u> 676 F.3d at 863-64. The TOU do not govern <u>who</u> may access information, <u>what</u> information may be accessed, or the <u>methods</u> by which information may be accessed,[6] all of which the Ninth Circuit suggested were more properly considered "access" restrictions under the CFAA. <u>See id.</u> at 857 ("an employee is permitted to access only product information on the company's computer but accesses customer data"); <u>id.</u> at 858 (an employee has access to information, but "[i]n an effort to cover his tracks, he uses another employee's login").

Aside from the TOU, however, Craigslist specifically denied authorization to use the website "for any purposes" in its cease and desist letters, Kao Decl. Ex. A, and also used technological measures to block access from IP addresses[7] associated with 3Taps, which Craigslist alleges that 3Taps bypassed by using different IP addresses and proxy servers to conceal its identity. FAC ¶¶ 80-84. Assuming that the CFAA encompasses information generally available to the public such as Craigslist's website,[8] Defendants' continued use of

---

[6] Craigslist points to Defendants' use of automated programs known as "web crawlers" to access the Craigslist website, Opp'n at 11, but the TOU do not prohibit this method of access. The TOU only refer to such programs in the context of prohibiting "copying, aggregation, display, distribution, performance, or derivative use of craigslist or any content posted to craigslist whether done directly or through intermediaries (including but not limited to [automated programs])." TOU at 6. This provision restricts certain <u>uses</u> of Craigslist content, regardless of the method of access, and therefore does not provide a basis for CFAA liability. <u>See</u> <u>Nosal</u>, 676 F.3d at 864.

[7] An IP address is an identification number for a device that accesses the internet.

[8] The parties have not addressed a threshold question of whether the CFAA applies where the owner of an otherwise publicly available website takes steps to restrict access by specific entities, such as the owner's competitors. "Some commentators have noted that suits under anti-hacking laws have gone beyond the intended scope of such laws and are increasingly being used as a tactical tool to gain business or litigation advantages." <u>Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.</u>, 409 F. App'x 498, 506 (3d Cir. 2010); <u>see also</u> <u>Nosal</u>, 676 F.3d at 857 (describing the CFAA as "an anti-hacking statute"); Mark A Lemley, <u>Place and Cyberspace</u>, 91 Cal. L. Rev. 521, 528 (2003) ("An even more serious problem is the judicial application of the [CFAA], which was designed to punish malicious hackers, to make it illegal—indeed, criminal—to seek information from a publicly available website if doing so would violate the terms of a 'browsewrap' license.").
   The CFAA was passed in 1986, well before the development of the modern internet, and originally only covered certain computers operated by the federal government or financial institutions.

Craigslist after the clear statements regarding authorization in the cease and desist letters and the technological measures to block them constitutes unauthorized access under the statute. See Weingard, 2012 WL 2327660, at *3 (concluding that the CFAA applies to "access[ing] information without permission" regardless of a lack of technological barriers); Facebook, Inc. v. Power Ventures, Inc. (Facebook II), 844 F. Supp. 2d 1025, 1038-39 (N.D. Cal. 2012) (holding that "circumvent[ing] technical barriers," specifically, taking steps to evade the blocking of IP addresses, constitutes "access[ing] the site 'without permission'" and triggers liability under the CFAA); Facebook I, 2010 WL 3291750, at *12 ("[The Electronic Frontier Foundation, filing an amicus brief,] has not pointed to any meaningful distinction between IP address blocking and any other conceivable technical barrier that would adequately justify not finding Section 502 liability in one instance while finding it in the other.").

The Court therefore DENIES the motions to dismiss the CFAA claim and its state law counterpart.

//

---

See Christine D. Galbraith, Access Denied: Improper Use of the Computer Fraud and Abuse Act to Control Information on Publicly Accessible Internet Websites, 63 Md. L. Rev. 320, 329 (2004). In 1996, Congress amended the CFAA to cover all computers used in interstate commerce, but "[r]eferences can be found throughout the amendment's legislative history that support the premise that the changes were designed to safeguard the privacy of information," rather than to "widen dramatically the protection of the CFAA to include all information on all computer systems on the Internet, such as . . . data contained on publicly accessible websites." Id. at 330-31 (citing 142 Cong. Rec. S10,889; S. Rep. No. 104-357 (1996)).

Although courts in this district have held that the CFAA may apply to unauthorized access to websites, the parties have not cited a case from this district or the Ninth Circuit addressing its application to information that is generally available to the public. In Facebook II, for example, Judge Ware held that the CFAA applied to information protected by a username and password. See 844 F. Supp. 2d at 1027. Although the defendants in that case accessed information with the consent of users who shared their credentials—the access was unauthorized because the defendants bypassed Facebook's efforts to block their IP addresses—the information at issue was not available to the general public. See id. Applying the CFAA to publicly available website information presents uncomfortable possibilities. Any corporation could subject its competitors to civil and criminal liability for visiting its otherwise publicly available home page; in theory, a major news outlet could seek criminal charges against competing journalists for reading articles on its website.

In Nosal, the Ninth Circuit rejected an "interpretation [that] would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." 676 F.3d at 857. At the same time, Nosal discussed at some length potential problems with an overly expansive interpretation of the CFAA, but did not seize on that opportunity to highlight a possible distinction between public and non-public information. Accordingly, until the Ninth Circuit holds otherwise–and in the absence of any argument on this issue from Defendants at this time–this Court assumes that the expansive language of the statute covers owner-imposed restrictions on access to otherwise public information on public websites.

