1

2  **PERKINS COIE LLP**
    BOBBIE WILSON (No. 148317)
3  bwilson@perkinscoie.com
    CHRISTOPHER KAO (No. 237716)
4  ckao@perkinscoie.com
    BRIAN P. HENNESSY (No. 226721)
5  bhennessy@perkinscoie.com
    J. PATRICK CORRIGAN (No. 240859)
6  pcorrigan@perkinscoie.com
    3150 Porter Drive
7  Palo Alto, CA  94304
    Telephone:  650.838.4300
8  Facsimile:   650.838.4350
    Attorneys for Plaintiff
9  craigslist, Inc.

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13  CRAIGSLIST, INC., a Delaware          Case No. CV 12-03816 CRB
    corporation,
14                                        **JOINT CASE MANAGEMENT STATEMENT**
                  Plaintiff,
15        v.
                                          Hearing:      May 24, 2013
16  3TAPS, INC., a Delaware corporation;  Time:         8:30 a.m.
    PADMAPPER, INC., a Delaware           Courtroom:    6, 17th Floor
17  corporation; DISCOVER HOME            Before:       Hon. Charles R. Breyer
    NETWORK, Inc., a Delaware corporation
18  d/b/a LOVELY; BRIAN R. NIESSEN, an
    individual, and Does 1 through 25,
19  inclusive,
                  Defendants.
20

21

22        Plaintiff craigslist, Inc. ("craigslist") and Defendants 3taps, Inc. ("3taps"), Discovery

23  Home Network, Inc. d/b/a Lovely ("Lovely"), and PadMapper, Inc. ("PadMapper") jointly submit

24  this Joint Case Management Conference Statement pursuant to Federal Rules of Civil Procedure

25  26(f), Civil Local Rule 16, and this Court's Standing Order.

26

27

28

**JURISDICTION AND SERVICE**

**craigslist alleges:**

The Court has subject matter jurisdiction over craigslist's claims pursuant to 28 U.S.C. §§ 1331 and 1338, because this action alleges violations of federal statutes, including the Copyright Act (17 U.S.C. § 101, *et seq.,*), Lanham Act (15 U.S.C. §§ 1114, 1125(a), (c), and (d)), and Computer Fraud and Abuse Act (18 U.S.C. § 1030).  No issues exist with respect to personal jurisdiction or venue.

**Status of Service on Foreign Defendant Brian Niessen:**

Despite diligent attempts, craigslist has not yet been able to serve Defendant Brian Niessen.  As alleged in craigslist's complaint, Mr. Niessen has unlawfully scraped mass quantities of craigslist content for 3taps.  3taps' website linked to Mr. Niessen's qatro.com website, which contains what appear to be real time statistics regarding the content that he and 3taps are scraping from the craigslist website and tables containing telling phrases such as "Deciding what to scrape," "Waiting for scrape," and "Scraping" and a list of the URLs and/or IP addresses from which the scraping occurs.  3taps' founder and CEO Greg Kidd is an investor in Niessen's company Startup Stock Exchange and, while this litigation was pending, led a financing round for Startup Stock Exchange.

Based on its initial investigation, craigslist was able to track Niessen's whereabouts to either Canada, Puerto Rico, or the Caribbean island of Sint Maarten, which is a country within the Kingdom of the Netherlands.  Niessen's Canadian address turned out to be a PO Box that he no longer owns and craigslist's further investigation showed that Niessen was likely no longer residing in Puerto Rico.  Although craigslist initially did not have a precise address for Mr. Niessen in Sint Maarten, craigslist's process server was able to find Niessen and hand deliver a copy of the Summons, First Amended Complaint, and other required documents at what appears to be Mr. Niessen's residence—a boat in the Simpson Bay Yacht Club in Sint Maarten (http://www.igy-simpsonbay.com/).  Since confirming his address and location in Sint Maarten, craigslist has commenced the process of formally serving Mr. Niessen through the Hague

1    Convention, of which the Kingdom of the Netherlands is a signatory.  craigslist's international

2    process servers have advised craigslist that the process is estimated to be complete by September

3    15, 2013 and that there is no way to expedite it.

### FACTS

5    **craigslist alleges:**

6         For their own commercial benefit, Defendants are unlawfully mass-scraping and

7    redistributing postings entrusted by craigslist users to their local craigslist sites and continue to

8    disregard craigslist's written notice that this conduct is not permitted and must stop.

9         For the first five months of this case, 3taps doggedly insisted that it did not scrape

10   craigslist's website, including in its Answer and Counterclaims filed with this Court on

11   September 24, 2012.  DE 20, ¶ 57 of 3taps' Answer ("3taps denies that it is accessing craigslist's

12   website and 'scraping' content."); DE 20, ¶ 50 of 3taps' Counterclaim ("Notably, 3taps does not

13   use scraping to collect raw data from craigslist to create its indexing product.").  However, after

14   craigslist filed its First Amended Complaint detailing facts showing that 3taps scrapes craigslist's

15   website, 3taps admitted that it indeed scrapes the craigslist website in its First Amended

16   Counterclaim.  DE 47, ¶ 92 ("Thus, since August 2012, 3taps also has used third parties that

17   scrape data from the craigslist website to obtain the content that 3taps needs to create indexed

18   data for downstream specialized search engines."); *Id.* ¶ 14 ("3taps only is employing third parties

19   to scrape craigslist's website in order to obtain the type of user content that formerly was

20   available from Google caches in a scrapable form.").

