Venkat Balasubramani (SBN 189192)
Sean M. McChesney (admitted *pro hac vice*)
FOCAL PLLC
800 Fifth Ave., Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
venkat@focallaw.com
sean@focallaw.com

Attorneys for Defendant
PADMAPPER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>3TAPS, INC., a Delaware corporation;<br>PADMAPPER, INC., a Delaware corporation;<br>DISCOVERY HOME NETWORK, INC., a<br>Delaware corporation d/b/a LOVELY;<br>BRIAN R. NIESSEN, an individual; and<br>DOES 1 through 25, inclusive,<br><br>                    Defendants. | Case No. CV-12-03816 CRB<br><br>**PADMAPPER, INC.'S NOTICE OF<br>MOTION AND MOTION FOR PARTIAL<br>SUMMARY JUDGMENT AND<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          November 28, 2014<br>Time:          10:00 a.m.<br>Courtroom:  6, 17th Floor<br>Judge:         Hon. Charles R. Breyer |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 28, 2014, at 10:00 a.m., or as soon thereafter as the

matter may be heard, in the United States District Courthouse, Courtroom 6, 17th Floor,

450 Golden Gate Avenue, San Francisco, California, before the Honorable Charles R. Breyer

Defendant PadMapper, Inc. will, and hereby does, move the Court for summary judgment on

Plaintiff craigslist, Inc.'s claims for copyright infringement, misappropriation, and trespass.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND .....................................................................................................2

   A. PadMapper's Acquisition and Use of Listing Information ……………….…………… 2

      1. PadMapper's Current Acquisition and Use of Listing Information……….………. 2

      2. PadMapper's Prior Acquisition and Use of Listing Information …………………. 6

      3. No Use of Non-Listing craigslist Data or Content ……………………………... 8

      4. PadMapper's Unique Display of Listings …………………………………………8

   B. craigslist's User Support of PadMapper's Apartment Search Engine Functionality ...9

   C. No Evidence of Actual Damages from PadMapper's Alleged Trespass ......………. 9

DISCUSSION …………………………………………………………………………… 9

   A. Summary Judgment Standard ……………………………………………………… 9

   B. The Scope of craigslist's Copyright Registrations and Applications …………………………10

   C. craigslist Cannot Show Infringement of Copyright In Individual Listings ……………….... 11

      1. PadMapper's display of factual Listings Data in the Summary Bubble is not infringement ………………………………………………………………………... 11

      2. PadMapper's use of Listing text to enable its search engine functionality is fair use ………………………………………………………………………… 12

      3. PadMapper's previous inline linking of Listings from craigslist is not infringing under the "server test" used by the Ninth Circuit ………………………… 19

      4. PadMapper's extraction or receipt of the Listing Data did not infringe on any of craigslist's rights in the Compilation ……………………………………………… 22

   D. craiglist's Compilation Lacks the Requisite Creativity and PadMapper Does not Infringe on Whatever Slim Protection craigslist May Have ……………………………………………… 23

      1. craigslist does not have a protectable copyright interest in the selection of Listings within the Compilation ……………………………………………………… 24

      2. craigslist does not exert sufficient creativity in its arrangement of Listings ………..29

      3. Even assuming craigslist has some slim protectable copyright in the selection and arrangement of the Listings, PadMapper has not copied either of these elements ….30

      4. The software and logic underlying craigslist's database is not at issue …………….33

   E. craigslist Failed to Produce any Evidence of Significant Impairment Caused by PadMapper's Access of the craigslist Site and Thus Fails to State a Trespass Claim ……... 34

F.  craigslist's Misappropriation Claim Cannot Withstand Summary Judgment ……………… 36

1.  craigslist's common law claim for misappropriation is preempted by the Copyright Act as there is no "extra element" …………………………………… 36

2.  There is no factual dispute that craigslist's misappropriation claims fails to satisfy the elements of a "hot news" claim. …………………………………37

**CONCLUSION** …………………………………………………………………… **39**

# TABLE OF AUTHORITIES

**Cases**

Am. Massage Therapy Ass'n v. Maxwell Petersen Assocs.,
   209 F. Supp. 2d 941 (N.D. Ill. 2002) ........................................................................... 31

American Geophysical Union v. Texaco Inc.,
   60 F.3d 913 (2d Cir. 1994)........................................................................................ 16

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986).................................................................................................. 10

Assessment Techs. of WI, LLC v. WIREdata, Inc.,
   350 F.3d 640 (7th Cir. 2003) ................................................................................... 22

Authors Guild, Inc. v. Google Inc.,
   954 F. Supp. 2d 282 (S.D.N.Y. 2013).............................................................. 14, 18

Balboa Ins. Co. v. Trans Global Equities,
   218 Cal. App.3d 1327 (Cal. App. 1990) ................................................................. 37

Barclays Capital Inc. v. Theflyonthewall.com, Inc.,
   650 F.3d 876 (2d. Cir. 2011).............................................................................. 38, 39

BellSouth Advertising & Publ'g Corp. v. Donnelley Information Publ'g, Inc.,
   999 F.2d 1436 (11th Cir. 1993) ....................................................................... passim

Bensbargains.net, LLC v. XPbargains.com,
   2007 U.S. Dist. LEXIS 60544 (S.D. Cal. Aug. 16, 2007) ............................... 30, 31

Bill Graham Archives v. Dorling Kindersley Ltd.,
   448 F.3d 605 (2nd Cir. 2006)................................................................................... 16

Campbell v. Acuff-Rose Music, Inc.,
   510 U.S. 569 (1994)........................................................................................ passim

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).................................................................................................... 9

Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. craigslist, Inc.,
   519 F.3d 666 (7th Cir. 2008) ................................................................................... 26

CHM Indus., Inc. v. Structural & Steel Prods., Inc.,
   2008 U.S. Dist. LEXIS 86131 (N.D. Tex. Oct. 24, 2008) ...................................... 24

Cosmetic Ideas, Inc. v. IAC/InteractiveCorp,
   606 F.3d 612 (9th Cir. 2010) ................................................................................... 24

Dart v. craigslist, Inc.,

   665 F. Supp. 2d 961 (N.D. Ill. 2009) ........................................................ 26

Del Madera Properties v. Rhodes & Gardner, Inc.,

   820 F.2d 973 (9th Cir. 1987) ................................................................ 37

Eckes v. Card Prices Update,

   736 F.2d 859 (2d Cir. 1984).......................................................... 24, 25

Feist Publications v. Rural Tel. Serv. Co.,

   499 U.S. 340 (1991)................................................................ passim

Flava Works, Inc. v. Gunter,

   689 F.3d 754 (7th Cir. 2012) ................................................................ 20

Fox News Network, LLC v. TVEyes, Inc.,

   2014 U.S. Dist. LEXIS 126138 (S.D.N.Y. Sept. 9, 2014)............................................ 14

Futuredontics Inc. v. Applied Anagramics Inc.,

   1998 U.S. Dist. LEXIS 2265 (C.D. Cal.; Jan. 30, 1998) ................................................ 21

Harper and Row Publs., Inc. v. Nation Enterps.,

   471 U.S. 539 (1985)..................................................................... 12

Harper House, Inc. v. Thomas Nelson, Inc.,

   889 F.2d 197 (9th Cir. 1989) ................................................................ 31

Hernandez v. Path, Inc.,

   2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 17, 2012)............................................ 35

In re iPhone Application Litig.,

   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................ 35, 36

Intel Corp. v. Hamidi,

   30 Cal. 4th 1342 (Cal. 2003)................................................ 34, 35, 36

International News Service v. Associated Press,

   248 U.S. 215 (1918)..................................................................... 38

Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.,

   945 F.2d 509 (2d. Cir. 1991)........................................................ passim

Kelly v. Arriba Soft Corp.,

   336 F.3d 811 (9th Cir. 2003) ....................................................... passim

LaCourt v. Specific Media, Inc.,
   2011 U.S. Dist. LEXIS 50543 (N.D. Cal. April 28, 2011) .............................................. 35

Le Book Publishing, Inc. v. Black Book Photography, Inc.,
   418 F. Supp. 2d 305 (S.D.N.Y. 2005) .......................................................... 31, 33

Leadsinger, Inc. v. BMG Music Publ'g,
   512 F.3d 522 (9th Cir. 2008) .................................................................. 13

Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,
   2014 U.S. Dist. LEXIS 92809 (N.D. Ill. July 8, 2014) .................................... 20

Lotus Dev. Corp. v. Borland Int'l,
   49 F.3d 807 (1st Cir.) ......................................................................... 33

Mattel Inc. v. Walking Mt. Prods.,
   353 F.3d 792 (9th Cir. 2003) .................................................................. 13

Matthew Bender & Co. v. West Publ'g Co.,
   158 F.3d 674 (2d Cir. 1998) .................................................................. 23

Mazer v. Stein,
   347 U.S. 201 (1954) ........................................................................... 23

Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.,
   888 F. Supp. 2d 691 (D. Md. 2012) ........................................................... 26

Montz. v. Pilgrim Films & TV, Inc,
   649 F.3d 975 (9th Cir. 2010) .................................................................. 37

Nautical Solutions Mktg. v. Boats.com,
   2004 U.S. Dist. LEXIS 6304 (M.D. Fla. Apr. 1, 2004) ...................................... 22

Perfect 10, Inc. v. Amazon.com, Inc.,
   487 F.3d 701 (9th Cir. 2007) .......................................................... passim

Pollstar v. Gigmania Ltd.,
   170 F. Supp. 2d 974 (E.D. Cal. 2000) ......................................................... 37

Satava v. Lowry,
   323 F.3f 805 (9th Cir. 2003) .................................................................. 28

Schoolhouse, Inc. v. Anderson,
   275 F.3d 726 (8th Cir. 2002) .................................................................. 24

Sega Enters. v. Accolade, Inc.,

   977 F.2d 1510 (9th Cir. 1992) ............................................................................... 23

Sony Corp. of Am. v. Universal City Studios, Inc.,

   464 U.S. 417 (1984)....................................................................................... 17, 19

Stewart v. Abend,

   495 U.S. 207 (1990)....................................................................................... 13, 16

Summit Machine Tool Mfg. Corp. v. Victor CNC Sys.,

   7 F.3d 1434 (9th Cir. 1993) ................................................................................... 37

Three Boys Musci Co. V. Bolton,

   212 F.3d 477) ......................................................................................................... 30

Ticketmaster Corp. v. Tickets.com, Inc.,

   2003 U.S. Dist. LEXIS 6483 (C.D. Cal. March 7, 2003) ................................ 22, 34, 36

TransWestern Publishing Co. v. Multimedia Marketing Associates,

   133 F.3d 773 (10th Cir. 1998) ......................................................................... 31, 33

U-Haul International, Inc. v. WhenU.com, Inc.,

   279 F. Supp. 2d 273 (E.D. Va. 2003) ..................................................................... 20

United States v. Hamilton,

   583 F.2d 448 (9th Cir. 1978) ................................................................................. 28

Want Ad Digest, Inc. v. Display Adver., Inc.,

   653 F. Supp. 2d 171 (N.D.N.Y 2009).............................................................. passim

Warren Pub., Inc. v. Microdos Data Corp.,

   115 F.3d 1509 (11th Cir. 1997) ....................................................................... 25, 27, 28

Wells Fargo & Co., et al. v. WhenU.com, Inc.,

   293 F. Supp. 2d 734 (E.D. Mich. 2003).................................................................. 21

White v. West Publ'g Corp.,

   2014 U.S. Dist. LEXIS 92482 (S.D.N.Y. July 3, 2014) ...................................... 14, 18

X17, Inc. v. Lavanderia,

   563 F. Supp. 2d 1102 (C.D. Cal. 2007) ................................................................. 37

**Statutes**

11 U.S.C §102(b) .................................................................................................. 23, 27

17 U.S.C. § 101 ......................................................................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17 U.S.C. § 107(2) ........................................................................................ 16

17 U.S.C. § 411(a) ........................................................................................ 10

17 U.S.C. ¶ 102 ............................................................................................ 12

Fed R. Civ. P. 56(a) ....................................................................................... 9

**Other Authorities**

Jane C. Ginsburg, No "Sweat"? Copyright and Other Protection of Works of Information After Feist

  v. Rural Telephone, 92 COLUM. L. REV. 338 (1992) ....................................... 30

William Patry, Copyright in Compilations of Facts (or Why the "White Pages" are not

  Copyrightable), 12 COMMERCE & LAW 37, 64 (Dec. 1990) ........................... 24

**Treatises**

4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT, § 13.03[A] (1997) .................. 30

# SUMMARY OF ARGUMENT

Pursuant to the Court's Standing Order dated July 6, 2012, PadMapper provides the following summary of argument:

**Copyright**: craigslist may assert copyright claims based on either the individual Listings or the compilation of its database: (1) with respect to the individual Listings, PadMapper's display of summary, factual material combined with its back-end use of the data underlying the Listings constitutes fair use under Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701 (9th Cir. 2007) and Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003); (2) with respect to the compilation, craigslist's curatorial efforts fail to satisfy the minimum originality, and PadMapper is not infringing on whatever minimal copyrights craigslist has because PadMapper uses totally different organizing principles. BellSouth Advertising & Publ'g Corp. v. Donnelley Information Publ'g, Inc., 999 F.2d 1436 (11th Cir. 1993).

