1   **PERKINS COIE** LLP
    BOBBIE WILSON (No. 148317)
2   bwilson@perkinscoie.com
    Four Embarcadero Center, Suite 2400
3   San Francisco, CA  94111-4131
    Telephone:  415.344.7000
4   Facsimile:  415.344.7050

5   **PERKINS COIE** LLP
    BRIAN P. HENNESSY (No. 226721)
6   bhennessy@perkinscoie.com
    J. PATRICK CORRIGAN (No. 240859)
7   pcorrigan@perkinscoie.com
    NANCY CHENG (No. 280682)
8   ncheng@perkinscoie.com
    3150 Porter Drive
9   Palo Alto, CA  94304
    Telephone:  650.838.4300
10  Facsimile:   650.838.4595

11  Attorneys for Plaintiff
    craigslist, Inc.

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

15  CRAIGSLIST, INC., a Delaware
    corporation,
16
                        Plaintiff,
17
            v.
18
    3TAPS, INC., a Delaware corporation;
19  PADMAPPER, INC., a Delaware
    corporation; DISCOVER HOME
20  NETWORK, INC., a Delaware corporation
    d/b/a LOVELY; HARD YAKA, INC., a
21  Delaware corporation; BRIAN R.
    NIESSEN, an individual; ROBERT G.
22  KIDD, an individual; and Does 1 through
    25, inclusive,
23
                        Defendants.
24

25

26

27

28

| | |
|---|---|
| Case No.  CV 12-03816 CRB | |

**SECOND AMENDED COMPLAINT FOR:**

(1) Breach of Contract; (2) Trespass;
(3) Misappropriation; (4) Violations of the
Computer Fraud and Abuse Act; (5) Copyright
Infringement; (6) Contributory Copyright
Infringement; (7) Federal Trademark
Infringement; (8) Federal False Designation of
Origin; (9) Federal Dilution of a Famous Mark;
(10) Federal Cyberpiracy Prevention;
(11) California Trademark Infringement;
(12) Common Law Trademark Infringement;
(13) California Unfair Competition;
(14) California Comprehensive Computer Data
Access and Fraud Act; (15) Aiding and Abetting
Trespass; (16) Aiding and Abetting
Misappropriation; (17) Accounting;
(18) Controlling the Assault of Non-Solicited
Pornography and Marketing Act; (19) California
Restrictions on Unsolicited Commercial Email
Advertisers

DEMAND FOR JURY TRIAL

1    For its Second Amended Complaint against Defendants 3Taps, Inc. ("3Taps"),

2    PadMapper, Inc. ("PadMapper"), Discover Home Network, Inc. d/b/a Lovely ("Lovely"), Hard

3    Yaka, Inc. ("Hard Yaka"), Brian Niessen, and Robert G. Kidd by and through its undersigned

4    counsel, craigslist, Inc. ("craigslist") asserts as follows.

5                                         **INTRODUCTION**

6         1.    craigslist provides local community classifieds, largely without charge and free

7    from third-party advertising and marketing.  Many tens of millions of users rely on these unique

8    marketplaces for finding and/or offering basic necessities in their local areas, such as

9    employment, housing, transportation, used goods, services, romance, friendship, and community

10   information.

11        2.    For their own commercial benefit, Defendants are unlawfully and unabashedly

12   mass-harvesting and redistributing postings entrusted by craigslist users to their local craigslist

13   sites.  This exploitation of craigslist content undermines the integrity of local craigslist

14   communities, ultimately harming both craigslist and its users.

15        3.    3Taps, for example, boasts that it mass copies tens of millions of postings from

16   craigslist in "real time" and stores them in its own database.  3Taps makes this misappropriated

17   content available via an unauthorized and illegitimate "Application Programming Interface"

18   (API) to whomever and on whatever terms 3Taps chooses.  All the original and often highly

19   personal content craigslist users entrust to their local craigslist sites, along with their contact

20   information, is thereby made available to all manner of for-profit entities to copy, repurpose,

21   redisplay, redistribute, surround with advertisements, expose to non-local audiences, subject to

22   marketing come-ons, disturb with unsolicited communications, and otherwise exploit

23   commercially.

24        4.    Using its illegitimate database and API, 3Taps operates trademark-infringing

25   craiggers.com, which unlawfully redisplays and facilitates national searches of craigslist's local

26   content, thereby undermining the essential locality of craigslist community sites.  3Taps also

27   developed and distributed an unlicensed craiggers mobile application for the iPhone that

28   redisplays craigslist content.

5.      In addition, 3Taps actively encourages and enables other companies to unlawfully exploit misappropriated craigslist content.  Defendant Lovely, in which 3Taps is an investor, is one example.  Lovely operates the website livelovely.com, which provides searchable apartment listings—consisting largely of misappropriated craigslist content unlawfully obtained by 3Taps and distributed via 3Taps' illegitimate "craigslist API"—and directly competes with craigslist. Lovely also distributes an unlicensed iPhone application that redisplays craigslist content.

6.      Defendant PadMapper is another example.  Similar to Lovely, it competes with craigslist unfairly by offering an apartment search service at padmapper.com that is primarily based upon misappropriated craigslist postings acquired from 3Taps' illegitimate store.

7.      The adage, "no good deed goes unpunished," is fitting.  Because craigslist has worked hard and invested heavily for many years so that its users can use its local community sites largely free of charge, and free from third-party advertising and marketing, opportunists like Defendants now claim craigslist's content is "free" for them to misappropriate wholesale and commercially exploit, even for the purpose of developing rival businesses.

8.      Indeed, 3Taps' founder, Greg Kidd, has openly touted 3Taps' violation of craigslist's rights, referring to United States copyright laws—which Defendants each violate—as "artificial confines" from which craigslist's protected content should be "liberated."

9.      Defendants are wrong.  craigslist provides a unique and highly valued service to its users, and has every right to limit the copying and distribution of craigslist content.  Doing so protects craigslist and its community of users, alike.  Defendants cannot usurp or misappropriate that right, particularly for their own commercial gain.

10.     Since the Defendants are unwilling to cease their infringing and harmful activities—indeed, each is brazenly intent on unlawfully growing its business on the back of craigslist and its users—craigslist had no choice but to commence this action.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338, because this action alleges violations of federal statutes, including the Copyright Act (17 U.S.C. § 101, *et seq.*) and the Lanham Act (15 U.S.C. §§ 1114 and 1125(a), (c), (d)).

12.     This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

13.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

14.     In addition, craigslist's Terms of Use ("TOU") governing all users', and specifically, Defendants', access to and use of the craigslist website and craigslist's services provide that courts located within the county of San Francisco, California, shall have exclusive jurisdiction over the relationship between craigslist and Defendants.

15.     During all relevant times, Defendants have repeatedly, knowingly, and intentionally accessed or contracted for access to craigslist servers located in this judicial district without craigslist's authorization.  While accessing craigslist servers, Defendants made systematic and continuous contacts with this judicial district, and have targeted their wrongful acts at craigslist, which is headquartered in this judicial district.

16.     This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2.

## **THE PARTIES**

17.     craigslist, Inc. is a Delaware corporation, with its principal place of business in San Francisco, California.

18.     3Taps Inc. is a Delaware corporation, with its principal place of business in San Francisco, California.

19.     PadMapper, Inc. is a Delaware corporation, with its principal place of business in Mountain View, California.

20.     Discover Home Network, Inc. d/b/a Lovely is a Delaware Corporation with its principal place of business in San Francisco, California.

21.     Hard Yaka, Inc. is a Delaware corporation, with its principal place of business in Muir Beach, California.

22.     Defendant 3Taps is an alter ego of Defendant Hard Yaka with a unity of interest of ownership such that the separate personalities of the entities do not exist and the failure to

1 | disregard the separate identities would result in fraud or injustice.

2 | 23. Brian R. Niessen is an individual who, on information and belief, resides in

3 | Vancouver, British Columbia and/or Philipsburg, St. Maarten.

4 | 24. Robert G. Kidd is an individual who, on information and belief, resides in Muir

5 | Beach, California.

6 | 25. At all relevant times, Defendant Kidd was and is the founder and Chief Executive

7 | Officer of Defendant 3Taps. Defendant Kidd is the central figure in the unauthorized scraping

8 | and redistribution of craigslist's content and actively participated in and controlled the wrongful

9 | conduct alleged herein.

10 | 26. Furthermore, Defendant 3Taps is an alter ego of Defendant Kidd with a unity of

11 | interest of ownership such that the separate personalities of the entities no longer exist and the

12 | failure to disregard the separate identities would result in fraud or injustice.

13 | 27. Does 1-25 are persons or entities responsible in whole or in part for the

14 | wrongdoing alleged herein ("Doe Defendants"). craigslist is informed and believes, and based

15 | thereon, alleges that each of the Doe Defendants participated in, ratified, endorsed, or was

16 | otherwise involved in the acts complained of, and that they have liability for such acts. craigslist

17 | will amend this Complaint if and when the identities of such persons or entities and/or the scope

18 | of their actions become known.

19 | 28. 3Taps, PadMapper, Lovely, Niessen, Kidd, Hard Yaka, the Doe Defendants, and

20 | their agents, affiliates, and other co-conspirators are collectively referred to herein as the

21 | "Defendants."

22 | ## FACTS

23 | 29. Founded in San Francisco, California in 1995 by Craig Newmark, craigslist began

24 | as an email list for friends and co-workers to share information about events in and around the

25 | San Francisco Bay Area. It grew over time in size and scope, and became the world's largest

26 | online forum for local classified advertising and community discussions.

27 | 30. Today craigslist ranks third among American Internet companies for web traffic

28 | (after Facebook and Google), and is in the top ten worldwide, with hundreds of billions of page

1   views served annually.  More than 60 million Americans visit craigslist each month, and they

2   collectively post several hundred million classified ads each year.

3          31.     craigslist continues to maintain its headquarters in San Francisco, California.  San

4   Francisco is the center of craigslist's operations.

5          32.     The greater Bay Area, and specifically San Francisco, remains one of the largest

6   and most active communities of craigslist users.

7   **A.     The craigslist Classified Ad Service.**

8          33.     craigslist enables authorized users to post localized classified advertising on its

9   website.

10         34.     This classified ad service is organized first by geographic area, and then by

11  category of product or service within that geographic area.  The myriad categories provided by

12  craigslist include everything from job postings, buying and selling of used goods, housing

13  opportunities (sale, buy, rent, etc.), personals ads for friendship and romance, and a wealth of

14  community-centric information and advice.  It is literally a "one stop shop" for every sort of local

15  classified listing and associated communication that a user may want or need.

