1    Venkat Balasubramani (SBN 189192)
     Sean M. McChesney (admitted *pro hac vice*)
2    FOCAL PLLC
     800 Fifth Ave., Suite 4100
3    Seattle, WA 98104
     Phone: (206) 529-4827
4    Fax: (206) 260-3966
     venkat@focallaw.com
5    sean@focallaw.com

6

7    Attorneys for Defendant
     PADMAPPER, INC.

8

9                     UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12   CRAIGSLIST, INC., a Delaware corporation,      Case No. CV-12-03816 CRB

13                      Plaintiff,                  **PADMAPPER, INC.'S REPLY IN SUPPORT**
                                                    **OF MOTION FOR PARTIAL SUMMARY**
14          v.                                      **JUDGMENT**

15   3TAPS, INC., a Delaware corporation;
     PADMAPPER, INC., a Delaware corporation;       Date:       January 16, 2015
16   DISCOVERY HOME NETWORK, INC., a                Time:       10:00 a.m.
     Delaware corporation d/b/a LOVELY; HARD        Courtroom:  6, 17th Floor
17   YAKA, INC., a Delaware corporation;            Judge:      Hon. Charles R. Breyer
     BRIAN R. NIESSEN, an individual;
18   ROBERT G. KIDD, and individual; and
     DOES 1 through 25, inclusive,
19
                        Defendants.
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**SUMMARY OF ARGUMENT** ...................................................................................... vi

**DISCUSSION** ......................................................................................................... 1

**A. craigslist Cannot Maintain Its Copyright Infringement Claims Because The Copyright Office Denied Registration Of The Database Copyright Application** .................................. 1

   1. craigslist's basis for its copyright claims was already narrow ................................ 1

   2. The Copyright Office rejected craigslist's Database Application. ........................... 1

   3. The Database Application was properly rejected by the Copyright Office, requiring dismissal of craigslist's copyright claims. ............................................................ 3

   4. Regardless of whether the Court dismisses craigslist's copyright claims, craigslist is not entitled to statutory damages or a presumption of validity. ................................... 3

**B. There Are No Issues Of Material Fact Precluding Summary Judgment On craigslist's Compilation Copyright Infringement Claim** ............................................................... 3

   1. craigslist does not decide how particular Listings are arranged and its screening efforts for objectionable content do not reflect creative curation. ......................................... 3

   2. PadMapper does not infringe on any of craigslist's rights because it does not use the same underlying principle of selection or arrangement ........................................... 5

**C. There Are No Issues Of Material Fact Precluding Summary Judgment On craigslist's Individual Listings Copyright Claim** ...................................................................... 7

   1. craigslist does not create a factual dispute with respect to inline linking ............... 7

   2. craigslist does not create a factual dispute with respect to PadMapper's Summary Bubbles .. 8

   3. craigslist does not create a factual dispute with respect to fair use ...................... 8

   4. craigslist's attempts to discredit the DeMenthon Declaration fail ........................ 10

**D. craigslist Fails to Put Forth Evidence Of Actual Harm Resulting From PadMapper's Access To Its Website Necessary To Support A Trespass Claim** .................................. 11

   1. The Powell Declaration is entirely speculative ................................................ 11

   2. Preventative measures and speculation regarding third party activity is insufficient to withstand summary judgment ...................................................................... 11

**E. craigslist's Misappropriation Claim Is Preempted, And It Does Not Assert A Cognizable Hot News Claim** ................................................................................................. 12

   1. craigslist's misappropriation claim is premised on alleged improper use of its materials and as such is preempted ...................................................................................... 12

   2. craigslist also fails to allege a claim for "hot news" misappropriation .................. 13

1

**F.  craigslist Is Not Entitled To Relief Under Rule 56(d)** ...................................................... **14**

    1.  craigslist has not been diligent in seeking discovery ............................................ 14

    2.  craigslist does not specify what discovery requests PadMapper failed to answer .................. 14

**CONCLUSION** ........................................................................................................... **15**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

<u>**Cases**</u>

3

Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,

4

747 F.3d 673 (9th Cir. 2014) .................................................................................. 2

5

American Geophysical Union v. Texaco Inc.,

6

60 F.3d 913 (2d Cir. 1994)..................................................................................... 9

7

AP v. Meltwater U.S. Holdings, Inc.,

8

931 F. Supp. 2d 537 (S.D.N.Y. 2013)................................................................... 9

9

Authors Guild, Inc. v. Google Inc.,

10

954 F. Supp. 2d 282 (S.D.N.Y. 2013)................................................................. 10

11

BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g,

12

999 F.2d 1436 (11th Cir. 1993) ............................................................................. 5

13

Bensbargains.net, LLC v. XPbargains.com,

14

No. 06cv1445 BTM, 2007 U.S. Dist. LEXIS 60544 (S.D. Cal. Aug. 16, 2007) ................................. 6

15

CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc.,

16

44 F.3d 61 (2d Cir. 1994)....................................................................................... 5

17

Cosmetic Ideas, Inc. v. IAC/InteractiveCorp,

18

606 F.3d 612 (9th Cir. 2010) ................................................................................. 3

19

Eckes v. Card Prices Update,

20

736 F.2d 859 (2d Cir. 1984).................................................................................. 4

21

Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,

22

353 F.3d 1125 (9th Cir. 2004) ............................................................................. 14

23

Ets-Hokin v. Skyy Spirits,Inc.,

24

225 F.3d 1068 (9th Cir. 2000) .............................................................................. 4

25

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,

26

499 U.S. 340 (1991)............................................................................................... 5

27

Fred Wehrenberg Circuit of Theaters, Inc. v. Moviefone, Inc.,

73 F. Supp. 2d 1044 (E.D. Mo. 1999)................................................................ 13

28

Intel Corp. v. Hamidi,

30 Cal. 4th. 1342 (2003) ....................................................................................................... 12