**B.     Motions to Dismiss Copyright Claims**

Defendants 3Taps, Lovely, and Padmapper move to dismiss claims four and five of the FAC, which allege copyright infringement and contributory copyright infringement.[9] "To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991)).  The Motions before the Court challenge the first element, whether Craigslist owns valid copyrights.

### 1.     Craigslist Has Adequately Alleged That the Compilation of Posts and the Posts Themselves Are Copyrightable

As a threshold matter, the Court must determine whether the works in question are subject to copyright protection; specifically, whether (1) the individual posts and (2) the compilation of posts are sufficiently "original" to warrant protection.

### a.     Individual Posts

Under the Copyright Act, "protection subsists . . . in original works of authorship fixed[10] in any tangible medium of expression."  17 U.S.C. § 102(a).  Although codified by statute, "[o]riginality is a constitutional requirement."  Feist, 499 U.S. at 346 (citing U.S. Const. art. I, § 8, cl. 8).  The Supreme Court has summarized the "original works" standard as follows:

> The sine qua non of copyright is originality. . . .  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.

---

[9] 3Taps and Lovely filed identical motions to dismiss these claims.  See 3Taps Mot. (dkt. 48) at 14-25; Lovely Mot. (dkt. 50) at 14-25.  Padmapper joined the other defendants' motions as to the fourth cause of action for copyright infringement.  Padmapper Joinder in 3Taps Mot. (dkt. 52).

[10] Defendants' Reply raises for the first time whether individual posts on Craigslist are sufficiently "fixed" to warrant protection.  3Taps Reply (dkt. 62) at 14-15.  This Court "need not consider arguments raised for the first time in a reply brief."  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  The Court declines to consider this argument, "which is not responsive to any new arguments raised in [Craigslist's] Opposition."  See Johnson v. Sky Chefs, Inc., No. C 11-05619 LHK, 2012 WL 4483225, at *12 n.10 (N.D. Cal. Sept. 27, 2012).

United States District Court
For the Northern District of California

Id. at 345 (citations omitted). Only a "narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent [is] incapable of sustaining a valid copyright." Id. at 359.

In the FAC, Craigslist alleges that a typical user of its site "creates a unique classified ad," which "include[s] a title, description and other relevant details about whatever the user placing the ad may be offering or seeking." FAC ¶ 34. Viewed in the light most favorable to Craigslist, the non-moving party, see Cahill, 80 F.3d at 337-38, this statement sufficiently alleges that users' posts on the Craigslist site have a level of creativity that is not "so trivial as to be virtually nonexistent," and thus are sufficiently "original" to fall within the scope of copyright protection. See Feist, 499 U.S. at 359. The division of ownership of those copyrights between Craigslist and its users is discussed in a later section. See Part III.B.2.

### b. Compilation

Defendants argue that the compilation is not subject to copyright because it lacks originality. See 3Taps Mot. at 12-13. Copyright protection encompasses compilations of preexisting material, but "extends only to the material contributed by the author of [the compilation], as distinguished from the preexisting material employed in the [compilation], and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). "Thus, even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement," because "choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original." Feist, 499 U.S. at 348.

However, where the creation of a compilation requires "nothing remotely creative," as in Feist where the Court considered a "white pages" telephone book that merely listed subscribers in alphabetical order, such a compilation lacks "the minimal creative spark required by the Copyright Act and the Constitution." Id. at 363. The Second Circuit subsequently held that the creation of a "yellow pages" directory, in contrast, "entailed the de minimis thought needed to withstand the originality requirement" because it required

"deciding which categories to include and under what name." <u>Key Pub'ns, Inc. v.</u>
<u>Chinatown Today Publ'g Enters., Inc.</u>, 945 F.2d 509, 514 (2d Cir. 1991) (explicitly drawing
a contrast to the alphabetized directory in <u>Feist</u>).

Both sides seek to introduce facts from outside of the FAC in their arguments on this
issue. <u>See</u> 3Taps Mot. at 12 ("Nor does craigslist select the ads—it merely accepts what is
posted, or deletes what is flagged by users as abuse."); Opp'n to 3Taps Mot. at 17 ("Through
[a variety of] methods, craigslist curates the postings that appear on its website."). Looking
only to the FAC, however, Craigslist has alleged that its "classified ad service is organized
first by geographic area, and then by category of product or service," with these categories
organized in "a list designed and presented by craigslist." FAC ¶¶ 29, 31. Construing the
relevant allegations in Craigslist's favor at this early stage in the proceedings, the Court
concludes that Craigslist, in "deciding which categories to include and under what name,"
<u>see</u> <u>Key Publ'ns</u>, 945 F.2d at 514, "display[ed] some minimal level of creativity," <u>see</u> <u>Feist</u>,
499 U.S. at 358.[11]

The Court therefore DENIES Defendants' Motion to Dismiss Craigslist's copyright
claims on the basis that the Craigslist website is a non-copyrightable compilation.