21        3taps boasts that it mass copies tens of millions of postings from craigslist in "real time"

22   and stores them in its own database. 3taps makes this misappropriated content available via an

23   unauthorized and illegitimate "Application Programming Interface" (API) to whomever and on

24   whatever terms 3taps chooses. All the original and often highly personal content craigslist users

25   entrust to their local craigslist sites, along with their contact information, is thereby made

26   available to all manner of for-profit entities to copy, repurpose, redisplay, redistribute, surround

27   with advertisements, expose to non-local audiences, subject to marketing come-ons, disturb with

28   unsolicited communications, and otherwise exploit commercially.

1    Using its illegitimate database and API, 3taps operated trademark-infringing

2    craiggers.com, which unlawfully redisplayed and facilitated national searches of craigslist's local

3    content, thereby undermining the essential locality of craigslist community sites. After craigslist

4    filed suit, however, 3taps ceased displaying craigslist content on craiggers.com.  3taps also

5    developed and distributed an unlicensed craiggers mobile application for the iPhone that

6    redisplays craigslist content.

7    In addition, 3taps actively encourages and enables other companies to unlawfully exploit

8    misappropriated craigslist content. Defendant Lovely, in which 3taps is an investor, is one

9    example. Lovely operates the website livelovely.com, which provides searchable apartment

10   listings—consisting largely of misappropriated craigslist content unlawfully obtained by 3taps

11   and distributed via 3taps' illegitimate "craigslist API"—and directly competes with craigslist.

12   Lovely also distributes an unlicensed iPhone application that redisplays craigslist content.

13   Defendant PadMapper is another example. Similar to Lovely, it competes with craigslist unfairly

14   by offering an apartment search service at padmapper.com that is primarily based upon

15   misappropriated craigslist postings acquired from 3taps' illegitimate store.  PadMapper, like

16   3taps, has used and continues to use the famous CRAIGSLIST mark in commerce on its website

17   at padmapper.com, without authorization, to promote its products and services on the internet in a

18   manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship

19   with or by craigslist.

20   3taps admits that it has "used third parties that scrape data from the craigslist website"

21   since August 2012.  DE 47, ¶ 92.  One of those individuals is defendant Brian Niessen, who, as

22   explained above, operates a website, which contains a log detailing his scraping and a list of the

23   URLs and/or IP addresses from which the scraping occurs.

24   **Defendants allege:**

25   3taps indexes the classified advertising content that *users* own and post on craigslist's

26   website.  3taps creates its own application program interface ("API"), which it provides to

27   innovators (including PadMapper and Lovely) developing search engines and other features that

28   facilitate exchanges between buyers and sellers in different classified ad categories.  These

1    features are superior to those available on craigslist's antiquated website.

2              Significantly, at the time craigslist filed this action, 3taps was engaged in the very

3    innovation publicly invited by craigslist's founder, Craig Newmark.  In July 2010, on the question

4    and answer site quora.com, Mr. Newmark responded to the question:  "*Why hasn't anyone built*

5    *any products on top of craigslist data?  Is it a matter of craigslist policy not letting people use the*

6    *data?*"  He wrote:  "*Actually, we take issue with only services which consume a lot of bandwidth,*

7    *it's that simple.*"

8              Until August 2012, 3taps created its API by sourcing user-owned and generated content

9    posted on craigslist's website through caches (*i.e.*, archives) maintained by Google.  3taps did not

10   access craigslist's website directly, and therefore, *did not consume any of the website's*

11   *bandwidth*.  Since that time, however, craigslist has caused the quality of the user-generated

12   content posted on its website and maintained in Google caches to be degraded so that it may not

13   be scraped (*i.e.*, digitally copied).  (In its counterclaim, 3taps alleges that craigslist is responsible

14   for the degradation, which began shortly after craigslist filed this action, and other restrictions on

15   the content available through Google caches.)  As a result, 3taps cannot rely on Google caches as

16   a source of user-owned and -generated content posted on craigslist and has been forced to employ

17   third parties to scrape this content directly from craigslist's website.

18             The evidence will show that (1) this scraping of craigslist's website—a result forced by

19   craigslist itself—does not adversely impact the functionality of the website, its computer systems

20   or servers; (2) craigslist permits Google and other general search engines to engage in similar

21   scraping of its website; and (3) that 3taps, PadMapper and Lovely have engaged only in

22   appropriate and lawful commercial activity.

23             PadMapper joins in 3taps' recitation of the facts.  It separately notes that while it believes

24   that 3taps has not infringed on or violated any of craigslist's, PadMapper is a downstream

25   customer of 3taps. PadMapper makes limited use of the data underlying craigslist users posts in a

26   way that is useful to consumers and transformative. PadMapper contends that its limited use or

27   display of craigslist user data does not infringe or violate any of craigslist rights, or is otherwise

28   subject to valid affirmative defenses.