**Trespass claim**: craigslist's trespass claims are deficient because craigslist fails to produce evidence sufficient to create a material fact that PadMapper's allegedly improper access of its site or servers caused damage or significant impairment as required under Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1347, 1 Cal. Rptr. 3d 32, 71 P.3d 296 (Cal. 2003).

**Misappropriation claim**: craigslist's misappropriation claim is preempted by the Copyright Act. Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., 7 F.3d 1434, 1441 (9th Cir. 1993). To the extent craiglist seeks to state a misappropriation claim under the "hot news" doctrine, it fails to satisfy several elements. The information is not time-sensitive in the way that breaking news is. Neither craigslist nor PadMapper sell access to the information in question. Finally, PadMapper is not "free-riding" on craigslist's efforts. Pollstar v. Gigmania Ltd., 170 F. Supp. 2d 974, 979 (E.D. Cal. 2000).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3       Defendant PadMapper, Inc. ("PadMapper") operates an apartment rental search engine that

4   allows apartment seekers to find and view information regarding apartment rental advertisements

5   originating from nearly one hundred online sources, including ApartmentSearch.com, Rent.com,

6   airbnb, ApartmentFinder, Realtor.com, and plaintiff craigslist, Inc. ("craigslist"). Despite the fact

7   that consumers overwhelmingly believe that PadMapper complements and improves the experience

8   of using craigslist to find apartments, craigslist seeks to stop PadMapper's use of the apartment

9   rental classified ad listings created and submitted to the craigslist website by users of the website

10  ("Listings"). craigslist has asserted a number claims against PadMapper, including copyright

11  infringement, trespass and misappropriation.

12      craigslist's primary claim is copyright infringement, and it asserts that PadMapper has

13  infringed copyrights in both individual Listings, as well as craigslist's compilation comprised of all

14  user postings on its website, including the Listings, and other aspects of the craigslist website (the

15  "Compilation"). With respect to individual Listings, only those Listings posted to craigslist's

16  website from July 16, 2012 to July 19, 2012 are relevant to craigslist's claims. This Court

17  previously ruled craigslist did not obtain an exclusive license to Listings posted prior to July 16,

18  2012, and therefore cannot sue for infringement of those Listings. craigslist's only application for

19  copyright registration that can form the basis for an infringement action on the Listings does not

20  cover Listings posted after July 19, 2012. In any event, PadMapper's use of Listing information

21  from this four-day window is either non-infringing, because the information is factual, or

22  constitutes fair use because, among other things, PadMapper's use of the information enables its

23  search engine functionality, and is fundamentally transformative. With respect to craigslist's

24  Compilation, PadMapper has not infringed on any protectable element of craigslist's selection or

25  arrangement of the Listings in the Compilation. Moreover, when PadMapper's website is compared

26  to the craigslist Compilation as a whole, it is clear that there is no substantial similarity between the

27  two. Accordingly, craigslist's copyright claims against PadMapper must fail.

28      PadMapper also seeks summary judgment on craigslist's trespass and misappropriation

---

1  claims because there is no factual dispute as to these claims.

2  **BACKGROUND**

3  **A.    PadMapper's Acquisition and Use of Listing Information**

4     <u>1.</u>   <u>PadMapper's current acquisition and use of Listing information.</u>

5      *a.    3Taps API*

6    PadMapper acquires information relating to Listings posted on craigslist from co-defendant,

7  3Taps, Inc. ("3Taps"), through an application programming interface made available by 3Taps (the

8  "3Taps API"). (Declaration of Eric DeMenthon in Support of PadMapper's Mot. Summ J.

9  ("DeMenthon Decl.") at ¶6.) In simple terms, the 3Taps API is a computer program that allows

10  PadMapper's computer systems to communicate with, and obtain data from, 3Taps' computer

11  systems. (<u>Id.</u> at ¶6.)

12    In order to obtain the Listing information from the 3Taps API, PadMapper formulates a

13  request specifying the following: the topical category of Listing information (one of homes for rent,

14  sublets, or rooms), the desired time period for the Listings (typically since the time of the last

15  query), the data source for the Listings (craigslist), the desired elements of the Listing (the original

16  URL for the Listing and the HTML for the web page corresponding to that URL), and the API key

17  (which functions as a password and identifier all in one). (<u>Id.</u> at ¶7.) PadMapper then transmits the

18  request to the 3Taps API. (<u>Id.</u> at ¶7.)

19    3Taps responds with a JSON, or JavaScript Object Notation, response. (<u>Id.</u> at ¶9.) This

20  encodes a list of blocks of information. (<u>Id.</u> at ¶9.) Each block represents one listing, and contains a

21  full set of the asked-for information. (<u>Id.</u> at ¶9.) In this case, that information consists of the original

22  URL of the Listing and the full HTML of the particular Listing, in base64 encoding. (<u>Id.</u> at ¶9.)

23  Base64 encoded information is not human-readable, and is used because it is more compact, and

24  less likely to cause problems with the surrounding JSON. (<u>Id.</u> at ¶9.)

25      *b.    Extraction of Data from 3Taps API Data*

26    PadMapper's computer system receives the JSON response, and converts it back into the

27  original human-readable HTML format by running a function used to decode base64 encoded data.

28  (<u>Id.</u> at ¶10.) For any particular Listing, once in the HTML format, PadMapper's program analyzes

the Listing information contained in the HTML and determines whether the information contains enough location data to enable the Listing to be accurately mapped. (Id. at ¶12.) Listings vary with respect to the amount of location information that they include, because a user creating a Listing can supply varying levels of location information. (Id. at ¶12.) For instance, a user need not supply an exact street address. (Id. at ¶12.) Where there is insufficient location data to pinpoint the location of an apartment at least to the level of cross streets, that apartment will not appear on PadMapper's website (i.e., no pin for it will be displayed on the apartment search map). (Id. at ¶13.) Listings for which the HTML does not contain enough location data to accurately map are not desirable for PadMapper's purposes because its user interface is map-based (as described in more detail below). (Id. at ¶13.) Through this process, a significant percentage (varying historically between 40%-60%) of the apartments for which PadMapper obtains information from 3Taps end up not being presented. (Id. at ¶13.)

For those Listings that are not excluded, PadMapper extracts the following data:[1] (1) the original URL address of the Listing, (2) the address of the property, (3) the latitude of the property, (4) the longitude of the property, (5) the area/neighborhood in which it was posted, (6) the city, (7) the price and lease term, (8) the number of bedrooms, (9) the number of full and partial bathrooms, (10) whether the Listing has images, (11) the URL addresses of images, if applicable, (12) whether cats and/or dogs are allowed, (13) whether it was posted by a broker or an individual, (14) whether a broker charges a fee, if applicable, (15) email, if provided, (16) telephone number, if provided, and (17) square footage (the "Listing Data"). (Id. at ¶14.) Using an algorithm, PadMapper software derives the price per bedroom and the median price for a comparable rental in the area. (Id. at ¶16.) All of the above data, with the exception of the URL addresses of any images, is then placed into a "summary table." (Id. at ¶16.) If the Listing contained images, the URL addresses of the images (but not the actual images files) are placed into a "listing image URL table." (Id. at ¶16.) The full HTML for the Listing is placed into an "HTML table." (Id. at ¶17.) The full HTML for the

---

[1] Not all of the above data will necessarily be available for a specific Listing. Some information is required by craigslist when creating a Listing, such as the price and number of bedrooms. The provision of other information is optional, such as the square footage and telephone number.

Listing includes the free form text entered into the body of the Listing by the person who posted the listing (e.g., "Bright, sunny 1 bedroom apartment on 29th street in Noe Valley. Recently remodeled with granite countertops and near bus stops!"). (Id. at ¶17.) Photos, if they appear in the Listings, are not obtained by PadMapper, directly or indirectly, and never have been. (Id. at ¶16.)

c.       *PadMapper's Apartment Search Map*

Initially, a user visiting the PadMapper website sees PadMapper's landing page, which by default shows a Google map of North America. (Id. at ¶25.) Overlaid on the map are green "pins," each of which indicates the location of a city where one or more apartments are available for rent. (Id. at ¶25.) A search functionality box  is also displayed in the user's window, superimposed on the map. (Id. at ¶25.) In addition to a text input field which asks "Where to?" and requests a "city, address, or zip," the search functionality box includes a number of filters that allow users to restrict the scope of a search. (Id. at ¶25.) These include filters for things such as rent range, number of bedrooms, number of bathrooms, and types of rentals (full leases, sublets, individual rooms, or vacation rentals). (Id. at ¶25, Ex. C.) (See Figure 1, below.)



**Figure 1**

As the user indicates a desired location in the search window and sets the filters to his or her liking, the apartment display map and the Listings on the map change to reflect what the user is asking for, whether that is a display of a smaller, more specific area (such as a particular city), or a display of listing pins that reflect apartments matching the more specific criteria provided by the

user through use of the filters. (Id. at ¶26, Ex. D.) (See Figure 2, below.) A user may also search my scrolling and zooming on the apartment display map using Google's standard map functions. (Id. at ¶26.)



**Figure 2**

After the apartment search map is narrowed into a specific location, either by searching or zooming on Google Maps, red or yellow pins appear which indicate the location of an available apartment for rent. (Id. at ¶27.) When the user clicks on a pin, a pop-up bubble appears, displaying summary factual information about the apartment represented by that pin (e.g., price, number of bedrooms and bathrooms, term), attribution of the source of the Listing (e.g., craigslist, rent.com, ApartmentFinder, airbnb) taken from the summary/search table created by PadMapper (the "Summary Bubble"). (Id. at ¶27.) The Summary Bubble also displays a link to the original Listing, as well as additional information generated by PadMapper, such as the rental price relative to the median. (Id. at ¶28.) The Summary Bubble also has tabs that display Google's "street view" and a "walk score"—which are both features made available by third parties (Google and Walk Score)— relative to the apartment. (Id. at ¶28, Ex. E.) (See Figure 3, below.)

1

2

3

4

5

6

7

8

9

10



**Figure 3**

11    In order to see the full Listing on its original source (e.g. craigslist), including any photos

12  that might be part of the Listing, the user clicks on one of the two links provided in the Summary

13  Bubble (one near the top of the Summary Bubble labeled with the price, the other in the bottom

14  third of the Summary Bubble, labeled "Original Listing"). (Id. at ¶29.) Doing so opens up a new

15  browser tab displaying the Listing on the source website. (Id. at ¶29, Ex. F.) (See, e.g., Figure 4,

16  below.)

17

18

19

20

21

22

23

24

25



**Figure 4**

26    2.    PadMapper's prior acquisition and use of Listing information.

27        a.    PadMapper Crawler

28    Prior to June 22, 2012, PadMapper obtained information for Listings posted on craigslist

1   directly through the use of automated "crawler" software. (Id. at ¶19.) PadMapper's crawler

2   software would periodically obtain the HTML of the first several pages of each city's rental

3   Listings index and extract the URLs of each Listing. (Id. at ¶19.) Then, the software would visit

4   each URL and obtain a copy of the HTML of the Listing. (Id. at ¶19.) PadMapper would then

5   process the HTML information in the same manner as described above. (Id. at ¶19.)

6                    b.      *PadMapper Bar and Inline Linking of Listing*

7           Up until May 29, 2013 (except for a ten day period in May 2012), the PadMapper user

8   interface with respect to Listings originating from craigslist was slightly different. (Id. at ¶30.)

9   When a user would click on a link within Summary Bubble, the user's browser would then display

10  a split screen, with a slim "PadMapper Bar" on the left side of the screen and an inline link to the

11  original craigslist Listing on the right side of the screen. (Id. at ¶30, Ex. G) (See Figure 5, below.)