16         35.     Users post ads on craigslist by first navigating the craigslist website to the

17  homepage for the geographic area in which they wish to post, which is generally the geographic

18  area in which they reside.  From that homepage, a user seeking to post an ad must click a link

19  titled "post to classifieds."

20         36.     Users choose the type of posting they want to place from a list designed and

21  presented by craigslist for that geographic area (for example, job offered, housing offered,

22  housing wanted, for sale, item wanted, personal/romance, or community).  A yellow highlighted

23  notice at the top of this webpage reminds users, as stated in the TOU, that "cross-posting to

24  multiple cities or categories is not allowed."  craigslist requires this in its TOU in order to keep

25  craigslist as user-friendly as possible—otherwise identical postings would appear numerous times

26  throughout the site in categories and in geographic locations that do not really apply, clogging the

27  site with postings that users do not want to view.

28

37.     After selecting the type of posting, the user is presented with a list of categories for posting ads in that geographic area (for example, categories under "for sale" ads include, without limitation, auto parts, bicycles, boats, collectibles, electronics, jewelry, musical instruments, and tools), and must select the appropriate category for his or her ad.

38.     After selecting the appropriate category, the user specifies from a list the nearest location within the geographic area, but a notice at the top of this webpage also alerts the users that "there is no need to cross-post to more than one area - doing so may get you flagged and/or blocked - thanks!"

39.     On the subsequent page, the user creates a unique classified ad.  Ads typically include a title, description and other relevant details about whatever the user placing the ad may be offering or seeking, and often include an email address for replies.  Most email addresses are supplied by craigslist with a unique, anonymizing proxy address to protect user anonymity. craigslist's servers automatically forward email sent to the unique proxy email address to the poster's actual email account, which users provide during the posting process.

40.     The classified ads on craigslist are highly time-sensitive.  Individual ads are live on the site for periods ranging from minutes to weeks, often achieving their goal and becoming irrelevant within hours to days.  Apartment rental listings, for example, become useless once the property is rented, which can happen within hours of being listed.  Likewise, for sale listings are worthless once the item advertised has sold, which again often happens very quickly.  Job listings are also of no use once the job has been filled. The most recent listings are therefore highly sought after by users, and this rule of thumb applies to a wide variety of craigslist's categories.

41.     Before a posting can be made to the craigslist website, the user is required affirmatively to accept craigslist's TOU.

42.     If the user chooses not to accept the TOU, the ad is not posted.

43.     For the period starting July 16, 2012—before craigslist commenced this action— through August 8, 2012, users confirmed that craigslist was the exclusive licensee for all of the copyrights in their ads before completing the posting process.

44.     Posted ads are listed in a product or service category by a descriptive title created by the user that posted the ad.  craigslist includes a copyright notice in every post.

45.     craigslist registers its intellectual property, including its website and the posts contained within, under United States and foreign law to protect against unauthorized copying or distribution.

46.     craigslist has a program pursuant to which its user-generated content may be licensed by third-party companies that facilitate craigslist access from mobile devices.  Each of these mobile application providers agrees to and is bound by important and substantial restrictions on the manner in which craigslist may be accessed and its content used.  Defendant PadMapper was offered a license to such content, but did not accept the terms.

**B.      The craigslist Terms of Use.**

47.     craigslist's TOU explain that users are granted a limited and revocable license to access and use craigslist in accordance with its terms.  They state that if users "access craigslist or copy, display, distribute, perform or create derivative works from craigslist webpages or other [craigslist] intellectual property in violation of the TOU or for purposes inconsistent with the TOU, [that] access, copying, display, distribution, performance or derivative work is unauthorized."

48.     The TOU identify specific types and examples of access and use that are unauthorized.

49.     Any copying, aggregation, display, distribution, performance or derivative use of craigslist or any content posted on craigslist whether done directly or through intermediaries (including but not limited to by means of spiders, robots, crawlers, scrapers, framing, iframes or RSS feeds) is prohibited.  Although craigslist allows a very limited exception to these prohibitions for general purpose Internet search engines and noncommercial public archives, the exception applies only if (a) they provide a direct hyperlink to the relevant craigslist website, service, forum or content; (b) they access craigslist from a stable IP address using an easily identifiable agent; and (c) they comply with craigslist's robots.txt file.

50.     Any access to or use of craigslist to design, develop, test, update, operate, modify, maintain, support, market, advertise, distribute or otherwise make available any program, application or service that enables or provides access to, use of, operation of or interoperation with craigslist is prohibited.

51.     Any activities (including but not limited to posting voluminous content) that are inconsistent with use of craigslist in compliance with the TOU or that may impair or interfere with the integrity, functionality, performance, usefulness, usability, signal-to-noise ratio or quality of all or any part of craigslist in any manner are expressly prohibited.

52.     craigslist revised its terms of use effective December 5, 2013.[1]

**C.     The craigslist Copyrights.**

53.     The craigslist website is uniquely distinctive in its simplicity and efficiency. Among the significant original elements of the craigslist website are the simple and uncluttered page layout and organization, the account registration, log-in and posting features, and the clear and straightforward design of craigslist postings.

54.     The originality, simplicity, and clarity of the craigslist website are fundamental to craigslist's reputation and garner substantial and valuable goodwill with users.

55.     In addition, each user-generated posting on the craigslist website is itself an original work of creative expression, as it includes unique written descriptions of the goods or services offered for sale, for example, and often include photographs or other creative works.

56.     craigslist either owns or has exclusive rights in its website and all portions thereof, including, but not limited to, the database underlying the website and the user-generated postings on its website (collectively, the "Copyrighted Works").

57.     craigslist's U.S. copyright registrations include Reg. Nos., TX0006866657, TX0006866658, TX0006866660, TX0006866661, and TX000686662.

58.     On July 19 and 20, 2012, craigslist submitted additional applications to the Copyright Office for copyright registration.

---

[1] Attached as Exhibit A are craigslist's TOU effective February 14, 2012 through December 4, 2013. Attached as Exhibit B are craigslist's TOU effective December 5, 2013 through the present. Exhibits A and B are incorporated herein by reference in their entirety.

59.     On July 20, 2012, prior to the filing of this Complaint, the Copyright Office confirmed its receipt of craigslist's applications.

**D.     The craigslist Trademarks.**

60.     craigslist is the owner of U.S. Registrations Nos. 2395628, 2905107, 2985065, and 3008562 for the CRAIGSLIST mark, covering, *inter alia*, "[a]dvertising and information distribution services," "online interactive bulletin boards for transmission of messages among computer users concerning classified listings," and "on-line computer data bases and on-line searchable databases featuring information, classified listings and announcements."  craigslist has also registered the CRAIGSLIST mark in many other countries throughout the world.

61.     The CRAIGSLIST mark has been used in commerce by craigslist since 1995. craigslist's use has been substantially continuous and exclusive.  craigslist therefore owns common law rights in the CRAIGSLIST mark.

62.     craigslist has attained strong name recognition in the CRAIGSLIST mark.  The mark has come to be associated with craigslist and identifies craigslist as the source of advertising, information, bulletin board, database, and other services offered in connection with the mark.

63.     The CRAIGSLIST mark appears repeatedly in every single craigslist post, and throughout nearly every page on its websites, worldwide.

64.     craigslist has also developed substantial goodwill in the CRAIGSLIST mark.

65.     The CRAIGSLIST mark is among craigslist's most important and valuable assets.

**E.     The Defendants' Unlawful Activities.**

            **a.     3Taps.**

66.     3Taps' sole business appears to be misappropriating and capitalizing upon all of craigslist's protected content.

[Remainder of page left intentionally blank.]

67.     3Taps apparently formed initially with the idea of creating a resource to aggregate data from a variety of sources.  Its original website, for example, identifies craigslist as just one of the companies whose data 3Taps intended to misappropriate:



Figure 1
(3taps.com, July 2011)

68.     Recently, however, 3Taps changed its entire focus to profiting from the unlawful distribution of content from craigslist, and has modified its website accordingly:

Figure 2
(3taps.com, July 19, 2012)

69.     As suggested by its website, 3Taps copies all of craigslist's content—including time stamps and unique craigslist user ID numbers—stores it in a database copied from craigslist, and makes it available to third parties for use in competing websites or, for whatever other purpose they wish.

70.     3Taps expressly claims to offer a "One-Stop Craigslist API" for third parties to access craigslist content, where craigslist has specifically chosen not to do so, thus usurping craigslist's exclusive right to offer an API and control the distribution of its content.

71. In addition, 3Taps built and operated a website, craiggers.com, upon the API created by 3Taps. Craiggers.com essentially replicated the entire craigslist website.

72. The craiggers website displays craigslist's copyrighted content in virtually identical visual fashion to the manner in which they appear on craigslist:



Figure 3
(craigslist, July 18, 2012)

[Remainder of page left intentionally blank.]



Figure 4
(craiggers.com, July 18, 2012)

73.     The one distinguishable feature between craigslist's postings and the postings

displayed by craiggers is the deletion of craigslist's copyright notice and insertion in its place of a

blithe and false declaration that the content misappropriated from craigslist is *not* copyrighted and

is "powered by 3Taps":

Figure 5
(craigslist ad)

Figure 6
(craiggers.com ad)

74.    craiggers does not only copy all of craigslist's posts.  The craiggers website also copies key design elements of the craigslist website.  Examples include the following:



Figure 7
(craigslist, July 18, 2012)

Figure 8
(craiggers.com, July 18, 2012)

75.    3Taps also offered a craiggers mobile phone application that displays copied craigslist content.

76.    As illustrated above, 3Taps has also used the famous CRAIGSLIST mark on its website without authorization to promote its products and services on the internet in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by craigslist and to cause dilution by blurring of the CRAIGSLIST mark by impairing the mark's distinctiveness.

77.    3Taps also makes unauthorized use of the famous CRAIGSLIST mark in its competing craiggers website in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by craigslist and to cause dilution by blurring of the CRAIGSLIST mark by impairing the mark's distinctiveness.

78.     Examples of 3Taps' unauthorized use of the CRAIGSLIST mark on the craiggers website include the following:



Figure 9
(craiggers.com, July 18, 2012)

79.     At no time has craigslist authorized or consented to 3Taps' use of the CRAIGSLIST mark or any other craigslist intellectual property.

80.     Shortly after craigslist filed its original complaint in this action, 3Taps suspended operation of craiggers.com.