Kay Berry, Inc. v. Taylor Gifts, Inc.,

421 F.3d 199 (3rd Cir. 2005) ................................................................................................ 2

Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.,

945 F.2d 509 (2d Cir. 1991)............................................................................................. 4, 6

Lawther v. OneWest Bank, FSB,

No. C-10-00054 JCS, 2012 U.S. Dist. LEXIS 12062 (N.D. Cal. Feb. 1, 2012)................................. 15

Mackey v. Pioneer Nat. Bank,

867 F.2d 520 (9th Cir. 1989) ............................................................................................... 14

Martinez v. Columbia Sportswear USA Corp.,

859 F. Supp. 2d 1174 (E.D. Cal. 2012)................................................................................. 7

Matthew Bender & Co. v. West Publ'g Co.,

158 F.3d 674 (2d Cir. 1998)................................................................................................... 4

Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.,

722 F.3d 591 (4th Cir. 2013) ................................................................................................. 2

NBA v. Motorola,

105 F.3d 841 (2d Cir. 1997)................................................................................................. 13

Pryor v. Jean,

No. CV 13-02867 DDP (AJWx), 2014 U.S. Dist. LEXIS 143515 (C.D. Cal. Oct. 8, 2014) .............. 2

Reed Elsevier, Inc. v. Muchnick,

559 U.S. 154 (2010)............................................................................................................... 3

Schiffer Publ'g, Ltd. v. Chronicle Books, LLC,

No. 03-4962, 2005 U.S. Dist. LEXIS 416 (E.D. Pa. Jan. 11, 2005)..................................... 3

Trenton v. Infinity Broad. Corp.,

865 F. Supp. 1416 (C.D. Cal. 1994) ................................................................................... 12

United States v. Kitsap Physicians Serv.,

314 F.3d 995 (9th Cir. 2002) ............................................................................................... 14

Want Ad Digest, Inc. v. Display Adver., Inc.,
 653 F. Supp. 2d 171 (N.D.N.Y. 2009)...................................................................................... 4, 7

Warren Publ. v. Microdos Data Corp.,
 115 F.3d 1509 (11th Cir. 1997) ............................................................................................ 5

Zamora v. City of Oakland,
 2013 U.S. Dist. LEXIS 114381 (N.D. Cal. Aug. 12, 2013)............................................... 14

**Statutes**

17 U.S.C. § 412................................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................................ iv, 14

**Regulations**

37 C.F.R. § 201.5(b)(2)(iii).............................................................................................................. 3

37 C.F.R. § 202.1(a)..................................................................................................................... 6, 8

37 C.F.R. § 202.3(b)(4)(i)(A) ......................................................................................................... 2

37 C.F.R. § 202.3(b)(4)(i)(B) ......................................................................................................... 2

# SUMMARY OF ARGUMENT

**craigslist has no registrations or applications to support its copyright infringement claims:** When this action was filed, craigslist had one copyright application relevant to its claims against PadMapper, its Database Application. Now it has none. The Copyright Office rejected the Database Application. That is reason alone for the Court to dismiss craigslist's copyright claims.

**Even if craigslist is allowed to continue pursuing its copyright claims, they fail:**

- <u>No creativity in selection and arrangement</u>: craigslist does not refute the material facts underlying its selection and creativity. These facts reveal that users, not craigslist, select Listings for inclusion and classification, and craigslist accepts the submitted Listings, excluding only those that violate its acceptable use policies (which are unrelated to the quality of rental listings). Additionally, even assuming craigslist has some slim copyright interest in its database, PadMapper does not infringe, because it uses a fundamentally different principle of organization and arrangement.

- <u>PadMapper's use of individual Listings is fair use</u>: craigslist's copyright claim based on individual Listings fails because PadMapper's use of the Listings is fair use.

**No damage sufficient to assert a trespass claim:** A claim for trespass requires actual damage or impairment. craigslist offers a wholly speculative declaration that does not contain any evidence of actual damage.

**The misappropriation claim is either preempted or is unsupported by sufficient evidence**: craigslist's state law misappropriation claim is premised on allegedly improper "use" of the data and is preempted. It similarly fails to satisfy a claim under the narrow "hot news" doctrine because the information is not time-sensitive as to the people who post Listings, and PadMapper's alleged misappropriation will not so reduce the incentive to produce the product that its very existence will be threatened.

**craigslist is not entitled to relief under Rule 56(d)**: Finally, the Court should reject craigslist's request for relief under Rule 56(d). Discovery has been ongoing for 18 months, and craigslist does not demonstrate diligence in trying to obtain evidence that it says is necessary to refute PadMapper's evidence.

---

1

## <u>DISCUSSION</u>

**A.**     **craigslist Cannot Maintain Its Copyright Infringement Claims Because The Copyright Office Denied Registration Of The Database Copyright Application**

Left undisputed in the Opposition is the fact that craigslist's only possible basis for maintaining its copyright claims was a single application, titled "Group registration for automated database titled Classified Ads Database; published updates from April 19, 2012 to July 19, 2012" (No. 1-799583187) ("Database Application"). *However, since filing its Motion, PadMapper learned that the Copyright Office rejected the Database Application.* Because craigslist has no other relevant registrations or pending applications, the Court should dismiss the copyright claims.

**1.**     craigslist's basis for its copyright claims was already narrow.

Absent from craigslist's Opposition is any refutation, or even discussion, of PadMapper's argument that the Database Application was the sole basis for craigslist's copyright claims. (Mot. at 10:9-11:8.) Further, the Court previously held that craigslist had no basis for claiming copyright in individual Listings prior to July 16, 2012 and after August 8, 2012 (the "<u>Exclusivity Period</u>"). The combined effect of the Exclusivity Period restriction and the date range of the Database Application is that the single application at issue could only potentially provide it rights, if at all, in Listings posted in the *four day period between July 16, 2012 and July 19, 2012.* (Mot. at 11:9-11:15.) Thus, as craigslist has conceded, the potential scope of its copyrights for Listings was narrow at best.