## 2. Craigslist Acquired Exclusive Licenses to User-Created Content Only from July 16, 2012 Through August 8, 2012

While the primary issue for the compilation—of which there is no dispute that
Craigslist is the author—is whether it is subject to copyright, the primary issue for the user-
created individual posts is whether Craigslist has acquired a sufficient license or ownership
interest to assert the copyright. The Craigslist TOU purport to grant Craigslist the right to
sue for infringement:

> You also expressly grant and assign to [Craigslist] all rights and causes of
> action to prohibit and enforce against any unauthorized copying, performance,
> display, distribution, use or exploitation of, or creation of derivative works
> from, any content that you post (including but not limited to any unauthorized

---

[11] "[O]riginality is often a question of fact," <u>Signo Trading Int'l Ltd. v. Gordon</u>, 535 F.
Supp. 362, 364 (N.D. Cal. 1981) (Henderson, J.), and Defendants could still prevail on this issue
if, at summary judgment or trial, they demonstrate a lack of creativity by Craigslist. <u>Cf.</u> <u>Feist</u>,
499 U.S. at 344 (decided at the summary judgment phase); <u>Key Pub'ns</u>, 945 F.2d at 511-12
(decided by a bench trial).

downloading, extraction, harvesting, collection or aggregation of content that you post).

TOU at 3.

Whether that clause has effect depends on whether users granted Craigslist an exclusive license to the user-created content. "[O]nly the owner of an exclusive right under the copyright is entitled to sue for infringement." Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 889 (9th Cir. 2005) (en banc) (emphasis added) (citing 17 U.S.C. § 501(b)). A party may not assign the right to sue for infringement without also granting an exclusive license or ownership. See id. at 889-90 (holding on the facts of that case that "[t]he bare assignment of an accrued cause of action is impermissible," and stating more generally that this principle applies "[w]hether the assignment is prospective or retrospective"). "There is no question that a non-exclusive license . . . would be insufficient to confer standing [to sue for infringement]." Nafal v. Carter, 540 F. Supp. 2d 1128, 1135 n.8 (C.D. Cal. 2007).

Transferring an exclusive license requires a writing. 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless . . . in writing."); 17 U.S.C. § 101 (defining "transfer of copyright ownership" to include an "exclusive license"). "No magic words must be included in the document," which "doesn't have to be the Magna Carta; a one-line pro forma statement will do." Radio Television Espanola S.A. v. New World Entm't Ltd., 183 F.3d 922, 927 (9th Cir. 1999) (citations omitted). "Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." Id.

Users submitting posts to Craigslist were, from July 16, 2012 through August 8, 2012, presented with a notice that "[c]licking 'Continue' confirms that craigslist is the exclusive licensee of this content, with the exclusive right to enforce copyrights against anyone copying, republishing, distributing or preparing derivative works without its consent." FAC ¶ 38; Kao Decl. Ex. C (dkt. 60-4) (a screen capture of this clause, properly considered because it is referenced in the FAC). Defendants argue that this is inadequate because "there is here no language actually granting a license, only language 'confirming' a license elsewhere granted" 3Taps Mot. at 15. "No magic words must be included in the document,"

however, and it is reasonable to infer that a Craigslist user would understand that this "confirmation" effected a transfer of rights. See Radio Television Espanola, 183 F.3d at 927.

Further, contrary to Defendants' argument that "there is no such language elsewhere on the site either," 3Taps Mot. at 15, the TOU provide as follows:

> You automatically grant and assign to [Craigslist], and you represent and warrant that you have the right to grant and assign to [Craigslist], a perpetual, irrevocable, unlimited, fully paid, fully sub-licensable (through multiple tiers), worldwide license to copy, perform, display, distribute, prepare derivative works from (including, without limitation, incorporating into other works) and otherwise use any content that you post.

TOU at 3.

The FAC alleges that users cannot post to the Craigslist website without first affirmatively accepting the TOU. FAC ¶¶ 36-37, 128-29. The Court therefore concludes that Craigslist acquired an exclusive license for user posts during the period–from July 16, 2012 through August 8, 2012–that it used the confirmation statement making clear that Craigslist's license was exclusive.[12]

However, Craigslist's license to user-created posts submitted outside of that time period was not exclusive, and Craigslist therefore cannot sue for infringement of such posts. Outside of the time frame where Craigslist utilized the "exclusive license" confirmation statement, Craigslist's license to user-created posts was governed only by the TOU. See FAC ¶ 38. On their face, the TOU do not give any indication that the license "grant[ed] and assign[ed]" by users is exclusive. See TOU at 3.

Craigslist argues that the TOU imply exclusivity because a previous version specified that the license was "non-exclusive," see Opp'n to 3Taps Mot. at 26,[13] but that argument cuts just as well the other way–Craigslist apparently appreciated the significance of the exclusivity distinction, yet declined to state that the license was exclusive. Also, the limited period of

---

[12] Defendants label this period of exclusivity a "sham" because of its brevity and coincidence with the filing of this lawsuit, but provide no authority suggesting that these factors would change the legal effect of the licenses granted during this period. See 3Taps Mot. at 13.

[13] Although Craigslist submitted this version of the TOU as an exhibit to its Opposition, see Kao Decl. Ex. I (dkt. 60-23), Craigslist provides no basis for judicial notice of this document. The Court need not decide whether it is properly subject to notice because, as discussed herein, the previous terms of the TOU do not help to determine the intent of users who agreed to the current TOU.