3taps and PadMapper have filed counterclaims alleging that, *inter alia*, craigslist has engaged in an illegal overall scheme to monopolize various online classified ad markets.  The Court has stayed discovery on these counterclaims and any related affirmative defenses.

**Principal Factual Issues in Dispute:**

**craigslist's Statement:**

(1)     The duration and manner in which the defendants have been acquiring craigslist content;

(2)     The persons and / or entities from which defendants have acquired craigslist content;

(3)     Whether the defendants accessed the craigslist website to obtain craigslist content prior to August 2012;

(4)     Whether defendants knew that they were not authorized to use craigslist content;

(5)     Whether defendants ever actually obtained craigslist content from Google search engine caches;

(6)     Whether defendants assented to craigslist's Terms of Use;

(7)     Whether defendants had knowledge of the Terms of Use prior to or at the time they accessed the craigslist website to obtain craigslist content;

(8)     Whether and when defendants learned that their activities breached craigslist's Terms of Use and violated the law;

(9)     The extent to which defendants' activities actually did harm, are harming, or threaten to harm, the intended function of craigslist's computer systems;

(10)    Whether craigslist ads are time sensitive;

(11)

(12)    The defendants' financial interest(s) in the conduct at issue (including through solicitations of investments to facilitate such conduct);

(13)    The manner and methods by which defendants display, and/or distribute craigslist content;

(14)    Whether 3taps' use of craiggers, and PadMapper's use of craigslist's trademarks,

1    is likely to cause confusion and the extent of harm caused therefrom;

2        (15)    Whether the distinctiveness of the craigslist mark is impaired by 3taps' use of

3    craiggers;

4        craigslist disputes the allegations in 3taps' First Amended Counterclaim, as set forth in

5    detail in craigslist's answer to the same.  Those counterclaims have been stayed, however, and the

6    allegations within need not be addressed here.

7    **Defendants' Statement:**

8        As an initial matter and as discussed further below, Defendants are willing to negotiate

9    factual stipulations that should resolve the overwhelming majority of the issues referenced in

10   craigslist's statement above.

11       (1)    Whether users of the craigslist website posting classified ads during the period of

12   July 16 – August 8, 2012 intended to convey an exclusive license to craigslist;

13       (2)    craigslist's intentions regarding the language posted on its website purporting to

14   convey exclusivity during the period of July 16 – August 8, 2012;

15       (3)    Whether "craiggers" is confusingly similar to "craigslist" and as to PadMapper,

16   whether mere inclusion of craigslist's copyright statements is likely to cause consumer confusion;

17       (4)    Whether craigslist has conformed to United States Copyright Office regulations in

18   the submission of its registration applications (the question of legal sufficiency is addressed

19   below);

20       (5)    Whether craigslist selects, coordinates or arranges any of the content posted to its

21   website by third parties in such a way that the resulting work as a whole constitutes an original

22   work of authorship;

23       (6)    What steps craigslist performs to select, coordinate or arrange any content

24   (including whether such steps are based on creative expression or functional criteria);

25       (7)    Whether defendants reproduced, displayed or distributed any compilation of user

26   generated posts that is substantially similar to the compilations claimed by craigslist; The criteria,

27   if any, that craigslist uses to selectively allow some to "scrape," while taking aggressive action,

28   including legal action, to stop others from doing so;

(8)     As to PadMapper, whether the alleged access by PadMapper of craigslist's sites or servers for a limited duration caused significant impairment to craigslist's sites or servers.

## LEGAL ISSUES

**craigslist's Statement:**

The principal legal issues in dispute:

(1)     Whether Defendants' conduct constitutes trespass?

(2)     Whether Defendants' conduct constitutes a breach of craigslist's Terms of Use?

(3)     Whether Defendants' conduct constitutes misappropriation?

(4)     Whether Defendants' conduct constitutes copyright infringement pursuant to 17 U.S.C. § 101, et seq.?

(5)     Whether 3taps' conduct constitutes contributory copyright infringement?

(6)     Whether Defendants 3taps' and PadMapper's conduct violates 15 U.S.C. § 1114 (federal trademark infringement) and 1125(a) (federal false designation of origin), California Business and Professions Code § 14245 (California trademark infringement), and constitutes common law trademark infringement?

(7)     Whether Defendant 3taps' actions violate 15 USC § 1125(c) and (d) (respectively, federal dilution of a famous mark and federal cyberpiracy prevention)?

(8)     Whether Defendants' conduct violates California Business and Professions Code § 17200?

(9)     Whether 3taps' and Niessen's conduct violates the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030, et seq. and the California Comprehensive Computer Access and Fraud Act pursuant to California Penal Code § 502?

(10)     Whether 3taps' conduct constitutes aiding and abetting trespass?

(11)     Whether Niessen's and 3taps' conduct constitutes aiding and abetting misappropriation?