**Figure 5**

22          The inline link was created by placing a tag within the HTML for the PadMapper site, which

23  contained a URL address for the source page of the original Listing and directed a user's Web

24  browser to load the actual source page for the Listing within the right side of the browser window.

25  (Id. at ¶31.) PadMapper did not copy the source page of the original Listing, rather, through the use

26  of inline linking, the source page was transmitted directly from craigslist's servers to the user's

27  Web browser directly, in response to the request from the user's Web browser. (Id. at ¶31.) The

28  PadMapper Bar was similar to the currently used Summary Bubble, in that it included functions like

1    saving a Listing as a favorite or hiding the listing in future searches, as well as core factual

2    information about the Listing, e.g. "$2,375 Price, 2 Bed, 1 Bath, 20% more than nearby 2 BR." (Id.

3    at ¶31.)

4            3.      No use of non-Listing craigslist data or content.

5            Although craigslist asserts that its website is "literally a 'one stop shop' for every sort of

6    local classified listing and associated communication that use may want or need," (FAC ¶ 29),

7    PadMapper obtains and uses only a small slice of craigslist's Compilation of user postings, those

8    pertaining to apartment rental listings, as described above. (DeMenthon Decl. at ¶24.) Thus, for

9    example, PadMapper does not use: the HTML for craigslist's global homepage, listing all of its

10   local sub-sites (http://www.craigslist.org/about/sites); the HTML for the homepage of any particular

11   local craigslist sub-site (e.g., the Seattle-Tacoma local sub-site, http://seattle.craigslist.org/), which

12   lists all of the various classified ad categories offered by craigslist and links to craiglist's various

13   website informational pages; any actual craigslist informational pages (e.g., its "Help" page

14   (http://www.craigslist.org/about/help/ or "About" page (http://www.craigslist.org/about/); or the

15   HTML for the vast majority of the craigslist website consisting of various other categories of

16   classified advertising (e.g., personals, jobs, services, and items for sale). (Id. at ¶24.)

17           4.      PadMapper's unique display of Listings.

18           craigslist arranges its Compilation first by pre-determined "geographical communities" and

19   second, into "dozens of different categories and sub-categories" within each designated

20   geographical community, (Pl. Opp'n to Defs. MTD (Dkt. 60) at 18:2-5), which includes the

21   "housing" category, where the Listings are located within the Compilation. User posts are listed

22   chronologically in the order they are posted. This geographical ordering, categorization, and

23   chronological structure employed by craigslist is not used by PadMapper. (See DeMenthon Decl. at

24   ¶¶ 25-27.) PadMapper's arrangement of the Listings is by the actual street location of the rental

25   placed on a Google map. (Id. at ¶¶ 25-27.) Although PadMapper does some prioritization of which

26   pins appear in a given area on the apartment search map by how recent the Listing was posted,

27   PadMapper also uses a number of additional factors when it organizes its data from Listings (e.g.,

28   whether or not a listing has pictures, whether the listing has received a lot of attention already, and

1   others). (Id. at ¶ 27.) In total, PadMapper's own categorization or arrangement of Listings is

2   materially different and bears no meaningful resemblance to craigslist's categorization and

3   arrangement.

4   **B.      craigslist's Users Support PadMapper's Apartment Search Engine Functionality**

5          As craigslist alleged in its Complaint, upon receiving a cease and desist letter from

6   craigslist, PadMapper stopped accessing craigslist's website directly. (Id. at ¶¶ 19-20.) It made a

7   public announcement regarding its inability to include craigslist Listings. (Id. at ¶ 19.) This resulted

8   in a huge outpouring of emails to craigslist from users of craigslist and PadMapper. These emails,

9   which craigslist produced in discovery, uniformly and emphatically make the point that PadMapper

10  enhances use of craigslist, and that PadMapper is not a substitute for craigslist in any way. Rather,

11  PadMapper made craigslist easier to use—i.e., PadMapper's search services *increased the demand*

12  *for and usability of craigslist's services* and drove consumers to the craigslist website. In fact, users

13  who had never used craigslist previously, as well as former users who had stopped using craigslist

14  because they found it too tedious and frustrating, remarked how PadMapper had connected them (or

15  re-connected them) to craigslist. (Balasubramani Decl. ¶ 3, Ex A.)

16  **C.      No Evidence of Actual Damages from PadMapper's Alleged Trespass**

17         The Court ruled in its April 29, 2013 Order that in order to sustain a claim for trespass,

18  craigslist must show "actual damage, such as impairment as to the condition, quality, or value of the

19  system or deprivation of its use for a substantial time." (Order on MTD (Dkt. 74) at 23.) The Court

20  declined to rule on PadMapper's argument at the motion to dismiss stage that its access of the

21  craigslist site did not cause any impairment or actual damage, while noting the possibility that

22  craigslist would not be able to show "actual damage or impairment." craigslist has not produced any

23  evidence of damage resulting from PadMapper's alleged trespass. (Balasubramani Decl. at ¶ 5.)

24                                    **DISCUSSION**

25  **A.      Summary Judgment Standard**

26         Summary judgment should be granted if "there is no genuine dispute as to any material fact

27  and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The burden of

28  establishing the absence of a genuine issue of material fact lies with the moving party, Celotex

---

1   Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light

2   most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, (1986)

3   (citation omitted).  Rule 56(c) mandates the entry of summary judgment against a party "who fails

4   to make a showing sufficient to establish the existence of an element essential to that party's case,

5   and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A fragment

6   of evidence in support of the non-movant's position is insufficient to successfully oppose a

7   summary judgment motion; "there must be evidence on which the jury could reasonably find for the

8   [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.

9   **B.      The Limited Scope of craigslist's Copyright Registrations and Applications**

10          craigslist may not maintain an action for infringement of works not covered by its copyright

11   registrations. 17 U.S.C. § 411(a). Although craigslist has cited to six copyright registrations and

12   four pending applications for registration during the course of this litigation, only one of these—a

13   pending application—is relevant to craigslist's claims against PadMapper. craigslist has identified

14   ownership of six issued copyright registrations: TX0006866657, TX0006866658, TX0006866660,

15   TX0006866661, TX0006866662 and TX0007547907. (See Kao Decl. in Support of Opp'n to MTD

16   (Dkt. 60-1), ¶¶ 7-11, 17.) craigslist has also identified four additional applications for registration.

17   (See Kao Decl. in Support of Opp'n to MTD (Dkt. 60-1), ¶¶ 12, 13, 15, 16.)  However, of all the

18   registrations and pending applications, craigslist admits that only one of these—a single pending

19   application—arguably extends copyright protection to individual Listings or the Compilations. (See

20   Opp'n to MTD (Dkt. 60) at 23, fn. 11 ("Defendants cite only to the presently issued registrations,

21   however, *which craigslist agrees do not extend to individual postings of the compilation of those*

22   *postings*. As alleged in the FAC, craigslist filed additional applications for registration prior to

23   filing this lawsuit, *one of which* expressly claims craigslist's rights in the postings and *the*

24   compilation. FAC ¶ 52; see Kao Decl. Ex. F1.") (emphasis added).)[2] The application identified by

25   craigslist (attached as Ex. F1 to the Kao declaration) is titled "Group registration for automated

26

27   _____

28   [2] Review of craigslist's three other pending applications and supporting specimens bears out their
     inapplicability to craigslist's claims. The applications referenced in Kao Decl. ¶¶ 13, 15 and 16 do
     not apply to Listings. They cover craigslist's website homepage and primary supporting pages.

1    database titled Classified Ads Database; published updates from April 19, 2012 to July 19, 2012"

2    (the "Database Application"). (Kao Decl. in Support of Opp'n to MTD (Dkt.60-1), ¶ 12, Ex. F1.)

3    Consequently, the Database Application is the only copyright registration or application relevant to

4    craigslist's copyright infringement claims against PadMapper. It is possible craigslist has submitted

5    additional applications for registration which craigslist has not disclosed to PadMapper in response

6    to discovery requests. But any such applications would not preclude summary judgment. The

7    analysis set forth below as to non-infringement and fair use would apply equally to such

8    applications.

9    　　　As a result of craigslist's single relevant application, the potential infringement period is

10   narrow: April 19, 2012 to July 19, 2012. However, the Court previously dismissed craigslist's

11   copyright claims with respect to individual Listings submitted before July 16, 2012 or after August

12   8, 2012, the narrow period during which the Court determined that craigslist obtained an exclusive

13   license to listings submitted by craigslist users. (See Order on MTD (Dkt.74) at 14:20-22.)

14   Consequently, with respect to individual Listings, craigslist may only maintain an infringement

15   claim for those Listings posted *during the four day period* covering July 16, 2012 to July 19, 2012.

16   **C.      craigslist Cannot Show Infringement of Copyright in the Individual Listings**

17   　　　PadMapper displays, through its use of the Summary Bubble, only factual information

18   contained in Listings. (See DeMenthon Decl. at ¶¶ 14, 27.) Because facts are not subject to

19   copyright protection, PadMapper's display of the factual information cannot constitute

20   infringement. Furthermore, PadMapper's use of the factual information is transformative, and

21   therefore constitutes fair use. PadMapper makes limited use of the entirety of the text of Listings

22   (including the free-form body text entered by the person who created the listing) to facilitate its

23   search engine functionality. However, this use is also transformative and constitutes fair use.

24   　　　　1.      PadMapper's display of factual Listings Data in the Summary Bubble is not
25   　　　　　　infringement.

26   　　　PadMapper extracts the Listings Data from the HTML it receives from the 3Taps API,

27   including location data. (Id. at ¶14.) PadMapper software then automatically indexes the location

28   data into tables, which it uses to place the pins on the apartment search map that display the

---

1 | Summary Bubbles (containing the above attributes) to a user on the PadMapper website. (See Id. at

2 | ¶¶16-17, 27-28.)

3 |     PadMapper's apartment search map allows users to filter Listings by the user's desired

4 | location, then display pins that represent the location of available Listings. (Id. at ¶¶22-24.) As the

5 | PadMapper site currently operates,[3] after clicking on a map pin for an apartment listed on craigslist,

6 | the site displays the Summary Bubble, which displays the core factual information about that

7 | apartment (e.g., price, number of bedrooms and bathrooms, term), to the extent available, along

8 | with a link to the full text of the Listing at its original source. (Id. at ¶24.) To the extent an end user

9 | wishes to view the full text of the Listing, the user can click through—and view the Listing on the

10 | craigslist site—using the link listed in the Summary Bubble. (Id. at ¶¶24-25.) All of the information

11 | displayed in the Summary Bubble is strictly factual in nature, and it is the only information from

12 | craigslist Listings that PadMapper displays to PadMapper's users. (See Id. at ¶24, 27.)

13 |     It is axiomatic that facts are not protectable under copyright law. 17 U.S.C. ¶ 102; Harper

14 | and Row Publs., Inc. v. Nation Enterps., 471 U.S. 539, 547 (1985). Consequently, PadMapper's

15 | extraction, use and display of this factual information in connection with the generation of its

16 | apartment search map and Summary Bubbles cannot form the basis of craigslist's infringement

17 | claims. Furthermore, as discussed below, PadMapper's use of this information is fundamentally

18 | transformative. The apartment search map and display of information in a Summary Bubble are part

19 | and parcel of search engine functionality offered by PadMapper.

20 |     2.    PadMapper's use of Listing text to enable its search engine functionality is fair use.

21 |     Apart from the apartment search map and Summary Bubbles, which are displayed to end

22 | users, PadMapper uses the text of the Listings to enable its search engine functionality and allow

23 | end users to map and compare among Listings between different (non-craigslist) Listings sources.

24 | (See DeMenthon Decl. at ¶ 17.) This use of factual information to facilitate search and comparison

25 | by end users is classic fair use.

26 |     The fair use doctrine "requires courts to avoid rigid application of the copyright statute

27 |

28 |     

---

[3] As explained in section A.2 above, this functionality previously worked differently, utilizing an inline link. PadMapper's use of inline linking is discussed below.

1    when, on occasion, it would stifle the very creativity which that law is designed to foster."

2    Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (citing Stewart v. Abend, 495 U.S.

3    207, 236, (1990)) (internal quotation marks and citation omitted). The Copyright Act establishes

4    four factors relevant to the fair use analysis: (1) the purpose and character of the use; (2) the nature

5    of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the

6    copyrighted work as a whole; and (4) the effect of the use on the potential market for or value of the

7    copyrighted work. 17 U.S.C. § 107. The four factors are non-exclusive, and provide "general

8    guidance"; they are to be explored and weighed together, "in light of the purposes of copyright."