81.     In addition, 3Taps also created and operates Jeboom.com, which displays and / or uses craigslist content.

**b.      3Taps' Unauthorized Scraping.**

82.     3Taps has repeatedly and consistently stated publicly that it obtains craigslist content from publicly-available sources, such as the Google and Bing search engines, and not by "scraping"—i.e., remotely accessing and extracting content from the craigslist website.  These public statements, however, are utterly belied by 3Taps' actual conduct.

83.     craigslist allows general internet search engines—Google and Bing—to index the craigslist website so as to allow users of those search engines to access the craigslist website through hyperlinks.  Notwithstanding 3Taps' announcement on August 7 that "At approximately noon on Sunday August 5, Craigslist instructed all general search engines to stop indexing CL postings," craigslist has never instructed general internet search engines to stop indexing its website, and in fact has not changed its instructions for general search engines in recent years.

84.     craigslist does not, however, authorize search engines to make cached versions of craigslist's content available for others to harvest wholesale.  For example, craigslist specifically

1    includes a "NOARCHIVE" instruction in its in-line HTML content to inform search engines that

2    they are not to make available cached copies of craigslist postings. This instruction has been

3    present in craigslist postings for many years, and remains unchanged.

4        85.    Although 3Taps has gone to great lengths to mislead the public regarding the

5    manner in which it harvests craigslist's content, craigslist's investigation shows that 3Taps is not

6    obtaining craigslist content from authorized third-party sources, as it has consistently and

7    voluminously proclaimed. Instead, 3Taps has misappropriated craigslist's content by unlawfully

8    scraping it directly from craigslist on a massive scale.

9        86.    In particular, 3Taps, on its own and/or through its agents, affiliates, and/or other

10   co-conspirators, harvests craigslist's content by accessing craigslist's servers with web crawlers

11   that scrape craigslist's content directly from craigslist. A web crawler, also known as a "robot,"

12   "bot," or "spider" is a computer program that browses and gathers information from the internet.

13       87.    The web crawlers that 3Taps, its agents, affiliates, and/or other co-conspirators use

14   to scrape content from craigslist's website operate by accessing, entering, and searching the

15   craigslist website on craigslist's servers and then extracting the content—craigslist postings—and

16   copying that content into the 3Taps database.

17       88.    As part of its investigation into 3Taps' improper conduct, craigslist identified

18   various IP addresses from which these web crawlers operated. Once craigslist identified such an

19   IP address, craigslist blocked that IP address from accessing craigslist's servers.

20       89.    Every time craigslist blocked an IP address from which one of 3Taps' web

21   crawlers was operating, however, the crawlers were moved to another IP address. Indeed,

22   craigslist's investigation revealed that 3Taps' web crawlers often operated from multiple IP

23   addresses simultaneously.

24       90.    On information and belief, 3Taps, either directly or through its agents, affiliates,

25   and/or other co-conspirators, eventually discovered that craigslist was able to identify and block

26   the IP addresses from which its scraping web crawlers were operating.

27

28

91.     Thereafter, 3Taps, either directly, or through its agents, affiliates, and/or other co-conspirators, began using anonymous proxies to hide the true origination address of its scraping web crawlers.

92.     craigslist has no business relationship with 3Taps and craigslist does not endorse or approve of 3Taps' activities in any way.  3Taps knows that access to, copying of, and distribution of craigslist's content by 3Taps, its agents, affiliates, and/or other co-conspirators is not authorized by craigslist.

93.     3Taps' illegal scraping activities continue, notwithstanding craigslist's time consuming and burdensome efforts to develop technological means to stop it.

c.     **Brian R. Niessen:  One of 3Taps' "Scrapers."**

94.     Some of 3Taps' unlawful scraping is conducted by an individual named Brian R. Niessen.

95.     On information and belief, Mr. Niessen operates many websites, including but not limited to instantinternetpornstar.com, diaperclub.us, tampaxclub.com, tamponclub.com, agentsonly.net, atenaschilicookoff.com, atenaslife.com, brianniessen.com, curocorp.com, designtechsoftwarelabs.com, icravecrave.com, instantinternetstar.com, nefrotec.com, nefroteconline.com. qatro.com, serviciosdered.net, smir.info, telassistech.com, telassistgroup.com, telassisttech.com, viproom.me, worldslargestbingo.com, carambolaexplorations.com, impenetrate.com, and xstartups.com.

96.     Mr. Niessen is also the founder and chairman of a company named Startup Stock Exchange. Mr. Kidd, 3Taps' founder and CEO, is an investor in Startup Stock Exchange and recently led a financing round for Startup Stock Exchange.

[Remainder of page left intentionally blank.]

97.     One of Mr. Niessen's websites, qatro.com, is linked to prominently from the 3Taps website and contains what appear to be real time statistics regarding 3Taps' craigslist scraping activity:



Figure 10
(3taps-statistics.qatro.com/craigslist, October 18, 2012)

98.     craigslist content scraped on behalf of 3Taps can be traced directly to Mr. Niessen.

99.     For example, since August 2012, craigslist content has been scraped for 3Taps from at least the following IP addresses:  216.245.197.146, 74.63.192.162, 74.208.14.7, and 69.162.76.42.  Each of these IP addresses either currently host, or have hosted, domains connected to Mr. Niessen.

100.    IP address 216.245.197.146 is hosted by the domain vip-api.com.  The registrant email address for vip-api.com is 1cheapdomains@curocorp.com.  Curocorp.com is located at the same IP address as qatro.com, which is registered to Brian Niessen.

101.    IP address 74.63.192.162 hosts the domain carambolaexplorations.com. carambolaexplorations.com is registered to "NiessenBrian" and has registrant email, Admin email, and Tech email addresses as carambola@curocorp.com.  Curocorp.com is located at the same IP address as qatro.com, which is registered to Brian Niessen.

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

SECOND AMENDED COMPLAINT
Case No.  CV 12-03816 CRB

102.     IP address 74.208.14.7 hosts the domains miferta.com and islandlifeproperties.com.  Mr. Niessen has identified Miferta.com as one of his "startup" companies.  The registrant Admin and Technical contact information for islandlifeproperties.com is cheap-registrat-com@curocorp.com.  Curocorp.com is located at the same IP address as qatro.com, which is registered to Brian Niessen.

103.     IP address 69.162.76.42 hosts the domain fb-app-sprii, which is subordinate to sprii.com.  Mr. Niessen purports to be the Chief Technology Officer of Sprii.com.

104.     In addition, Mr. Niessen maintains on his qatro.com website a log that details these scraping activities.  The log uses telling phrases like "Deciding what to scrape," "Waiting for scrape," and "Scraping."  It also lists the URLs and/or IP addresses from which the scraping occurs and notes when the "Last Good" scrape occurred from each of them:



Figure 11
(3taps-stats.qatro.com/show_stats.php August 15, 2012)

1    105.    These logs had been publicly available, but Mr. Niessen made them password

2    protected after craigslist commenced this action.

3    **d.    3Taps' Unauthorized Spamming.**

4    106.    Besides unauthorized scraping of the craigslist website, 3Taps sent mass amounts

5    of unsolicited and misleading commercial email messages ("spam") to craigslist users in an

6    attempt to solicit them to use the Jeboom.com website and other 3Taps applications.  The spam

7    email messages were sent to craigslist users through craigslist's email relay system.

8    107.    Mr. Kidd referred to the practice of sending these spam email to craigslist users as

9    "Craigslist black hatting."

10    108.    3Taps hired an individual named Rose Wanjugu to create the spam.

11    109.    Ms. Wanjugu created various versions of the spam that she sent to Mr. Kidd for

12    review and approval.

13    110.    The spam email messages contain misleading subject headings and were otherwise

14    designed to mislead craigslist users.  For example, one of Ms. Wanjugu's strategies was to

15    respond to a craigslist poster pretending to be someone interested in whatever the poster was

16    offering, but only so that she could use the communication to promote various 3Taps applications

17    and having no real interest in the items offered via the craigslist posting.

18    111.    Additionally, instead of using their real email addresses to send these spam

19    messages to craigslist users, 3Taps and its agents sought to hide their identities by signing up for

20    numerous Gmail and Hotmail email accounts, using false and / or misleading information that

21    would make it impossible for craigslist users to trace the true identity of the sender.

22    112.    3Taps and its agents used specialized software, including software entitled the

23    "craigslist email harvester," to send mass amounts of spam email to craigslist users for the

24    purpose of diverting those users to 3Taps' products and services.  At least one 3Taps engineer

25    acknowledged that the software used by 3Taps and its agents to spam was "a little shady."

26    **e.    PadMapper.**

27    113.    PadMapper is a direct competitor to craigslist's real estate listings services.  It

28    provides searchable real estate rental listings for cities all over the United States and in the United

Kingdom.  The vast majority of PadMapper's content, however, is real estate ads misappropriated from craigslist by 3Taps' unlawful scrapers and distributed via 3Taps' illegitimate "craigslist API."

114.    PadMapper also aggregates craigslist posts with content from other sites, and facilitates cross-posting of listings to craigslist.

115.    On information and belief, like 3Taps, PadMapper initially populated the padmapper.com website by scraping craigslist's content directly from the craigslist website. craigslist sent PadMapper a cease and desist letter explaining that PadMapper's conduct violated the law and craigslist's TOU.

116.    PadMapper initially complied with the cease and desist request and stopped populating its website with craigslist content for several weeks beginning in late June 2012.  The padmapper.com site traffic plummeted drastically, reflective of the fact that the vast majority of PadMapper's traffic is owed to craigslist's content.

117.    Recently, however, PadMapper decided to resume utilizing craigslist content.  On July 9, 2012, PadMapper announced it was "Bringing Craigslist Back" to the site.

118.    Since that time padmapper.com has been populated largely with misappropriated craigslist content, at least some of which is provided by 3Taps.

[Remainder of page left intentionally blank.]

119.    The craigslist postings displayed by PadMapper are identical to the craigslist

postings as they appear on craigslist's website, except for the addition of a "PadMapper Bar" to

the left of the ad:



Figure 12
(craigslist, July 18, 2012)



Figure 13
(padmapper.com, July 18, 2012)

120.     As the above example illustrates, the craigslist copyrighted content displayed by PadMapper includes craigslist's copyright notice.

121.     PadMapper, like 3Taps, has used and continues to use the famous CRAIGSLIST mark in commerce on its website at padmapper.com, without authorization, to promote its products and services on the internet in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by craigslist and to cause dilution by blurring of the CRAIGSLIST mark by impairing the mark's distinctiveness.