**2.**     The Copyright Office rejected craigslist's Database Application.

Now craigslist has no basis for its copyright claims. craigslist revealed documents just two days before the date of this filing showing that the Copyright Office notified craigslist in *June 2013* that the Database Application *was being denied registration*. The Copyright Office provided written notice of its denial by letter dated May 5, 2014. (Supp. Balasubramani Decl. at ¶ 2, Ex. C.) The letter makes clear that craigslist cannot remedy the Database Application through supplementation. (<u>Id.</u>) It also notes that at the June 2013 meeting, craigslist agreed with the Copyright Office that the Database Application was deficient. (<u>Id.</u>) craigslist failed to reveal these material developments relating to the Database Application, despite: (1) craigslist's duty to disclose basic copyright materials as part of its initial disclosures; (2) PadMapper's repeated requests for details related to

craigslist's copyright applications; and (3) 3Taps' discovery requests seeking craigslist copyright application information. (Supp. Balasubramani Decl. at ¶ 2, Exs. A, B.)[1]

> 3.   The Database Application was properly rejected by the Copyright Office, requiring dismissal of craigslist's copyright claims.

While the underlying works in craigslist's Database Application suffer from inherent deficiencies, as identified by the Copyright Office, the Database Application failed to comply with a registration regulation promulgated by the Copyright Office which requires all components of a database compilation to be owned by the claimant. (Supp. Balasubramani Decl. at ¶ 2, Ex. C.) 37 C.F.R. § 202.3(b)(5)(i)(A) provides that "a single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship, but only "if . . . [among other conditions,] *[a]ll of the updates or other revisions are owned by the same copyright claimant . . . .*" (emphasis added).[2] The Database Application attempted to register updates to craigslist's database from April 19, 2012 through July 19, 2012, but craigslist only has exclusive rights for classified ads submitted between July 16, 2012 and August 8, 2012.

In promulgating group registration rules for, among other things, automated databases, the Register of Copyrights "has exercised the authority delegated by § 408(c)(1)." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 204 (3rd Cir. 2005). Whether craigslist complied with the Copyright Office's regulations regarding applications is a determination within the Copyright Office's expertise, and the Court should therefore defer to the Copyright Office's determination. Kay Berry, 421 F.3d at 204; Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co., 747 F.3d 673, 683 (9th Cir. 2014). Because the Database Application sought to register all of the individual components of its database, the regulations require that craigslist must be the owner of *all* of those

---

[1] craigslist's recently filed Second Amended Complaint indicates that the Copyright Office "received" the applications, but omits mentioning that the Copyright Office refused the registrations. At least one other district court has found that such "questionable conduct" alone could warrant dismissal of a complaint filed after the plaintiff was made aware of such deficiencies. Pryor v. Jean, No. CV 13-02867 DDP (AJWx), 2014 U.S. Dist. LEXIS 143515, at *6-8 (C.D. Cal. Oct. 8, 2014).

[2] The requirement for identity of the claimant for all of the component elements in an application also exists for applications for other types of collective works. See 37 C.F.R. § 202.3(b)(4)(i)(A) and (B). Courts have imposed a similar rule as to the effectiveness of registration, and the ability to assert infringement claims, over component works. See Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc., 722 F.3d 591, 598 (4th Cir. 2013).

1   components. It is not. Thus, the Copyright Office correctly rejected craigslist's Database

2   Application, and craigslist may not proceed with its copyright claims. See Reed Elsevier, Inc. v.

3   Muchnick, 559 U.S. 154, 166 (2010) ("Section 411(a) [is] a type of precondition to suit").

4         4.      Regardless of whether the Court dismisses craigslist's copyright claims, craigslist is
                  not entitled to statutory damages or a presumption of validity.
5

6         Even if the Court does not dismiss craigslist's copyright claims, the Copyright Office's

7   rejection of the Database Application has two consequences. *First*, if craigslist were to submit a

8   new application, any resulting registration would not entitle craigslist to statutory damages and

9   attorney's fees for alleged infringements of Listings, because the effective date of any resulting

10   registration would be after the Exclusivity Period. See 17 U.S.C. § 412. Similarly, if the Court were

11   to somehow allow craigslist to supplement the Database Application, despite the Copyright Office's

12   determination that such supplementation would be improper, the resulting effective date for the

13   supplemented registration would be the date of supplementation. See Schiffer Publ'g, Ltd. v.

14   Chronicle Books, LLC, No. 03-4962, 2005 U.S. Dist. LEXIS 416, at *9-11 (E.D. Pa. Jan. 11, 2005)

15   (denying statutory damages, and noting that supplementary registration cannot reflect changes in

16   the content of a work and benefit from original filing date); 37 C.F.R. § 201.5(b)(2)(iii)

17   (supplementary registration not appropriate "to reflect changes in the content of a work"). *Second*,

18   if craigslist is somehow allowed to pursue its copyright claims without a registration, it is not

19   entitled to the presumption of validity, but rather "bears a greater evidentiary burden of proving the

20   validity of its copyright." Cosmetic Ideas, Inc. v. IAC/InteractiveCorp, 606 F.3d 612, 621 n.14 (9th

21   Cir. 2010). Thus, the Court should scrutinize carefully craigslist's arguments regarding the extent of

22   creativity it purportedly exerts in compiling the database.