1   the "exclusive license" confirmation statement arguably suggests non-exclusivity outside of

2   that period.  See 3Taps Mot. at 14; 3Taps Reply at 9.  And, neither change to the terms is

3   particularly significant to the key issue of "the parties' intent," because no allegation in the

4   FAC suggests that a user submitting a post on, for example, July 15 or August 9, 2012,

5   would have been aware of what terms Craigslist used at any other time.  See Radio

6   Television Espanola, 183 F.3d at 927.

7       Nor would a user conclude that he or she was granting Craigslist an exclusive license

8   based on the terms permitting Craigslist to grant sub-licenses and purporting to permit

9   Craigslist to sue for infringement.  See Opp'n to 3Taps Mot. at 21 (suggesting that these

10  terms demonstrate exclusivity).  The meaning of the phrase "You also expressly grant and

11  assign to [Craigslist] all rights" was the subject of some debate at the hearing on these

12  motions, but the "all rights" language relates specifically to enforcement rights–not rights to

13  the content of the posts.  The language assigning rights to the content did not use the phrase

14  "all rights," and did not specify that the rights granted were "exclusive."  Craigslist provides

15  no authority for the proposition that an ambiguous grant of rights is presumptively exclusive,

16  and the Court declines to read that term into the terms that Craigslist itself drafted.

17      The Court therefore concludes that the TOU, standing alone, did not grant Craigslist

18  an exclusive license.  Without an exclusive license, Craigslist cannot sue for infringement;

19  the TOU provision that purportedly granted Craigslist the right to sue is "impermissible."

20  See Silvers, 402 F.3d at 889-90.  The Court therefore GRANTS Defendants' motions to

21  dismiss the copyright claims with respect to user-created posts submitted before July 16,

22  2012 or after August 8, 2012.

23          **3.    Craigslist Sufficiently Registered Copyright for User-Created
                    Content, Because Registering a Compilation Serves to Register Its
24                  Component Works**

25      Defendants argue that Craigslist cannot assert infringement of the user-created posts

26  because Craigslist failed to list the authors of each post in its copyright registration

27  applications.  3Taps Mot. at 21-23.  A plaintiff must register or preregister a copyright claim

28  with the Copyright Office prior to bringing a civil action for infringement.  17 U.S.C.

§ 411(a). Although not a jurisdictional requirement, registration is a "precondition" for bringing an infringement claim. Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1247 (2010). The Copyright Act requires that registration applications name the author or authors of the copyrighted work. 17 U.S.C. § 409(2).[14]

Courts disagree, however, as to how this requirement applies to the registration of compilations. Some courts have disallowed claims where component works were only registered as part of a compilation, without a listing of individual authors. E.g., Bean v. Houghton Mifflin Harcourt Publ'g Co., No. CV 10-8034-PCT-DGC, 2010 WL 3168624, at *4 (D. Ariz. Aug. 10, 2010) (granting motion to dismiss) (appeal pending before the Ninth Circuit); Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co., 712 F. Supp. 2d 84, 94-95 (S.D.N.Y 2010) (granting summary judgment because "asking the Court flatly to ignore the requirement that the authors' names be listed . . . goes a bridge too far").

Others have recognized these registrations and allowed claims to proceed, holding that "registration of the collective work is sufficient to permit an infringement action of the constituent part" where the compilation author has sufficient rights to the component works. See, Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 284-85 (4th Cir. 2003), abrogated in part on other grounds by Reed Elsevier, 130 S. Ct. 1237; Morris v. Bus. Concepts, Inc., 259 F.3d 65, 68-69 (2d Cir. 2001), abrogated in part on other grounds by Reed Elsevier, 130 S. Ct. 1237; Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc. (MRIS), 888 F. Supp. 2d 691, 706 (D. Md. 2012); Pac. Stock, Inc. v. Pearson Educ., Inc., No. Civ. 11-00423 SOM/BMK, 2012 WL 93182, at *4 (D. Haw. Jan. 11, 2012).

This Court concludes that Craigslist's registration of the compilation (the overall Craigslist website and database) served to register component works to which Craigslist has an exclusive license, despite the omission of individual authors from the registration application.

---

[14] A registrant need not include the author's name for an anonymous or pseudonymous work, but Craigslist has not invoked that exception here, see generally Opp'n to 3Taps Mot., and did not indicate on its application that the authors of user-created content were anonymous or pseudonymous. Kao Decl. Ex. F1.

That conclusion accords with the Copyright Office's own interpretation of the requirement:

> Where a collective work is being registered, the application should name the author of the collective work. The names of the individual authors of separate contributions being registered as part of the claim need not be given on the application. The registration may cover (a) the collective work authorship, (b) any contribution created by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer.

MRIS, 888 F. Supp. 2d at 707 (quoting Compendium of Copyright Office Practices II § 615.06) (emphasis omitted). Interpretation of copyright law in the Compendium II is "entitled to judicial deference if reasonable." Batjac Prods. Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1230 (9th Cir. 1998) (citation omitted). Here, the Copyright Office's interpretation is reasonable, and should be followed.

As another district court observed, "[t]he statute does not unambiguously require every application for a compilation to include the author and title of each underlying work." MRIS, 888 F. Supp. 2d at 706. The statute requires only "the name . . . of the author," and Craigslist provided the name of the author for the compilation. Kao Decl. Ex. F1 ("Name of Author: craigslist, Inc."). Just as "[i]t would be absurd and inefficient to require the author of a larger work to individually register every possible smaller component of that work," Idearc Media Corp. v. Nw. Directories, Inc., 623 F. Supp. 2d 1223, 1230 (D. Or. 2008), it would be nearly as inefficient to require the registrant to list each author for an extremely large number of component works to which the registrant has acquired an exclusive license. See FAC ¶ 24 ("More than 60 million Americans visit craigslist each month, and they collectively post several hundred million classified ads each year.").