(12)     Whether Defendants' conduct entitles craigslist to an accounting?

craigslist opposes 3taps' request (see below) for further briefing on the CFAA issue.  The Court has already denied 3taps' Motion to Dismiss craigslist's CFAA and California Penal Code

1    502 claims.  DE 74, 5:5-8:13.  3taps' request is nothing more than a Motion for Reconsideration

2    that fails to meet the requirements set forth in Local Rule 7-9.  3taps has had ample opportunity,

3    including multiple extensions, to raise its arguments to dismiss the CFAA claim.  What's more,

4    the Court was aware of the argument 3taps proposes making now when it denied 3taps' motion to

5    dismiss the CFAA claim.  Further delay of this case will prejudice craigslist and only benefit

6    3taps—which continues to scrape the craigslist website on a daily basis.  The request should

7    therefore be denied.

8           Further, 3taps' contention that certain of its witnesses will plead the Fifth Amendment

9    privilege against self-incrimination is immaterial and is no ground for further briefing and

10   additional delay.  First, Local Rule 7-9 makes no exception for cases where witnesses threaten to

11   plead the Fifth Amendment if a claim is not dismissed.

12          Second, the potential for 3taps to invoke the Fifth Amendment would not put this case to

13   the screeching halt that 3taps seems to be implying.  It is well established that the Fifth

14   Amendment can only be invoked on a question-by-question basis.  In civil cases, a witness may

15   not refuse to testify at all by relying on a "blanket" assertion of the Fifth Amendment privilege.

16   Thus, even if some witnesses decide to assert the Fifth Amendment in response to particular

17   questions implicating the CFAA or section 502 claims, there are still *fifteen* other claims at issue

18   and to which the Fifth Amendment does not apply.  The implications of the Fifth Amendment

19   will be determined on a question-by-question basis, in other words, and even then only questions

20   relating to two out of seventeen claims will be impacted.  That does not warrant the Court

21   revisiting a motion to dismiss that has already been decided or otherwise delaying the progress of

22   this case.

23   **Defendants' Statement:**

24          As a critical threshold matter, and before this case proceeds to discovery, Defendants

25   believe that the parties should first brief and fully resolve the novel legal question this Court

26   identified as to whether the Computer Fraud and Abuse Act ("CFAA") applies to "owner-

27   imposed restrictions on access to otherwise public information on public websites."  (Apr. 30

28   Order at 8 n.8.)   Resolution of this issue will significantly inform how discovery is conducted in

1   this case, including Defendants' ability to stipulate to many facts craigslist maintains are disputed.

2   Early resolution of the CFAA issues would also clarify whether the conduct alleged by craigslist

3   could rise to the level of criminal violation under the CFAA.  Given craigslist's novel attempt to

4   criminalize what is alleged as access to publicly available information, which is widely viewed by

5   over sixty million users of the site, early resolution of the legal issues would provide witnesses

6   fair notice of the potential applicability of the criminal provisions of the CFAA.  Furthermore, as

7   both a criminal and civil statute, pleading the CFAA can have unintended consequences –

8   including that those called to be deposed or to testify will may prudently have to assert the Fifth

9   Amendment.  Combining this consequence with the Court's own expressed concern about the

10  reach of the CFAA, resolving the CFAA's application now may best serve the interests of justice.

11  Below, Defendants propose a case management schedule that provides time for the Court to

12  consider this important legal question.

13      In addition to this question, Defendants contend the following additional legal issues are

14  in dispute:

15      (1)     Whether trespass is preempted by or is duplicative of claims brought under the

16  CFAA;

17      (2)     Whether breach is preempted by or is duplicative of claims brought under the

18  CFAA;

19      (3)     Whether misappropriation is preempted by the Copyright Act;

20      (4)     Whether the CFAA may properly be used to target access to public websites

21  requiring no user credentials;

22      (5)     Whether craigslist has created an original work of authorship protectable under 17

23  U.S.C. § 101, et seq.;

24      (6)     Whether craigslist's failure to adhere to United States Copyright Registration

25  Applications laws, rules and guidelines is fatal to their registrations (thus eliminating standing to

26  bring a claim of infringement pursuant to 17 U.S.C. § 412, et seq.);

27      (7)     Whether defendants have a license to the content posted to the craigslist website;

28      (8)     Whether craigslist's state trademark infringement and common law trademark

infringement claims are preempted by or duplicative of claims brought under Title 15;

(9)     Whether craigslist's trademark claims impermissibly overlap with its copyright claims;

(10)     The type of impairment craigslist must show in order to establish a common law trespass claim

(11)     Whether craigslist has suffered damage as a result of any of the claims alleged in the Complaint.

## MOTIONS

On December 21, 2012, PadMapper filed its Limited Motion to Dismiss, and 3taps and Lovely filed their Motion to Dismiss Causes of Action 4, 5, 6, 13, and 14.  On January 31, 2013, craigslist filed its Oppositions, and on February 13, 2013, Defendants filed their replies.

On February 8, 2013, craigslist filed its Motion to Bifurcate and Stay Defendants' Amended Counterclaims ("Motion to Stay").  On March 1, 2013, Defendants filed their Oppositions, and on March 15, 2013, craigslist filed its reply.  The Court heard these motions on April 26, 2013 and issued its order granting in part and denying in part the Motions to Dismiss and granting the Motion to Stay on April 30, 2013.