9    Campbell, 510 U.S. at 578-579; accord Harper & Row, 471 U.S. at 560-61. "Where material facts

10   are not in dispute, fair use is appropriately decided on summary judgment." Mattel Inc. v. Walking

11   Mt. Prods., 353 F.3d 792, 800 (9th Cir. 2003) (citing Harper & Row, 471 U.S. at 560); accord

12   Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 530 (9th Cir. 2008) ("well established that a

13   court can resolve the issue of fair use on a motion for summary judgment").

14              a.      Purpose and Character of the Use

15          The first fair use factor considers the purpose and character of the use. This inquiry focuses

16   on whether and to what extent the challenged work is "transformative." Perfect 10, Inc. v.

17   Amazon.com, Inc., 487 F.3d 701, 720 (9th Cir. 2007) (quoting Campbell, 510 U.S. at 579). A work

18   is "transformative" when it "adds something new, with a further purpose or different character,

19   altering the first with new expression, meaning, or message." Campbell, 510 U.S. at 579. Numerous

20   cases, including two from the Ninth Circuit, establish that use of materials to enable search engine

21   functionality is transformative and fair use. In Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir.

22   2003), the defendant, Arriba, operated an Internet search engine that allowed for the search and

23   display of images. Arriba copied, stored and displayed small, "thumbnail" versions of images

24   appearing on various websites, and displayed those thumbnail images in response to search queries.

25   In response to Kelly's claim of copyright infringement, Arriba asserted a defense of fair use. Kelly

26   argued that because Arriba did not add any commentary or other expression to the images, Arriba's

27   use was not transformative. The Ninth Circuit disagreed, holding that "Arriba's use of the images

28   serves a different function than Kelly's use—improving access to information on the internet versus

artistic expression." Id. at 819. "Arriba's search engine functions as a tool to *help index and improve access to* images on the internet and their related web sites." Id. at 818 (emphasis added).

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007), which adopted the Kelly analysis, affirmed that search engine functionality is transformative. There, the Ninth Circuit upheld the inclusion of thumbnail images in search results because "[a]lthough an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information." Id. at 1165. Citing Campbell, the court observed that "a search engine may be more transformative than a parody because a search engine provides an entirely new use for the original work, while a parody typically has the same entertainment purpose as the original work." Id. "In other words, a search engine puts images in a different context so that they are transformed into a new creation." Id. (internal quotation marks omitted).

One recent decision cited Perfect 10 and Kelly favorably in concluding that Google's book scanning project was fair use because it "helps readers, scholars, researchers, and others find books." Authors Guild, Inc. v. Google Inc., 954 F. Supp. 2d 282, 291 (S.D.N.Y. 2013). White v. West Publ'g Corp. is also similar factually, and instructive, on the issue of transformative use. In that case, defendants used and manipulated the information in the legal briefs to make the briefs easier to locate, and to enable more efficient use of the information contained in the briefs. See generally, West Publ'g Corp., 12 Civ. 1340 (JSR), 2014 U.S. Dist. LEXIS 92482, *4-5 (S.D.N.Y. July 3, 2014) (describing defendants' use and manipulation of the information and the purposes for doing so). The court held that defendants' acts of "reviewing, selecting, converting, coding, linking, and identifying the documents" added "something new, with a further purpose or different character" than the original briefs. Id. at 7 (citing Campbell, 510 U.S. at 579). See also Fox News Network, LLC v. TVEyes, Inc., 2014 U.S. Dist. LEXIS 126138, *31 (S.D.N.Y. Sept. 9, 2014) ("TVEyes' search engine together with its display of result clips is transformative").

     i.  PadMapper's use of the Listings to provide search engine functionality is transformative.

PadMapper uses the data from the Listings for essentially the same purpose as the

1   defendants in the above cases: to enable its search engine functionality. In all of these cases, the use

2   and manipulation of data to enable index and search functions and provide additional functionality

3   to consumers for making use of the information contained in the original works was found to be fair

4   use. PadMapper extracts Listing Data from the HTML to create an index of information and to

5   allow users to locate apartments that meet their needs. PadMapper allows users to search among

6   Listings, view summaries of those Listings, more easily eliminate from consideration Listings for

7   unsuitable apartments, and click through to the craigslist site to view actual Listings for apartments

8   which may meet their needs. The actual text of a Listing containing the keyword is not displayed

9   (see DeMenthon Decl. at ¶ 17), a user would need to click on the provided hyperlinks to navigate to

10  the actual Listing on the craigslist website. This is classic search engine functionality which the

11  courts in both Kelly and Perfect 10 found to be transformative and fair use. PadMapper's display of

12  summaries of the Listings—the minimum and key factual information necessary for end users to

13  make a decision regarding a Listing—in a spatially mapped format is equally, if not more

14  transformative than the search engines in Kelly and Perfect 10. Indeed, PadMapper is more than just

15  a search engine because it incorporates additional data (developed both by PadMapper itself and

16  third parties) in order to aid in the end user's decision-making process. As numerous end users have

17  expressed emphatically, this functionality does not make PadMapper a replacement for craigslist.

18  (Balasubramani Decl. at ¶ 3, Ex. A.) Rather, it functions as a search engine and comparison tool

19  that allows users to make more informed choices about housing and more effective use of the

20  Listings from craigslist.

21       PadMapper does not just enable a user to locate a potentially suitable apartment Listing

22  through use of its search engine, it provides summaries of the most important information from

23  Listings, helps users understand the information they seek, and adds additional information. In

24  short, Padmapper "has created a different purpose for the [Listings]"—this is "an entirely new use"

25  of the data—the Listing Data is used "in a different context," and as "a pointer directing a user to a

26  source of information." See Perfect 10, 508 F.3d at 1165. As such, it comfortably falls within the

27  bounds of fair use.

28

1

          ii.      The fact that PadMapper is a commercial entity is of little value in determining fair use.

2

     While PadMapper is a for-profit organization, this does not materially tip the scales against

3

it. Fair use has been found even where a defendant benefitted commercially from the unlicensed use

4

of copyrighted works. See, e.g., American Geophysical Union v. Texaco Inc., 60 F.3d 913, 922 (2d

5

Cir. 1994) ("[C]ourts will not sustain a claimed defense of fair use … when the copier directly and

6

exclusively acquires conspicuous financial rewards from its use of the copyrighted material …

7

courts are more willing to find a secondary use fair when it produces a value that benefits the

8

broader public interest."); Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 612

9

(2nd Cir. 2006). Where there is a strong transformative nature to the use, a court "must weigh

10

[defendant's] superseding and commercial uses of [the copyrighted works] against the [defendant's]

11

significant transformative use, as well as the extent to which [defendant's use] promotes the

12

purposes of copyright and serves the interests of the public." Perfect 10, 508 F.3d at 1166. Here,

13

PadMapper does not charge users for access to its website or the search engine functionality. Nor is

14

a user charged for access to the original Listings. PadMapper does not run display ads on the

15

PadMapper site. Given the highly transformative nature of PadMapper's search engine and

16

comparison tool, and the benefits it provides to the public, PadMapper's use "is more significant

17

than any incidental superseding use of the minor commercial aspects of [PadMapper's] search

18

engine and website." Perfect 10, 508 F.3d at 1167.

19

          *b.*      *Nature of the Copyrighted Work*

20

     The second fair use factor looks to "the nature of the copyrighted work." 17 U.S.C. §

21

107(2). This factor recognizes that "some works are closer to the core of intended copyright

22

protection than others," so that the fair use analysis may differ across different works. Campbell,

23

510 U.S. at 586. Fair use is "more likely to be found in factual works than in fictional works."

24

Stewart v. Abend, 495 U.S. 207, 237 (1990). This is not unexpected, given that facts are not

25

protected by copyright law. See Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991)

26

("[Facts] may not be copyrighted and are part of the public domain available to every person.")

27

(internal citation omitted).

28

     Notably, the Listings, or at least their most useful elements, are predominantly factual,

published and made available to the general public free of charge. While craigslist listings in other categories may on occasion contain creative content, the Listings here concern factual details regarding rental properties (e.g., address, square footage, proximity to transportation) and the price at which such property is offered. While the Listings may contain photos (supplied by users), PadMapper does not reproduce or display such photos. (See section C.3, below.) The primarily factual nature of the Listings weighs in favor of a finding of fair use.

### c.   Amount and Substantiality of the Work Used

The third factor examines whether the amount copied "[is] reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586. "[T]he extent of permissible copying varies with the purpose and character of the use." Id. at 586-87. PadMapper must index and use the location data from Listings in order to place pins on maps with sufficient accuracy to benefit users, and to provide additional information beneficial to users, such as walkability scores. Similarly, it must use rental amount information in order to enhance searching, and to provide analysis such as the comparisons of rental amounts to the median for similar apartments. The display of information within Summary Bubbles (or the previously used "PadMapper Bar"), in connection with its map feature, allows a user to very quickly evaluate the relative qualities of a potential rental spaces. To abstain from use of certain information contained in Listings would reduce the usefulness of PadMapper's search engine to the browsing public. (See DeMenthon Decl. at ¶ 17.)

Nor does PadMapper's back-end use of the entirety of the Listing Data undermine PadMapper's fair use argument. Numerous courts have held that copying the entirety of a work may be fair use where that copying is necessary to the purpose of the (fair) use. Perfect 10, 508 F.3d at 1167; Kelly, 336 F.3d at 821; Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 449-50 (1984). In Kelly, the Ninth Circuit explained that:

> although Arriba did copy each of Kelly's images as a whole, it was reasonable to do so in light of Arriba's use of the images. It was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site. If Arriba only copied part of the image, it would be more difficult to identify it, thereby reducing the usefulness of the visual search engine.

Id. at 821. Several recent decisions have recognized that using the entirety of the work does not

1    automatically undermine fair use, where the work is used to enable search engine functionality. See,

2    e.g., Authors Guild, 954 F. Supp. 2d at 292. West Publ'g Corp., 2014 U.S. Dist. LEXIS at * 9. The

3    West Publ'g Corp. case is instructive. There, a plaintiff (lawyer) sued the owners of the Westlaw

4    and Lexis databases based on their copying of legal briefs he had authored and the subsequent use

5    and display of the text of the briefs through their websites. Id. at 2-3. The defendants asserted the

6    defense of fair use, and in support thereof, demonstrated that the copying of the full text of the

7    briefs was necessary in order to enable them to provide an interactive search tool. Id. at 6-7. The

8    court found this fact persuasive. "Although defendants here copied the entirety of White's briefs,

9    such copying was necessary to make the briefs comprehensively text searchable. Thus the Court

10   finds that defendants only copied what was reasonably necessary for their transformative use." Id.

11   at 9. The court arrived at a similar result in the Authors Guild case, where it found that Google's

12   scanning of the entirety of the works in question was necessary to facilitate its search engine

13   functionality. Authors Guild, Inc., 954 F. Supp. 2d at 292 ("Here, as one of the keys to Google

14   Books is its offering of full-text search of books, full-work reproduction is critical to the

15   functioning of Google Books.").

16           As was the case with the defendants in Authors Guild and West Publ'g Corp., PadMapper

17   stores the full text of Listings so that it can provide effective (and enhanced) search capabilities for

18   users. Storing less than the entire text from each Listing would cause a search to miss some relevant

19   Listings and would reduce the quality and value of each search to consumers. (DeMenthon Decl. at

20   ¶ 17.) Moreover, at every step in the process, PadMapper only displays the limited amount of

21   information necessary to allow the consumer to make an informed comparison regarding a

22   particular Listing. Notably, PadMapper does not reproduce the Listings en masse, and in this

23   respect, it is similar to the defendants in Kelly and Authors Guild.[4] While PadMapper does use the

24   full text of Listings from the HTML, this is done on the back-end, and merely to facilitate its

25   various transformative (search engine) uses. As further set forth above, numerous courts have found

26

27   _____

28   [4] The court in Authors Guild noted the importance of limiting the actual display of the text from the
     source work. 954 F. Supp. 2d at 292 ("Significantly, Google limits the amount of text it displays in
     response to a search.").

1   this type of use to be fair use.