122.     At no time has craigslist authorized or consented to PadMapper's use of the CRAIGSLIST mark or any other craigslist intellectual property.

123.     On information and belief, PadMapper derives revenue from real estate listings through its PadLister service that originate separate and apart from craigslist.  PadLister charges some fees now for its real estate listings service and "reserve[s] the right to charge for things that are currently free in the future."

124.     The only reason PadMapper is able to generate revenue from its PadLister service is the traffic that it generates on PadMapper from unlawfully using misappropriated craigslist ads.

### f.       Lovely's Unauthorized Scraping.

125.     Lovely is also a direct competitor to craigslist's real estate listings services.

126.     It operates a website at livelovely.com, as well as a mobile iPhone application, that provide searchable real estate rental listings for cities all over the United States.  Like PadMapper, the majority of Lovely's content is misappropriated from craigslist by 3Taps' unlawful scrapers and distributed to Lovely via 3Taps' illegitimate "craigslist API."

[Remainder of page left intentionally blank.]

127. The Lovely website allows users to review craigslist postings on its site, view the craigslist's user's contact information, and directly email or telephone the craigslist user, all without leaving the Lovely site:



Figure 14
(Livelovely.com, November 5, 2012)

128. Lovely also advertises what it calls "Lovely Exclusives," which purport to be real estate listings that are "exclusive" to Lovely and appear only on the Lovely site.  Lovely advertises that through this service its users can "[G]et access to apartments before they're posted to Craigslist and beat the rush!":



Figure 15
(Livelovely.com, November 5, 2012)

129.    Like PadMapper, Lovely initially populated the livelovely.com website by scraping craigslist's content directly from the craigslist website.

130.    craigslist sent Lovely a cease and desist letter explaining that Lovely's conduct violated the law and craigslist's TOU.  Lovely responded that it had no intention of abiding by craigslist's TOU or otherwise stopping its unlawful craigslist-related activities.

131.    In addition, Lovely obtains craigslist content that it displays on livelovely.com from 3Taps' illegitimate store, which is populated by 3Taps' unlawful scrapers.

### g.    Lovely's Unauthorized Spamming.

132.    Besides unauthorized scraping of the craigslist website, Lovely sent mass amounts of unsolicited and misleading spam email messages to craigslist users through craigslist's email relay system.

133.    The spam email messages contain blatantly false and misleading subject headings and were designed to mislead craigslist users.  For example, the subject headings represented that there were renters interested in properties posted on craigslist's website, when in fact there were no such interested renters.  Lovely used this tactic to misdirect craigslist users to its website and services.

134.    The spam email messages were sent from an unmonitored email address, noreply@livelovely.com, and lacked instructions for recipients to opt-out of receiving further spam messages.  Mr. Pierson explained that the spam email messages were to be sent to craigslist posters within minutes of them posting a real-estate rental listing on the craigslist website.

135.    The spam messages were sent as part of Lovely's "customer acquisition gameplan" to divert craigslist users to Lovely's products and services.  On at least one occasion, Mr. Blake Pierson, Lovely's CEO, compared this approach to a "tactic" that other companies had used to divert craigslist users to their newly formed websites.

### h.    Other 3Taps Subscribers.

136.    On information and belief, the number of entities accessing and utilizing 3Taps' misappropriated craigslist content is growing.

137.     At least the following 3Taps users appear to be accessing craigslist's content through 3Taps:  cmscommander.com, coinzilla.com, craigslert.com, corvairproject.com, jaxed.com, rentvalet.us, searchtempest.com, sittingaround.com, and snapstore.me.  In addition, a number of mobile applications also appear to be accessing craigslist's misappropriated content through 3Taps' illegitimate "craigslist API," including the HuntSmartly mobile application.

138.     If 3Taps' unauthorized and illegal misappropriation and distribution of craigslist's content does not stop, then the list of entities illicitly using craigslist's content will continue to grow to the further detriment of craigslist, its website, and its users.

**F.     Greg Kidd Is Personally Liable For 3Taps' Unlawful Conduct.[2]**

**a.     3Taps Is An Alter Ego of Mr. Kidd.**

139.     Rather than be made to answer for the unauthorized scraping and redistribution of craigslist content, Mr. Kidd has and continues to hide behind 3Taps' corporate shell, an alter ego designed to shield Mr. Kidd from any personal liability.  There is a unity of interest and ownership between 3Taps and Mr. Kidd such that the separate personalities of the corporation and the shareholder do not exist.

140.     3Taps is severely undercapitalized.  3Taps is so thinly capitalized that it cannot fund even its basic operating expenses, much less its obvious and expected liabilities.  This is intentional.

141.     Mr. Kidd founded 3Taps knowing that it would result in substantial litigation with craigslist.  He is fully aware that the potential liability for 3Taps's illicit activities is in the hundreds of millions of dollars.  He has declared that craigslist's yearly revenue, which he seeks to usurp by harvesting and redistributing craigslist postings for his own ventures, is three hundred million dollars.  He has stated that if he had control of craigslist and / or the content on craigslist, he could make ten times that much money per year——i.e. three billion dollars.

142.     Knowing that 3Taps likely would face hundreds of millions of dollars in potential liabilities, Mr. Kidd only funded the company with less than $60,700 and the company has never

_____

[2] Pursuant to the Protective Order, craigslist has redacted allegations in this Complaint that are supported by evidence that 3Taps has designated confidential.

Perkins Coie LLP
Attorneys At Law
Palo Alto

had anywhere near enough assets to cover its basic operating expenses (much less its potential liabilities).

143.    At least one 3Taps officer expressed concern that 3Taps is severely underfunded with Mr. Kidd as the sole current funding source.

144.    Based on its tax filings for 2010 to 2012, 3Taps has not raised a penny more than the original $60,700 in equity that was invested approximately four years ago by Mr. Kidd at 3Taps' inception, even though its expenses are in the millions.

145.    Indeed, beyond mere undercapitalization, Mr. Kidd tries to keep 3Taps "judgment proof" so that there can be no recovery by the plaintiff in this litigation.

146.    To serve this purpose, Mr. Kidd routes to other entities the revenue generated from charging for access to the 3Taps API, which contains the content that 3Taps has unlawfully scraped from craigslist's website.  Examples include, Hard Yaka, another alter ego of Mr. Kidd and 3Taps that Kidd controls, as well as, on information and belief, another shell corporation he refers to as "the Minion For Me Corporation Shell," tied to an offshore bank account.

147.    Separately, Mr. Kidd speaks of sham bankruptcy filings to avoid liability while continuing to mass harvest and redistribute craigslist postings.  Just *three days after* the Court's Order denying 3Taps' Renewed Motion to Dismiss, Mr. Kidd stated that his "thought is that we are going to put 3Taps into bankruptcy but 'open source' / share our work."  Mr. Kidd also explained that "allowing 3taps to go bankrupt (rather than settle [this case]) enables the anti trust claim to stay in force."

148.    3Taps' and Mr. Kidd's funds are extensively commingled.

149.    Mr. Kidd consistently pays 3Taps corporate invoices for its employees and vendors from his personal accounts.  Examples include EastWest Design, Ms. Wanjugu, a designer for the Jeboom site, Mr. Niessen, Daype, Inc., and others.

[Remainder of page left intentionally blank.]

150.   Indeed, Mr. Kidd pays 3Taps' legal expenses for this very litigation from his own funds and accounts.  He has boasted that he is an early investor in Twitter and is willing to "burn some shares" to fund this litigation.[3]  He has admitted to more than one person that he pays the legal bills for this case from his personal account.

151.   3Taps is so heavily dependent on Mr. Kidd's personal finances that there have been instances in which 3Taps could not commit to new work or pay its bills when Mr. Kidd's personal funds were unavailable.

152.   On information and belief, Mr. Kidd continues to pay for 3Taps' corporate expenses from his personal accounts.

153.   Mr. Kidd dominates and controls 3Taps' operations.

154.   According to 3Taps' 2010, 2011, and 2012 tax returns, Mr. Kidd is the sole shareholder of 3Taps' voting stock.

155.   On at least one occasion, Mr. Kidd unilaterally chose to change the business direction of 3Taps.

156.   On another occasion, a 3Taps officer challenged Mr. Kidd's management style, and Mr. Kidd responded by unilaterally terminating the officer.

**b.     Greg Kidd Is the Guiding Spirit Behind 3Taps' Unlawful Conduct.**

157.   Mr. Kidd is the central figure and guiding spirit of the wrongful conduct at issue in this case.

158.   At all relevant times, Mr. Kidd was and is the founder and Chief Executive Officer of 3Taps.

159.   Mr. Kidd has personally planned, instructed, encouraged, ratified, and participated in 3Taps' unauthorized scraping and redistribution of craigslist content.

160.   The scraping and wholesale redistribution of craigslist content has been Mr. Kidd's passion for years.  He's written multiple "white papers" about craigslist content, scraping craigslist content, and redistributing craigslist content wholesale to others.  He believes that

---

[3] http://www.sfgate.com/technology/article/3taps-PadMapper-face-Craigslist-challenge-3762765.php

1   craigslist content should be free for the taking, and for whatever purpose anyone wants, and has

2   been personally trying for years to see that goal to fruition through whatever means he can come

3   up with, without regard for the law, craigslist users' rights, or craigslist's legal rights.

4       161.    After founding 3Taps to achieve his goals of misappropriating and redistributing

5   craigslist content, Mr. Kidd has personally directed, encouraged, participated in, and / or ratified

6   every single act that is the subject of this lawsuit.

7       162.    For instance, Mr. Kidd personally instructed his employees to avoid being detected

8   by craigslist when scraping craigslist content.

9       163.    Likewise, after craigslist detected 3Taps' activities, and *during this litigation*, Mr.

10  Kidd directed one of his scraping agents, Mr. Niessen, "to keep going" on a plan to amass so

11  many IP address proxies that it would be difficult for craigslist to detect the scraping.  Mr. Kidd

12  referred to this as the "mega-proxy plan."

13      164.    Mr. Kidd personally entered into strategic arrangements with third party entities to

14  enable "crowd sourcing" of craigslist's data.  In other words, he has personally, and at his sole

15  direction, attempted to either hire or otherwise encourage a "crowd" of scrapers to obtain

16  craigslist content for him, since he believes that craigslist does not have the technical means to

17  "block everyone" from scraping content on craigslist's website.

18      165.    In a separate email exchange, Mr. Kidd explained that "we are specifically looking

19  for folks to do the [scraping] independently of 3Taps so that it can be its own separate activity."