23   **B.      There Are No Issues Of Material Fact Precluding Summary Judgment On craigslist's
             Compilation Copyright Infringement Claim**
24
         1.      craigslist does not decide how particular Listings are arranged and its screening
25               efforts for objectionable content do not reflect creative curation.

26         *craigslist's anti-spam and acceptable content policy is not curatorial*: craigslist claims it has

27   an "artistic vision" for its collection of user postings, yet fails to point to any substantive selection

28   criteria related to housing rentals. The Powell Declaration discusses craigslist's policies regarding

content restrictions generally, but none of these are aimed at winnowing down rental listings on the basis of their qualities as rental listings. craigslist's "expressive and artistic vision" amounts to a collection of classified ads, supplied by others, which aspires to exclude pornography, spam, duplicate posts, and offensive or malicious content. This is similar to Want Ad Digest, Inc. v. Display Adver., Inc., 653 F. Supp. 2d 171 (N.D.N.Y. 2009), and in stark contrast to Eckes v. Card Prices Update, 736 F.2d 859 (2d Cir. 1984), and Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc., 945 F.2d 509 (2d Cir. 1991), where the putative authors actually selected among the pool of otherwise eligible data for inclusion. In Eckes, the compiler selected among otherwise eligible baseball cards to find "premium" cards and in Key Publ'ns, a selection was made to find businesses of "greatest interest" to the New York City Chinese-American community. craigslist tries to distinguish Want Ad by claiming that the plaintiff in that case included *all* advertisements that were submitted to it. However, nowhere in the Want Ad opinion does it state that the plaintiff published *all* advertisements it received. It says that the advertisements published had been submitted to plaintiff by others. In other words, it was at the mercy of others to provide the ads. PadMapper does not question that craigslist must sort through some non-trivial amount of spam, offensive, irrelevant, or mis-categorized content that its users submit. Any user-supplied content is going to include those unrelated to the purpose of the collection. But to turn such efforts into copyright protections would be a revival of the "sweat of the brow" doctrine. craigslist points to the use of discretionary judgment in deciding whether something, for example, is offensive, fraudulent, or pornography. (See Opp. at 20:13-20.) It is not protectable selection authorship to exclude pornography or classified ads selling weapons from a collection of apartment rental ads. See Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 689 (2d Cir. 1998) ("In each of these cases, the compiler selected from among numerous choices, exercising subjective judgments relating to taste and value that were not obvious and that were not dictated by industry convention."). It is hard to imagine any collector of user-generated apartment listings using a materially different exclusion criteria than that articulated by craigslist, and thus, craigslist's expression of its collection of Listings merges with the idea of a collecting all rental listings submitted by users. See Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000).

*Users and not craigslist select where things are posted*: Arranging a compilation involves the placement of items within the framework of an organizing principle. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 364 (1991) ("compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data . . ."). craigslist has created a global structure of categories and geographic areas. However, craigslist does not decide whether a classified ad is posted into a particular category or geographic area. As the Powell Declaration implicitly acknowledges by omission, that element of judgment is left to the discretion of craigslist's users. craigslist points to CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc., 44 F.3d 61, 67 (2d Cir. 1994) to support its argument that dividing an area into geographic markets is sufficiently creative. (Opp. at 27:3-7.) However, the plaintiff in CCC Info. both defined the specific geographic markets and decided the valuations for used cars within each such market. CCC Info., 44 F.3d at 67. Without the exercise of judgment about where to place something within an organizing structure, the organizing principle amounts to no more than an unprotectable idea or a means for discovering facts. Warren Publ. v. Microdos Data Corp., 115 F.3d 1509, 1520 (11th Cir. 1997) (rejecting creativity where "the cable operators, not Warren, that determine[d] . . . the community name under which to list the factual data for the entire cable system . . . ."); BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, 999 F.2d 1436, 1441 (11th Cir. 1993) (same).

*craigslist's expiration policy also does not suffice*: craigslist also cites to its "complex" expiration policy for housing listings, but this can be stated more simply than craigslist's convoluted description. In select major cities, posts stay up for one week, in each other geographic area, posts stay up for 45 days. Paid listings stay up for 30 days. (See Opp. at 21:11-20.) An expiration date is a *scenes a faire* for classifieds. The fact that craigslist could leave Listings up longer if it wanted is irrelevant, as expiration dates for classified ads are entirely typical of the type. See Bell South, 999 F.2d at 1441 (any compilation will have some limits selected by the compiler).

> 2.    PadMapper does not infringe on any of craigslist's rights because it does not use the same underlying principle of selection or arrangement.

craigslist focuses on the quantitative aspects of its compilation and tries to play both sides when discussing the scope of its compilation and PadMapper's alleged infringement. When it

1    supports craigslist's contention that it has a valid copyright, it points to the entire global expanse of

2    its classified listings in all categories and geographies. (See e.g., Opp. at 19:16-20:12). However,

3    when arguing infringement, craigslist changes frames of reference, and speaks only of that smaller

4    world of user postings related to "housing" within the limited geographies covered by PadMapper.

5    (See e.g., Opp. at 28-31.) The appropriate measure is craigslist's entire range of listings. See

6    Bensbargains.net, LLC v. XPbargains.com, 2007 U.S. Dist. LEXIS 60544, at *12 (S.D. Cal. Aug.

7    16, 2007) (rejecting compilation plaintiff's attempt to compare defendant's use against a sub-group

8    of its listings). Regardless, the exact percentage overlap in listings (whether of craigslist's global

9    collection or just the housing section) is a red herring. See Key Publ'ns, 945 F.2d at 516 (finding no

10   infringement where "the organizing principles of the two directories is not substantially similar").

11   While PadMapper does not concede that its database is comprised of a majority of listings from

12   craigslist, craigslist's infringement claim fails for a more fundamental reason. The selection and

13   arrangement of the two collections are fundamentally different.