The Court therefore concludes that Craigslist has fulfilled the requirement of registering its copyright claims to user-generated posts.[15]

//

---

[15]This Court would entertain a motion for reconsideration of this issue if the Ninth Circuit resolves it differently prior to entry of judgment in this case. See Bean v. Houghton Mifflin Harcourt Publ'g Co., No. CV-10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz. Aug. 10, 2010), appeal docketed, No. 10-16771 (9th Cir. Aug. 12, 2010) (raising the issue).

**C.     The Copyright Act Does Not Preempt Craigslist's Breach of Contract Claim**

Defendant Padmapper moves to dismiss Craigslist's breach of contract claim, arguing that it is preempted by the Copyright Act.  See Padmapper Mot. at 4-5.  The Copyright Act explicitly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright [governed by the Act]" that arise from "common law or statutes of any State."  17 U.S.C. § 301(a).  However, "[m]ost courts have held that the Copyright Act does not preempt the enforcement of contractual rights."  Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005).  "Contract claims generally survive preemption because they require proof of . . . an extra element [such as] agreement of payment for use."  Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 980 (9th Cir. 2011).

In considering this issue, the Seventh Circuit has held that the purpose of preemption is to "prevent[] states from substituting their own regulatory systems for those of the national government" and that "general enforcement of shrinkwrap licenses . . . does not create such an interference," although that court found it "prudent to refrain from adopting a rule that anything with label 'contract' is necessarily outside the preemption clause" due to potential unforeseeable applications of such a broad rule.  ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1455 (7th Cir. 1996) (Easterbrook, J.); see also Altera, 424 F.3d 1079, 1089 (finding ProCD and similar cases "compelling"); Nw. Home Designing Inc. v. Sound Built Homes Inc., 776 F. Supp. 2d 1210, 1215-16 (W.D. Wash. 2011) (further examining ProCD).

Some courts have cautioned against an overbroad application of the doctrine that the Copyright Act does not preempt contract rights.  For example, the California Court of Appeal held that "[i]f the promise was simply to refrain from copying the material or infringing the rights protected by copyright, then the promisor has promised nothing more than that which was already required under federal copyright law," and therefore "must be preempted in order to prevent parties from circumventing federal copyright law."  Kabehie v. Zoland, 102 Cal. App. 4th 513, 526 (2002); see also Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 457 (6th Cir. 2001).

This case does not present the sort of bare substitute for copyright protection discussed in <u>Kabehie</u>. The essence of Craigslist's breach of contract claim is that Padmapper and other Defendants breached provisions of the TOU governing access to and permissible uses of Craigslist's website. <u>See</u> FAC ¶ 135; TOU at 6-7 (<u>e.g.</u>, "Any access to or use of craigslist to design, develop, test, update . . . or otherwise make available any program, application, or service [relating to] craigslist . . . is prohibited"). If Craigslist alleged a breach of contract based solely on the reproduction of copyrighted content, the claim might be preempted. <u>See</u> <u>Kabehie</u>, 102 Cal. App. 4th at 526.[16] Even then, the Seventh Circuit's reasoning is persuasive that private contract agreements are not the sort of state regulatory scheme that preemption primarily targets. <u>See</u> <u>ProCD</u>, 86 F.3d at 1454-55; <u>cf.</u> <u>Am. Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 228 (1995) (holding that the Airline Deregulation Act preempts only suits alleging "violations of state-imposed obligations," not those "seeking to recover solely for the airline's alleged breach of its own, self-imposed [contractual] undertakings").

The Court need not decide, however, whether <u>any</u> contract could be preempted by the Copyright Act, because the contract that Craigslist alleges here involves a number of "extra element[s]" not merely "equivalent to" rights under the Copyright Act. <u>See</u> <u>Montz</u>, 649 F.3d at 980. The relevant provisions of the TOU do not merely prohibit copying or reusing content, but rather include accessing the website for inappropriate purposes, using the website to develop computer programs and services that interact with Craigslist, and circumventing technological measures intended to restrict access to the website. TOU at 6-7. In return for users agreeing to the TOU, Craigslist provides services to its users "including but not limited to classified advertising, forums, and email forwarding." TOU at 1. Because the Copyright Act generally does not preempt contracts, <u>see</u> <u>Montz</u>, 649 F.3d at 980, and because the TOU includes these "extra element[s]" beyond the protections of the Act, <u>see</u> <u>id.</u>,

---

[16] And, of course, if Craigslist had alleged that Defendants obtained the content through means other than unauthorized access to the Craigslist website, perhaps directly from the original authors of user-created posts, the contract might not apply at all. <u>See</u> <u>ProCD</u>, 86 F.3d at 1454 (noting that the contract at issue in that case would not apply to "someone who found a copy of [the protected content] on the street").

18

the Court concludes that Craigslist's breach of contract claim is not preempted, and DENIES

Padmapper's motion to dismiss on that basis.

### D. The Supreme Court's Holding in <u>Dastar</u> Does Not Preclude Craigslist's Lanham Act and Trademark Claims

Padmapper argues that Craigslist's trademark claims (claims six through eleven) are

precluded by the Supreme Court's holding in <u>Dastar Corp. v. Twentieth Century Fox Film</u>

<u>Corp.</u>, 539 U.S. 23 (2003). Section 43(a) of the Lanham Act imposes civil liability on:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1).