**craigslist's Statement:**

Once discovery is complete, craigslist expects to move for summary judgment on some or all of its claims.  craigslist also anticipates bringing a motion for judgment on the pleadings as to some or all of the defendants' counterclaims, which are currently stayed.

**Defendants' Statement:**

As explained above, Defendants believe that the parties should brief and fully resolve the novel issue this Court identified regarding craigslist's CFAA claim.  Absent direction from this Court at the case management conference, Defendants plan to file a motion seeking to brief this issue on an expedited schedule.

Following discovery on craigslist's claims, Defendants expect to move for summary judgment on some or all of these claims.

1

## AMENDMENT TO THE PLEADINGS

2   **craigslist's Statement:**

3       3taps initially denied that it scraped content from craigslist's website in its Answer and

4   Counterclaim.  DE 20, ¶ 57 of 3taps' Answer, ¶ 50 of 3taps' Counterclaim.  However, 3taps has

5   since admitted that it is "employing third parties to scrape craigslist's website," and has been

6   doing so "since August 2012."  DE 47, ¶¶ 14, 92.  Indeed the full extent, nature, and entirety of

7   circumstances surrounding 3taps' illicit harvesting of craigslist content remains unknown and will

8   not become known until craigslist has had the opportunity to take full and complete discovery.

9   craigslist therefore requests that the deadline to amend the pleadings be January 31, 2014 to allow

10  time for this discovery to occur.

11  **Defendants' Statement:**

12      craigslist's First Amended Complaint does not identify with particularity what copyright

13  registrations cover which claims of infringement, or which registrations continue to be asserted

14  given the Court's grant, in part, of 3taps' motion to dismiss.  As a result, Defendants requests

15  that, if craigslist is allowed to amend its claims again, the Court direct craigslist to specifically set

16  forth the connection between the copyright registered and the facts alleged to result in an

17  infringement of such registered works.

18      As further discussed below, Defendants are willing to negotiate certain factual stipulations

19  that would simplify the case.  Defendants may also seek to amend its counterclaims to encompass

20  other conduct that is part of craigslist's overall scheme to harm competition.

21

## EVIDENCE PRESERVATION

22      The parties have directed officers and employees to retain and not destroy documents and

23  data, including emails and electronic information currently identifiable, that are likely to be

24  relevant to the issues in this dispute.

25

26

27

28

**DISCLOSURES**

The Defendants have agreed to  serve initial disclosures within a reasonable time following filing of this statement.  craigslist served its initial disclosures on May 15, 2013.

**DISCOVERY**

No discovery has commenced between the parties.

Pursuant to Federal Rule of Civil Procedure 26(f), the parties' proposed discovery plan is as follows:

(A) The defendants have agreed to  serve initial disclosures within a reasonable time following filing of this statement.  craigslist served its initial disclosures on May 15, 2013.

(B) Discovery has been stayed as to Defendants' Amended Counterclaims and their related affirmative defenses to craigslist's claims.

(C) The subjects on which *craigslist* requires discovery include, but are not limited, to the following: (1) all persons and entities in any way connected to Defendants that are scraping content from the craigslist website, including the identities of all third parties that 3taps has "employed" to scrape craigslist's website; (2) the means and manner by which Defendants have obtained in the past, and currently obtain, content from the craigslist website, including but not limited to the computer hardware, networks, and software  used by Defendants to obtain said content; (3) all the individuals and entities to which Defendants have distributed content from the craigslist website; (4) all prior and present versions of Defendants' websites, including the software code for such websites; (5) each version of 3taps' Application Programming Interface and associated documentation; (6) Defendants' financial information regarding their craigslist-related activities, including their revenue and profit; (7) Defendants' corporate structure; (8) Defendants' communications, both internal and external, regarding craigslist, Defendants' craigslist-related activities, and obtaining, redistributing, or displaying  content from the craigslist website; (9) records, documents, and information (including, without limitation, emails and all electronically stored information) relating to Defendants' craigslist-related activities; (10) all persons associated with Defendants which have information relating to the allegations in craigslist's First Amended Complaint; (11) information relating to the capitalization of defendant

1   3taps, and (12) any other information relating to craigslist's claims.

2          (D) *Subject to Defendants' strong position that significant facts, including virtually all of*

3   *the technical activity advanced and/or described by craigslist in its First Amended Complaint,*

4   *should be the subject of stipulation,* the topics on which **Defendants** would require discovery

5   include, but are not limited to, the following: (1) the extent to which craigslist has suffered injury

6   – including financial injury or harm to craigslist's website, computer systems or servers – as a

7   result of any of the alleged misconduct, including any damages allegedly suffered by craigslist as

8   a result of Defendants' alleged scraping of its website; (2) the extent to which craigslist selects or

9   arranges any compilation of user ads posted on its website, as well as whether any compilation is

10  fixed in a tangible medium for more than a transitory duration; (3) craigslist's investment in the

11  gathering of the user-generated content posted on its website and how, if at all, craigslist's

12  incentives to engage in this activity are impacted by Defendants' alleged misconduct; (4)