2                    d.      Effect on the Potential Market for or Value of the Work

3          The fourth factor examines whether the use damages the copyright owner by harming the

4   potential market for or the value of the work. <u>Campbell</u>, 510 U.S. at 590. Cases such as this one,

5   where the public receives a significant benefit from the use but owners will receive no gain if the

6   use is denied, present the most compelling case for the role that fair use plays in advancing the

7   public purpose of the copyright laws. That is because "a use that has no demonstrable effect upon

8   the potential market for, or the value of, the copyrighted work need not be prohibited in order to

9   protect the author's incentive to create." <u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464

10  U.S. 417, 450 (1984).

11         Here, there is no harm to the market for or value of the Listings or of craigslist's service

12  generally. PadMapper's storage of the Listing text and use of the Listing Data to create visual

13  displays enables its search engine to be effective. Notably, craigslist has produced *no* evidence that

14  PadMapper's transformational use of data underlying the Listings diminishes their value. To the

15  contrary, numerous emails from end users attest to the fact that PadMapper serves as a complement

16  to, and not a substitute for, craigslist. Many such users specifically noted that were it not for

17  PadMapper's search engine, they would have ceased using craigslist to locate an apartment.

18  (Balasubramani Decl. at ¶ 3, Ex. A.) It stands to reason that PadMapper's search and indexing of

19  Listings does not harm craigslist, as the effectiveness of an advertisement is only enhanced by

20  increasing its distribution and exposure. Indeed, PadMapper's display and analysis of the Listings

21  makes it easier for apartment renters to use craigslist's data and thereby enhances their value. As a

22  result, this factor strongly supports a finding of fair use.

23         <u>3.      PadMapper's previous inline linking of Listings from craigslist is not infringing
24                    under the "server test" used by the Ninth Circuit.</u>

25         PadMapper's search results for Listings previously utilized inline linking in conjunction

26  with a PadMapper Bar. When a user found a particular Listing that the user wished to obtain more

27  information about, she could click on the pin representing the Listing, and this caused the user's

28  browser to load the original craigslist source page for the Listing alongside the PadMapper Bar. The

1   PadMapper Bar, displayed within the browser window on the left-hand side, contained the rental

2   price, number of bedrooms, number bathrooms (if available), an indication of how the rental price

3   compared to the median price of similar apartments in the same area (e.g., "20% more than nearby

4   2 BR"), and a phone number for the lister (if available). (DeMenthon Decl. at ¶ 31.) Additionally,

5   the PadMapper Bar allowed the user to save the apartment as a favorite, hide the apartment from the

6   map, and enter notes regarding a Listing. (Id.) It also contained links to allow the user to view the

7   apartment on the map and to navigate to the original Listing on the craigslist website. The

8   PadMapper Bar was similar to the Summary Bubble now used by PadMapper. (Id.)

9       Under the "server test" employed by the Ninth Circuit, PadMapper's inline linking of a

10  Listing from craigslist's website does not constitute a violation of any exclusive rights craigslist

11  may enjoy as a copyright owner. Indeed, it is no different than the end user viewing the Listing in

12  question on craigslist's website, albeit through a browser window that contains the user's own

13  annotations. In Perfect 10, the Ninth Circuit held that in-line linking of images "does not constitute

14  direct infringement of the copyright owner's display rights." 508 F.3d at 1161. The court described

15  such images as being displayed by "HTML instructions that direct a user's browser to a website

16  publisher's computer that stores the full-size photographic image." Id. at 1161. Thus, because a

17  defendant "does not store the photographic images on its computer, the defendant would not have a

18  'copy' of the images as that term is used in the Copyright Act." Id. at 1160. Other cases are in

19  accord with this approach. See Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC, No. 13 C

20  4664, 2014 U.S. Dist. LEXIS 92809, *13-18 (N.D. Ill. July 8, 2014) (holding that where plaintiff

21  failed to produce evidence that plaintiff's content was ever contained on defendant's servers,

22  defendant did not copy the content and cannot be liable under the Copyright Act); see also Flava

23  Works, Inc. v. Gunter, 689 F.3d 754, 761-762 (7th Cir. 2012) (implicitly endorsing the server test).

24  Courts have also rejected the argument that display of the additional material (in this case, the

25  PadMapper Bar) along-side the inline linked Listing constitutes an unauthorized derivative work.

26  See U-Haul International, Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 273 (E.D. Va. 2003)

27  (analogizing pop-up overlay to multiple windows open on an end user's machine and declining to

28  find that pop-up ads or coupons constitute the creation of an unauthorized derivative work (of the

1   website owner)); <u>Wells Fargo & Co., et al. v. WhenU.com, Inc.</u>, 293 F. Supp. 2d 734, 771 (E.D.

2   Mich. 2003) (same); <u>but</u> <u>see</u> <u>Futuredontics Inc. v. Applied Anagramics Inc.</u>, 1998 U.S. Dist. LEXIS

3   2265; 45 U.S.P.Q.2D (BNA) 2005 (C.D. Cal.; Jan. 30, 1998) (declining to grant motion to dismiss

4   and noting lack of clear authority as to whether a "frame[d] page constitutes a derivative work"). In

5   sum, there is no claim of direct infringement based on in-line linking.

6         However, even assuming that the inline-linking of a craigslist web page alongside the

7   PadMapper Bar constituted a "display," or otherwise infringed on one of the exclusive rights of the

8   copyright owner, such display also constitutes fair use. PadMapper allows the end user to pull up a

9   particular Listing which can be viewed alongside the search map, but also provides the PadMapper

10  Bar—which contained summary factual information and functionality that could be used by the end

11  user to manage their search of Listings—alongside it. For example, clicking on "Favorite" within

12  the PadMapper Bar would highlight the pin for a Listing, thereby keeping the Listing readily

13  apparent for further consideration at a later time. Clicking on "Hide from Map" would remove the

14  Listing's pin from the map, thereby preventing the user from wasting time reviewing Listings

15  previously determined to be unsuitable. (DeMenthon Decl. at ¶ 31.) Users could also use

16  functionality in the PadMapper Bar to make notes regarding a particular Listing. This use of Listing

17  information—display of a Listing alongside tools to manage prospective Listings—is also fair use

18  under <u>Campbell</u>. The use is also transformative. While the entirety of the work is displayed, the

19  manner of the display (framing) tips this factor in PadMapper's favor. Finally, and perhaps most

20  importantly, as discussed above, PadMapper's inline linking of the Listings pages directly from the

21  craigslist site did not cause any harm to craigslist. As suggested by the responses of users in emails

22  to craigslist, PadMapper facilitated and increased the use of craigslist by end users. PadMapper did

23  not derive any economic benefit through its use of inline linking. (It continues to display listings

24  from third parties other than craigslist via inline links and has not received any complaints about

25  this practice. (DeMenthon Decl. at ¶ 32).) Arguably, if PadMapper were displaying banner

26  advertising in the PadMapper Bar, or using the bar as a way to display competitive listings from

27  third parties, these types of acts *might* tip the fair use scales in craigslist's favor, but PadMapper is

28  doing the opposite. <u>Cf.</u> <u>Futuredontics, Inc. v. Applied Anagramics</u>, 1997 U.S. Dist. LEXIS 22249

1    (C.D. Cal. Nov. 24, 1997) (declining to grant preliminary injunction because plaintiff copyright

2    owner presented no evidence of harm from allowing end users to load a page and display plaintiff's

3    web page in a frame).

4         4.    PadMapper's extraction or receipt of the Listing Data did not infringe on any of
          craigslist's rights in the Compilation.

5

6         PadMapper currently obtains Listing Data from the HTML via 3Taps API, and it previously

7    obtained identical Listing Data directly via craigslist's website. In both instances, it obtains the

8    publicly visible, displayed version of the Listings which can be accessed by any visitor to

9    craigslist's website, including standard search engines such as Google. Neither extraction by

10   PadMapper of the Listing Data from the HTML nor receipt of this HTML from the 3Taps API is

11   infringing. craigslist does not claim ownership in this basic HTML; nor could it, given its

12   commonplace and entirely obvious nature. (DeMenthon Decl. at ¶ 11.) HTML is not covered by the

13   application to register the Database Compilation. (See Kao Decl. in Support of Opp'n to MTD, Ex.

14   F1 (Dkt. 60-14) at 28 (craigslist application for copyright registration of "Group registration for

15   automated database titled "craigslist Classified Ads Database; published updates from April 19,

16   2012 to July 19, 2012").) In any event, even assuming craigslist somehow asserts some legally

17   recognizable ownership in these snippets of HTML that cause Listings to be displayed to end users,

18   PadMapper's limited duplication of such code in order to extract the underlying facts does not

19   violate craigslist's copyrights. Even where entire copies of a copyrightable compilation are made,

20   so long as the purpose is a permitted use of the extracted factual data, this intermediate copying is

21   not infringement. See Ticketmaster Corp. v. Tickets.com, Inc., CV99-7654-HLH (VBKx), 2003

22   U.S. Dist. LEXIS 6483, *16 (C.D. Cal. March 7, 2003) ("Taking the temporary copy of the

23   electronic information for the limited purpose of extracting unprotected public facts leads to the

24   conclusion that the temporary use of the electronic signals was 'fair use' and not actionable.");

25   Nautical Solutions Mktg. v. Boats.com, 8:02-cv-760-T-23TGW, 2004 U.S. Dist. LEXIS 6304, *7-8

26   (M.D. Fla. Apr. 1, 2004) ("Boat Rover's momentary copying of Yachtworld's public web pages in

27   order to extract from yacht listings facts unprotected by copyright law constitutes a fair use and thus

28   is not an infringement of copyright."); see also Assessment Techs. of WI, LLC v. WIREdata, Inc.,

1    350 F.3d 640, 645 (7th Cir. 2003) (noting that if non-copyrightable material was so entangled with

2    a software program that to extract the data would also require copying the program, then defendant

3    "would be privileged to make such a copy"); Sega Enters. v. Accolade, Inc., 977 F.2d 1510, 1520-

4    28 (9th Cir. 1992) ("intermediate copying" of the operating system was a fair use, since the only

5    effect of enjoining it would be to give [plaintiff] control over non-infringing products).

6    **D.    craigslist's Compilation Lacks the Requisite Creativity, and PadMapper Does not
7           Infringe on Whatever Slim Protection craigslist May Have**

8          A compilation "is a work formed by the collection and assembling of preexisting materials

9    or of data that are selected, coordinated, or arranged in such a way that the resulting work as a

10   whole constitutes an original work of authorship." 17 U.S.C. § 101. "The mere fact that a work is

11   copyrighted does not mean that every element of the work may be protected." Feist, 499 U.S. at

12   348. As the Court recognized in its April 29, 2013 Order, copyright protection in a compilation

13   "extends only to the material contributed by the author of [the compilation], as distinguished from

14   the preexisting material employed in the [compilation]." (Order on MTD (Dkt. 74) 10:14-17) (citing

15   17 U.S.C. § 103(b).)[5] The s*election and arrangement* of preexisting material may constitute a

16   contribution to a compilation that is protectable if such selection and arrangement is sufficiently

17   original. Feist, 499 U.S. at 348. For the selection or arrangement of the elements of the compilation

18   to be creative, the author must make "non-obvious choices from among more than a few options."

19   Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 683 (2d Cir. 1998). Copyright protection

20   in a compilation does not extend to the idea or concept of compiling a particular type of data (such

21   as available rental listings), nor does it extend to a process, system, or method of selecting and

22   arranging data. See 11 U.S.C §102(b) ("In no case does copyright protection for an original work of

23   authorship extend to any idea, procedure, process, system, method of operation, concept, principle,

24   or discovery …"); Mazer v. Stein, 347 U.S. 201, 217-18 (1954) (holding that copyright extends

25   only to an expression of an idea).

26

27

28

---

[5] In its Database Application craigslist did not designate those works that were contributed by others
(i.e., those Listings that are outside the exclusivity window found in the Court's April 29, 2013
Order).

1       Examined closely, it is apparent that craigslist (1) does not have a protectable copyright

2   interest in the selection and arrangement of the Listings,[6] and (2) to the extent craigslist may enjoy

3   some minimal copyright protection in its selection and arrangement, PadMapper has not copied

4   this.

5       1.      craigslist does not have a protectable copyright interest in the selection of Listings

6               within the Compilation.