20  Acknowledging the illegality of his endeavor, Mr. Kidd emphasized that "[i]t needs to be run in

21  stealth mode because if it is blocked and a cease and desist letter is sent, then its all over and

22  we've got to move on to rely on others.  We'll always look to have a pool of folks able to do the

23  work. [c]raigslist can't block and C&D everyone!" Mr. Kidd stated that "[w]e'll provide the

24  foundation software that a third party can run if they want to be a distributed or crowdsourcing

25  grabber."  Furthermore, "[w]e'd spot ya all the money to get going and then pay a profit margin

26  on top of costs to make it worth your while."

27      166.    Mr. Kidd was and continues to be responsible for, *inter alia*, making all final

28  decisions on 3Taps' business practices and policies.

167.    To the extent other employees, agents, or contractors were responsible for the scraping and redistribution of craigslist content, Mr. Kidd directed and encouraged their activities with the knowledge that such activities are unlawful and violated craigslist's TOU.

**G.    Hard Yaka is an Alter Ego of Mr. Kidd and 3Taps.**

168.    3Taps and Mr. Kidd also hide behind Hard Yaka's corporate shell to escape liability for the unauthorized scraping and redistribution of craigslist content.

169.    Hard Yaka and 3Taps are being operated as a single enterprise such that Hard Yaka is merely an instrumentality, agency, conduit, or adjunct of 3Taps.  There is a unity of interest and ownership between Hard Yaka and 3Taps such that the separateness of the two corporations does not exist and adherence to the fiction of a separate existence of the two corporations would, under the circumstances here present, promote injustice or inequity.

170.    Hard Yaka's and 3Taps' funds are so extensively commingled that the two shells do not exist as separate entities.

171.    Just like Mr. Kidd's personal finances, Hard Yaka's funds are used to pay 3Taps' scraping-related expenses.  Hard Yaka funds have been used to pay 3Taps employees and vendors including Daype, Inc., Mr. Niessen, and others.

172.    In addition, Hard Yaka is used as a shell to hide revenue from 3Taps' operations. 3Taps customers pay Hard Yaka, not 3Taps, for use of 3Taps' API of scraped craigslist content. For instance, Hard Yaka (not 3Taps) invoiced Lovely for using 3Taps' API of scraped craigslist content.  The same is true for PadMapper.  The invoices list "Hard Yaka, Inc." on all pages in the header and specifically instruct the 3Taps user to "Please Submit Payment to: Hard Yaka, Inc.[,] 66 Starbuck Drive[,] Muir Beach, CA 94965" (which is an address to one of Mr. Kidd's residences).  And the wiring instructions on these invoices lists a bank account under the name "Hard Yaka, Inc."

173.    Hard Yaka and 3Taps are commonly owned, controlled and dominated by Mr. Kidd.

174.    Hard Yaka and 3Taps are commonly owned by Mr. Kidd.  According to 3Taps' 2010, 2011, and 2012 tax returns, Mr. Kidd is the sole shareholder of 3Taps' voting stock and

1   continues to be the controlling shareholder.

2   175.   Similarly, upon information and belief, Mr. Kidd is and continues to be the

3   controlling shareholder of Hard Yaka.  He refers to Hard Yaka as consisting primarily of his own

4   money.  All of the remaining shareholders in Hard Yaka are Mr. Kidd's family members.

5   176.   Mr. Kidd dominates both 3Taps and Hard Yaka.  Mr. Kidd regularly refers to

6   himself as the "3taps Founder."  Mr. Kidd also refers to himself as the "Founder/CEO of Hard

7   Yaka."

8   177.   As described above, Mr. Kidd is the guiding spirit behind 3Taps' unlawful

9   activities.  In the same vein, upon information and belief, Mr. Kidd dominates and controls Hard

10  Yaka's investment and business decisions.

11  178.   Hard Yaka's and 3Taps' management teams inextricably overlap.  Hard Yaka's

12  management team consists of Mr. Kidd and Ms. Nakamura.  This is the same management team

13  for 3Taps.

14  179.   Mr. Kidd is the founder and CEO of both Hard Yaka and 3Taps.

15  180.   Ms. Nakamura is both a partner at Hard Yaka and a manager and officer at 3Taps.

16  Further, Hard Yaka's website describes Ms. Nakamura as a "Hard Yaka [P]artner" and "3taps co-

17  founder."

18  181.   Hard Yaka's and 3Taps' operations are so extensively commingled that the two

19  shells do not exist as separate entities.

20  182.   Mr. Kidd and Ms. Nakamura regularly use their 3Taps email addresses to conduct

21  Hard Yaka business.  For instance,  Ms. Nakamura sent email seeking to recover money owed to

22  Hard Yaka using her 3Taps email address.  Similarly, Mr. Kidd regularly uses his 3Taps email

23  address to discuss potential Hard Yaka investments with Hard Yaka business associates.

24  183.   Hard Yaka's and 3Taps' websites are extensively commingled.  For example, Hard

25  Yaka's website contains three total pages, one of which is titled "Our Thoughts."  The language

26  on this page is copied wholesale from a page on 3Taps' website titled "Advocacy."  The copied

27  language on Hard Yaka's "Our Thoughts" page describes Mr. Kidd's and 3Taps' ideology and

28  public policy views purporting to justify unlawful scraping and redistribution of craigslist content.

1   This "Our Thoughts" page also contains a list of links to Mr. Kidd's and 3Taps' "White Papers"

2   regarding 3Taps' operations as well as a list of links to press releases and filings in this lawsuit.

3   All of these links are copied from 3Taps' website and link to the same location on 3Taps'

4   webservers.

5          184.    3Taps and Hard Yaka are two corporate shells that share a business venture of

6   mass harvesting and redistributing craigslist content.

7          185.    3Taps provides the "product," which is content unlawfully obtained from the

8   craigslist website, to be redistributed to 3Taps' customers.

9          186.    Hard Yaka provides money and investments that support this venture.  As

10  explained above, revenues from 3Taps' scraping are funneled directly to Hard Yaka (not 3Taps).

11  Likewise, Hard Yaka invests in companies that are willing to challenge craigslist's ability to

12  protect the content on its website, including companies that use the content that 3Taps scrapes

13  and / or companies that scrape craigslist's website directly.

14         187.    Indeed, Mr. Kidd refers to Hard Yaka as 3Taps' "investment arm" and targets

15  companies for investment that are willing to challenge craigslist's ability to protect the content on

16  its website and servers.

17         188.    Mr. Kidd openly communicates to prospective Hard Yaka portfolio companies that

18  Hard Yaka's interest in investing depends on the companies' willingness to violate craigslist's

19  TOU and circumvent craigslist's technical measures to restrict unauthorized access to its website,

20  among other unlawful activities.

21         189.    For instance, Mr. Kidd was considering investing Hard Yaka funds into

22  SellSimple, a company engaged in craigslist-related activities.  As part of the communications

23  with SellSimple, Mr. Kidd wrote that "*[i]f you do take on Craigslist, then I'm doubly interested

24  as an investor / adviser*" and the "*real hook for us relates to whether you'll be looking to

25  integrate with Craigslist or not.*" (Emphasis added).

26         190.    It would be unjust to persist in the recognition of Hard Yaka and 3Taps as two

27  separate corporations.  Mr. Kidd has intentionally undercapitalized 3Taps and redirected 3Taps'

28  revenue to Hard Yaka, so as to ensure that 3Taps is without sufficient assets to pay a judgment in

this litigation, or even fund its basic operating expenses.  It would be unjust and inequitable to respect the corporate form of either corporation under the facts alleged herein.

## FIRST CLAIM FOR RELIEF
### Trespass as to all Defendants

191.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

192.    Defendants have intentionally, and without authorization, accessed and interacted with craigslist, including without limitation, craigslist's website, computer systems and servers. Access to craigslist and the proprietary information contained in it is granted only to those users who abide by the TOU.  By disregarding the TOU, and craigslist's express objections to their activities, Defendants have unlawfully gained access to and interfered and intermeddled with craigslist, its website, computer systems, and its servers.  Defendants' unauthorized interference, intermeddling, and access with craigslist, its website, computer systems, and its servers, among other harms, reduces craigslist's capacity to service its users because it occupies and uses craigslist's resources.

193.    Defendants' conduct constitutes trespass that has harmed and will continue to harm craigslist.  As a result, craigslist has been and will continue to be damaged.

194.    In addition, Defendants have engaged in a civil conspiracy to commit trespass by engaging agents, licensees, and/or affiliates to obtain unauthorized access by robot, spider, or other automatic device, to craigslist's computer system, including its servers, the craigslist website, and the content contained within.  Defendants have acted in concert with each other, as well as with other agents, licensees, and/or affiliates for this unauthorized and unlawful purpose. This conduct, as well, has harmed and will continue to harm craigslist, and craigslist has been and will continue to be damaged.

195.    craigslist has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Accordingly, craigslist is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF
**Breach of Contract as to all Defendants**

196.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

197.    Use of the craigslist website and use of craigslist services are governed by and subject to the TOU.

198.    At all relevant times, the main craigslist homepage and the homepage for each geographic region have provided links to the TOU that are prominently displayed.

199.    craigslist users are presented with the TOU and must affirmatively accept the TOU to register for a craigslist account to post ads.

200.    craigslist users are presented with the TOU and must affirmatively accept the TOU before they can post an ad without an account.

201.    Defendants affirmatively accepted and agreed to be bound by the TOU by creating accounts and/or posting ads to craigslist.

202.    Defendants regularly accessed the craigslist website and affirmatively accepted and agreed to the TOU to, among other things, test, design, and/or use the software that allows Defendants to provide their services.

203.    On March 7, 2012, craigslist sent 3Taps a letter demanding that it cease and desist all of its craigslist-related activities.  A copy of craigslist's TOU in effect at that time was enclosed with that letter.

204.    On June 18, 2012, craigslist sent PadMapper a letter demanding that it cease and desist all of its craigslist-related activities.  A copy of craigslist's TOU in effect at that time was enclosed with that letter.

205.    On June 29, 2012, craigslist sent Lovely a letter demanding that it cease and desist all of its craigslist-related activities.  A copy of craigslist's TOU in effect at that time was enclosed with that letter.

206.    On December 5, 2013, craigslist updated its TOU.

207.    On December 13, 2013, craigslist sent 3Taps and Lovely another letter demanding

1   that it cease and desist all of its craigslist-related activities.  A copy of craigslist's updated TOU

2   was enclosed with that letter.