14       It is not disputed that PadMapper selects Listings with sufficient location data from

15   numerous sources and arranges those Listings on a map based on location. Even a cursory review of

16   the parties' respective sites reveals that there is no copying of what minimal rights craigslist may

17   have in its arrangement of the Listings. See Key Publ'ns. 945 F.2d at 515. Nor does craigslist rebut

18   PadMapper's testimony that it did not have access to the back-end of craigslist's database.

19   Whatever organizational principle craigslist may have employed behind the scenes, functional or

20   otherwise, PadMapper simply did not have access to it and therefore, could not have copied it.

21       craigslist instead ties its infringement claim to the novel theory that the mere copying of the

22   text of headings within a compilation may constitute infringement. (See Opp. at 30:21-31:7.) For

23   instance, craigslist states, without any context, that "the 'city' field corresponds to craigslist's

24   geographic locations." (Id.) However, craigslist does not label listings with the actual geographic

25   location—PadMapper's organizing principle—craigslist's users do. craigslist also does not

26   demonstrate that these simple geographic headings are protectable. See 37 C.F.R. § 202.1(a)

27   (excluding words and short phrases such as names, titles, and slogans from the scope of protection).

28   Instead, this out-of-context reference is to PadMapper's backend storage of Listing data. This

1   textual copying of data, for instance the copying of an abbreviation of San Francisco as "sfc" (See

2   Henn'y Decl. at ¶15), is not copying of an arrangement, it is copying of textual information.

3   Compilation copyright does not extend to the text of headings, it covers their arrangement. See

4   Want Ad, 653 F.Supp.2d. at 179-80.

5   **C.    There Are No Issues Of Material Fact Precluding Summary Judgment On craigslist's**
6   **        Individual Listings Copyright Claim**

7          1.    craigslist does not create a factual dispute with respect to inline linking.

8          PadMapper's display of craigslist photos used a practice known as "inline linking." Given

9   craigslist's deficient copyright registration, the Court need not even delve into an analysis of

10  whether inline linking infringes. But to the extent it does, the Ninth Circuit's server test controls,

11  and craigslist fails to rebut this. Instead, it merely tries to discredit PadMapper's evidence, namely,

12  the declaration of Eric DeMenthon. *First*, craigslist states that Mr. DeMenthon's statements are

13  "uncorroborated and conclusory," and cites to non-binding authority from the District Court for the

14  Southern District of Georgia. (Opp. at 5:11-17.) But as courts in the Ninth Circuit have recognized,

15  Rule 56(c)(4) prescribes that "[a]n affidavit or declaration used to support or oppose a [summary

16  judgment] motion must be made on personal knowledge, set out facts that would be admissible in

17  evidence, and show that the affiant or declarant is competent to testify on the matters stated."

18  Martinez v. Columbia Sportswear USA Corp., 859 F. Supp. 2d 1174, 1180 (E.D. Cal. 2012).

19  Additionally, such a declaration supports the moving party's burden in support of a summary

20  judgment motion. Id. (granting summary judgment despite plaintiff's argument that defendant [did]

21  not submit any evidence . . . supporting her self-serving statement"). Mr. DeMenthon's declaration

22  satisfies all of the requirements of Rule 56(c)(4), and craigslist does not, and cannot, argue

23  otherwise. *Second*, it argues that Mr. DeMenthon's declaration is generally unreliable. (Opp. at

24  5:17-20.) For the reasons set forth below in section C(4), this argument is meritless.

25          craigslist also attempts to create a factual dispute about inline linking by speculating that the

26  craigslist postings displayed with the PadMapper Bar "*could very well have been*" actual copies of

27  craigslist's postings (Opp. at 5:26-27), and that PadMapper's own Motion supports such speculation

28  because PadMapper has stated that it stores the HTML code for craigslist listings in an HTML table

1 (referring to page three of the Motion). (Opp. at 6:1-2.) However, the portion of the Motion cited by

2 craigslist regarding the storage of HTML code *relates to PadMapper's processing of 3Taps data*,

3 not inline linking. Additionally, PadMapper does not copy or store photos from listings. (See Mot.

4 at 4:34; DeMenthon Decl. ¶16.) craigslist puts forth no evidence refuting this. Obviously, it would

5 be impossible to display "actual copies of craigslist postings" without having the photos that appear

6 within such postings. craigslist simply cannot create a factual dispute through such speculation.

7      2.    craigslist does not create a factual dispute with respect to PadMapper's Summary

8     Bubbles.

9     craigslist argues that questions about whether PadMapper's Summary Bubbles displayed

10 non-factual, expressive content—"images" and "listing titles"—bar summary judgment. (Opp. at

11 3:8-9.) But there are no such questions. *First*, the evidence used by craigslist to illustrate its

12 argument (Figure 3 at p. 4; Figure 4 at p. 5) is from outside the Exclusivity Period. craigslist cannot

13 maintain claims for infringement of Listings posted outside the Exclusivity Period and therefore its

14 evidence of display of images and titles in the Summary Bubble outside of this period is irrelevant.

15 *Second*, with respect to images generally, there is no factual dispute about whether PadMapper has

16 copied images from Listings and displayed them through PadMapper. It does not and never has.

17 The only evidence in the record on this point is that such images were always made available via

18 inline linking. (See section C(1), above.) The use of inline linking is not copyright infringement

19 under the Ninth Circuit's server test. (See Mot. at 19:23-21:5.) Finally, with respect to the textual

20 content of Listings contained in PadMapper's Summary Bubbles, including "listing titles."

21 37 C.F.R. § 202.1(a) exempts from copyright protection words and short phrases such as names,

22 titles, and slogans. *Further*, there can be no reasonable dispute that such textual content is factual

23 and therefore not subject to copyright protection. (See Mot. at 11:24-12:19.) Neither the Powell

24 Declaration nor the Hennessey Declaration put forth any evidence to the contrary.

25      3.    craigslist does not create a factual dispute with respect to fair use.