In <u>Dastar</u>, the Supreme Court held that Twentieth Century Fox could not bring a false

designation of origin claim under § 43(a) where the defendant, Dastar, had repackaged and

sold as its own a Fox television series which had entered the public domain after its

copyright lapsed. <u>Dastar</u>, 539 U.S. at 27-28, 37-38. That case involved a "reverse passing

off" claim, an allegation that the seller has "misrepresent[ed] someone else's goods or

services as his own." <u>Id.</u> at 27 & n.1. In contrast, regular "passing off" (or "palming off")

occurs when the seller "misrepresents his own goods or services as someone else's." <u>Id.</u> at

27 n.1. The case did not include allegations that Dastar used Fox's trademarks in any way;

rather, Fox's claim rested specifically on Dastar <u>not</u> using such a mark and therefore creating

confusion as to the origin of the content. <u>See</u> <u>id.</u> at 27-28.

The Supreme Court held that Fox had no § 43(a) false designation of origin claim

because Dastar was in fact the "origin" of the physical videotapes, and the phrase "origin of

goods" in § 43(a) "refers to the producer of the tangible goods that are offered for sale, and

not to the author of any idea, concept, or communication embodied in those goods." <u>Id.</u> at

37-38. "To hold otherwise," and allow a false designation of origin claim where a defendant

used, without attribution, intellectual property created by a plaintiff, "would be akin to

1  finding that § 43(a) created a species of perpetual patent and copyright, which Congress may

2  not do." Id. at 37 (citation omitted).

3      If Craigslist had sought to bring a "reverse passing off" false designation of origin

4  claim—that Defendants violated the Lanham Act by presenting Craigslist's content as

5  Defendant's own—such a claim would improperly overlap with the scope of copyright

6  protection and would fail under Dastar. See id. Although Craigslist alleges in its copyright

7  claims that Defendants improperly distributed Craigslist's content, see FAC ¶¶ 149-168, the

8  Lanham Act claim rests on different allegations.

9      Craigslist alleges that Defendants used the "craigslist" mark to falsely pass off

10  Defendants' products as being provided or endorsed by Craigslist. FAC ¶ 178. This sort of

11  allegation–a regular "passing off" claim–does not raise the "perpetual patent and copyright"

12  concerns that the Supreme Court identified in Dastar, see 539 U.S. at 37, because it relates to

13  Defendants' content, not Craigslist's, see FAC ¶ 178.

14      The Copyright Act provides no recourse for Craigslist to prevent others from trading

15  on Craigslist's name and mark, and thus does not overlap with the present Lanham Act

16  claim. Cf. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (in

17  light of Dastar, dismissing a Lanham Act claim based on alleged misrepresentation of

18  licensing status "to avoid overlap between the Lanham and Copyright Acts").

19      Nor does the Supreme Court's holding that "goods" under the Lanham Act must be

20  tangible, 539 U.S. at 37, preclude Lanham Act liability here, because Craigslist alleges a

21  cognizable claim regarding "services or commercial activities." See 15 U.S.C. 1125(a)(1);

22  FAC ¶ 178 ("Defendants' unauthorized use of the CRAIGSLIST mark . . . create[s] the false

23  and misleading impression that Defendants' products or services are provided by craigslist

24  . . . ." (emphasis added)). The Court therefore DENIES Padmapper's motion to dismiss

25  Craigslist's Lanham Act claim.

26      Padmapper further argues that although "[t]here is scant case law expressly deciding

27  whether Dastar applies to trademark infringement claims" under 15 U.S.C. § 1114, Dastar

28  precludes Craigslist's infringement claims in this case. Padmapper Mot. at 9-10. This

argument would greatly extend <u>Dastar</u> beyond its holding, which was only that 15 U.S.C. § 1125(a) is not the appropriate vehicle to police allegations of unattributed plagiarism.  <u>See</u> <u>Dastar</u>, 539 U.S. at 37-38.

<u>Dastar</u> did not undercut the Ninth Circuit's holding that "Congress created two separate statutory schemes to govern copyrights and trademarks; in order to effectuate the purposes of both statutes, damages may be awarded under both."  <u>Nintendo of Am. v. Dragon Pac. Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994).  In <u>Nintendo</u>, the Ninth Circuit affirmed an award of damages for both copyright and trademark infringement where the defendant sold video game cartridges including copyrighted Nintendo content and falsely represented that he was selling authorized Nintendo products.  <u>See</u> <u>id.</u> at 1010-11.  "Put together, selling the cartridges may have been one act, but it was two wrongs."  <u>Id.</u> at 1011. The Ninth Circuit similarly upheld a preliminary injunction based on simultaneous and interrelated copyright, trademark, and unfair competition claims in <u>Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.</u>, a case involving a book about the O.J. Simpson trial written in the style of Dr. Seuss's <u>The Cat in the Hat</u>.  <u>See generally</u> 109 F.3d 1394 (9th Cir. 1997).

Even after <u>Dastar</u>, "a plaintiff may be awarded statutory damages under both the Copyright Act and the Lanham Act where the defendant's act simultaneously infringed the plaintiff's copyright and its trademark."  <u>Microsoft Corp. v. Nop</u>, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (entering default judgment on simultaneous copyright and trademark claims, citing <u>Nintendo</u>, 40 F.3d at 1010-11); <u>see also</u> <u>Bach v. Forever Living Prods. U.S., Inc.</u>, 473 F. Supp. 2d 1110, 1116-18 (W.D. Wash. 2007) (examining <u>Dastar</u>, <u>Nintendo</u>, and <u>Dr. Seuss Enters.</u>, and holding that the author of <u>Jonathan Livingston Seagull</u> could bring both copyright and trademark claims against a company that used elements of the book without permission).