13  craigslist's communications, both internal and external, regarding the selection, coordination,

14  arrangement, or curating of user posted classified ads; (5) whether craigslist's efforts to block

15  scraping are, as alleged by craigslist, intended to achieve a legitimate business objective, such as

16  eliminating excess server burdens; (6) craigslist's relationships with general search engines, such

17  as Google, including the "scraping" craigslist allows them to perform while purporting to forbid

18  "scraping" by others; (7) craigslist's criteria for permitting some, but not all "scraping," including

19  how craigslist defines a "general purpose search engine"; (8) any actions craigslist may have

20  taken to impair 3taps' ability to scrape user-generated content posted on craigslist from Google

21  and, relatedly, craigslist's efforts to prevent or disable access to its website by third parties,

22  including identification of any person or entity hired or otherwise retained to detect "scraping"

23  and/or the identity of any "scrapers;" (9) all correspondence or inquiries from anyone regarding

24  copyright rights, including "cease and desist" letters sent or received, and any other type of

25  communicated demand sent or received; (10) all evidence retained by craigslist relating to the

26  harm alleged to be caused by Defendant's actions; (11) craigslist's financial information,

27  including information associated with its cost structures; (12) craigslist's corporate structure; (13)

28  craigslist's records, documents, and information (including, without limitation, emails and all

electronically stored information) relating to Defendants; (14) all persons associated with craigslist having information relating to the allegations in craigslist's First Amended Complaint or Defendants' Answer; (15) the scope of craigslist's copyrights; (16) the purpose and intent of craigslist's Terms of Use, and any related disclaimer, warning, or other written statement now placed or ever placed on the craigslist site; (17) craigslist's all documents, records or information that compares the scope of the copyrights claimed in any compilation registration to the scope of any reproduction, display or distribution of content believed to be substantially similar; and (18) any other information relating to craigslist's claims.

(E) Pursuant to Fed. R. Civ. P. 26(b)(2)(B), the parties identify the following accessible and inaccessible Electronically Stored Information ("ESI") and agree on the following production formats:

**Accessible ESI**

Reasonably accessible sources of ESI include electronic documents stored on computer networks, hard drives, shared network drives, workstation or laptop hard drives, and portable drives / media, including external hard drives, zip drives, CD-ROM and DVD disks, USB Flash Drives / Jump Drives, and communication devices such as mobile telephones.

Plaintiff and each defendant agree to meet and confer in good faith to develop a list of relevant keywords, search strings or other search methodologies to use for the purposes of searching and identifying reasonably accessible ESI, as well as a list of the custodians from whom ESI will be collected.

**Production Format**

The parties agree that documents maintained in electronic form in a party's ordinary course of business shall be produced in electronic form (e.g., in .tif or .pdf format on a CD-ROM, USB hard drive, or via FTP with a load file in Summation, Concordance, or any other COTS document management product reasonably requested), except as otherwise provided herein.  The load file shall include the following metadata fields, if available and applicable:

1. Custodian (Name of custodian or source from which file is being produced);

2. Author (Author of file from properties);

3.  Doc Title (Title of file from properties);

4.  Doc Subject (Subject of file from properties);

5.  Last Modified Date (Date the file was last modified);

6.  Last Saved By (Name of user who last modified the file);

7.  Created Time (Time the file was created)

8.  Last Modified Time (Time the file was last modified);

9.  File Ext (Extension for the file);

10. MD5 Hash (or equivalent);

11. Body Text (Extracted text);

12. Bates Begin (Beginning Production Number);

13. Bates End (End Production Number);

14. File Name (Name of the file);

15. Attach Begin (Beginning Attachment Range Number);

16. Attach End (Ending Attachment Range Number);

17. To;

18. From;

19. Cc;

20. Bcc;

21. Date Sent.

If text cannot be extracted from a document, the producing party shall instead provide Optical Character Recognition (OCR) text in the load file.  The parties may, however, produce certain documents in native format, such as Excel spreadsheets, that do not produce well as .tif or .pdf images.  Additionally, if a party believes that color is important to understand a particular document, the party may request that the document be produced in color.  The requesting party and producing party will negotiate in good faith regarding the requesting party's need for such production.  If the receiving party believes that a specific application is necessary to view and / or understand a document, that party may request the producing party to produce that application.  The requesting party and the producing party will negotiate in good faith regarding the requesting

1    party's need for the production of such applications.

2         Documents that are not maintained in electronic form in a party's ordinary course of

3    business and are not scanned into electronic form prior to the date of production may be produced

4    in the same manner in which they are maintained (e.g., hard copies).  Source code and register

5    transfer language (RTL) code will be produced or made available for inspection in accordance

6    with the provisions of the Stipulated Protective Order to be entered in this matter.

7         (F) The parties agree to enter into a stipulated protective order, a proposal for which shall

8    be submitted to this Court when agreed to by the parties..