7       To warrant protection in selection underlying pre-existing materials, such selection must be

8   sufficiently original or creative. Selection entails "the exercise of judgment in choosing which facts

9   from a given body of data to include in a compilation." Key Publications, Inc., 945 F.2d at 519

10  (citing William Patry, Copyright in Compilations of Facts (or Why the "White Pages" are not

11  Copyrightable), 12 COMMERCE & LAW 37, 64 (Dec. 1990)). The required creativity and originality

12  has been found, for example, where the compiler selected items of interest to a particular

13  community out of a larger set of possible items to include, using the compiler's judgement. See Key

14  Publications, 945 F.2d at 513 (finding the selection of businesses for inclusion in a Chinese-

15  American telephone directory based on whether the compiler believed that the businesses would be

16  of interest to Chinese-American community sufficiently original). Courts have also found sufficient

17  creativity and originality where the compiler made a selection based on the perceived value of a

18  certain subset of data. See Eckes v. Card Prices Update, 736 F.2d 859, 862-63 (2d Cir. 1984)

19  (finding the selection of limited number of "premium" baseball cards out of larger set of all baseball

20  cards deserving of copyright protection). In contrast, courts have found a lack of sufficient

21  originality and creativity where the putative author attempts to include all of the available data

22  within a particular set. Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 730 (8th Cir. 2002) ("For

23

24  _____

25  [6] Given the absence of a certificate of registration for the Database Application, craigslist does not
    enjoy a presumption of validity as to its copyright. CHM Indus., Inc. v. Structural & Steel Prods.,

26  Inc., 4:08-CV-454-Y, 2008 U.S. Dist. LEXIS 86131(N.D. Tex. Oct. 24, 2008) ("presumption …
    arises not as a result of effective registration, but … because of the plaintiff's possession of a

27  certificate of registration"); Cosmetic Ideas, Inc. v. IAC/InteractiveCorp, 606 F.3d 612, 621, n.14
    (9th Cir. 2010) ("In fact, a defendant is in some ways aided by a plaintiff's lack of a certificate,

28  because if a party proceeds to litigation without a registration certificate, it bears a greater
    evidentiary burden of proving the validity of its copyright.").

1   purposes of compiling such a table [listing sports available in public schools], there is nothing

2   original about simply selecting all of the generally available sports."); Warren Pub., Inc. v.

3   Microdos Data Corp., 115 F.3d 1509, 1518 (11th Cir. 1997) (holding plaintiff "did not exercise any

4   creativity or judgment in selecting cable systems to include in its Factbook, but rather included the

5   entire relevant universe known to it"). Similarly, a compiler who merely publishes what is provided

6   to it does not engage in any "selection," and therefore lacks a protectable copyright interest in the

7   resulting compilation. See Want Ad Digest, Inc. v. Display Adver., Inc., 653 F. Supp. 2d 171, 179

8   (N.D.N.Y 2009) ("Want Ad … does not exercise any judgment in deciding which classifieds to

9   include in the *Want Ad Digest*. Rather, Want Ad merely publishes the classified advertisements its

10  clients submit to it."). Obviousness is an additional limitation on creativity in selection. Feist, 499

11  U.S. at 363. Finally, the use of a system may not serve as the copyrightable basis for selection. See

12  Warren Pub., Inc. v. Microdos Data Corp., 115 F.3d 1509, 1517 (11th Cir. 1997) (noting that if the

13  compiler did in fact use a "system" to select what "communities to include in its directory," such

14  selection would not be entitled to copyright protection).

### a.    No Initial Creative "selection" of Listings

16          The material facts of how craigslist generates its database of Listings are not in question.

17  craigslist's users submit apartment listings using craigslist's online system. While these

18  submissions may be subject to some filtering (which as discussed below does not bear on the

19  creativity of the database), they are published to the website under the category and geographic area

20  selected by the user. (FAC ¶¶ 30, 31; DeMenthon Decl. ¶ 37, Ex. K.) craigslist itself has no

21  involvement (in the copyright sense) in the selection of what Listings users decide to post to the

22  website.

23          In this way, craigslist is different from the plaintiff in Key Publications, who surveyed the

24  landscape of businesses in certain areas and made a subjective judgement as to which of those

25  businesses would be of interest to the Chinese-American community, Key Publications, 945 F.2d at

26  511, or the plaintiff in Eckes v. Card Prices Update, who decided which baseball cards should be

27  included in his guide as "premium" cards. Eckes v. Card Prices Update, 736 F.2d at 863. Rather, as

28  was the case in Want Ad Digest, craigslist "does not exercise any judgment in deciding which

1   classifieds to include," it "merely publishes the classified advertisements its clients submit to it."

2   Want Ad Digest, 653 F. Supp. 2d at 179.[7]

3            b.     *A System for Restricting Content is Not an Exercise of Judgment*

4            Despite that user posts are not initially selected by craigslist, it has asserted that the

5   Compilation should be afforded copyright protection on the basis it "has the right to, and does, take

6   voluntary efforts to restrict the posting of offensive or otherwise objectionable content on its

7   website" (Pl. Opp'n to Defs. MTD (Dkt. 60) at 17:16-17.) In support of this position, craigslist

8   argues that in Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc., 888 F. Supp. 2d 691, 710

9   (D. Md. 2012), the court found that plaintiff had demonstrated original selection and arrangement

10   warranting copyright protection "based on MRIS's active efforts to 'oversee [] and control [] the

11   quality and accuracy of the content in the MRIS Database." (Pl. Opp'n to Defs. MTD (Dkt. 60) at

12   19:2-3.) craigslist's reliance on Metro. Reg'l Info. Sys. is misplaced. In addition to clarifying its

13   holding to exclude copyrightability of the textual elements of the compilation in a later ruling, that

14   case is distinguishable. Metro. Reg'l Info. Sys., 904 F. Supp. 2d 530, 534-35 (D. Md. 2012).

15            In contrast to the actions of the plaintiff in Metro. Reg'l Info. Sys., craigslist's alleged

16   curatorial efforts are not related to the quality or accuracy *of the Listings as rentals*. In Metro Reg's

17   Info Sys., plaintiff, MRIS, sent notices to posters in order to maintain the "quality and accuracy" of

18   the listings, "including [notifying them of their] failure to update the status of a property or the

19   manipulation of information in property listings." Metro. Reg'l Info. Sys., 888 F. Supp. 2d at 710.

20

21      [7] craigslist's position that it exerts sufficient curatorial efforts is at odds with the position it takes in

22   cases involving its own liability for user generated content. In such cases, craigslist is quick to
disclaim responsibility for the selection of listings that appears on its website, instead portraying

23   itself as a passive conduit for it users' postings. See Chi. Lawyers' Comm. for Civ. Rights Under
Law, Inc. v. craigslist, Inc., 519 F.3d 666, 668 (7th Cir. 2008) (holding that craigslist was not liable

24   for housing discrimination in the listing, and accepting craigslist's argument that "[e]very month
more than 30 million notices are posted to the craigslist system. Fewer than 30 people, all based in

25   California, operate the system, which offers classifieds and forums for 450 cities. It would be
necessary to increase that staff … substantially to conduct the sort of editorial review that the

26   Lawyers' Committee demands--and even then errors would be frequent."); Dart v. craigslist, Inc.,
665 F. Supp. 2d 961, 970-976 (N.D. Ill. 2009) (finding craigslist not liable for any posting regarding

27   prostitution, as craigslist did not cause the posting to be made). It is hard to square craigslist's
position in intermediary liability cases with its argument here that it is exercises sufficient curatorial

28   control over the selection of content to justify copyright protection.

craigslist on the other hand merely filters out (using an algorithm) scam postings that are or relies on its users to flag (and then deletes) postings that do not comport with its Terms of Use. (DeMenthon Decl. ¶ 40, Ex. N.) ("Postings may also be flagged for removal by CL staff or CL automated systems.") The manner in which this preemptive filtering is performed, for example, as an upfront programmed screen that filters user posts for spam and scams or offensive content is immaterial, as such screening is more analogous to "collection effort" than true selectivity judgment. BellSouth, 999 F.2d at 1441 ("[T]he Copyright Act does not protect 'industrious collection,' it affords no shelter to the resourceful, efficient, or creative collector."). Such filtering efforts are also system-based and thus not protectable. See Warren Pub., Inc. v. Microdos Data Corp., 115 F.3d 1509, 1517 (11th Cir. 1997) (system-based selection is not entitled to copyright protection); 11 U.S.C §102(b). As to removing posts that violate craigslist's Terms of Use, craigslist merely deletes posts flagged by users, and any selection is performed by its users (i.e., craigslist's users flag content they believe to be inappropriate). (DeMenthon Decl. ¶ 40, Ex. N ("CL users flag postings they believe are inappropriate by clicking the "prohibited" link near the top of each posting.").) These efforts cannot be attributed to craigslist for authorship purposes. Warren Publ., 115 F.3d at 1519 ("the selection is not its own, but rather of the cable operators"); BellSouth, 999 F.2d at 1443 (rejecting copyright in heading structure of directory in part on the basis that the subscribers were the ones who selected from the alternative headings offered for listing).

Any database requires efforts to maintain, but the type of selective judgment recognized by copyright law must be based on judgment related to the nature of the content on the basis of the purpose for which it is selected for inclusion. If not, particularly with respect to a user-generated collection of data, any minimum efforts to maintain even the most base standards for excluding improper submissions could be transformed into the "exercise of creative judgment" over whether the content should be included in a compilation. craigslist's implementation of a system for the removal of Listings based on automated filtering for scams or duplicate posts, or user-flagged deficiencies unrelated to the qualities of the Listings as a rental is not an exercise of judgment as to which apartments are "good" apartments or of interest to a certain community.

1

        c.      *Default Expiration Dates are Not Curatorial*

2          craigslist has also asserted that it's selection of Listings exhibits sufficient originality and

3    creativity because craigslist "choos[es] the duration that postings appear on its website" depending

4    on the type of ad and geographic area in which it is included. (Pl. Opp'n to Defs. MTD (Dkt. 60) at

5    17:19-24.) Currently, craigslist employs two expiration dates for "Housing" posts, of seven days for

6    posting in a number of "List A Cities" and 45 days in all other cities and areas. (See DeMenthon

7    Decl., ¶ 40, Ex. M.) However, similar to any other natural boundary on a set of data, an expiration

8    date is a commonplace and inherent part of any classified listing. BellSouth, 999 F.2d at 1441

9    (reversing district court's finding of sufficient selection creativity, stating "any collection of facts

10   … will by necessity have a closing date and, where, applicable, a geographic limit selected by the

11   compiler.").

12         In Warren Pub., Inc. v. Microdos Data Corp., the compiler argued that it had a "unique

13   method of choosing which communities to include in its directory" 115 F.3d at 1517. The court

14   found that this was not a sufficient exercise of selection, creativity or judgment, as the intention was

15   to include all known cable systems. Id. at 1519. Instead, the court held that the only discretion the

16   compiler used was not including certain information multiple times in order to make the directory

17   "commercially useful," Id. at 1518, which the court held was not entitled to protection. Id. at 1519.

18   craigslist's removal of Listings after a certain duration is similar to the plaintiff in Warren. An

19   expiration date serves a simple "commercially useful" purpose in any list of classifieds; it is not an

20   editorial expression of the compiler. To find otherwise would result in any classified ad database

21   being entitled to copyright protection simply on the basis that old posts are removed at some set

22   time determined by the compiler. The implementation of an expiration date for a classified listing

23   "lacks the quantum of originality needed to merit copyright protection." Satava v. Lowry, 323 F.3d

24   805, 811 (9th Cir. 2003) (finding commonplace selection of elements of glass sculpture and typical

25   of jellyfish insufficient for copyright protection); see also United States v. Hamilton, 583 F.2d 448,

26   452 (9th Cir. 1978) (holding that "trivial elements" of selection or arrangement are not

27   copyrightable).

28

1          2.    <u>craigslist does not exert sufficient creativity in its arrangement of Listings</u>.

2  craigslist also asserts, pointing to the global organizational structure of its entire website, that the

3  arrangement of classified ads is sufficiently creative to warrant copyright protection:

4  craigslist's website arranges its posting first into hundreds of geographic communities (for example,

5  the 'SF Bay', 'Inland Empire,' 'Gold County' in California), and then into dozens of different

6  categories and sub-categories, all of which are specifically named or chosen by craigslist.

7  (Pl. Opp'n to Defs. MTD (Dkt. No. 60) at 18:2-5.)

8          As an initial matter, craigslist is not responsible for deciding where particular Listings are

9  included within its geographic and topical categories. *craigslist's users* make that determination.