3        208.    On December 19, 2013, craigslist sent PadMapper another letter demanding that it

4   cease and desist all of its craigslist-related activities.  A copy of craigslist's updated TOU was

5   enclosed with that letter.

6        209.    Defendants regularly accessed the craigslist website with knowledge of the TOU

7   and all of their prohibitions.  Despite their knowledge of the TOU and their prohibitions,

8   Defendants regularly accessed and continue to access the craigslist website to, among other

9   things, design, develop, test, update, operate, modify, maintain, support, market, advertise,

10  distribute and/or otherwise make available the Defendants' programs, applications, and services,

11  and to copy, aggregate, display, distribute, frame craigslist content and/or make derivative use of

12  the craigslist website and the content posted therein.

13       210.    Defendants used, provided, and continue to use and provide software or services

14  that interact or interoperate with craigslist's servers, websites, or content therefrom, e.g., for

15  downloading, uploading, posting, emailing, search, or mobile use.

16       211.    Defendants utilized and continue to utilize robots, spiders, scripts, scrapers,

17  crawlers, etc. to access craigslist's servers, websites, or content therefrom.

18       212.    Defendants bypassed and continue to bypass mechanisms including, without

19  limitations, blocking (e.g., IP addresses), filtering, deletion, delay omission, verification, and/or

20  access/account/license termination, used by craigslist to moderate access to craigslist's servers,

21  websites, or content therefrom.

22       213.    Defendants collected and continue to collect users' personal and/or contact

23  information.

24       214.    Defendant 3Taps sent and continues to send spam email to craigslist users.

25       215.    The TOU are binding on Defendants.

26       216.    Defendants' actions, as described above, have willfully, repeatedly and

27  systematically breached the TOU.

28

217.    craigslist has performed all conditions, covenants, and promises required of it in accordance with the TOU.

218.    Defendants' conduct has damaged craigslist, and caused and continues to cause irreparable and incalculable harm and injury to craigslist.

219.    In addition, Defendants have engaged in a civil conspiracy to commit breach of contract by engaging agents, licensees, and/or affiliates to obtain unauthorized access by robot, spider, or other automatic device, to craigslist's computer system, including its servers, the craigslist website, and the content contained within.  Defendants have acted in concert with each other, as well as with numerous other agents, licensees, and/or affiliates for this unauthorized and unlawful purpose.  This conduct, as well, has harmed and will continue to harm craigslist, and craigslist has been and will continue to be damaged.

220.    craigslist is entitled to injunctive relief, compensatory damages, liquidated damages under the TOU, attorneys' fees, costs and/or other equitable relief.

### THIRD CLAIM FOR RELIEF
**Misappropriation as to all Defendants**

221.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

222.    craigslist has invested substantial time, labor, skill, and financial resources into the creation and maintenance of craigslist, its computer systems and servers, including system and server capacity, as well as the content on the craigslist website, which is time sensitive.

223.    Without authorization, Defendants wrongfully access craigslist's website, computer systems and servers, and its content without having to make the substantial investment in time, labor, skill, and financial resources made by craigslist.  Defendants compete with craigslist and have made craigslist's content and other services available to their customers and other third parties.  As such, Defendants' use of craigslist's computer systems and servers, including system and server capacity, as well as craigslist's content constitutes free-riding on craigslist's substantial investment of time, effort, and expense.

224.    As a result of this misappropriation, Defendants wrongfully compete, and / or enable others to compete, with craigslist, and craigslist has been forced to expend additional time

1   and resources, including but not limited to, investigating Defendants' activities and attempting to

2   technologically prevent such misappropriation.

3   225.   craigslist has been and will continue to be damaged as the result of Defendants'

4   misappropriation of craigslist's valuable information and property.

5   226.   In addition, Defendants have engaged in a civil conspiracy to commit

6   misappropriation by engaging agents, licensees, and/or affiliates to obtain unauthorized access by

7   robot, spider, or other automatic device, to craigslist's computer system, including its servers, the

8   craigslist website, and the content contained within.  Defendants have acted in concert with each

9   other, as well as with numerous other agents, licensees, and/or affiliates for this unauthorized and

10  unlawful purpose.  This conduct, as well, has harmed and will continue to harm craigslist, and

11  craigslist has been and will continue to be damaged.

12  227.   craigslist has suffered and will continue to suffer irreparable injury, and its remedy

13  at law is not itself adequate to compensate it for injuries inflicted by Defendants.

**FOURTH CLAIM FOR RELIEF**
**Copyright Infringement as to all Defendants**
**17 U.S.C. § 101, *et seq.***

16  228.   craigslist realleges and incorporates by reference all of the preceding paragraphs.

17  229.   Each of the Copyrighted Works constitutes an original work of authorship and

18  copyrightable subject matter under the laws of the United States.

19  230.   craigslist either owns or has exclusive rights to all right, title, and interest in and to

20  each of the Copyrighted Works.

21  231.   Defendants had and have access to the Copyrighted Works.

22  232.   Defendants have copied, reproduced, prepared derivative works from, distributed

23  copies to the public and/or displayed publicly the Copyrighted Works without the consent or

24  authority of craigslist, thereby directly infringing craigslist's copyrights.

25  233.   Defendants' copies, reproductions, derivative works, distributions, and displays

26  are identical and/or substantially similar to the Copyrighted Works.

27

28

234.    The foregoing acts of Defendants constitute copyright infringement of craigslist's exclusive rights in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

235.    Defendants' actions were and are intentional, willful, wanton and performed in disregard of craigslist's rights.

236.    craigslist has been and will continue to be damaged, and Defendants have been unjustly enriched, by Defendants' unlawful infringement of craigslist's website in an amount to be proven at trial.

237.    Defendants' conduct also has caused irreparable and incalculable harm and injuries to craigslist, and, unless enjoined, will cause further irreparable and incalculable injury, for which craigslist has no adequate remedy at law.

238.    craigslist is entitled to the relief provided by 17 U.S.C. §§ 502-505, including, but not limited to, injunctive relief, an order for the impounding and destruction of all Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and craigslist's costs and attorneys' fees in amounts to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**Contributory Copyright Infringement as to Defendants 3Taps, Kidd, and Hard Yaka**

239.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

240.    3Taps provides its users with copies and/or derivative works of the Copyrighted Works without craigslist's consent.

241.    3Taps' users then copy, reproduce, prepare derivative works from, distribute copies to the public and/or display publicly the Copyrighted Works without the consent or authority of craigslist, thereby directly infringing craigslist's copyrights.

242.    3Taps has engaged and continues to engage in the business of knowingly and systematically inducing, causing, and/or materially contributing to unauthorized copying, reproduction, preparation of derivative works from, distribution of copies to the public and/or

public display of the Copyrighted Works by 3Taps users and thus to the direct infringement of the Copyrighted Works.

243. 3Taps' conduct constitutes contributory infringement of craigslist's copyrights and exclusive rights under copyright in the Copyrighted Works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

244. 3Taps' actions were and are intentional, willful, wanton and performed in disregard of craigslist's rights.

245. craigslist has been and will continue to be damaged, and 3Taps has been unjustly enriched, by 3Taps' unlawful infringement of the Copyrighted Works in an amount to be proven at trial.

246. 3Taps' conduct also has caused irreparable and incalculable harm and injuries to craigslist, and, unless enjoined, will cause further irreparable and incalculable injury, for which craigslist has no adequate remedy at law.

247. craigslist is entitled to the relief provided by 17 U.S.C. §§ 502-505, including, but not limited to, injunctive relief, an order for the impounding and destruction of all Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and craigslist's costs and attorneys' fees in amounts to be determined at trial.

248. Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

249. Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## SIXTH CLAIM FOR RELIEF
### Federal Trademark Infringement as to Defendants 3Taps, Kidd, Hard Yaka, and PadMapper, 15 U.S.C. § 1114

250. craigslist realleges and incorporates by reference all of the preceding paragraphs.

251. craigslist owns U.S. Registrations Nos. 2395628, 2905107, 2985065, and 3008562 for the CRAIGSLIST mark.

252. Defendants' use of the CRAIGSLIST mark is without the permission of craigslist.

253.     Defendants' use of the CRAIGSLIST mark in interstate commerce constitutes a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of craigslist in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive.  For example, users of Defendants' websites are likely to be confused as to whether Defendants' websites and services are associated or approved by craigslist.

254.     As a direct and proximate result of Defendants' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.  craigslist has no adequate remedy at law and is therefore entitled to injunctive relief as set forth herein.

255.     As a direct and proximate result of Defendants' misconduct, craigslist has suffered and is entitled to monetary relief in an amount to be proven at trial.

256.     Defendants' misconduct has been and is knowing, deliberate, and willful. Defendants' willful use of the CRAIGSLIST mark without excuse or justification renders this an exceptional case and entitles craigslist to its reasonable attorneys' fees.

257.     Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

258.     Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

### SEVENTH CLAIM FOR RELIEF
**Federal False Designation of Origin as to Defendants 3Taps, Kidd, Hard Yaka and PadMapper, 15 U.S.C. § 1125(a)**

259.     craigslist realleges and incorporates by reference all of the preceding paragraphs.

260.     The general consuming public of the United States widely recognizes the CRAIGSLIST mark as designating craigslist as the source of services.

261.     Defendants' unauthorized use of the CRAIGSLIST mark in interstate commerce is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products or services are provided by craigslist, associated or connected with craigslist, or have the sponsorship, endorsement, or approval of craigslist, in violation of 15

U.S.C. § 1125(a).  For example, users of Defendants' websites are likely to be confused as to whether Defendants' websites and services are associated or approved by craigslist.

262.    Defendants' misconduct resulting in such likelihood of confusion, deception, and mistake will continue unless enjoined by this Court.

263.    As a direct and proximate result of Defendants' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.  craigslist has no adequate remedy at law and is therefore entitled to injunctive relief as set forth herein.

264.    As a direct and proximate result of Defendants' misconduct, craigslist has suffered and is entitled to monetary relief under 15 U.S.C. § 1117, including profits, damages, and costs of the action.

265.    Defendants' misconduct has been and is knowing, deliberate, and willful. Defendants' willful use of the CRAIGSLIST mark without excuse or justification renders this an exceptional case and entitles craigslist to its reasonable attorneys' fees.

266.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

267.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

**EIGHTH CLAIM FOR RELIEF**
**Federal Dilution of a Famous Mark as to Defendants 3Taps, Kidd, and Hard Yaka**
**15 U.S.C. § 1125(c)**

268.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

269.    The CRAIGSLIST mark is a famous and distinctive mark, and is widely recognized by the general consuming public of the United States as a designation of source of craigslist's services.