26     craigslist attempts to argue that disputes of fact preclude summary judgment on

27 PadMapper's claim of fair use, but its efforts fail.

28     *Effect of the market*: As to the first fair use factor, craigslist takes issue with the slew of

emails end users unaffiliated with PadMapper sent to craigslist when craigslist data became temporarily unavailable on PadMapper. (Opp. at 7-8.) craigslist characterizes these emails as "self-serving," but it is undisputed that these emails were authored by craigslist users and not by PadMapper. Moreover, PadMapper supplied these emails to show the character of PadMapper's use as fundamentally transformative. In response to these emails, craigslist provides *four* user emails, out of its 60 million monthly users. (Balasubramani Decl., Ex. B (fact sheet listing user base).) These four emails, which are equivocal and of negligible quantity to be legally relevant, do not speak to the key issue relevant to the first factor: the effect of the use on the market for the material in question. To supply competent evidence on this point, craigslist is required to show that PadMapper's use negatively affected craigslist's *ability to license its content or the prices it could charge for such a license*. Its failure to supply any such evidence is telling.

*Purpose and character of use*: craigslist makes a weak attempt to rebut PadMapper's arguments about transformativeness. It argues that merely invoking the "search engine" mantra is not sufficient to bestow immunity from infringement. (Opp. at 10-11.) But PadMapper does not merely invoke a "mantra." It provides emails from craigslist's own users demonstrating PadMapper's transformative nature. craigslist does not dispute that these were representative of the thousands of emails craigslist received, all attesting to the simple fact that users went to PadMapper to find craigslist data because PadMapper's search functionality made this data easier to find. User testimony is probative of whether a use is transformative. <u>AP v. Meltwater U.S. Holdings, Inc.</u>, 931 F. Supp. 2d 537, 576 (S.D.N.Y. 2013). craigslist does not dispute that users overwhelmingly find PadMapper facilitates access to Listings in a way that craigslist does not, and it does not submit a single piece of evidence to the contrary.

craigslist tries to argue that PadMapper somehow paints itself as a "non-for-profit" service (Opp. at 12, f.n. 6) or that it was duplicitous in not wishing to publicize certain investor involvement. These are red herrings. There is no dispute that PadMapper is a for profit company. But the fact that it does not directly commercialize the Listings (<u>e.g.</u>, by selling access to them) is relevant to the fair use analysis. <u>American Geophysical Union v. Texaco Inc.</u>, 60 F.3d 913, 922 (2d Cir. 1994). craigslist also tries to argue PadMapper has acted in bad faith. But the testimony

1  craigslist cites to in support reflects nothing more than a (non-lawyer) entrepreneur who is aware of

2  the challenges of using data under a theory of fair use.

3          *Nature of work and the amount used*: These factors also favor PadMapper. The Listings may

4  involve flowery descriptions and puffery of the sort that is typical in classified advertisements, but

5  the portions of the Listings that PadMapper extracts and displays are predominantly factual (i.e., the

6  attributes of properties such as the price, space, etc.). Moreover, but for the Exclusivity Period,

7  there is no dispute that craigslist does not have any rights in Listings. craigslist also argues that

8  PadMapper's use of the entirety of the Listings cuts against fair use. But PadMapper testified that it

9  needs to use those Listings in order to effectively provide search functionality. craigslist offers no

10  evidence to rebut this. As in the Authors Guild case, this factor favors PadMapper. Authors Guild,

11  Inc. v. Google Inc., 954 F. Supp. 2d 282, 292 (S.D.N.Y. 2013).

12          4.      craigslist's attempts to discredit the DeMenthon Declaration fail.

13          craigslist attempts to discredit the reliability of the DeMenthon declaration because it did not

14  address PadMapper's mobile application, an omission craigslist tries to characterize as somehow

15  duplicitous. (Opp. at 4:1-2.) But there is a simple reason PadMapper did not address this. Unlike

16  with respect to co-defendants 3Taps (see Am. Comp. at ¶4, ¶69) and Lovely (see Am. Comp. at

17  ¶112), craigslist's Amended Complaint contains no allegations regarding PadMapper's mobile

18  application. craigslist also tries to use the fact that "PadMapper's Summary Bubble at one time

19  displayed photographs and expressive listing titles" as a means of discrediting the DeMenthon

20  declaration, by implying that the information was purposefully omitted in order to hide "material

21  facts that are adverse to PadMapper's Motion." (Opp. at 5:17-20.) But, as explained above, whether

22  or not PadMapper displayed images or listing titles is irrelevant, and in no way evinces the

23  "unreliability" of Mr. DeMenthon's declaration. The DeMenthon Declaration is based on first-hand

24  knowledge by the person who would have the most knowledge regarding PadMapper—its architect

25  and developer (and CEO). That there may have been slight variations in PadMapper's functionality

26  over time does not translate into a factual dispute underlying craigslist's claims of infringement.