//

//

//

Padmapper correctly observes that none of these cases explicitly[17] involved the alleged use of a trademark <u>within</u> the reproduction of allegedly copyrighted work. Padmapper Reply at 7. But Padmapper has not provided any authority holding that such claims are <u>not</u> permitted,[18] and it does not follow from <u>Dastar</u> that Padmapper is free to use Craigslist's trademark in an allegedly misleading way simply because the mark is contained in Craigslist's copyrighted (or copyrightable) work. Further, although Craigslist does allege trademark violations stemming from use of the "craigslist" mark within copyrighted content, <u>see, e.g.</u>, FAC ¶¶ 70, 107, Craigslist also alleges unauthorized use of its mark in other contexts, <u>e.g.</u>, <u>id.</u> ¶ 72 fig. 9 (a 3Taps image including the phrase "craigslist data, better than craigslist!"); <u>id.</u> ¶ 103 ("On July 9, 2012, PadMapper announced it was 'Bringing Craigslist Back' to the site.").

"This is not a case like <u>Dastar</u> . . . where the plaintiffs were attempting to use trademark law to prosecute plagiarism of their creative work." <u>Bach</u>, 473 F. Supp. at 1118. Craigslist alleges separate and distinct harms: that Defendants infringed Craigslist's copyright by using its <u>content</u> without permission, <u>e.g.</u>, FAC ¶¶ 153-55, and that Defendants' use of the "craigslist" <u>mark</u> confused customers about Craigslist's relationship to Defendants and their products and diminished the value of the mark, <u>e.g.</u>, FAC ¶¶ 107, 178, 187. The Court therefore DENIES Padmapper's motion to dismiss Craigslist's Lanham Act and trademark claims.

### E. Craigslist's Trespass Claim Adequately Alleges Injury

Padmapper moves to dismiss Craigslist's trespass claim on the grounds that it does not adequately allege injury. Under California common law, the tort of trespass to chattel

---

[17] Magistrate Judge Drozd's report in <u>Microsoft</u>, adopted by the court, did not make clear whether the marks at issue were included within the copyrighted content. <u>See generally</u> <u>Microsoft</u>, 549 F. Supp. 2d 1233.

[18] Padmapper cites <u>Fractional Villas, Inc. v. Tahoe Clubhouse</u>, No. 08cv1396-IEG-POR, 2009 WL 160932 (S.D. Cal. Jan. 22, 2009). <u>Fractional Villas</u>, like <u>Dastar</u>, involved a "reverse passing off claim" with no allegation that the defendants used the plaintiff's mark in any way. <u>Id.</u> at *3-4. Instead, the plaintiff argued only that the defendants used the plaintiff's <u>content</u> without attribution, thus creating confusion as to its origin. <u>Id.</u> The court's denial of the Lanham Act claim in <u>Fractional Villas</u> was a straightforward application of <u>Dastar</u>, and provides no guidance here. <u>See id.</u>

encompasses unauthorized access to a computer system where "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000); see also Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1354-55 (2003) (citing eBay as "the leading case"); Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1566 & n.6 (1996) (among the first cases to apply this tort in an electronic context). For such a claim to lie, the defendant's access to the system must cause "actual damage," such as impairment as to the "condition, quality, or value" of the system or deprivation of its use "for a substantial time." Hamidi, 30 Cal. 4th at 1357 (citations omitted). "[T]he tort does not encompass . . . an electronic communication that neither damages the recipient computer system nor impairs its functioning." Id. at 1347.

Craigslist alleges that "Defendants' unauthorized interference, intermeddling, and access with [sic] craigslist, its website, computer systems, and its servers, among other harms, reduces craigslist's capacity to service its users because it occupies and uses craigslist's resources." FAC ¶ 121. Given the scope of Defendants' alleged use of Craigslist's website, it is plausible that such access could divert sufficient computing and communications resources to impair the website's and servers' functionality. See FAC ¶ 3 (alleging that one defendant "boasts that it mass copies tens of millions of postings from craigslist in 'real time'").

On the other hand, it is also possible that Defendant's actions caused no such impairment. See Hamidi, 30 Cal. 4th at 1360 (finding that after the defendant sent thousands of unsolicited email messages through Intel's email system, "[t]he system worked as designed, delivering the messages without any physical or functional harm or disruption"). Whether Defendants caused actual damage or impairment to Craigslist's computer systems is a question of fact more appropriate for summary judgment or trial than for a motion to dismiss. See Coupons, Inc. v. Stottlemire, No. CV 07-03457 HRL, 2008 WL 3245006, at *6 (N.D. Cal. July 2, 2008) ("Although [a lack of significant injury] may be an appropriate

United States District Court
For the Northern District of California

argument once more facts have been established, it would be premature to dismiss the trespass to chattels claim at this time."); cf. Hamidi, 30 Cal. 4th at 1364 (considering the extent of injuries in the context of summary judgment rather than a motion to dismiss).

Padmapper points to district court orders dismissing electronic trespass claims where plaintiffs failed to allege more than de minimis injury as a result of unauthorized access to a mobile devices. Hernandez v. Path, Inc., No. 12-CV-01515 YGR, 2012 WL 5194120, at *7-8 (N.D. Cal. Oct. 19, 2012) (noting that the plaintiff alleged "depletion of 'two to three seconds of battery capacity'"); In re iPhone Application Litig., 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (holding that the plaintiffs' allegations did "not plausibly establish a significant reduction in service constituting an interference with the intended functioning of the system"). Here, while Craigslist will need to support its claim of actual injury with evidence at summary judgment or trial, Craigslist's allegation of injury is sufficient for the purpose of Padmapper's Motion to Dismiss. See Coupons, Inc., 2008 WL 3245006, at *6. The Court therefore DENIES Padmapper's motion to dismiss Craigslist's trespass claim.