9         (G) Other than as set forth above, the parties agree that no changes should be made to the

10   limitations on discovery imposed under these rules or by local rule, and that no other limitations

11   should be imposed; and

12        (H) The parties agree that, at this point, no other orders should issue under Rule 26(c) or

13   Rule 16(b) and (c).

## CLASS ACTIONS

15   Not applicable.

## RELATED CASES

17   Not applicable.

## RELIEF

19   **craigslist's Statement:**

20        craigslist prays for the following relief:

21        1.      An injunction enjoining and restraining all Defendants, their employees,

22   representatives, agents, and all persons or entities acting in concert with them from any and all of

23   the following activities and conduct:

24        (a)  Copying, reproducing, preparing derivative works from, distributing copies to the

25   public, and/or publicly displaying the Copyrighted Works;

26        (b)  Knowingly and systematically inducing, causing, and/or materially contributing to

27   unauthorized copying, reproduction, preparation of derivative works from, distribution of copies

28   to the public, and/or publicly displaying the Copyrighted Works;

1       (c)  Using, authorizing the use of, copying, reproducing or imitating the CRAIGSLIST

2   mark, or any confusingly similar or colorable imitation thereof;

3       (d)  Accessing or using craigslist's website, servers, computers, and / or systems for any

4   purpose whatsoever.

5       2.        An order requiring Defendants to destroy all documents, data, and other items,

6   electronic or otherwise, in their possession, custody, or control, that infringe the copyrights and

7   trademarks of craigslist.

8       3.        An order requiring that the craiggers.com domain be forfeited or cancelled, or

9   transferred to craigslist.

10      4.        An award to craigslist of restitution and damages, including, but not limited to,

11  liquidated, compensatory, statutory, treble damages, and punitive damages, as permitted by law;

12      5.        An award to craigslist of its costs of suit, including, but not limited to, reasonable

13  attorneys' fees, as permitted by law;

14      6.        For such other relief as the Court deems just and proper.

15  Because Defendants have possession of the relevant information needed to compute

16  damages and craigslist has not yet received discovery responses from Defendants, craigslist lacks

17  the information and documents necessary to provide a computation of the amount of damages.

18  Damages will be calculated based on the harm suffered by craigslist, liquidated damage

19  figures provided in craigslist's Terms of Use (*i.e.*, by multiplying the liquidated damage amounts

20  by each violation of the Terms of Use), Defendants' revenue and profits, and the applicable

21  federal and state statues, including but not limited to 17 U.S.C. § 101, *et seq*. (Copyright Act), 18

22  U.S.C. §1030, *et seq*. (Computer Fraud and Abuse Act), California Penal Code § 502 (California

23  Comprehensive Computer Access and Fraud Act), 15 U.S.C. § 1114 (federal trademark

24  infringement) and 1125(a) (federal false designation of origin), California Business and

25  Professions Code § 14245 (California trademark infringement), and 15 USC § 1125(c) and (d)

26  (respectively, federal dilution of a famous mark and federal cyberpiracy prevention).

27  **Defendants' statement.**

28  3taps and PadMapper have filed counterclaims against craigslist that have been stayed

1  along with any affirmative defenses relevant to craigslist's claims.  Defendants believe that

2  craigslist's claims are baseless and that it is not entitled to any relief.

3  **SETTLEMENT AND ADR**

4  craigslist is willing to participate in private mediation after it has completed discovery.  At

5  this point, however, no discovery has yet been taken and, thus, craigslist believes that formal

6  ADR would be premature.

7  Defendants also agree that ADR would be premature.

8  **CONSENT TO MAGISTRATE FOR ALL PURPOSES**

9  The parties do not consent to a magistrate judge.

10  **OTHER REFERENCES**

11  The parties do not believe that the case is suitable for reference to binding arbitration, a

12  special master, or the Judicial Panel on Multidistrict Litigation.

13  **NARROWING OF ISSUES**

14  **craigslist's Statement:**

15  The Court's order on the Motion to Stay has significantly narrowed the issues presently

16  before the Court.  craigslist believes that no further narrowing of the issues is warranted,

17  necessary, or likely possible.

18  craigslist cannot accept Defendants' proposal to stay discovery while the parties negotiate factual

19  stipulations (see below).  First, craigslist has an absolute right to take discovery on all relevant

20  issues in this case and is not required to negotiate factual stipulations prior to taking said

21  discovery.  Indeed, such extensive stipulations prior to the close of discovery would amount to

22  nothing more than the Defendants dictating how craigslist prosecutes its case.  Second,

23  Defendants' proposal would require craigslist to stipulate to facts without even having the

24  opportunity to take depositions or review documents.  craigslist is not required to take

25  Defendants' word on these very important issues, which is essentially what Defendants are asking

26  craigslist to do.  The rules provide craigslist the right to take depositions and obtain and review

27  documents before any facts are resolved.  craigslist is willing to entertain stipulations of fact after

28  the close of discovery.

**Defendants' Statement:**

As described, Defendants believe that the issues in the case, as well as the scope and duration of discovery, could be significantly narrowed by factual stipulations and answers to interrogatories.  For example, Defendants are willing to discuss potential stipulations regarding, *inter alia*, the means 3taps has employed to obtain user-generated content posted on craigslist's website, the process through which 3taps' API is created and the entities to which 3taps has distributed its API and Defendants' financial information.  Likewise, craigslist can readily supply a range of information that would or should enable stipulation, including whether craigslist has an agreement (in any form) or other arrangement with Google and similarly situated search engines. As described below, Defendants propose that the parties discuss potential factual stipulations before additional discovery takes place.

**EXPEDITED SCHEDULE**

The parties do not believe that this is the type of case that should be handled under the Expedited Trial Procedure of General Order No. 64.

**SCHEDULING**

**craigslist's Statement:**

craigslist proposes the following dates[1]:

**Close of fact discovery:** March 31, 2014

**Designation of experts:** May 30, 2014

**Close of expert discovery:**  June 27, 2014

**Dispositive motions due to be filed:**  July 17, 2014

**Pre-Trial Conference:** To be determined after summary judgment on craigslist's claims is adjudicated

**Trial:** To be determined after summary judgment on craigslist's claims is adjudicated.

craigslist does not believe that the schedule proposed by defendants below is workable, and will be prepared to explain its reasoning in detail at the Case Management Conference.

---

[1] This schedule is contingent on the Defendants being cooperative in producing documents, witnesses for depositions (including the third parties that 3Taps "employed" to scrape the craigslist website), and there not being a need to engage in discovery motions practice.

**Defendants' Statement:**

As discussed above, Defendants propose that the parties first resolve the novel question of whether the CFAA applies to "owner-imposed restrictions on access to otherwise public information on public websites."  (Apr. 30 Order at 8 n.8.)  The resolution of whether the CFAA applies would, as described above, significantly streamline the case and related discovery.

Defendants further propose that, immediately after the CFAA issue is resolved (including by allowing any party to pursue an interlocutory appeal to the Ninth Circuit), the parties devote thirty days to discussing factual stipulations and interrogatories that have the potential substantially to narrow the issues in the case and the scope and duration of discovery.  After this thirty-day period, Defendants propose the following schedule:

**Initial disclosures:**  within a reasonable time following May 15, 2013;

**Close of fact discovery / designation of experts:** four months after initial disclosures, based on the extent to which basic factual stipulations can be entered into.

**Close of expert discovery:**  three months after close of fact discovery

**Dispositive motions due to be filed:**  three weeks after close of expert discovery

Following this Court's decision on motions for summary judgment, Defendants propose a subsequent case management conference to discuss a discovery schedule regarding Defendants' counterclaims and affirmative defenses, as well as whether the counterclaims and craigslist's remaining claims, if any, should be consolidated.

## TRIAL

The parties agree that the case will be tried to a jury.

**craigslist's Statement:**

craigslist believes that the trial of its affirmative claims will take 7-10 days.

**Defendants' Statement:**

Following summary judgment on craigslist's claims, Defendants believe that any remaining craigslist claims, Defendants' affirmative defenses and Defendants' counterclaims all should be tried together, but recognize that the Court has reserved decision on this subject.

1

**DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2
    craigslist filed its Certification of Interested Entities of Persons on July 20, 2012.  In

3
addition, as required by the Court's Order, craigslist restates the contents of its certification as

4
follows: Pursuant to Civil L.R. 3-16, craigslist certifies that the following listed persons,

5
associations of persons, firms, partnerships, corporations (including parent corporations) or other

6
entities (i) have a financial interest in the subject matter in controversy or in a party to the

7
proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

8
substantially affected by the outcome of this proceeding:  Craig Newmark, Founder and

9
shareholder of craigslist, Inc.; Jim Buckmaster, Chief Executive Officer and shareholder of

10
craigslist, Inc.; and eBay Domestic Holdings, Inc., shareholder of craigslist, Inc.

11
    Defendants will separately file (or have already filed) the certification required by Civil

12
L.R. 3-16 and state here that, other than the named parties, no other person or entity known to the

13
parties (i) has a financial interest in the subject matter in controversy or in a party to the

14
proceeding other than as a shareholder, or (ii) has a non-financial interest in that subject matter or

15
in a party that could be substantially affected by the outcome of this proceeding.

16

17
May 17, 2013

**PERKINS COIE LLP**
By: /s/ Bobbie Wilson

18
Bobbie Wilson (SBN 148317)
BWilson@perkinscoie.com

19
Attorneys for Plaintiff
craigslist, Inc.

20

21

22
May 17, 2013

**FOCAL PLLC**
By: /s/ Venkat Balasubramani

23
Venkat Balasubramani (SBN 189192)
venkat@focallaw.com

24
Attorneys for Defendant
PadMapper, Inc.

25

26

27

28

1    May 17, 2013

**LOCKE LORD LLP**

2    By: /s/ Christopher J. Bakes
Christopher J. Bakes (SBN 99266)

3    cbakes@lockelord.com
Attorneys for Defendant

4    3taps, Inc. and Discover Home Network, Inc. d/b/a
Lovely

5

6

7

8         I, Brian Hennessy, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that the

9    concurrence to the filing of this document has been obtained from each signatory hereto.

10

11    May 17, 2013

**PERKINS COIE LLP**

12    By: /s/ Brian Hennessy
Brian Hennessy (SBN 226721)

13    BHennessy@perkinscoie.com
Attorneys for Plaintiff

14    craigslist, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28