10  (<u>See</u> craigslist's FAQ <http://www.craigslist.org/about/help/faq#freePosting>, exhorting users to

11  "choose just ONE local craigslist site for which your ad is most relevant—generally the site closest

12  to you" (DeMenthon Decl. ¶ 37, Ex. K.) craigslist has simply implemented a system whereby any

13  user can submit a Listing and select the topic and geographic area in which her Listing will be

14  categorized. Thus, the critical act of judgment on the part of the compiler (here craigslist) is

15  missing. <u>Warren Publishing</u>, 115 F.3d at 11519 (rejecting claim of originality in selection because

16  the selection "is not its own, but rather that of the cable operators); <u>BellSouth Advertising & Publ'g</u>

17  <u>Corp. v. Donnelley Information Publ'g, Inc.</u>, 999 F.2d 1436, 1445 (11th Cir. 1993) (en banc)

18  (same). <u>BellSouth</u> is closely on point. There, the court rejected a claim of arrangement based on

19  headings in a classified directory, noting that:

20          the ultimate appearance of a particular subscriber under a certain heading is
21          determined by the subscriber's willingness to purchase those listings in
          [plaintiff's] directory, While [plaintiff] may select the headings that are *offered* to
22          the subscriber, it is the *subscriber* who *selects* from those alternatives the
          headings under which the subscriber will appear in the copyrighted directory.

23  <u>BellSouth</u>, 999 F.2d at 1444 (emphasis in original). As in <u>Warren Publishing</u> and <u>BellSouth</u>, where

24  the arrangement of "principal communities" were made by cable operators and subscribers,

25  respectively, here, the arrangement of listings within categories is made by end users, and not

26  craigslist. Thus, the arrangement of Listings under various headings lack "the originality required to

27  merit copyright protection."

28          Additionally, the headings themselves (the "geographic communities," "categories" and

1   "sub-categories") employed by craigslist to arrange its classified ads do not warrant protection, as

2   they lack the originality required under copyright law. BellSouth, 999 F.2d at 1444 (holding that

3   plaintiff's directory categories such as "attorneys" and "banks" "represent such an obvious label for

4   the entities appearing under these headings as to lack the requisite originality for copyright

5   protection"); Want Ad Digest, Inc. v. Display Adver., Inc., 653 F. Supp. 2d at 179 ("Headings and

6   subheadings such as 'Animals,' 'Cars,' and 'Furniture' are 'entirely typical' for a classified

7   advertisement publication, and using such headings 'is not only unoriginal, it is practically

8   inevitable.'") (quoting Feist, 499 U.S. at 362-63). With respect to the Listings themselves, there is

9   one applicable category, titled "housing," under which there are only a couple of relevant sub-

10  categories with standard and obvious labels, i.e., "apts/housing," "rooms/shared,"

11  "sublets/temporary," and "vacation rentals." (DeMenthon Decl. ¶ 35, Ex. H.) The compiler of a

12  competing set of classified ads for housing would be pressed to find a material way to deviate from

13  using these headings. See BellSouth, 999 F.2d at 1442 (finding that the existence of other possible

14  arrangements is not sufficient).

15      3.   Even assuming craigslist has some slim protectable copyright in the selection and
16           arrangement of the Listings, PadMapper has not copied either of these elements.

17      The protection available for a database compilation is "thin." Feist, 499 U.S. at 349. The

18  standard test for copyright infringement is "substantial similarity." Three Boys Music Corp. v.

19  Bolton, 212 F.3d 477, 481 (9th Cir. 2000). However, "more similarity is required when less

20  protectible matter is at issue. Thus, if substantial similarity is the normal measure required to

21  demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with 'thin'

22  works." 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT, § 13.03[A] at 13-28

23  (1997); see also Jane C. Ginsburg, No "Sweat"? Copyright and Other Protection of Works of

24  Information After Feist v. Rural Telephone, 92 COLUM. L. REV. 338, 349 (1992) ("'Even if the

25  compilation is deemed original, what kind of copying will be held to infringe it?' The answer [after

26  Feist] appears to be: 'Virtually none, short of extensive verbatim copying.'"). Phrased alternatively,

27  "[t]he less copyright protection a work receives, the more similarity is required to meet the

28  'substantial similarity' standard." Bensbargains.net, LLC v. XPbargains.com, Case No. 06cv1445

BTM, 2007 U.S. Dist. LEXIS 60544, *11 (S.D. Cal. Aug. 16, 2007). Thus, infringement of compilations "consisting largely of uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression,' or 'unauthorized use of substantially the entire item.'" Id. (quoting Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989)); see also BellSouth, 999 F.2d at 1439 (applying Feist and concluding that defendant did not appropriate "original elements" of BellSouth directory "as a whole" by preparing data base and sales leads based upon listing information and units of advertising appearing in preexisting directory). The critical factor to analyzing infringement of a compilation is the "principles guiding [the] selection" of the compilation. Key Publications, 945 F.2d at 516. Citing this principle, courts have dismissed claims of infringement, despite an overlap of the underlying data. See, e.g., Le Book Publishing, Inc. v. Black Book Photography, Inc., 418 F. Supp. 2d 305, 310 (S.D.N.Y. 2005) (holding that directories for "creative industries" were not infringing because of the lack of similar organizing principles); Am. Massage Therapy Ass'n v. Maxwell Petersen Assocs., 209 F. Supp. 2d 941, 950 (N.D. Ill. 2002) (concluding that defendant did not infringe because the lack of similarity of the "principles guiding selection"); TransWestern Publishing Co. v. Multimedia Marketing Associates, 133 F.3d 773, 776 (10th Cir. 1998) (citing Key Publications, Inc. for the proposition that a "smaller competing publication" was not infringing because it "utilized significantly different principles of [listing] selection").

### a.   PadMapper Uses Wholly Independent Organizational Principles

Under the extrinsic test for similarity, there is no infringement, because "no one would would mistake [PadMapper's site] for that of [craigslist's]." TransWestern, 133 F.3d at 776. Indeed, a "visual comparison" of the two compilations confirms that "there is no substantial similarity of arrangement between any of [craigslist's] compilations and [PadMapper's]." Bensbargains.net, LLC v. XPbargains.com, Case No. 06cv1445 BTM, 2007 U.S. Dist. LEXIS 60544, *11-12 (S.D. Cal. Aug. 16, 2007).

Even if there was a sliver of creativity employed by craigslist through the exclusion of Listings and by allowing users to select among obvious choices for categorization of Listings, PadMapper does not merely incorporate the Listings that appear on craigslist. As PadMapper's

apartment search map depends on having accurate locational data for the rental, PadMapper excludes from its collection of Listings any that do not have a mappable location. (DeMenthon Decl. at ¶ 13.) This results in between 40 and 60 percent of Listings not being used to generate a pin on the apartment search map. (Id.) PadMapper also compiles information about listings from variety of sources—craigslist is but one of nearly one hundred different sources of apartment listings indexed by PadMapper. (DeMenthon Decl. at ¶ 3.) Moreover, the approach to organizing the display of information for users of the websites is completely different. PadMapper does not utilize or reproduce craigslist's "geographic communities," "categories" and "sub-categories."[8] For example, nowhere on PadMapper's website will you find Listings arranged under the categories "SF Bay," "Inland Empire" or "Gold County" in California. The navigation of Listings on PadMapper is entirely map-based. In contrast to PadMapper, the default view on craigslist is a list of short Listing descriptions within a particular city (or section of a city), arranged in descending order by how recently the Listings were posted to the site. The user can then click on a Listing description to view the actual Listing. This type of display and navigation is absent on PadMapper. PadMapper employs a singular—and uncopyrightable organizing principle—the longitude and latitude of the apartment in question. PadMapper first displays a map of the United States, with pins representing available apartments. PadMapper generates the pins (and thereby arranges the information about the apartments) based purely on the longitude and latitude of the apartment location. (DeMenthon Decl. ¶¶ 25-27.) The user can control the geographic area by zooming in or out on the map, or moving the map in any direction, allowing the user to easily filter out apartments in areas that are undesired. (DeMenthon Decl. at ¶ 26.) If a user clicks on a pin, the Summary Bubble is displayed, allowing the user to make quickly make a determination of whether to proceed to the actual Listing (on craigslist). (DeMenthon Decl. at ¶ 28.) Thus, the method of arrangement of Listings utilized by PadMapper is completely different from craigslist's, and therefore non-infringing. See Key Publications, 945 F.2d at 515 (holding that defendant's directory was not

---

[8] The other attributes for Listings that users input using drop-down menus (housing type; laundry; parking; bedrooms; bathrooms), check (smoking; furnished; pets) or form boxes (square footage; rent; availability) are not used for selection or arrangement. These are in any event "not only unoriginal, [but] practically inevitable." Want Ad Digest, 653 F. Supp. at 179.

infringing, where categories used to arrange business listings were dissimilar in number and label).

      *b.*     *Use of Underlying Facts is Not Infringing Given a Weak Copyright Claim*

The Court should reach a similar conclusion as the courts in <u>BellSouth</u>, <u>TransWestern</u>, <u>Le Book</u>, <u>Want Ad Digest</u>, and <u>Key Publications</u>, and find that PadMapper has not infringed any copyright in craigslist's Database Compilation. craigslist exhibits minimal, if any, creativity in selecting what to include and in arranging those Listings that it includes. PadMapper has created a wholly distinct database, using different organizing principles. The very fact that users find PadMapper to be useful to help sort through apartment Listings posted on craigslist is evidence that PadMapper is not copying the selection and arrangement of craigslist's apartment listings. Ultimately, through exaggeration of its curatorial efforts, craigslist seeks to extend the bounds of copyright protection to protect its "sweat of the brow" efforts in building and maintaining a popular place for people to submit and browse apartment listings. It may seem unfair to craigslist that PadMapper be allowed to utilize the collection of apartment Listings submitted by craigslist's users, but such a result is not only permitted by copyright, it is encouraged. <u>Feist</u>, 499 U.S. at 349-50 (stating that copyright "encourages others to build freely upon the ideas and information conveyed by a work"); <u>BellSouth</u>, 999 F.2d at 1444-45 (observing that "[w]hile it may seem unfair for a compiler's labor to be used by a competitor without compensation," this is not the objective of copyright).

      <u>4</u>.    <u>The software and logic underlying craigslist's database is not at issue</u>.

The software underlying craigslist's database and any logic underlying the database is similarly not at issue. craigslist's single application for registration that covers the database is an application to register the database as part of a compilation. As such, it covers selection and arrangement of the data and not the underlying software, or any underlying "idea, procedure, process, system, method of operation, concept, principle, or discovery." 11 U.S.C § 102(b); <u>see also</u> <u>Lotus Dev. Corp. v. Borland Int'l</u>, 49 F.3d 807, 815 (1st Cir. 1995) (holding that a "menu command hierarchy" within software program that allowed users to manipulate the program was a non-copyrightable "method of operation") However, even in the event that craigslist has a separate application that seeks to protect rights in the software or logic of the database, there is no factual

1    dispute that PadMapper lacked access to these elements sufficient to copy them. PadMapper does

2    not have, and never has had, any access, through the 3Taps API, the HTML, or from any other

3    source, to the back-end organization of the craigslist website or database, nor to my knowledge is

4    such back-end software or database logic accessible to any other end user of craigslist. Any such

5    back-end organization is not visible to the end user; nor is it visible to anyone who accesses such

6    data via an API feed, or via the site directly (by merely obtaining the HTML for a Listing, which is

7    publicly available). PadMapper did not have access to craigslist's "back-end" and thus could not

8    have copied such software or underlying logic. (DeMenthon Decl. ¶ 18.) Even assuming substantial

9    similarity can be shown, any similarity must be presumed to be a result of both PadMapper and

10   craigslist choosing the same (intuitive) logic in organizing their databases.

11   **E.     craigslist Failed to Produce any Evidence of Significant Impairment Caused by
             PadMapper's Access of the craigslist Site and Thus Fails to State a Trespass Claim**
12

13           To prevail on its trespass claim, craigslist must demonstrate actual damage to its servers.

14   See Ticketmaster Corp. v. Tickets.com, Inc., No. 99CV7654-HLH, 2003 U.S. Dist. LEXIS 6483,

15   *11 (C.D. Cal. Mar. 7, 2003). Such proof is lacking in this case. This Court previously

16   acknowledged that craigslist would "need to support its claim of actual injury with evidence at

17   summary judgment or trial" (Dkt. 74 at 24:11-12), but craigslist has failed to put forth any such

18   evidence. Assuming craigslist suffered any damage at all resulting from PadMapper's access of the

19   Listings—and craigslist produced no evidence of this in a year-long discovery period—that damage

20   was *de minimis* at worst. It does not rise to the level of damage that courts require in for an

21   actionable trespass. Accordingly, this Court should dismiss craigslist's trespass claim.

22           Courts have grappled with applying the old doctrine of trespass to chattels based on the

23   allegedly unauthorized access of websites and servers. While courts have varied in their statements

24   of the rule, the majority of courts have held that a plaintiff cannot prevail in this context unless

25   there is some "tangible interference with the use or operation of the computer … [or] actual

26   dispossession of the chattel for a substantial time." Ticketmaster Corp., 2003 U.S. Dist. LEXIS

27   6483 at *11. In Intel Corp. v. Hamidi, the California Supreme Court examined the viability of a

28   trespass claim based on the transmission of unwanted emails. There the court held that while

1   electronic communications and resulting "use" of email servers may constitute a trespass, the

2   trespass tort "does not encompass ... an electronic communication that neither damages the

3   recipient computer system nor impairs its functioning." Intel Corp. v. Hamidi, 30 Cal. 4th 1342,

4   1347, 71 P.3d 296 (Cal. 2003). Following Hamidi, courts have required a plaintiff to show that any

5   unauthorized access caused "significant" impairment. See Hernandez v. Path, Inc., No.

6   12CV01515-YGR, 2012 U.S. Dist. LEXIS 151035, *22-23 (N.D. Cal. Oct. 17, 2012) (granting

7   motion to dismiss trespass claim on the basis of failure to allege significant impairment); LaCourt v.

8   Specific Media, Inc., No. 10-1256, 2011 U.S. Dist. LEXIS 50543, at *20 (N.D. Cal. April 28, 2011)

9   ("the tort [of trespass to chattel] does not encompass ... an electronic communication that neither

10  damages the recipient computer system nor impairs its functioning."); In re iPhone Application

11  Litig., 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) ("trespass without harm, 'by reason of the

12  impairment of the property or the loss of use,' is not actionable") (quoting Hamidi, 30 Cal. 4th at

13  1351). The court in Hamidi specifically rejected plaintiff Intel's attempt to show threshold damages

14  in several different ways, including reputational harm, expenditures of its employees' time,

15  incremental costs, and the bare right as a property owner to exclude others from using its property.

16  It held that Intel failed to state a claim, because the available evidence showed that "the system

17  worked as designed, delivering the messages without *any physical or functional harm or*

18  *disruption*." Hamidi, 30 Cal. 4th at 1360 (emphasis added). craigslist's evidence similarly fails to

19  show that its servers or site experienced any physical or functional harm or disruption.

20          Apart from the time-period prior to receipt of a cease-and-desist letter during which

21  PadMapper accessed craigslist's site directly, craigslist does not allege that PadMapper even

22  accessed craigslist's sites or servers. Nor is there any dispute that PadMapper currently accesses

23  craigslist's websites or servers: it does not. (See FAC ¶ 104; DeMenthon Decl. at ¶ 23.) With

24  respect to PadMapper's access of craigslist's website or servers prior to receipt of the cease-and-

25  desist letter, craigslist does not allege that such access damaged craigslist's computer systems or

26  deprived craigslist of use of its computer system. It only alleges that PadMapper's access "reduces

27  craigslist's capacity to service its users because it occupies and uses craigslist's resources." (FAC ¶

28  121.)  However, this allegation does not rise to the level of "significant impairment" required under

1   California law. It is more analogous to the allegations may by the plaintiffs in In re iPhone

2   Application Litigation, who alleged that defendant Apple's creation of location history files and app

3   software components on plaintiffs' mobile devices "consumed portions of the cache and/or

4   gigabytes of memory on their devices," had "taken up valuable bandwidth and storage space on

5   their iDevices," and "shortened the battery life of the iDevices." In re iPhone Application Litig.,

6   844 F. Supp. 2d at 1069. There, the district court dismissed the trespass claims, noting that "[w]hile

7   these allegations conceivably constitute a harm, they do not plausibly establish [the necessary]

8   significant reduction in service constituting an interference with the intended functioning of the

9   system ...." Id.

10      In terms of frequency and effect, PadMapper's past access of craigslist's site and servers

11  was no different than that of any crawler implemented by an internet search engine, such as Google

12  or Internet Archive. (DeMenthon Decl. at ¶ 20.) And this access is also similar to the type of use

13  effected by any one of the sixty million end users who access the craigslist website on a monthly

14  basis. (See FAC ¶ 25; Balasubramani Decl. ¶ 4, Ex. B ("50 billion page views per month … 60

15  million each month in the US alone … craigslist users post well over 80 million classified ads each

16  month").) While these types of access may consume incremental bandwidth, none of them would

17  cause damage to craigslist's system or impair its functioning sufficient to state a trespass claim. As

18  the district court noted in Tickets.com, "mere use of a spider to enter a publicly available web site

19  to gather information, without more, is [not] sufficient to fulfill the harm requirement for trespass to

20  chattels." Tickets.com, 2003 U.S. Dist. LEXIS 6483, at *12. Indeed, craigslist has produced zero

21  evidence of such damage or actual impairment. As in Hamidi, "that [access of craigslist's site or

22  servers] temporarily used some portion of [its] processors or storage is … not enough." Hamidi, 30

23  Cal. 4th at 1357.

24  **F.      craigslist's Misappropriation Claim Cannot Withstand Summary Judgment**

25      1.      craigslist's common law claim for misappropriation is preempted by the Copyright
26              Act as there is no "extra element".

27      The Copyright Act preempts any state law claim that protects legal or equitable rights that

28  are the equivalent to any of the exclusive rights reserved to the copyright owner without some

---

"extra element that makes it qualitatively different from a copyright claim." <u>Montz. v. Pilgrim Films & TV, Inc</u>, 649 F.3d 975, 981 (9th Cir. 2010). Where copyright and state law causes of action overlap, courts find no preemption if the state law claim requires satisfaction of an "extra element." <u>Del Madera Properties v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir. 1987). Thus, some species of common law misappropriation claims alleging that the defendant improperly exploited plaintiff's material may survive preemption. These include claims for misappropriation based on breach of a confidential relationship or misappropriation of trade secrets. <u>Balboa Ins. Co. v. Trans Global Equities</u>, 218 Cal. App.3d 1327, 1352 (Cal. App. 1990). Courts are mixed on whether a misappropriation claim based on a breach of fiduciary duty claim is preempted. <u>Id.</u>; <u>but</u> <u>cf.</u> <u>Del Madera</u>, 820 F.2d at 977. On the other hand, courts agree that a claim for misappropriation of "time and efforts expended in producing" the relevant content is preempted. <u>Del Madera</u>, 820 F.2d at 977; <u>Summit Machine Tool Mfg. Corp. v. Victor CNC Sys.</u>, 7 F.3d 1434, 1441 (9th Cir. 1993) ("to the extent [plaintiff] may complain that [defendant] has 'pirated' its lathe by employing a particularly unfair method of copying, such a claim is preempted"); <u>Balboa Ins.</u>, 218 Cal. App. 3d at 1353 ("absent the element of a relationship, a misappropriation claim for unauthorized use or transfer of the software adds nothing to a potential copyright infringement claim"). Here, craigslist alleges that PadMapper free-rides on the efforts craigslist expends in developing its content. (<u>See</u> FAC ¶ 144) ("Defendants wrongfully access … its content"; "Defendants … have made craigslist's content … available to their customers and other third parties"; "Defendants' use of … craigslist's content constitutes free-riding"); (FAC ¶ 145) ("As a result of this misappropriation, Defendants wrongfully compete … ".) This type of a misappropriation claim is preempted.

> 2.   There is no factual dispute that craigslist's misappropriation claims fails to satisfy the elements of a "hot news" claim.

It is possible craigslist seeks to assert a claim for misappropriation under the "hot news" doctrine, which some courts have held is not preempted by the Copyright Act. <u>See</u>, <u>e.g.</u>, <u>X17, Inc. v. Lavanderia</u>, 563 F. Supp. 2d 1102, 1105 (C.D. Cal. 2007); <u>Pollstar v. Gigmania Ltd.</u>, 170 F. Supp. 2d 974, 979 (E.D. Cal. 2000). In <u>Pollstar</u>, the court set forth the elements of a "hot news" claim: (i) the plaintiff generates or collects information at some cost or expense; (ii) the value of the

information is highly time-sensitive; (iii) the defendant's use of information constitutes free-riding

on the plaintiff's efforts to generate it; (iv) the defendant's use of the information is in direct

competition with a product or service offered by the plaintiff; and (v) the ability of the other party

to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or

service that its existence or quality would be substantially threatened. <u>Pollstar</u>, 170 F. Supp. 2d at

979. A claim for "hot news" misappropriation by craigslist fails to survive summary judgment for

several independent reasons. First, the value of the information is not time-sensitive (<u>i.e.</u>, the

Listings, while primarily factual are not "breaking news"). To the extent a particular apartment is

still vacant, the Listing continues to be "valuable" in the sense that it is useful. Second, craigslist's

and PadMapper's use of the information is not in "direct competition." As numerous end users

confirmed, PadMapper's search engine functionality enhances craigslist's services and encourages

end users to use such services. Finally, use by PadMapper of the Listings is not "free-riding." The

<u>INS</u> case that is often cited to for viability of the hot news tort had a specific definition of "free-

riding." <u>International News Service v. Associated Press</u>, 248 U.S. 215, 239 (1918). There the Court

defined "free-riding" to mean "taking material that has been acquired by complainant as the result

of organization and the expenditure of labor, skill, and money, and which is salable by complainant

for money, and ... appropriating it and selling it as the [defendant's] own …" <u>Id.</u> at 239.

PadMapper's limited use of the Listings Data does not satisfy either element: craigslist makes this

information freely available to end users, and PadMapper likewise does not sell access to it.

PadMapper attributes the limited amount of Listings Data that it displays to end users, and

ultimately assists end users in finding appropriate Listings. (DeMenthon Decl. at ¶ 33;

Balasubramani Decl. ¶ 3, Ex. A.) A recent Second Circuit case, <u>Barclays Capital Inc. v.</u>

<u>Theflyonthewall.com, Inc.</u>, 650 F.3d 876 (2d. Cir. 2011), is instructive as to why PadMapper's

actions are not free-riding. In that case, Barclays sought to protect its securities analysts' trading

recommendations, which the defendant, Fly, aggregated and distributed to its subscribers on a

website. <u>Id.</u> at 882-83. Like craigslist, Barclays raised a misappropriation claim, but the court found

it unpersuasive:

the Firms' claim is not a so-called INS-type non-preempted claim because Fly is

not, under *NBA's* analysis, 'free-riding.' It is collecting, collating and disseminating factual information — the facts that Firms and others in the securities business have made recommendations with respect to the value of and the wisdom of purchasing or selling securities — and attributing the information to its source. The Firms are making the news; Fly, despite the Firms' understandable desire to protect their business model, is breaking it.

Id. at 902. PadMapper's actions present even less of a case for misappropriation than the defendant in Barclays. PadMapper has aggregated pointers to listings from numerous sources – always making clear to the user who that source is—along with useful analysis that enhances their value to consumers. (DeMenthon Decl. ¶¶ 28, 33.) This is not "free-riding"; it is a value-added service that gives credit (and refers end users) to craigslist, as well as additional utility to consumers.

## CONCLUSION

craigslist seeks to stretch the bounds of copyright protection to prevent PadMapper from using factual data underlying its Listings in a way that is undoubtedly beneficial to end users. PadMapper's use the data underlying the Listings to facilitate its search functionality is classic fair use. Similarly, craigslist has thin copyright protection, if at all, in its Compilation application. It exerts no creativity or judgment in selecting the Listings for inclusion. PadMapper does not use any protectible elements of copyright protection that craigslist may have in its compilation. Accordingly, the Court should grant summary judgment as to craiglist's copyright claims.

The Court should similarly grant summary judgment as to craigslist's trespass and misappropriation claims. craigslist has not produced any evidence that PadMapper's crawler— which functions similar to any mainstream search engine—caused any impairment or harm to craigslist's site or servers. Similarly, craigslist's common law misappropriation claim is preempted. It fails to put forth any evidence necessary to support a "hot news" claim for misappropriation.

DATED: October 3, 2014                          FOCAL PLLC

                                                By:

                                                */s/Venkat Balasubramani*
                                                Venkat Balasubramani (SBN 189192)

                                                Attorneys for Defendant
                                                PADMAPPER, INC.

1         I, Sean M. McChesney, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that the

2    concurrence to the filing of this document has been obtained from each signatory hereto.

3    DATED: October 3, 2014                FOCAL PLLC

4                            By:

5                            */s/Sean M. McChesney*

6                            Sean M. McChesney (admitted *pro hac vice*)

7                            Attorneys for Defendant

8                            PADMAPPER, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28