270.    The CRAIGSLIST mark was famous prior to the time 3Taps commenced use of the CRAIGSLIST mark and its marks in commerce.

271.    3Taps' websites display the CRAIGSLIST mark and craigslist website within its websites.

272.     3Taps' use of the CRAIGSLIST mark is likely to cause dilution by blurring, by impairing the distinctiveness of the CRAIGSLIST mark, thereby damaging craigslist's goodwill and disparaging craigslist's rights in the CRAIGSLIST mark.  For example, 3Taps' use of the CRAIGSLIST mark in its websites is likely to reduce the distinctiveness of the CRAIGSLIST mark by reducing the general consuming public's association of the mark with craigslist's services.  3Taps' acts and conduct are in violation of 15 U.S.C. § 1125(c).

273.     In addition, 3Taps' use of the CRAIGGERS mark is likely to cause an association arising from the similarity between the CRAIGGERS mark and CRAIGSLIST mark that impairs the distinctiveness of the CRAIGSLIST mark.  3Taps' use of the CRAIGGERS mark in commerce is likely to cause dilution by blurring of the famous CRAIGSLIST mark in violation of the Lanham Act, 15 U.S.C. §1125(c).

274.     As a direct and proximate result of 3Taps' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.  This harm includes a reduction in the distinctiveness of the CRAIGSLIST mark and injury to craigslist's reputation that cannot be remedied through damages, and craigslist has no remedy at law.  craigslist is therefore entitled to injunctive relief as set forth herein.

275.     3Taps willfully intended to trade on craigslist's reputation or to cause dilution of the famous CRAIGSLIST mark and, therefore, craigslist is entitled to monetary relief under 15 U.S.C. § 1117, including profits, damages, and costs of the action.

276.     3Taps' misconduct has been and is knowing, deliberate, and willful.  3Taps' willful use of the CRAIGSLIST mark without excuse or justification renders this an exceptional case and entitles craigslist to its reasonable attorneys' fees.

277.     Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

278.     Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## NINTH CLAIM FOR RELIEF
### Federal Cyberpiracy Prevention as to Defendants 3Taps, Kidd, and Hard Yaka
### 15 U.S.C. § 1125(d)

279.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

280.    The CRAIGSLIST mark was famous and distinctive at the time craiggers.com was registered.

281.    3Taps, without regard to the products or services provided by craigslist and with a bad faith intent to profit from the CRAIGSLIST mark, has registered, trafficked in, and continues to use its domain name that is identical or confusingly similar to or dilutive of the CRAIGSLIST mark, in violation of the Lanham Act, 15 U.S.C. § 1125(d).

282.    3Taps' use of CRAIGGERS is likely to cause an association arising from the similarity between CRAIGGERS and CRAIGSLIST that impairs the distinctiveness of craigslist's famous mark.

283.    As a direct and proximate result of 3Taps' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless the Court orders that the craiggers.com domain be forfeited or cancelled, or transferred to craigslist.

284.    As a direct and proximate result of Defendants' misconduct, craigslist has suffered and is entitled to monetary relief under 15 U.S.C. § 1117, including profits, damages, and costs of the action.

285.    Defendants' misconduct has been and is knowing, deliberate, and willful. Defendants' willful use of the CRAIGSLIST mark without excuse or justification renders this an exceptional case and entitles craigslist to its reasonable attorneys' fees.

286.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

287.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## TENTH CLAIM FOR RELIEF
### California Trademark Infringement as to Defendants 3Taps, Kidd, Hard Yaka and PadMapper, Cal. Bus. & Prof. Code § 14245

288.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

289.    Defendants' unauthorized use of the CRAIGSLIST mark in connection with the sale, offering for sale, distribution or advertising of their products or services is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products or services are provided by craigslist, associated or connected with craigslist, or have the sponsorship, endorsement, or approval of craigslist, in violation of California Business & Professions Code Section 14245.

290.    craigslist is informed and believes, and on that basis alleges, that Defendants' acts were, and are, in conscious and willful disregard of craigslist's trademark rights.

291.    As a direct and proximate result of Defendants' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.

292.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

293.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## ELEVENTH CLAIM FOR RELIEF
### Common Law Trademark Infringement as to Defendants 3Taps, Kidd, Hard Yaka and PadMapper

294.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

295.    Defendants' unauthorized use of the CRAIGSLIST mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products or services are provided by craigslist, associated or connected with craigslist, or have the sponsorship, endorsement, or approval of craigslist, in violation of the common law.

296.    Defendants' misconduct resulting in such actual and likelihood of confusion, deception, and mistake will continue unless enjoined by this Court.

297.    As a direct and proximate result of Defendants' misconduct, craigslist has been, and will continue to be irreparably harmed, injured and damaged, and such harm will continue unless enjoined by this Court.  Such harm includes damage to craigslist's rights in its marks, and to the business, positive reputation and goodwill of craigslist, which cannot be adequately compensated solely by monetary damages.  craigslist therefore has no adequate remedy at law and seeks permanent injunctive relief.

298.    As a direct and proximate result of Defendants' misconduct, craigslist has suffered and is entitled to monetary damages in an amount to be determined at trial.

299.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

300.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

**TWELFTH CLAIM FOR RELIEF**
**California Unfair Competition**
**Cal. Bus. & Prof. Code § 17200, *et seq.* as to all Defendants**

301.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

302.    By the acts described herein, Defendants have engaged in unlawful and unfair business practices that have injured and will continue to injure craigslist in its business and property, in violation of California Business and Professions Code Section 17200, *et seq.*

303.    Defendants' acts alleged herein have caused monetary damages to craigslist in an amount to be proven at trial, and have caused and will continue to cause, irreparable injury to craigslist and its business, reputation, and trademarks, unless and until Defendants are permanently enjoined.

304.    As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

[Remainder of page left intentionally blank.]

**THIRTEENTH CLAIM FOR RELIEF**
**Computer Fraud and Abuse Act as to Defendants 3Taps, Kidd,**
**Hard Yaka, and Niessen,**
**18 U.S.C. §1030 *et seq.***

305.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

306.    craigslist's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

307.    On information and belief, Defendants knowingly and intentionally accessed craigslist's computers without authorization or in excess of authorization as defined by craigslist's TOU.

308.    On information and belief, after gaining unauthorized access to craigslist's servers, Defendants obtained and used valuable information from craigslist's protected computers and servers in transactions involving interstate or foreign communications.  This information includes, among other things, craigslist posts and other content, and the use includes, among other things, distributing that content to others.

309.    Defendants knowingly, willfully, and with an intent to defraud accessed craigslist's computers and servers without authorization or in excess of authorization and obtained valuable information from craigslist's computers and servers that, on information and belief, Defendants used to obtain something of value.

310.    craigslist has suffered damage and loss by reason of these violations, including, without limitation, harm to craigslist's content, programs, and computer systems, expenses associated with being forced to investigate the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, and well in excess of $5,000 aggregated over a one year period.

311.    In addition, Defendants have engaged in a civil conspiracy to commit the above-described activities by engaging agents, licensees, and/or affiliates to obtain unauthorized access by robot, spider, or other automatic device, to craigslist's computer system, including its servers, the craigslist website, and the content contained within.  Defendants have acted in concert with each other, as well as with numerous other agents, licensees, and/or affiliates for this

1  unauthorized and unlawful purpose. This conduct, as well, has harmed and will continue to harm

2  craigslist, and craigslist has been and will continue to be damaged.

3      312.    In addition, craigslist has suffered and will continue to suffer irreparable harm, and

4  its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.

5  Accordingly, craigslist is entitled to injunctive relief.

6      313.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central

7  figure behind 3Taps' illegal activity.

8      314.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

9  **FOURTEENTH CLAIM FOR RELIEF**
**California Comprehensive Computer Access and Fraud Act**
10  **as to Defendants 3Taps, Kidd, Hard Yaka, and Niessen, Cal. Penal Code §502**

11      315.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

12      316.    Defendants have violated California Penal Code §502(c)(2) by knowingly and

13  fraudulently, and without permission, accessing, taking, copying, and making use of programs,

14  data, and files from craigslist's computers, computer systems, and/or computer networks.

15      317.    Defendants have violated California Penal Code §502(c)(3) by knowingly,

16  fraudulently, and without permission accessing and using craigslist's computers and servers.

17      318.    Defendants have violated California Penal Code §502(c)(6) by knowingly,

18  fraudulently, and without permission providing, or assisting in providing, a means of accessing

19  craigslist's computers, computer systems, and/or computer networks.

20      319.    Defendants have violated California Penal Code §502(c)(7) by knowingly,

21  fraudulently, and without permission accessing, or causing to be accessed, craigslist's computers,

22  computer systems, and/or computer networks.

23      320.    craigslist owns certain data that comprises information obtained by Defendants as

24  alleged above.

25      321.    As a direct and proximate result of Defendants' unlawful conduct within the

26  meaning of California Penal Code §502, Defendants have caused damage to craigslist in an

27  amount to be proven at trial. Craigslist is also entitled to recover its reasonable attorney's fees

28  pursuant to California Penal Code §502(e).

322.     In addition, Defendants have engaged in a civil conspiracy to violate sections 502(c)(2)-(7) by engaging agents, licensees, and/or affiliates to obtain unauthorized access by robot, spider, or other automatic device, to craigslist's computer system, including its servers, the craigslist website, and the content contained within.  Defendants have acted in concert with each other, as well as with numerous other agents, licensees, and/or affiliates for this unauthorized and unlawful purpose.  This conduct, as well, has harmed and will continue to harm craigslist, and craigslist has been and will continue to be damaged.

323.     craigslist is informed and believes that the aforementioned acts of Defendants were willful and malicious in that Defendants' acts described above were done with the deliberate intent to injure craigslist's business and improve its own.  craigslist is therefore entitled to punitive damages.

324.     In addition, craigslist has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Accordingly, craigslist is entitled to injunctive relief.

325.     Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

326.     Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## FIFTEENTH CLAIM FOR RELIEF
### Aiding and Abetting Trespass as to Defendants 3Taps, Kidd, and Hard Yaka

327.     craigslist realleges and incorporates by reference all of the preceding paragraphs.

328.     craigslist is informed and believes and thereon alleges that Defendant 3Taps has and had specific knowledge of, and actively encourages and encouraged, Defendant Niessen and other 3Taps agents and affiliates to intentionally and without authorization access and interact with craigslist, including without limitation, craigslist's website, computer systems and servers.  This conduct by Niessen and other 3Taps agents and affiliates, which 3Taps has and continues to have knowledge of and actively encourage, constitutes unlawful access to and interference and intermeddling with craigslist, its website, computer systems, and its servers.

329.    3Taps substantially assisted and encouraged Niessen's and other 3Taps agents' and affiliates' conduct described above by, among other things, facilitating and supporting the collection, transfer, and storage of craigslist content.

330.    3Taps' conduct in this regard constitutes aiding and abetting trespass that has harmed and will continue to harm craigslist.  As a result, craigslist has been and will continue to be damaged.

331.    craigslist has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by 3Taps.  Accordingly, craigslist is entitled to injunctive relief.

332.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

333.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

**SIXTEENTH CLAIM FOR RELIEF**
**Aiding and Abetting Misappropriation as to Defendants**
**Niessen, 3Taps, Kidd, and Hard Yaka**

334.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

335.    Defendant Niessen has actual knowledge that Defendant 3Taps uses time-sensitive "scraped" craigslist content to compete with craigslist.  Defendant Niessen encourages and substantially assists 3Taps in those activities by, among other things, providing "scraped" time-sensitive craigslist content to 3Taps.

336.    Likewise, Defendant 3Taps has actual knowledge that Defendants PadMapper and Lovely each uses time-sensitive "scraped" craigslist content to compete with craigslist.  Defendant 3Taps encourages and substantially assists Defendants PadMapper and Lovely in those activities by, among other things, providing "scraped" time-sensitive craigslist content to PadMapper and Lovely.

337.    Defendants Niessen and 3Taps have thus aided and abetted the misappropriation of craigslist's content.  As a result, craigslist has been and will continue to be damaged.

338.    craigslist has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by 3Taps and Niessen.

1    Accordingly, craigslist is entitled to injunctive relief.

2       339.    Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central

3    figure behind 3Taps' illegal activity.

4       340.    Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

5                    **SEVENTEENTH CLAIM FOR RELIEF**
6                    **Accounting as to all Defendants**

7       341.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

8       342.    Since at least April 2010, Defendants have obtained business through the use of

9    unlawful conduct, as alleged elsewhere in the complaint.

10      343.    Defendants have received money as a result of their misconduct, at craigslist's

11   expense, and some or all of such money is rightfully due to craigslist.

12      344.    The amount of money due from Defendants to craigslist cannot be ascertained

13   without an accounting of the income and gross profits Defendants have obtained through their

14   wrongful and unlawful conduct.  craigslist is entitled, therefore, to a full accounting.

15                    **EIGHTEENTH CLAIM FOR RELIEF**
     **Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM)**
16   **as to Defendants 3Taps, Kidd, Hard Yaka, and Lovely, 15 U.S.C. §7701 *et seq.***

17      345.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

18      346.    craigslist is a provider of Internet access service as defined in 15 U.S.C. §

19   7702(11) because it provides a service that enables users to access content, information,

20   electronic mail, or other services offered over the Internet, and may also include access to

21   proprietary content, information, and other services as part of a package of services offered to

22   consumers.

23      347.    craigslist's website and computers are used in and affect interstate and foreign

24   commerce and communication, and are therefore protected computers within the meaning of 15

25   U.S.C. § 7702(13).

26      348.    The electronic messages initiated by 3Taps and Lovely were "commercial"

27   electronic mail messages because their primary purpose was the commercial advertisement or

28

promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose) as provided in 15 U.S.C. § 7702(2)(A).

349.    The commercial electronic messages initiated by 3Taps contained materially false or materially misleading header information.  By sending the commercial electronic messages from fake Gmail and Hotmail accounts created through false or fraudulent pretenses and representations, the commercial electronic messages contained "from" lines that were materially misleading regarding the actual sender of the message in violation of 15 U.S.C. § 7704(a)(1).

350.    3Taps and Lovely were also engaged in a pattern or practice of initiating the transmission of commercial electronic mail messages that included subject headings that were likely to mislead craigslist users as to the contents or subject matter of the message, in violation of 15 U.S.C. § 7704(a)(2).  3Taps and Lovely initiated the transmission of the misleading commercial electronic messages with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that the messages' subject heading would be likely to mislead a recipient, acting reasonably under the circumstances.

351.    3Taps and Lovely were also engaged in a pattern or practice of initiating the transmission of commercial electronic mail messages that did not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient could use, in a manner specified in the message, to request not to receive future commercial electronic mail messages from that sender in violation of 15 U.S.C. § 7704(a)(3).

352.    In addition, 3Taps and Lovely initiated the transmission of commercial electronic messages, in a pattern or practice, that did not clearly and conspicuously identify that the messages were advertisements or solicitations for 3Taps' and Lovely's services, did not contain clear and conspicuous notice of the opportunity to decline to receive further commercial electronic mail messages from the sender, and did not provide a physical postal address of the sender in violation of 15 U.S.C. § 7704(a)(5).

353.    3Taps and Lovely originated or transmitted these misleading commercial electronic messages or intentionally paid or provided other considerations to, or induced, another person to initiate such messages on its behalf with actual knowledge, or by consciously avoiding

knowing, whether such person is engaging, or will engage, in a pattern or practice that violates the CAN-SPAM.

354.     Moreover, 3Taps knowingly initiated the transmission of commercial electronic mail messages or assisted in the origination of such messages to craigslist users with actual knowledge or knowledge fairly implied on the basis of objective circumstances that the email addresses were obtained by using an automated means such as email harvesting software, in violation of 15 U.S.C. § 7704(b).

355.     craigslist is adversely affected by reason of these violations, including, without limitation, harm to craigslist's computer systems and servers, expenses associated with being forced to investigate and combat 3Taps' and Lovely's unauthorized spam messages, harm to craigslist's goodwill and reputation with its users, and other actual or statutory damages in an amount to be proven at trial.

356.     craigslist is entitled to aggravated damages in an amount equal to three times the amount otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) because 3Taps has knowingly and willfully violated craigslist's rights and has sent spam messages to craigslist users by using automated means to obtain their email addresses as set forth in 15 U.S.C. § 7704(b).

357.     In addition, craigslist has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by 3Taps and Lovely.  Accordingly, craigslist is entitled to injunctive relief pursuant to 15 U.S.C. § 7706(g)(1)(A).

358.     craigslist is also entitled to recover its costs, including attorneys' fees, pursuant to 15 U.S.C. § 7706(g)(4).

359.     Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

360.     Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

## NINETEENTH CLAIM FOR RELIEF
### Restrictions on Unsolicited Commercial Email Advertisers as to Defendants 3Taps, Kidd, Hard Yaka, and Lovely
### Cal. Bus. & Prof. Code § 17529, *et seq.*

361.    craigslist realleges and incorporates by reference all of the preceding paragraphs.

362.    craigslist is an electronic mail service provider as defined in Cal. Bus. & Prof. Code § 17529.1 because it is an Internet service provider that is an intermediary in sending or receiving electronic mail or that provides to end users of the electronic mail service the ability to send or receive electronic mail.

363.    The electronic messages initiated by 3Taps and Lovely were "commercial e-mail advertisements" as defined in Cal. Bus. & Prof. Code § 17529.1 because they were initiated for the purpose of advertising or promoting the lease, sale, rental, gift, offer, or other disposition of any property, goods, services, or extension of credits.

364.    The commercial email advertisements were sent from California or sent to California electronic mail addresses.

365.    3Taps initiated and advertised its services and websites in commercial email advertisements which contained falsified or misrepresented header information in violation of Cal. Bus. & Prof. Code § 17529.5(a)(2).

366.    In addition, 3Taps and Lovely initiated and advertised their services and websites in commercial email advertisements which contained subject lines that were likely to mislead the craigslist users receiving the messages as to the contents or subject matter of the message in violation of Cal. Bus. & Prof. Code § 17529.5(a)(3).

367.    craigslist has suffered damages and losses by reason of these violations, including, without limitation, harm to craigslist's computer systems and servers, expenses associated with being forced to investigate and combat Defendants' unauthorized spam messages, harm to craigslist's goodwill and reputation with its users, and other actual and liquidated damages in an amount to be proven at trial.

368.    craigslist is also entitled to recover its reasonable attorney's fees and costs pursuant to Cal. Bus. & Prof. Code § 17529.5(b)(1)(C).

369.   Mr. Kidd is jointly and severally liable as the alter ego of 3Taps and the central figure behind 3Taps' illegal activity.

370.   Hard Yaka is also jointly and severally liable as the alter ego of 3Taps.

**PRAYER FOR RELIEF**

WHEREFORE, craigslist prays that judgment be entered in its favor and against Defendants, as follows:

1.   A preliminary injunction and permanent injunction enjoining and restraining all Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually from:

(a)   Copying, reproducing, preparing derivative works from, distributing copies to the public, and/or publicly displaying the Copyrighted Works;

(b)   Knowingly and systematically inducing, causing, and/or materially contributing to unauthorized copying, reproduction, preparation of derivative works from, distribution of copies to the public, and/or publicly displaying the Copyrighted Works;

(c)   Using, authorizing the use of, copying, reproducing or imitating the CRAIGSLIST mark, or any confusingly similar or colorable imitation thereof;

(d)   Accessing or using craigslist's website for any commercial purpose whatsoever; and

(e)   Initiating the transmission of electronic mail messages to craigslist users for the purpose of advertising its services and websites.

2.   An order requiring Defendants to destroy all documents, data, and other items, electronic or otherwise, in their possession, custody, or control, that infringe the copyrights and trademarks of craigslist.

3.   An order requiring that the craiggers.com domain be forfeited or cancelled, or transferred to craigslist.

4.   An award to craigslist of restitution and damages, including, but not limited to, liquidated, compensatory, statutory, treble damages, and punitive damages, as permitted by law;

1          5.       An award to craigslist of its costs of suit, including, but not limited to, reasonable

2   attorneys' fees, as permitted by law;

3          6.       For such other relief as the Court deems just and proper.

4   September 24, 2014                                    **PERKINS COIE** LLP

5

6                                                         By: /s/ Bobbie J. Wilson
                                                              Bobbie J. Wilson
7
                                                          Attorneys for Plaintiff craigslist, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a jury trial of all issues in the above-captioned action that are

3    triable to a jury.

4    September 24, 2014                         **PERKINS COIE** LLP

5

6                                              By: /s/ Bobbie J. Wilson
                                                   Bobbie J. Wilson

7                                              Attorneys for Plaintiff craigslist, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28