27  //

28  //

**D.     craigslist Fails to Put Forth Evidence Of Actual Harm Resulting From PadMapper's Access To Its Website Necessary To Support A Trespass Claim**

1.     The Powell Declaration is entirely speculative.

The sole evidence put forth by craigslist in support of its trespass claim consists of seven paragraphs from the declaration of William Powell describing the practice of scraping *generally*. (Powell Decl. at ¶¶31-38.) The first three paragraphs are background, and the next four paragraphs merely describe in hypothetical terms what harm *might possibly* flow from scraping. (Id.) Tellingly, the Powell Declaration does not actually connect such hypothetical harm to any PadMapper's activities. Nor does it even appear to be premised on first-hand knowledge of the effects of such activities. (See Powell Decl. at ¶34.) Similarly, craigslist does not put forth a single document or any other evidence demonstrating the necessary "impairment . . . of [its] system or deprivation of . . . use." craigslist requested during discovery, and PadMapper provided, a list of all IP addresses used by PadMapper. (See Dkt. 148-9, pp. 70-73.) If, in fact, PadMapper's access of craigslist's site prior to its receipt of the cease and desist letter caused any quantifiable damage, then surely in the twenty-eight months since craigslist filed this lawsuit it should be able to put forth some evidence of such damage. For instance, if craigslist experienced service disruptions or some other type of system impairment, it should have records of, or some discussions, about this. But even this most basic type of evidence is missing from craigslist's Opposition.[3] The speculations in the Powell Declaration are simply insufficient to satisfy craigslist's burden at the summary judgment stage. craigslist also argues that the issue of damage requires expert discovery, but this misses the mark. craigslist fails to identify what information the expert could even consider.

2.     Preventative measures and speculation regarding third party activity is insufficient to withstand summary judgment.

The Powell Declaration also alludes to the "significant resources" spent by craigslist identify and block scraping (again, *generally*), and to the "many hours every day spent by craigslist employees." (Powell Decl. at ¶¶34-35.) But the court rejected these specific arguments in Hamidi,

---

[3] Separately, PadMapper served discovery requests seeking evidence of harm, damages and detrimental effects from PadMapper's actions. No such evidence was provided in response. (See Supp. Balasubramani Decl. at ¶ 3, Ex. D (RFPs 2-5, 27).)

noting that "[it would be] circular to premise the damage element of a tort solely upon the steps taken to prevent the damage. Injury can only be established by the completed tort's consequences, not by the cost of the steps taken to avoid the injury . . . ." <u>Intel Corp. v. Hamidi</u>, 30 Cal. 4th. 1342, 1359 (2003). Nor are Mr. Powell's speculations about the cumulative effect of the activity in the future sufficient to satisfy craigslist's burden. Mr. DeMenthon states unequivocally that PadMapper did not access the craigslist site following receipt of craigslist's cease and desist letter, and the Powell Declaration says nothing to refute this. Mr. DeMenthon also testifies that PadMapper's access of the craigslist site prior to receipt of the cease and desist letter was designed in a way so as to not to cause any effects on craigslist's servers, that PadMapper's access was on par with the access that would be engaged in by standard search engines, and that PadMapper complied with all robots.txt protocol instructions. (Dementhon Decl. (Dkt. 135) at ¶20-21.) Again, the Powell Declaration does not put forth any facts to create a factual dispute with respect to—much less mention—these points. craigslist fails to show "'actual damage,' such as impairment as to the 'condition, quality, or value' of the system or deprivation of its use 'for a substantial time.'" (Dkt. 47 at 23:7-12.)

**E.** **craigslist's Misappropriation Claim Is Preempted, And It Does Not Assert A Cognizable Hot News Claim**

    1.   <u>craigslist's misappropriation claim is premised on alleged improper use of its materials and as such is preempted</u>

craigslist argues that the Court need not analyze whether its misappropriation claim adequately alleges a claim under the "hot news" doctrine, because it alleges a state law misappropriation claim and such a claim is not preempted. (Opp. at 35.) However, craigslist fails to allege the extra element that distinguishes its misappropriation claim from one that is preempted. It vaguely argues that because misappropriation encompasses "improper *use*," the rights protected are qualitatively different from the Copyright Act. (Opp. at 35 (emphasis in original).) But craigslist's argument just confirms that its claim is preempted. Among the exclusive rights granted by the Copyright Act are the right to control the "display, reproduction, public performance" (<u>i.e.</u>, the right to use). "To survive preemption, . . . a state law cause of action must derive from something beyond the alleged *unauthorized use of a copyrighted work* . . . ." <u>Trenton v. Infinity Broad. Corp.</u>, 865 F.

1   Supp. 1416, 1428 (C.D. Cal. 1994). craigslist does not point to any such extra element, and its
2   misappropriation claim solely alleges "improper use."

3          2.       craigslist also fails to allege a claim for "hot news" misappropriation.

4        Although the Ninth Circuit has not addressed the issue, some courts recognize that a so-
5   called "hot news" claim survives preemption. Those courts acknowledge its scope is "narrow," and
6   protects the reporting of time-sensitive, non-copyrightable, factual information. <u>NBA v. Motorola</u>,
7   105 F.3d 841, 849 (2d Cir. 1997). Assuming, the Court recognizes such a claim, there are two key
8   problems with craigslist's "hot news" claim.

9        First, craigslist misunderstands the nature of "highly time-sensitive" as it is used in the hot
10  news cases. In these cases, the information is time-sensitive in the sense that there is value (from a
11  customer-standpoint) to having it before others have it, or as soon as possible. This is not the case
12  with classified advertisements or rental listings, where the customers are those who place the
13  listings. Their goal is to simply rent the property, or sell the good, in question; the sooner they
14  "achieve[] their goal and [the listings] become[] irrelevant" the better. (Opp. at 36, fn. 29.) craigslist
15  does not cite to any case where the hot news misappropriation claim has been applied to classified
16  advertisements, and PadMapper is not aware of any such case. [4]

17       Second, PadMapper provided ample evidence from end users that the search functionality
18  made available by PadMapper enhances usability of craigslist and brings people to craigslist's site.
19  Its search functionality does not reduce the incentive to create the produce or service. craigslist does
20  not put forth rebuttal evidence such as a dramatic decrease in traffic, or significant drop-off of users
21  directly attributable to making Listings searchable via PadMapper. craigslist's sole evidence
22  attempting to rebut PadMapper's showing—emails from four out of its 60 million monthly users—
23  is infinitesimal, at best. It certainly does not rise to the level of evidence that PadMapper's use of
24  factual information underlying the Listings "would so reduce the incentive to produce the product
25  or service that its existence or quality would be substantially threatened." <u>Fred Wehrenberg Circuit</u>

26

27  _____
    [4] craigslist makes much PadMapper's supposed admission of craigslist's statement that the "ads on craigslist
28  are highly time-sensitive." While it may be true in a generic sense, this does not mean they qualify for
    production under the hot news misappropriation doctrine.

1   of Theaters, Inc. v. Moviefone, Inc., 73 F. Supp. 2d 1044, 1046 (E.D. Mo. 1999).

2   **F.      craigslist Is Not Entitled To Relief Under Rule 56(d)**

3              craigslist fails to meet the standards required under Rule 56(d) to seek a continuance of

4   PadMapper's Motion. Rule 56(d) is intended to provide a device for litigants to avoid summary

5   judgment "when they have not had sufficient time to develop affirmative evidence." United States

6   v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). It is not a free pass for litigants that

7   choose not to engage in discovery for eighteen months. "A movant cannot complain if it fails

8   diligently to pursue discovery before summary judgment." Mackey v. Pioneer Nat. Bank, 867 F.2d

9   520, 524 (9th Cir. 1989); see also Zamora v. City of Oakland, 2013 U.S. Dist. LEXIS 114381 (N.D.

10  Cal. Aug. 12, 2013) (denying 56(d) relief because, among other things, plaintiff waited over one

11  year to notice depositions and failed to file motion to compel production of documents allegedly

12  being withheld). Failure to diligently pursue discovery is a proper ground for denying 56(d) relief

13  and proceeding to summary judgment. See Employers Teamsters Local Nos. 175 & 505 Pension

14  Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (no abuse of discretion "by denying

15  further discovery if the movant has failed diligently to pursue discovery in the past").

16              1.      craigslist has not been diligent in seeking discovery.

17              Since this case was initiated, craigslist has propounded one set of requests for production

18  and interrogatories. craigslist served its discovery requests on PadMapper on May 24, 2013.

19  PadMapper served objections and responses in June 2012, and amended objections and responses to

20  craigslist's interrogatories on October 10, 2013. *In the 18 months since craigslist propounded its*

21  *initial discovery requests, craigslist has not served any additional discovery on PadMapper.* Nor

22  has counsel for craigslist even reached out to PadMapper regarding any discovery issues in at least

23  six months. It is quite remarkable, then, that craigslist's Opposition repeatedly characterizes

24  discovery in this case as being in the "early stages," and requests this Court to defer PadMapper's

25  Motion until craigslist has had adequate time for discovery. craigslist has had the last eighteen

26  months to engage in discovery.

27              2.      craigslist does not specify what discovery requests PadMapper failed to answer.

28              craigslist complains vaguely that PadMapper failed to produce requested discovery, but this

---

PADMAPPER REPLY RE MOT. FOR PART. SUMM. JUDG. - 14                Case No. CV-12-03816 CRB

1   is belied by two facts. *First*, counsel for craigslist has not reached out to counsel for PadMapper

2   regarding discovery in approximately at least six months. Correspondence from craigslist back in

3   2013 and early 2014 raises issues with PadMapper's production of documents but none of the items

4   in that correspondence overlap with the items mentioned in the Hennessy Declaration. (<u>Compare</u>

5   Supp. Balasubramani Decl., Ex. E (email from Michael Burshteyn dated Nov. 21, 2013) and Ex. F

6   (email from Nancy Cheng dated February 14, 2014) <u>with</u> Henn'y Decl. ¶25.) *Second*, craigslist

7   sought to compel the production of documents from 3Taps, but did not do the same against

8   PadMapper. (<u>See</u> Joint Discovery Statement (Dkt 109).) In fact, in craigslist's portion of the Joint

9   Discovery Statement submitted to the Court, it advised the court that craigslist had issued a similar

10  set of discovery requests to PadMapper, and "PadMapper . . . responded . . . with relatively no

11  issues." (Joint Discovery Statement at 2, fn.3.) Against the context that craigslist initially served its

12  discovery requests in May 2013, 18 months ago, craigslist's argument that PadMapper failed to

13  adequately respond to its pending discovery requests rings hollow.

14         The sole item of discovery craigslist alleges PadMapper failed to respond to is "all evidence

15  showing how many times a PadMapper user actually 'clicked through' to a craigslist posting."

16  (Opp. at 7:23-8:4.) This argument is a red herring. craigslist fails to identify which discovery

17  request actually sought "click through" numbers. Furthermore, *this is the very first time since*

18  *PadMapper served its answers to discovery that craigslist has alleged a failure on PadMapper's*

19  *part to provide "click through" numbers*. To the extent that craigslist believed that PadMapper

20  failed in its discovery obligations, it could have, but did not, seek any relief from the Court. <u>See</u>

21  <u>Lawther v. OneWest Bank, FSB</u>, No. C-10-00054 JCS, 2012 U.S. Dist. LEXIS 12062, at *21-22

22  (fn. 5) (N.D. Cal. Feb. 1, 2012) (plaintiff's 56(d) argument was "belied by the fact that plaintiff

23  filed his original complaint over two years ago and he has not indicated why a motion to compel

24  discovery was not filed at any time during those two years").

## CONCLUSION

26         For the reasons above, PadMapper respectfully requests that the Court grant its request for

27  partial summary judgment.

28

1    DATED: November 26, 2014                    FOCAL PLLC

2                                                By:

3                                                */s/ Sean McChesney*

4                                                Sean McChesney (admitted pro hac vice)

5                                                Attorneys for Defendant

6                                                PADMAPPER, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28