**F.      Craigslist Does Not State a Claim of Civil Conspiracy**

Padmapper also moves to dismiss Craigslist's claims that Padmapper conspired with 3Taps to commit trespass, breach of contract, and misappropriation by unlawfully scraping ads from Craigslist and displaying the misappropriated ads on Padmapper's site. See FAC ¶¶ 123, 140, 147.

Under California law, conspiracy is a doctrine that "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudia Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994). Conspiracy has three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995). The debate here concerns the first element, which breaks down into three sub-elements: (i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity. Id. at 1583.

Craigslist says it has alleged facts establishing that Padmapper (i) knew that scraping data was unlawful, see id. ¶¶ 101-102; that Padmapper (ii) knowingly populated its site with misappropriated Craigslist content obtained from 3Taps, "establish[ing], at a minimum, tacit agreement in 3Taps' misdeeds," id. ¶¶ 104-105; and that Padmapper (iii) intended to and did aid in the commission of the wrongful conduct, as reflected in Padmapper's display of the misappropriated data on its website, which "inventivize[d] the scraping of craigslist's content–because it gave Defendants an online forum for their stolen ads–[and] it helped to advertise and seemingly legitimize Defendants' stolen craigslist content to others." Opp'n at 14-15.

Craigslist's allegations, even if true, do not establish that Padmapper intended to aid in the alleged wrongdoing. Craigslist has essentially alleged a buyer-seller relationship between Padmapper and 3Taps, and conspiracy law has long recognized that such a relationship does not, without more, establish the parties' intent to aid each other in some other objective, however illicit the goods involved in buyer-seller transaction. E.g., United States v. Gee, 226 F.3d 885, 893-94 (7th Cir. 2000) (criminal drug conspiracy); United States v. Lennick, 18 F.3d 814, 818-19 (9th Cir. 1994) (same).

That Padmapper had an incentive to use the inappropriately obtained information, or that 3Taps would not itself have committed the acts without a market for the resulting information, does not plausibly suggest that Padmapper ever intended to assist 3Taps in the alleged wrongful conduct required to obtain the information in the first place. See Benson v. JPMorgan Chase Bank, N.A., No. C-09-5272-EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) (bank's financial incentive to accept deposits from ponzi scheme promoters did not establish intent to aid the promoters).

Accordingly, the Court GRANTS Padmapper's Motion to Dismiss the claims against it premised on civil conspiracy.

## G. Bifurcation of Counterclaims and Stay of Discovery

Craigslist moves to bifurcate Defendants' antitrust counterclaim and stay discovery until the resolution of Craigslist's claims. See generally Mot. to Bifurcate. A trial court has

discretion whether to bifurcate a trial.  Fed. R. Civ. P. 42(b); <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 961 (9th Cir. 2001).  One permissible reason to bifurcate is to defer costly discovery on one issue until another potentially dispositive issue has been resolved. <u>Ellingson Timber Co. v. Great N. Ry. Co.</u>, 424 F.2d 497, 499 (9th Cir. 1970).

The parties disagree as to whether the counterclaims would be moot if Craigslist prevails on its claims against Defendants.  <u>See</u> Mot. at 4-6; 3Taps Opp'n (dkt. 67) at 5-9; Padmapper Opp'n (dkt. 66) at 7-9.  Craigslist argues that the counterclaims are discrete and complex.  <u>See</u> Mot. at 6 (citing <u>Triad Sys. Corp. v. Se. Express. Co.</u>, 64 F.3d 1330, 1338 (9th Cir. 1995) (affirming bifurcation of copyright claims and antitrust counterclaims)).  Craigslist also notes that the high cost of antitrust discovery is well established.  <u>See</u> <u>id.</u> (citing <u>Twombly</u>, 550 U.S. at 558-59 (noting "the unusually high cost of discovery in antitrust cases")).

Defendants argue that a premature decision to bifurcate would preclude any chance of holding a single trial on all claims, and unnecessarily holding two jury trials would be a waste of judicial resources.  Padmapper Opp'n at 10; 3Taps Opp'n at 13.  They further argue that a delay in discovery could result in the loss of evidence, and that many issues overlap, such that bifurcation would result in many of the same witnesses being deposed twice.  <u>See</u> Padmapper Opp'n at 6-7; 3Taps Opp'n at 10-13.

The Court concludes that the likelihood of streamlining discovery for and adjudication of the antitrust counterclaims based on the outcome of Craigslist's claims–even if those counterclaims must ultimately proceed–warrants bifurcation.  The Court GRANTS the motion to bifurcate, and STAYS discovery on the counterclaims (and any of Craigslist's overlapping affirmative defenses).  The Court is prepared to address this issue again once summary judgment motions have been adjudicated.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the motions to dismiss in part, dismissing only the subset of copyright claims described above, as well as the claims against Padmapper premised on civil conspiracy.  The Court DENIES the motions to dismiss all

other claims. The Court also GRANTS the motion to bifurcate and STAYS discovery as to the antitrust counterclaims and Craigslist's overlapping affirmative defenses.

**IT IS SO ORDERED.**

Dated: April 29, 2013

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE